## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## (EASTERN DIVISION)

| | | |
|---|---|---|
| **CAROL DAUGHERTY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:07-cv-00226-WKW-TFM** |
| **RELIANCE STANDARD LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## MOTION OF DEFENDANT TO DISMISS PLAINTIFF'S COMPLAINT

I.   Introduction

This lawsuit was filed by plaintiff after her claim for long term disability benefits was denied.  Reliance Standard insured the group long term disability Plan that covered eligible employees of Russell Medical Center.  A copy of the Policy is attached as Exhibit "A."  For the reasons stated below, the Plan under which plaintiff is seeking benefits is an employee welfare benefit plan that is governed by ERISA.[1]  Because ERISA preempts the state law claims that are contained in plaintiff's complaint, those claims must be dismissed.

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.*

II.    Legal Authority

    a.    Motion to Dismiss Standard

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven based on the allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). A court will generally accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon*, 467 U.S. at 73. The well-pleaded complaint rule does not apply, however, when a federal statute completely preempts that area of the law. The ERISA statute is such a law. *See Aetna Health Inc. v. Davila,* 524 U.S. 200, 209 (2004); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63 (1987); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987).

    b.    The Policy is governed by ERISA

Pursuant to the ERISA statute, an employee welfare benefit plan that is governed by ERISA is "any plan, fund, or program . . . established or maintained by an employer" to provide benefits through an insurance policy. 29 U.S.C. § 1002(1). Recently, the Eleventh Circuit discussed in detail when a plan satisfies

this definition of an ERISA plan.  *See Moorman v. UnumProvident Corp.*, 464 F.3d 1260 (11th Cir. 2006).  Based on the facts presented and the law stated in that case, this Plan is clearly governed by ERISA.

1.    The Safe Harbor does not Apply

The first step in the analysis of deciding whether ERISA applies is to see whether the plan falls within the safe harbor exception to ERISA.  For the safe harbor to apply, four separate criteria must be satisfied.  No contributions may be made by the employer, participation in the program must be completely voluntary, the sole function of the employer must be limited to permitting the insurer to publicize the program to employees without the employer endorsing the program, and the employer cannot receive consideration for offering the plan.  29 C.F.R. § 2510.3-1(j).

Based on the facts, this Plan cannot satisfy the third safe harbor element which prohibits an employer from endorsing the program.  Endorsement occurs when the employer "engages in activities that would lead a member reasonably to conclude that the program is part of a benefit arrangement established or maintained by the employee organization."  *Moorman*, 464 F.3d at 1268, *quoting* ERISA Op. Letter No. 94-26A, 1994 WL 369282 (July 11, 1994).  In a number of ways, Russell Medical Center endorsed this program.

Only ERISA employee benefits plans are required to file annual reports with the Internal Revenue Service. This document is referred to as the Form 5500. In this case, the Russell Medical Center Long Term Disability Plan has filed a Form 5500 with the IRS. *See* Form 5500, a copy of which is attached as Exhibit "B." As stated on the top of the form, it "is required to be filed under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 (ERISA) and sections 6039(D), 6047(e), 6057(b), and 6058(a) of the Internal Revenue Code." *See* Exhibit "B." The Form 5500 specifically refers to the Long Term Disability Plan, it identifies Reliance Standard as the Plan insurer, and it also names Russell Medical Center as the Sponsor of the Employee Benefit Plan. Based on these facts alone, an employee would reasonably conclude that the program is part of the employer's benefit plan.

The Court in *Moorman* also found endorsement based on the fact that the employer maintained the claim forms and assisted employees in completing them. *Moorman*, 464 F.3d at 1268. Those facts are present here as well. This coverage is self-administered by Russell Medical Center. This means that it is Russell Medical Center who determines which employees are eligible for participation. At the time the coverage went into effect, Russell Medical Center was provided with an "administrative kit" which included claim forms that it provided to employees submitting claims. *See* Affidavit of Richard Walsh, a copy of which is attached as

Exhibit "C." Additionally, Russell Medical Center completed a number of the claim forms in connection with Ms. Daugherty's claim, and it was Russell Medical Center that submitted the claim directly to Reliance Standard. *See* Exhibit "C."

Russell Medical Center endorsed the Long Term Disability Plan in a number of other ways. When the employer offers only one long term disability insurance policy to its employees, restricts eligibility and is otherwise involved in establishing the terms of coverage, the employer's actions rise to the level of endorsement. *Moorman*, 464 F.3d at 1268, *citing Anderson v. UnumProvident Corp.*, 369 F.3d 1257, 1262 (11th Cir. 2004). As in *Anderson*, Russell Medical Center played a role in selecting the coverage as well as those employees eligible for participation in the Plan. As stated on page 1.0 of the Policy, participation was limited to active, full-time employees. *See* Policy at page 1.0, a copy of which is attached as Exhibit "A." The employer also selected a waiting period of 60 days and an Elimination Period of 180 days. *See* Exhibit "A" at page 1.0. Also of importance, this was the *only* long term disability coverage that was offered to employees of Russell Medical Center. Based on all of these facts, endorsement has been proven.

2.    The Employer Established and Maintained the
Long Term Disability Plan as an ERISA Plan

Even if the safe harbor is not met, a plan can still be exempt from ERISA under limited circumstances. *Moorman,* 464 F.3d at 1269. *See also Anderson*, 369

F.3d at 1263 n.2. For a plan to fall under ERISA, there must be a plan, fund or program that has been "established or maintained" by the employer for the purpose of providing disability benefits to participants. *Id.* The Eleventh Circuit has recognized seven factors that are relevant to determining whether an employee benefit plan has been established or maintained. These factors include: (1) the employer's representation in internally distributed documents; (2) the employer's oral representations; (3) the employer's establishment of a fund to pay benefits; (4) actual payment of benefits; (5) the employer's deliberate failure to correct known perceptions of a plan's existence; (6) the reasonable understanding of employees; and (7) the employer's intent. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1215 (11th Cir. 1999).

With respect to the first factor stated above, this employer filed with the government documents that are only required of ERISA employee benefit plans and in those documents it identified itself as the "Plan sponsor." *See* Exhibit "B." As recognized in *Moorman*, this factor alone is sufficient to trigger ERISA. *Moorman*, 464 F.3d at 1269. In addition, it was the employer who distributed claim forms to employees such as this plaintiff. Perhaps the most significant evidence that this employer established and maintained an ERISA plan is the fact that this long term disability insurance has been in place with Reliance Standard since 1997. *See* Exhibit "C." During that time, this has been the only long term

disability insurance offered by Russell Medical Center. As such, plaintiff's former employer established and maintained an ERISA plan.

    c.    <u>Plaintiff's State Law Claims are Pre-empted by ERISA</u>

The law of ERISA supercedes "any and all state laws in so far as they may now or here after relate to any employee benefit plan. . ." 29 U.S.C. § 1144(a). Courts have broadly interpreted the term "relate to." *Garren v. John Hancock Mutual Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997). A state law claim "relates to" an employee benefit plan when it is related to the refusal to pay benefits. *Garren*, 114 F.3d at 187. As long as the state law claims "have a connection with an ERISA plan," those claims are pre-empted.

Both the Eleventh Circuit and the Supreme Court of the United States have recognized that claims for breach of contract and bad faith are pre-empted by ERISA. *Pilot Life*, 481 U.S. at 57; *Butero*, 174 F.3d at 1215. More recently, in *Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292 (11th Cir. 2001), the Eleventh Circuit held that a claim for bad faith refusal to pay benefits is pre-empted by ERISA. *See also Davila*, 542 U.S. at 209 ("any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."). Based on this law, each of plaintiff's claims is pre-empted and must be dismissed.

## Conclusion

For the reasons stated above, the claims in plaintiff's complaint are preempted by ERISA. Accordingly, defendant is entitled to an order dismissing those claims and the complaint.

s/Christopher L. Yeilding
One of the Attorneys for Defendant,
Reliance Standard Life Insurance Company

**OF COUNSEL:**

Steven F. Casey
Christopher L. Yeilding
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Angela J. Hill, Esquire
139 S. Broadnax Street
Dadeville, AL 36853


                                        s/Christopher L. Yeilding
                                        Of Counsel

**POLICYHOLDER:** RUSSELL HOSPITAL

**POLICY NUMBER:** LSC 099500

**EFFECTIVE DATE:** January 1, 1997

**ANNIVERSARY DATES:** January 1, 1998 and each January 1 thereafter

**PREMIUM DUE DATES:** The first Premium is due on the Effective Date. Further Premiums are due monthly, in advance, on the first day of each month.

This Policy is delivered in Alabama and is governed by its laws.

Reliance Standard Life Insurance Company is referred to as "we", "our" or "us" in this Policy.

The Policyholder and any subsidiaries, divisions or affiliates are referred to as "you", "your" or "yours" in this Policy.

We agree to provide insurance to you in exchange for the payment of Premium and a signed Application. This Policy provides income replacement benefits for Total Disability from Sickness or Injury. It insures those Eligible Persons for the Monthly Benefit shown on the Schedule of Benefits. The insurance is subject to the terms and conditions of this Policy.

The Effective Date of this Policy is shown above. This Policy stays in effect as long as Premium is paid when due. The "TERMINATION OF THIS POLICY" section of the GENERAL PROVISIONS explains when the insurance terminates.

This Policy is signed by our President and Secretary.

SECRETARY                                             PRESIDENT

Countersigned _____
Licensed Resident Agent

**GROUP LONG TERM DISABILITY INSURANCE**
**NON-PARTICIPATING**

LRS-6564 Ed. 2/83



**RELIANCE STANDARD LIFE INSURANCE COMPANY**
Home Office: Chicago, Illinois
Administrative Office: Philadelphia, Pennsylvania

**GROUP POLICY NUMBER:** LSC 099500

**POLICY EFFECTIVE DATE:** January 1, 1997

**POLICY DELIVERED IN:** Alabama

**ANNIVERSARY DATE:** January 1 in each year

Application is made to us by: RUSSELL HOSPITAL

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at _____ this _____ day of _____.

Policyholder: _____     Agent: _____

*By:* _____     _____
          (Signature)                            (Licensed Resident Agent)

_____
          (Title)

Please sign and return.

LRS-6564-1 Ed. 2/83

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
Home Office: Chicago, Illinois
Administrative Office: Philadelphia, Pennsylvania


**GROUP POLICY NUMBER:** LSC 099500          **POLICY EFFECTIVE DATE:** January 1, 1997

**POLICY DELIVERED IN:** Alabama          **ANNIVERSARY DATE:** January 1 in each year

Application is made to us by: RUSSELL HOSPITAL

---

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.


Signed at _____  this _____ day of _____.

Policyholder: _____  Agent: _____

By: _____          _____
          (Signature)                              (Licensed Resident Agent)

_____
          (Title)


LRS-6564-1 Ed. 2/83

**TABLE OF CONTENTS**

Page

SCHEDULE OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.0

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.0

GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.0
    Entire Contract
    Changes
    Time Limit On Certain Defenses
    Records Maintained
    Clerical Error
    Misstatement Of Age
    Not In Lieu Of Worker's Compensation
    Conformity With State Laws
    Certificate Of Insurance
    Termination Of This Policy

CLAIMS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.0
    Notice Of Claim
    Claim Forms
    Written Proof Of Total Disability
    Payment of Claims
    Arbitration of Claims
    Physical Examination And Autopsy
    Legal Actions

INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.0
    General Group
    Eligibility Requirements
    Waiting Period
    Effective Date Of Individual Insurance
    Termination Of Individual Insurance
    Individual Reinstatement

PREMIUMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.0

BENEFIT PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.0

EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.0

LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.0

SPECIFIC INDEMNITY BENEFIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10.0

SURVIVOR BENEFIT — LUMP SUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11.0

LRS-6564-2 Ed. 2/83

## SCHEDULE OF BENEFITS

NAME OF SUBSIDIARIES, DIVISIONS OR AFFILIATES TO BE COVERED: None

ELIGIBLE CLASSES: Each active, Full-time employee except any person employed on a temporary or seasonal basis.

WAITING PERIOD:  Present Employees: none
                 Future Employees: 60 days

INDIVIDUAL EFFECTIVE DATE:  The first of the Policy month coinciding with or next following completion of the Waiting Period, if applicable.

INDIVIDUAL REINSTATEMENT: 6 months

MINIMUM PARTICIPATION REQUIREMENTS: Percentage: 45% Number of Insureds: 10

<u>LONG TERM DISABILITY BENEFIT</u>

ELIMINATION PERIOD: 180 consecutive days of Total Disability.

MONTHLY BENEFIT:  The Monthly Benefit is an amount equal to 60% of Covered Monthly Earnings, payable in accordance with the section entitled Benefit Amount.

MINIMUM MONTHLY BENEFIT:  In no event will the Monthly Benefit payable to an Insured be less than $100.00

MAXIMUM MONTHLY BENEFIT: $6,000.00 (this is equal to a maximum Covered Monthly Earnings of $10,000.00).

**MAXIMUM DURATION OF BENEFITS:** Benefits will not accrue beyond the longer of: the Duration of Benefits; or Normal Retirement Age; specified below:

| Age at Disablement | Duration of Benefits (in years) |
|---|---|
| 61 or less | To Age 65 |
| 62 | 3-1/2 |
| 63 | 3 |
| 64 | 2-1/2 |
| 65 | 2 |
| 66 | 1-3/4 |
| 67 | 1-1/2 |
| 68 | 1-1/4 |
| 69 or more | 1 |

OR

Normal Retirement Age as defined by the 1983 Amendments to the United States Social Security Act and determined by the Insured's year of birth, as follows:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 or before | 65 years |
| 1938 | 65 years and 2 months |
| 1939 | 65 years and 4 months |
| 1940 | 65 years and 6 months |
| 1941 | 65 years and 8 months |
| 1942 | 65 years and 10 months |
| 1943 thru 1954 | 66 years |
| 1955 | 66 years and 2 months |
| 1956 | 66 years and 4 months |
| 1957 | 66 years and 6 months |
| 1958 | 66 years and 8 months |
| 1959 | 66 years and 10 months |
| 1960 and after | 67 years |

**CHANGES IN MONTHLY BENEFIT:** Increases in the Monthly Benefit are effective on the date of the change, provided the Insured is Actively at Work on the effective date of the change. If the Insured is not Actively at Work on that date, the effective date of the change will be deferred until the date the Insured returns to Active Work.

Decreases in the Monthly Benefit are effective on the date the change occurs.

**CONTRIBUTIONS:** Insured: 100%

LRS-6564-3-0690                    1.1

## DEFINITIONS

"Actively at Work" and "Active Work" mean actually performing on a Full-time basis the material duties pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of an Injury or Sickness.

"Claimant" means an Insured who makes a claim for benefits under this Policy for a loss covered by this Policy as a result of an Injury to or a Sickness of the Insured.

"Covered Monthly Earnings" means the Insured's monthly salary received from you on the day just before the date of Total Disability, prior to any deductions to a 401(k) plan. Covered Monthly Earnings do not include commissions, overtime pay, bonuses or any other special compensation not received as Covered Monthly Earnings.

If hourly paid employees are insured, the number of hours worked during a regular work week, not to exceed forty (40) hours per week, times 4.333, will be used to determine Covered Monthly Earnings. If an employee is paid on an annual basis, then the Covered Monthly Earnings will be determined by dividing the basic annual salary by 12.

"Eligible Person" means a person who meets the Eligibility Requirements of this Policy.

"Elimination Period" means a period of consecutive days of Total Disability, as shown on the Schedule of Benefits page, for which no benefit is payable. It begins on the first day of Total Disability.

Interruption Period: If, during the Elimination Period, an Insured returns to Active Work for less than 30 days, then the same or related Total Disability will be treated as continuous. Days that the Insured is Actively at Work during this interruption period will not count towards the Elimination Period. This interruption of the Elimination Period will not apply to an Insured who becomes eligible under any other group long term disability insurance plan.

"Full-time" means working for you for a minimum of 28 hours during a person's regular work week.

"Hospital" or "Institution" means a facility licensed to provide care and treatment for the condition causing the Insured's Total Disability.

"Injury" means bodily injury resulting directly from an accident, independent of all other causes. The Injury must cause Total Disability which begins while insurance coverage is in effect for the Insured.

"Insured" means a person who meets the Eligibility Requirements of this Policy and is enrolled for this insurance.

"Physician" means a duly licensed practitioner who is recognized by the law of the state in which treatment is received as qualified to treat the type of Injury or Sickness for which claim is made. The Physician may not be the Insured or a member of his/her immediate family.

"Pre-existing Condition" means any Sickness or Injury for which the Insured received medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, during the 12 months immediately prior to the Insured's effective date of insurance.

"Premium" means the amount of money needed to keep this Policy in force.

"Rehabilitative Employment" means work in any gainful occupation for which the Insured's training, education or experience will reasonably allow. The work must be supervised by a Physician or a licensed rehabilitation specialist approved by us. Rehabilitative Employment includes work performed while Partially Disabled, but does not include performing all the material duties of his/her regular occupation on a Full-time basis.

"Retirement Benefits" mean money which the Insured is entitled to receive upon early or normal retirement or disability retirement under:

    (1)   any plan of a state, county or municipal retirement system, if such pension benefits include any credit for employment with you;

    (2)   Retirement Benefits under the United States Social Security Act of 1935, as amended, or under any similar plan or act; or

(3)   an employer's retirement plan where payments are made in a lump sum or periodically and do not represent contributions made by an Insured.

Retirement Benefits do not include:
(1)   a federal government employee pension benefit;
(2)   a thrift plan;
(3)   a deferred compensation plan;
(4)   an individual retirement account (IRA);
(5)   a tax sheltered annuity (TSA);
(6)   a stock ownership plan; or
(7)   a profit sharing plan.

"Sickness" means illness or disease causing Total Disability which begins while insurance coverage is in effect for the Insured. Sickness includes pregnancy, childbirth, miscarriage or abortion, or any complications therefrom.

"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
(1)   during the Elimination Period and for the first 36 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;
   (a)   "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;
   (b)   "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and
(2)   after a Monthly Benefit has been paid for 36 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

If an Insured is employed by you and requires a license for such occupation, the loss of such license for any reason does not in and of itself constitute "Total Disability".

## GENERAL PROVISIONS

**ENTIRE CONTRACT:** The entire contract between you and us is this Policy, your Application (a copy of which is attached at issue) and any attached amendments.

**CHANGES:** No agent has authority to change or waive any part of this Policy. To be valid, any change or waiver must be in writing, signed by either our President, a Vice President, or a Secretary. The change or waiver must also be attached to this Policy.

**TIME LIMIT ON CERTAIN DEFENSES:** After this Policy has been in force for two (2) years from its Effective Date, no statement made by you shall be used to void this Policy; and no statement by any Insured on a written application for insurance shall be used to reduce or deny a claim after the Insured's insurance coverage, with respect to which claim has been made, has been in effect for two (2) years.

**RECORDS MAINTAINED:** You must maintain records of all Insureds. Such records must show the essential data of the insurance, including new persons, terminations, changes, etc. This information must be reported to us regularly. We reserve the right to examine the insurance records maintained at the place where they are kept. This review will only take place during normal business hours.

**CLERICAL ERROR:** Clerical errors in connection with this Policy or delays in keeping records for this Policy, whether by you, us, or the Plan Administrator:

    (1)   will not terminate insurance that would otherwise have been effective; and

    (2)   will not continue insurance that would otherwise have ceased or should not have been in effect.

If appropriate, a fair adjustment of premium will be made to correct a clerical error.

**MISSTATEMENT OF AGE:** If an Insured's age is misstated, the Premium will be adjusted. If the Insured's benefit is affected by the misstated age, it will also be adjusted. The benefit will be changed to the amount the Insured is entitled to at his/her correct age.

**NOT IN LIEU OF WORKER'S COMPENSATION:** This Policy is not a Worker's Compensation Policy. It does not provide Worker's Compensation benefits.

**CONFORMITY WITH STATE LAWS:** Any section of this Policy, which on its Effective Date, conflicts with the laws of the state in which this Policy is issued, is amended by this provision. This Policy is amended to meet the minimum requirements of those laws.

**CERTIFICATE OF INSURANCE:** We will send to you an individual certificate for each Insured. The certificate will outline the insurance coverage, state this Policy's provisions that affect the Insured, and explain to whom benefits are payable.

**TERMINATION OF THIS POLICY:** You may cancel this Policy at any time by giving us written notice. This Policy will be cancelled on the date we receive your notice or, if later, the date requested in your notice.

This Policy will terminate at the end of the Grace Period if Premium has not been paid by that date.

We may cancel this Policy within thirty-one (31) days of written notice prior to the date of cancellation, only:

    (1)   if the number of Insureds is less than the Minimum Participation Number shown on the Schedule of Benefits; or

    (2)   if the percentage of Eligible Persons insured is less than the Minimum Participation Percentage shown on the Schedule of Benefits.

You will still owe us any Premium that is not paid up to the date this Policy is cancelled. We will return, pro-rata, any part of the Premium paid beyond the date this Policy is cancelled.

Termination of this Policy will not affect any claim which was covered prior to termination, subject to the terms and conditions of this Policy.



## CLAIMS PROVISIONS

**NOTICE OF CLAIM:** Written notice must be given to us within thirty-one (31) days after a Total Disability covered by this Policy occurs, or as soon as reasonably possible. The notice should be sent to us at our Administrative Office or to our authorized agent. The notice should include your name, the Policy Number and the Insured's name.

**CLAIM FORMS:** When we receive the notice of claim, we will send the Claimant the claim forms to file with us. We will send them within fifteen (15) days after we receive notice. If we do not, then proof of Total Disability will be met by giving us a written statement of the type and extent of the Total Disability. The statement must be sent within ninety (90) days after the loss began.

**WRITTEN PROOF OF TOTAL DISABILITY:** For any Total Disability covered by this Policy, written proof must be sent to us within ninety (90) days after the Total Disability occurs. If written proof is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof was given as soon as was reasonably possible. In any event, proof must be given within one (1) year after the Total Disability occurs, unless the Claimant is legally incapable of doing so.

**PAYMENT OF CLAIMS:** When we receive written proof of Total Disability covered by this Policy, we will pay any benefits due. Benefits that provide for periodic payment will be paid for each period as we become liable.

We will pay benefits to the Insured, if living, or else to his/her estate.

If the Insured has died and we have not paid all benefits due, we may pay up to $1,000.00 to any relative by blood or marriage, or to the executor or administrator of the Insured's estate. The payment will only be made to persons entitled to it. An expense incurred as a result of the Insured's last illness, death or burial will entitle a person to this payment. The payments will cease when a valid claim is made for the benefit. We will not be liable for any payment we have made in good faith.

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

**ARBITRATION OF CLAIMS:** Any claim or dispute arising from or relating to our determination regarding the Insured's Total Disability may be settled by arbitration when agreed to by the Insured and us in accordance with the Rules for Health and Accident Claims of the American Arbitration Association or by any other method agreeable to the Insured and us. In the case of a claim under an Employee Retirement Income Security Act (hereinafter referred to as ERISA) Plan, the Insured's ERISA claim appeal remedies, if applicable, must be exhausted before the claim may be submitted to arbitration. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction over such awards.

Unless otherwise agreed to by the Insured and us, any such award will be binding on the Insured and us for a period of twelve (12) months after it is rendered assuming that the award is not based on fraudulent information and the Insured continues to be Totally Disabled. At the end of such twelve (12) month period, the issue of Total Disability may again be submitted to arbitration in accordance with this provision.

Any costs of said arbitration proceedings levied by the American Arbitration Association or the organization or person(s) conducting the proceedings will be paid by us.

**PHYSICAL EXAMINATION AND AUTOPSY:** We will, at our expense, have the right to have a Claimant interviewed and/or examined:
    (1)  physically;
    (2)  psychologically; and/or
    (3)  psychiatrically;

to determine the existence of any Total Disability which is the basis for a claim. This right may be used as often as it is reasonably required while a claim is pending.

We can have an autopsy made unless prohibited by law.

LRS-6564-6-0394                                            4.0

**LEGAL ACTIONS:** No legal action may be brought against us to recover on this Policy within sixty (60) days after written proof of loss has been given as required by this Policy. No action may be brought after three (3) years (Kansas, five (5) years; South Carolina, six (6) years) from the time written proof of loss is received.

## INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION ·

**GENERAL GROUP:** The general group will be your employees and employees of any subsidiaries, divisions or affiliates named on the Schedule of Benefits page.

**ELIGIBILITY REQUIREMENTS:** A person is eligible for insurance under this Policy if he/she:
    (1)  is a member of an Eligible Class, as shown on the Schedule of Benefits page; and
    (2)  has completed the Waiting Period, as shown on the Schedule of Benefits page.

**WAITING PERIOD:** A person who is continuously employed on a Full-time basis with you for the period specified on the Schedule of Benefits page has satisfied the Waiting Period. The Waiting Period for Present Employees applies to persons who are members of the Eligible Classes on this Policy's Effective Date. The Waiting Period for Future Employees applies to persons who become members of the Eligible Classes after this Policy's Effective Date.

**EFFECTIVE DATE OF INDIVIDUAL INSURANCE:** If you pay the entire Premium due for an Eligible Person, the insurance for such Eligible Person will go into effect on the Individual Effective Date, as shown on the Schedule of Benefits page.

If an Eligible Person pays a part of the Premium, he/she must apply in writing for the insurance to go into effect. He/she will become insured on the latest of:
    (1)  the Individual Effective Date as shown on the Schedule of Benefits page, if he/she applies on or before that date;
    (2)  on the date he/she applies, if he/she applies within thirty-one (31) days from the date he/she first met the Eligibility Requirements; or
    (3)  on the date we approve any required proof of health acceptable to us. We require this proof if a person applies:
        (a)  after thirty-one (31) days from the date he/she first met the Eligibility Requirements; or
        (b)  after he/she terminated this insurance but remained in an Eligible Class as shown on the Schedule of Benefits page.

The insurance for an Eligible Person will not go into effect on a date he/she is not Actively at Work because of a Sickness or Injury. The insurance will go into effect after the person is Actively at Work for one (1) full day in an Eligible Class, as shown on the Schedule of Benefits page.

**TERMINATION OF INDIVIDUAL INSURANCE:** The insurance of an Insured will terminate on the first of the following to occur:
    (1)  the first of the Policy month coinciding with or next following the date this Policy terminates;
    (2)  the first of the Policy month coinciding with or next following the date the Insured ceases to meet the Eligibility Requirements;
    (3)  the end of the period for which Premium has been paid for the Insured; or
    (4)  the first of the Policy month coinciding with or next following the date the Insured enters military service (not including Reserve or National Guard).

**INDIVIDUAL REINSTATEMENT:** The insurance of a terminated person may be reinstated if he/she returns to Active Work with you within the period of time as shown on the Schedule of Benefits page. He/she must also be a member of an Eligible Class, as shown on the Schedule of Benefits page, and have been:
    (1)  on a leave of absence approved by you; or
    (2)  on temporary lay-off.

The person will not be required to fulfill the Eligibility Requirements of this Policy again. The insurance will go into effect after he/she returns to Active Work for one (1) full day. If a person returns after having resigned or having been discharged, he/she will be required to fulfill the Eligibility Requirements of this Policy again. If a person returns after terminating insurance at his/her request or for failure to pay Premium when due, proof of health acceptable to us must be submitted before he/she may be reinstated.

## PREMIUMS

**PREMIUM PAYMENT:** All Premiums are to be paid by you to us, or to an authorized agent, on or before the due date. The Premium Due Dates are stated on this Policy's face page.

**PREMIUM RATE:** The Premium due will be the rate per $100.00 of the entire amount of Covered Monthly Earnings then in force. We will furnish to you the Premium Rate on this Policy's Effective Date and when it is changed. We have the right to change the Premium Rate:

    (1)   when the extent of coverage is changed by amendment;
    (2)   on any Premium Due Date after the first Policy Anniversary.

We will not change the Premium Rate due to (2) above more than once in any twelve (12) month period. We will tell you in writing at least 31 days before the date of a change due to (2) above.

**GRACE PERIOD:** You may pay the Premium up to 31 days after the date it is due. This Policy stays in force during this time. If the Premium is not paid during the grace period, this Policy will terminate. You will still owe us the Premium up to the date this Policy terminates.

**WAIVER OF PREMIUM:** No Premium is due us for an Insured while he/she is receiving Monthly Benefits from us. Once Monthly Benefits cease due to the end of his/her Total Disability, Premium payments must begin again if insurance is to continue.

LRS-6564-8 Ed. 2/83                                6.0

## BENEFIT PROVISIONS

**INSURING CLAUSE:** We will pay a Monthly Benefit if an Insured:
- (1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy;
- (2) is under the regular care of a Physician;
- (3) has completed the Elimination Period; and
- (4) submits satisfactory proof of Total Disability to us.

**BENEFIT AMOUNT:** To figure the benefit amount payable:
- (1) multiply an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits page;
- (2) take the lesser of the amount:
  - (a) of step (1) above; or
  - (b) the Maximum Monthly Benefit, as shown on the Schedule of Benefits page; and
- (3) subtract Other Income Benefits, as shown below, from step (2) above.

We will pay at least the Minimum Monthly Benefit, if any, as shown on the Schedule of Benefits page.

**OTHER INCOME BENEFITS:** Other Income Benefits are benefits resulting from the same Total Disability for which a Monthly Benefit is payable under this Policy. These Other Income Benefits are:
- (1) disability income benefits an Insured is eligible to receive under any group insurance plan(s);
- (2) disability income benefits an Insured is eligible to receive under any governmental retirement system, except benefits payable under a federal government employee pension benefit;
- (3) disability income benefits an Insured is eligible to receive under:
  - (a) Worker's Compensation Laws;
  - (b) occupational disease law;
  - (c) any other laws of like intent as (a) or (b) above; and
  - (d) any compulsory benefit law;
- (4) any of the following that the Insured is entitled to receive from you:
  - (a) wages, excluding the amount allowable under the Rehabilitation Provision; and
  - (b) commissions or monies, including vested renewal commissions, but, excluding commissions or monies that the Insured earned prior to Total Disability which are paid after Total Disability has begun;
- (5) that part of disability or Retirement Benefits paid for by you that an Insured is eligible to receive under a group retirement plan; and
- (6) disability or Retirement Benefits under the United States Social Security Act, the Canadian pension plans, federal or provincial plans, or any similar law for which:
  - (a) an Insured is eligible to receive because of his/her Total Disability or eligibility for Retirement Benefits; and
  - (b) an Insured's dependents are eligible to receive due to (a) above.

Disability and early Retirement Benefits will be offset only if such benefits are elected by the Insured or do not reduce the amount of his/her accrued normal Retirement Benefits then funded.

Retirement Benefits under number 6 above will not apply to disabilities which begin after age 70 for those Insureds already receiving Social Security Retirement Benefits while continuing to work beyond age 70.

Benefits above will be estimated if the benefits:
- (1) have not been applied for; or
- (3) have been denied and the denial is being appealed.

The Monthly Benefit will be reduced by the estimated amount. If benefits have been estimated, the Monthly Benefit will be adjusted when we receive proof:
- (1) of the amount awarded; and
- (2) that benefits have been denied and the denial cannot be further appealed.

If we have underpaid the Monthly Benefit for any reason, we will make a lump sum payment. If we have overpaid the Monthly Benefit for any reason, the overpayment must be repaid to us. At our option, we may reduce the Monthly Benefit

LRS-6564-9-1291                                7.0

or ask for a lump sum refund. If we reduce the Monthly Benefit, the Minimum Monthly Benefit, if any, as shown on the Schedule of Benefits page, would not apply.

For each day of a period of Total Disability less than a full month, the amount payable will be 1/30th of the Monthly Benefit.

**COST OF LIVING FREEZE:** After the initial deduction for any Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost of living increases payable under these Other Income Benefits.

**LUMP SUM PAYMENTS:** If Other Income Benefits are paid in a lump sum, the sum will be broken down to a monthly amount for the period of time the sum is payable. If no period of time is given, the sum will be broken down to a monthly amount for the period of time we expect the Insured to be disabled based on actuarial tables of disabled lives.

**TERMINATION OF MONTHLY BENEFIT:** The Monthly Benefit will stop on the earliest of:
   (1)   the date the Insured ceases to be Totally Disabled;
   (2)   the date the Insured dies;
   (3)   the Maximum Duration of Benefits, as shown on the Schedule of Benefits page, has ended; or
   (4)   the date the Insured fails to furnish the required proof of Total Disability.

**REHABILITATION PROVISION:** If, during a period of Total Disability for which a Monthly Benefit is payable, an Insured accepts Rehabilitative Employment, then we will continue to pay the Monthly Benefit less 50% of any of the money received from this Rehabilitative Employment. If an Insured is entitled to Substance Abuse Benefits, Rehabilitative Employment Benefits will not be available for Total Disability as a result of such Substance Abuse.

**RECURRENT DISABILITY:** If, after a period of Total Disability for which benefits are payable, an Insured returns to Active Work for at least six (6) consecutive months, any recurrent Total Disability for the same or related cause will be part of a new period of Total Disability. A new Elimination Period must be completed before any further Monthly Benefits are payable.

If an Insured returns to Active Work for less than six (6) months, a recurrent Total Disability for a same or related cause will be part of the same Total Disability. A new Elimination Period is not required. Our liability for the entire period will be subject to the terms of this Policy for the original period of Total Disability.

This Recurrent Disability section will not apply to an Insured who becomes eligible for insurance coverage under any other group long term disability insurance plan.

## EXCLUSIONS

We will not pay a Monthly Benefit for any Total Disability caused by:

    (1)   an act of war, declared or undeclared;

    (2)   an intentionally self-inflicted Injury;

    (3)   the Insured committing a felony; or

    (4)   an Injury or Sickness that occurs while the Insured is confined in any penal or correctional institution.

LRS-6564-10-1189                                   8.0

## LIMITATIONS

**MENTAL OR NERVOUS DISORDERS**: Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months unless the Insured is in a Hospital or Institution at the end of the twenty-four (24) month period. The Monthly Benefit will be payable while so confined, but not beyond the Maximum Duration of Benefits.

If an Insured was confined in a Hospital or Institution and:
  (1)   Total Disability continues beyond discharge;
  (2)   the confinement was during a period of Total Disability; and
  (3)   the period of confinement was for at least fourteen (14) consecutive days;
then upon discharge, Monthly Benefits will be payable for the greater of:
  (1)   the unused portion of the twenty-four (24) month period; or
  (2)   ninety (90) days;
but in no event beyond the Maximum Duration of Benefits, as shown on the Schedule of Benefits page.

Mental or Nervous Disorders are defined to include disorders which are diagnosed to include a condition such as:
  (1)   bipolar disorder (manic depressive syndrome);
  (2)   schizophrenia;
  (3)   delusional (paranoid) disorders;
  (4)   psychotic disorders;
  (5)   depressive disorders;
  (6)   anxiety disorders;
  (7)   somatoform disorders (psychosomatic illness);
  (8)   eating disorders; or
  (9)   mental illness.

**SUBSTANCE ABUSE**: Monthly Benefits for Total Disability due to alcoholism or drug addiction will be payable while the Insured is a participant in a Substance Abuse Rehabilitation Program. The Monthly Benefit will not be payable beyond twenty-four (24) months.

If, during a period of Total Disability due to Substance Abuse for which a Monthly Benefit is payable, an Insured is able to perform Rehabilitative Employment, the Monthly Benefit, less 50% of any of the money received from this Rehabilitative Employment will be paid until: (1) the Insured is performing all the material duties of his/her regular occupation on a full-time basis; or (2) the end of twenty-four (24) consecutive months from the date that the Elimination Period is satisfied, whichever is earlier. All terms and conditions of the Rehabilitation Benefit will apply to Rehabilitative Employment due to Substance Abuse.

"Substance Abuse" means the pattern of pathological use of a Substance which is characterized by:
  (1)   impairments in social and/or occupational functioning;
  (2)   debilitating physical condition;
  (3)   inability to abstain from or reduce consumption of the Substance; or
  (4)   the need for daily Substance use for adequate functioning.

"Substance" means alcohol and those drugs included on the Department of Health, Retardation and Hospitals' Substance Abuse list of addictive drugs, except tobacco and caffeine are excluded.

A Substance Abuse Rehabilitative Program means a program supervised by a Physician or a licensed rehabilitation specialist approved by us.

**PRE-EXISTING CONDITIONS**: Benefits will not be paid for a Total Disability:
  (1)   caused by;
  (2)   contributed to by; or
  (3)   resulting from;
a Pre-existing Condition unless the Insured has been Actively at Work for one (1) full day following the end of:
  (1)   6 consecutive months during which the Insured has not:
      (a)   had consultation with a Physician; or

(b)   received medical care, treatment or services, including diagnostic procedures or took prescribed drugs or medicines, for such condition; or

(2)   24 consecutive months from the date he/she became an Insured.



## SPECIFIC INDEMNITY BENEFIT

If the Insured suffers any one of the Losses listed below from an accident resulting in an Injury, we will pay a guaranteed minimum number of Monthly Benefit payments, as shown below. However:

    (1)    the Loss must occur within one hundred and eighty (180) days; and

    (2)    the Insured must live past the Elimination Period.

| For Loss of: | Number of Monthly Benefit Payments: |
|---|---|
| Both Hands | 46 months |
| Both Feet | 46 months |
| Entire Sight in Both Eyes | 46 months |
| Hearing in Both Ears | 46 months |
| Speech | 46 months |
| One Hand and One Foot | 46 months |
| One Hand and Entire Sight in One Eye | 46 months |
| One Foot and Entire Sight in One Eye | 46 months |
| One Arm | 35 months |
| One Leg | 35 months |
| One Hand | 23 months |
| One Foot | 23 months |
| Entire Sight in One Eye | 15 months |
| Hearing in One Ear | 15 months |

"Loss(es)" with respect to:

    (1)    hand or foot, means the complete severance through or above the wrist or ankle joint;

    (2)    arm or leg, means the complete severance through or above the elbow or knee joint; or

    (3)    sight, speech or hearing, means total and irrecoverable Loss thereof.

If more than one (1) Loss results from any one accident, payment will be made for the Loss for which the greatest number of Monthly Benefit payments is provided.

The amount payable is the Monthly Benefit, as shown on the Schedule of Benefits page, with no reduction from Other Income Benefits. The number of Monthly Benefit payments will not cease if the Insured returns to Active Work.

If death occurs after we begin paying Monthly Benefits, but before the Specific Indemnity Benefit has been paid according to the above schedule, the balance remaining at time of death will be paid to the Insured's estate, unless a beneficiary is on record with us under this Policy.

Benefits may be payable longer than shown above as long as the Insured is still Totally Disabled, subject to the Maximum Duration of Benefits, as shown on the Schedule of Benefits page.



## SURVIVOR BENEFIT -- LUMP SUM

We will pay a benefit to an Insured's Survivor when we receive proof that the Insured died while:

    (1)   he/she was receiving Monthly Benefits from us; and
    (2)   he/she was Totally Disabled for at least one hundred and eighty (180) consecutive days.

The benefit will be an amount equal to 3 times the Insured's last Monthly Benefit. The last Monthly Benefit is the benefit the Insured was eligible to receive right before his/her death. It is not reduced by wages earned while in Rehabilitative Employment.

"Survivor" means an Insured's spouse. If the spouse dies before the Insured or if the Insured was legally separated, then the Insured's natural, legally adopted or step-children, who are under age twenty-five (25) will be the Survivor(s). If there are no eligible Survivors, payment will be made to the Insured's estate, unless a beneficiary is on record with us under this Policy.

A benefit payable to a minor may be paid to the minor's legally appointed guardian. If there is no guardian, at our option, we may pay the benefit to the adult that has, in our opinion, assumed the custody and main support of the minor. We will not be liable for any payment we have made in good faith.

LRS-6564-14 Ed. 2/83                          11.0



**Quicklinks**

Back to Company Detail page | New Search
Form 5500 | Schedule A | Other Documents | SHOW ALL

| | | |
|---|---|---|
| **Form 5500**<br>Department of the Treasury<br>Internal Revenue Service<br><br>Department of Labor<br>Pension and Welfare Benefits<br>Administration<br><br>Pension Benefit Guaranty Corporation | **Annual Return/Report of Employee Benefit Plan**<br>This form is required to be filed under sections 104 and 4065 of the Employee<br>Retirement Income Security Act of 1974 (ERISA) and sections 6039D, 6047(e),<br>6057(b), and 6058(a) of the Internal Revenue Code (the Code).<br>Complete all entries in accordance with<br>the instructions to the Form 5500. | Official Use Only<br>OMB Nos. 1210 - 0110<br>1210 - 0089<br><br>**2005**<br><br>This Form is Open to<br>Public Inspection |

**Part I     Annual Report Identification Information**

For the calendar plan year 2005 or fiscal year beginning January 01, 2005, and ending December 31, 2005

**A** This return/report is
for:

(1) ☐ a multiemployer plan;
(2) ☒ a single-employer plan (other than a multiple-employer plan);
(3) ☐ a multiple-employer plan;
(4) ☐ a DFE (specify)

**B** This return/report is:

(1) ☐ the first return/report filed for the plan;
(2) ☐ the amended return/report;
(3) ☐ the final return/report filed for the plan;
(4) ☐ a short plan year return/report (less than 12 months).

**C** If the plan is a collectively-bargained plan, check here ☐

**D** If you filed for an extension of time to file, check the box and attach a copy of the extension application ☐

**Part II     Basic Plan Information -- enter all requested information.**

**1a** Name of plan

RUSSELL MEDICAL CENTER LONG TERM DISABILITY PLAN

**1b** Three-digit plan number (PN)     502

**1c** Effective date of plan (mo., day, yr.)
January 01, 1997

**2a** Plan sponsor's name and address (employer, if for a single-employer plan)
(Address should include room or suite no.)

RUSSELL MEDICAL CENTER
PO BOX 939
ALEXANDER CITY, AL 35011-0939

**2b** Employer Identification Number (EIN)
63-0385130

**2c** Sponsor's telephone number
256-329-7100

**2d** Business code (see instructions)
622000

Caution: A penalty for the late or incomplete filing of this return/report will be assessed unless reasonable cause is established.

Under penalties of perjury and other penalties set forth in the instructions, I declare that I have examined this return/report, including accompanying schedules, statements and attachments, and to the best of my knowledge and belief, it is true, correct, and complete.

| | | |
|---|---|---|
| | 07/31/2006 | FRANK W HARRIS |
| Signature of plan administrator | Date | Typed or printed name of individual signing as plan administrator |
| | 07/31/2006 | FRANK W HARRIS |
| Signature of employer/plan sponsor/DFE | Date | Typed or printed name of individual signing as employer, plan sponsor<br>or DFE as applicable |

For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.     v2.3          Form **5500** (2005)

**3a** Plan administrator's name and address (if same as plan sponsor, enter "Same")

SAME

**3b** Administrator's EIN

**3c** Administrator's telephone number

**4** If the name and/or EIN of the plan sponsor has changed since the last return/report filed for this plan, enter the name, EIN and the plan number from the last return/report below:

**a** Sponsor's name

**b** EIN

**c** PN

**5** Preparer information (optional)     **a** Name (including firm name, if applicable) and address

**b** EIN

c Telephone no.

6 Total number of participants at the beginning of the plan year      **6**      131

7 Number of participants as of the end of the plan year (welfare plans complete only lines **7a, 7b, 7c,** and **7d**)

a Active participants      **a**      128

b Retired or separated participants receiving benefits      **b**

c Other retired or separated participants entitled to future benefits      **c**

d Subtotal. Add lines **7a, 7b,** and **7c**      **d**      128

e Deceased participants whose beneficiaries are receiving or are entitled to receive benefits      **e**

f Total. Add lines **7d** and **7e**      **f**      128

g Number of participants with account balances as of the end of the plan year (only defined contribution plans complete this item)      **g**

h Number of participants that terminated employment during the plan year with accrued benefits that were less than 100% vested      **h**

i If any participant(s) separated from service with a deferred vested benefit, enter the number of separated participants required to be reported on a Schedule SSA (Form 5500)      **i**

8 Benefits provided under the plan (complete 8a through 8c, as applicable)

a ☐ Pension benefits (check this box if the plan provides pension benefits and enter the applicable pension feature codes from the List of Plan Characteristics Codes (printed in the instructions)):

b ☒ Welfare benefits (check this box if the plan provides welfare benefits and enter the applicable welfare feature codes from the List of Plan Characteristics Codes (printed in the instructions)):

9a Plan funding arrangement (check all that apply)      9b Plan benefit arrangement (check all that apply)

(1) ☒ Insurance      (1) ☒ Insurance

(2) ☐ Section 412(i) insurance contracts      (2) ☐ Section 412(i) insurance contracts

(3) ☐ Trust      (3) ☐ Trust

(4) ☐ General assets of the sponsor      (4) ☐ General assets of the sponsor

10 Schedules attached (Check all applicable boxes and, where indicated, enter the number attached. See instructions.)

a Pension Benefit Schedules      b Financial Schedules

(1) ☐ R (Retirement Plan Information)      (1) ☐ H (Financial Information)

(2) ☐ T (Qualified Pension Plan Coverage Information)      (2) ☐ I (Financial Information – Small Plan)

     If a Schedule T is not attached because the plan is relying on coverage testing information for a prior year, enter the year      (3) ☒ 1 A (Insurance Information)

     (4) ☐ C (Service Provider Information)

     (5) ☐ D (DFE/Participating Plan Information)

(3) ☐ B (Actuarial Information)      (6) ☐ G (Financial Transaction Schedules)

(4) ☐ E (ESOP Annual Information)      (7) ☐ P (Trust Fiduciary Information)

(5) ☐ SSA (Separated Vested participant Information)

---

| | | |
|---|---|---|
| **SCHEDULE A**<br>**Form 5500**<br>Department of the Treasury<br>Internal Revenue Service<br>Department of Labor<br>Pension and Welfare Benefits Administration<br>Pension Benefit Guaranty Corporation | **Insurance Information**<br>This schedule is required to be filed under section 104 of the Employee Retirement Income Security Act of 1974.<br>**File as an attachment to Form 5500.**<br>Insurance companies are required to provide this information pursuant to ERISA section 103(a)(2). | Official Use Only<br>OMB No. 1210 - 0110<br>**2005**<br>This Form is Open to Public Inspection |

For the calendar plan year 2005 or fiscal plan year beginning January 01, 2005, and ending December 31, 2005

A Name of plan      B Three-digit plan number      502

RUSSELL MEDICAL CENTER LONG TERM DISABILITY PLAN

C Plan sponsor's name as shown on line 2a of Form 5500      D Employer Identification Number      63-0385130

RUSSELL MEDICAL CENTER

---

**Part I**    **Information Concerning Insurance Contract Coverage, Fees, and Commissions.**
Provide information for each contract on a separate Schedule A. Individual contracts grouped as a unit in Parts II and III can be reported on a single Schedule A.

1 Coverage

(a) Name of insurance carrier

RELIANCE STANDARD LIFE INSURANCE CO

| (b) EIN | (c) NAIC code | (d) Contract or identification number | (e) Aproximate number of persons covered at end of policy or contract year | Policy or contract year | |
|---|---|---|---|---|---|
| | | | | (f) From | (g) To |

36-0883760   69381   LTD099500          128          01/01/2005      12/31/2005

2 Insurance fees and commissions paid to agents, brokers, and other persons:

**Totals**

Amount of commissions paid                         Fees paid / Amount

For Paperwork Reduction Act Notice and OMB Control Numbers, see the Instructions for Form 5500.   v2.3   Schedule A (Form 5500) 2005

(a) Name and address of the agents, brokers or other
persons to whom commissions or fees were paid

| (b) Amount of commissions paid | (c) Amount | Fees paid | (d) Purpose | (e) Organization code |
|---|---|---|---|---|

**Part II   Investment and Annuity Contract Information**

Where individual contracts are provided, the entire group of such individual contracts with each carrier may be treated as a unit for purposes of this report.

3  Current value of plan's interest under this contract in the general account at year end

4  Current value of plan's interest under this contract in separate accounts at year end

5  Contracts With Allocated Funds
  **a**  State the basis of premium rates
  **b**  Premiums paid to carrier
  **c**  Premiums due but unpaid at the end of the year
  **d**  If the carrier, service, or other organization incurred any specific costs in connection with the acquision or retention
of the contract or policy, enter amount
    Specify nature of costs
  **e**  Type of contract (1) ☒ individual policies   (2) ☐ group deferred annuity   (3) ☐ other (specify)
  **f**  If contract purchased, in whole or in part, to distribute benefits from a terminating plan check here ☐

6  Contracts With Unallocated Funds (Do not include portions of these contracts maintained in separate accounts)
  **a**  Type of contract (1) ☐ deposit administration   (2) ☐ immediate participation guarantee
    (3) ☐ guaranteed investment   (4) ☐ other (specify below)

  **b**  Balance at the end of the previous year
  **c**  Additions:
    (1) Contributions deposited during the year
    (2) Dividends and credits
    (3) Interest credited during the year
    (4) Transferred from separate account
    (5) Other (specify below)

    (6) Total additions
  **d**  Total of balance and additions (add b and c (6))
  **e**  Deductions:
    (1) Disbursed from fund to pay benefits or purchase annuities during year
    (2) Administration charge made by carrier
    (3) Transferred to separate account
    (4) Other (specify below)

    (5) Total deductions
  **f**  Balance at the end of the current year (subtract e(5) from d)

**Part III   Welfare Benefit Contract Information**

If more than one contract covers the same group of employees of the same employer(s) or members of the same employee organization(s), the information may be combined for reporting purposes if such contracts are experience-rated as a unit. Where individual contracts are provided, the entire group of such individual contracts with each carrier may be treated as a unit for purposes of this report.

7  Benefit and contract type (check all applicable boxes)
  **a** ☐ Health (other than dental or vision)   **b** ☐ Dental   **c** ☐ Vision   **d** ☐ Life insurance
  **e** ☐ Temporary disability (accident and sickness)   **f** ☒ Long-term disability   **g** ☐ Supplemental unemployment   **h** ☐ Prescription drug
  **i** ☐ Stop loss (large deductible)   **j** ☐ HMO contract   **k** ☐ PPO contract   **l** ☐ Indemnity contract
  **m** ☐ Other (specify)

8  Experience related contracts

    **a**  Premiums:
       (1) Amount received
       (2) Increase (decrease) in amount due but unpaid
       (3) Increase (decrease) in unearned premium reserve
       (4) Earned ((1)+(2)-(3))
    **b**  Benefit charges:
       (1) Claims paid
       (2) Increase (decrease) in claim reserves
       (3) Incurred claims (add (1) and (2))
       (4) Claims charged
    **c**  Remainder of premium:
       (1) Retention charges (on an accrual basis) --
         (A) Commissions.
         (B) Administrative service or other fees
         (C) Other specific acquisition costs
         (D) Other expenses
         (E) Taxes
         (F) Charges for risks or other contingencies
         (G) Other retention charges
         (H) Total Retention
       (2) Dividends or retroactive rate refunds. (These amounts were ☐ paid in cash, or ☐ credited.)
    **d**  Status of policyholder reserves at end of year: (1) Amount held to provide benefits after retirement
       (2) Claim reserves
       (3) Other reserves
    **e**  Dividends or retroactive rate refunds due. (Do not include amount entered in c(2).)
  **9**  Nonexperience-rated contracts
    **a**  Total premiums or subscription charges paid to carrier                     $36,774
    **b**  If the carrier, service, or other organization incurred any specific costs in connection with the acquisition
or retention of the contract or policy, other than reported in Part I, item 2 above, report amount
       Specify nature of costs below:

**Back to Top**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
(EASTERN DIVISION)

CAROL DAUGHERTY            :     CIVIL ACTION
                               :
           Plaintiff,    :
                               :
v.                           :     NO.
                               :
                               :
RELIANCE STANDARD LIFE   :
INSURANCE COMPANY       :
           Defendant.  :

AFFIDAVIT OF RICHARD WALSH

Richard Walsh, being duly sworn according to law, depose and state as follows:

1.     I am over 18 years of age.

2.     I employed by Reliance Standard Life Insurance Company ("Reliance Standard") as Director, Quality Review.

3.     I am familiar with the long term disability coverage that was issued to Russell Medical Center and the claim for benefits of plaintiff.

4.     Beginning in 1997, Reliance Standard issued to Russell Medical Center a Group Long Term Disability Policy.

5.     It is Reliance Standard's understanding that Russell Medical Center did not offer to its employees coverage under any other long term disability policy while the Reliance Standard Policy has been in effect.

2030653-1

6.     Russell Medical Center was involved in selecting the terms contained in the Policy, including but not limited to the eligibility requirements, the waiting period for new employees the Elimination Period and the definition of "Total Disability."

7.     The program is self-administered by Russell Medical Center. At the time the coverage went into effect, Russell Medical Center was sent an administrative kit which included enrollment documents, claim forms and instructions.

8.     Russell Medical Center determines which employees are eligible for coverage and provides a census of names to Reliance Standard from time-to-time.

9.     Russell Medical Center provides claim forms to employees, including the claim forms submitted by plaintiff.

10.     Russell Medical Center completed information on the claim forms of plaintiff and it was Russell Medical Center that submitted the claim to Reliance Standard.

Richard Walsh

Sworn to and Subscribed
before me this _19th_ day
of _MARCH_ , 2007.

NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Denise C. Burwell, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Feb. 25, 2009
Member, Pennsylvania Association of Notaries

2030653-1