## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## (EASTERN DIVISION)

| | | |
|---|---|---|
| CAROL DAUGHERTY, | : | CIVIL ACTION NO.: |
| | : | |
| Plaintiff, | : | 3:07-CV-00226-WKW-TFM |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RELIANCE STANDARD LIFE | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Reliance

Standard Life Insurance Company (Reliance Standard), by and through its

undersigned counsel, hereby moves for summary judgment in its favor and

against plaintiff on each claim in plaintiff's Complaint.  In moving for

summary judgment, Reliance Standard relies on its Brief in Support

(attached as Exhibit A) and the Administrative Record (attached as Exhibit

B).

WHEREFORE, Defendant Reliance Standard Life Insurance

Company respectfully requests that the Court enter an Order granting

summary judgment in its favor and against plaintiff on each claim in

plaintiff's Complaint.

959220.1

*/s/ Christopher L. Yeilding*

_____
One of the Attorneys for Defendant,
Reliance Standard Life Insurance
Company

**OF COUNSEL:**

Steven F. Casey
Christopher L. Yeilding
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Angela J. Hill
139 S. Broadnax Street
Dadeville, AL 36853

/s/ *Christopher L. Yeilding*

_____

Of Counsel

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
(EASTERN DIVISION)

| | | |
|---|---|---|
| CAROL DAUGHERTY, | : | CIVIL ACTION NO.: |
| | : | |
| Plaintiff, | : | 3:07-CV-00226-WKW-TFM |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RELIANCE STANDARD LIFE | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

BRIEF IN SUPPORT OF THE
MOTION FOR SUMMARY JUDGMENT OF DEFENDANT
RELIANCE STANDARD LIFE INSURANCE COMPANY

## I.    INTRODUCTION

This lawsuit involves a claim for long term disability ("LTD")

benefits under an employee welfare benefit plan sponsored by plaintiff's

former employer and insured by Reliance Standard Life Insurance Company

("Reliance Standard"). Reliance Standard is also delegated the authority to

make decisions on eligibility for benefits. The parties are in agreement that

the LTD Plan and the claims in this lawsuit are governed by the Employee

Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et

seq.*

Under the terms of the Plan at issue, to qualify for benefits, plaintiff

had to be Totally Disabled for 180 consecutive days before any benefits were payable. She failed to come close to sustaining this burden, and her claim was denied. In sum, plaintiff claims that she is Totally Disabled due to a number of complaints, but her attorney argued on administrative appeal that the claim is primarily based on fibromyalgia. Counsel for plaintiff also asked Reliance Standard to focus on the records from her treating neurologist, Dr. Hamo. However, plaintiff was only seen by Dr. Hamo twice during the entire six month Elimination Period, during which time she had to be *continuously* Totally Disabled in order to be entitled to LTD benefits. Additionally, plaintiff missed four appointments with another treating doctor. Plaintiff apparently recognized that this was a problem for her disability claim as she asked that doctor to backdate her medical leave to an earlier visit, which the doctor correctly refused to do.

Reliance Standard's decision in this case cannot be considered "wrong." As noted above, the denial of benefits is supported by some of plaintiff's own doctors, a lack of treatment during the relevant time as well as an independent medical review. Based on the substantial evidence described below, the denial of plaintiff's claim should be upheld, and Reliance Standard is entitled to judgment in its favor.

2

## II.    **FACTUAL BACKGROUND**

### A.    Relevant Policy Provisions

Under the terms of the Policy, Reliance Standard agreed to pay "a Monthly Benefit if an Insured:  (1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy; (2) is under the regular care of a physician; (3) has completed the Elimination Period; and (4) submits satisfactory proof of Total Disability to us."  (AR 90).  The terms "Totally Disabled" and "Total Disability" are defined as:

> (1)    during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;
>
>     (a)    "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis.  An insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;
>
>     (b)    "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability.

(AR 84).  The Elimination Period referred to above is defined as 180 consecutive days of Total Disability.  (AR 81, 83, 100).  Because plaintiff claims that she became disabled on April 29, 2005, to be eligible for

3

benefits, plaintiff had to prove that she was continuously Totally Disabled from April 30, 2005 through October 27, 2005.

B.    Plaintiff's Claim for Benefits

Plaintiff Carol J. Daugherty was a Buyer for Russell Medical Center from April 23, 1984, until she stopped working on April 29, 2005 at age 53. (AR 100). The occupation of Buyer is considered "light" duty. (AR 112-114). Plaintiff did not submit her claim for LTD benefits until August 16, 2005. In it she claimed that she was unable to work due to multiple complaints, including "neverending" pain throughout her body, dizziness, difficulty with memory, fatigue, and constant pain and numbness in her hands and wrists. (AR 104-105). In support of her claim, plaintiff submitted records from her treating physicians, Drs. Hamo, Howorth, and Stewart. While the number of records is not proof one way or the other of a disability, the paucity of records in this case is noteworthy.

Dr. Hamo

Among Dr. Hamo's earliest treatment notes is one dated October 26, 2004, in which plaintiff complained of neck pain, headache, low back pain, and fatigue. (AR 193). Dr. Hamo remarked that an MRI of plaintiff's lumbar spine "revealed normal for age with mild degenerative changes present" and that an MRI of plaintiff's cervical spine "revealed normal

4

study." (AR 193). Dr. Hamo's records from February 8, 2005 again document that although plaintiff had been "complaining of low back pain, left hip and left knee pain since her fall," her x-rays were negative and that further evaluation of lumbosacral spine x-rays revealed "minimal discogenic degenerative changes at L1-L2. No other significant abnormality seen." (AR 190).

On April 18, 2005, Dr. Hamo stated that plaintiff was "to work up until 4/29/05," the date she claims her disability began. (AR 157). This makes no sense. Why was plaintiff capable of working for two more weeks up until April 29, 2005, but not thereafter? Dr. Hamo provides no explanation. There are other significant omissions by Dr. Hamo. The doctor claims in his records and his report to Reliance Standard that plaintiff is disabled, at least in part, due to fibromyalgia. (AR 238). On appeal, Ms Daugherty told Reliance Standard that her "primary disability is fibromyalgia." (AR 49). Yet there is no mention in Dr. Hamo's records of a tender point examination. Nowhere does Dr. Hamo state that plaintiff has 11 of 18 tender points, one of the criteria for a diagnosis of fibromyalgia.[1]

Plaintiff did not return to Dr. Hamo until June 2, 2005, more than one

---

[1] Plaintiff also argued that fibromyalgia is best treated and diagnosed by a neurologist like Dr. Hamo. On the contrary, this condition is mostly treated by a rheumatologist.

month after she stopped working. (AR 187). During this visit, she complained of memory problems. However, the doctor's neurological examination was normal, and the doctor did not believe that it was even necessary to perform any cognitive testing. Plaintiff returned to Dr. Hamo on August 9, 2005. (AR 186). This is the only other treatment note by Dr. Hamo during the Elimination Period. Once again, his examination was normal. Once again, Dr. Hamo did not find it necessary to order further testing despite complaints by plaintiff. Of note, Dr. Hamo did state that "Klonopin has helped much better" than her prior medication.

### Dr. Howorth

Plaintiff also submitted treatment notes from Graham L. Howorth, Jr., M.D., an Orthopedist. (AR 230-233). Medical records submitted by Dr. Howorth show that plaintiff began treating with him on approximately March 15, 2005, upon referral from Dr. Hamo. (AR 233). On March 15, 2005, Dr. Howorth noted that plaintiff's MRI of the lumbosacral spine was "normal-for-age degenerative changes" and subsequent examination notes from April 7, 2005 also revealed that "x-ray of her left knee is unremarkable for age." (AR 232).

Plaintiff's next treatment notes with Dr. Howorth are dated July 6, 2005, at which time the doctor noted that plaintiff "has missed at least 4

6

appointments." (AR 230). Indeed, medical records show that plaintiff did not receive treatment from any of her physicians between the dates of April 29, 2005 through June 2, 2005. (AR84, 90). Dr. Howorth's July 6, 2005 notes reveal that plaintiff "requested a walker" and that plaintiff "states that PT put her on crutches and that they wanted records so they could see what to do. This is incredibly confusing as PT called us. We told them she had normal weightbearing status and that she did not need a walker." (AR 230).

Ms. Daugherty did much more than just request a walker. When plaintiff saw Dr. Howorth on July 6, 2005, she asked him to backdate her off work activities. (AR 230). The doctor's notes show, "[s]he asked that we backdate off work activities until the last time that we had seen her, as she has missed 4 appointments. This is the standard that we do not do this, and if she has been seeing other physicians, then I feel that this would be more appropriate for them to compete this information for her." (AR 230). During that visit, plaintiff informed Dr. Howorth that "Dr. Stewart had been keeping her off work." (AR231). Yet, a review of Dr. Stewart's records shows that he *never* took plaintiff off work and – in fact – only treated plaintiff on one occasion, as a new patient, on June 2, 2005. (AR 171-173).

Dr. Stewart

As noted above, plaintiff was seen on June 2, 2005, by Douglas

7

Stewart, D.P.M. (AR 171-172). In this record, Dr. Stewart noted that upon examination plaintiff's "pedal pulses are palpable bilateral, neuro is intact, Tinel sign is negative." (AR 171-172). Dr. Stewart went on to say that although plaintiff complained of pain upon certain examinations, "there is no palpable mass, no erythema, no edema, no crepitation of the joint. There is no evidence of trauma to her feet. Bilateral lateral x-ray views reveal no stress fracture, no bone cyst or other osseous pathology identified." (AR 171). In sum, despite plaintiff's various complaints of pain, Dr. Stewart found no medical evidence to document any cause for her complaints. (AR 171). In fact, Dr. Stewart's recommended treatment for plaintiff included merely stretching exercises and instructed plaintiff to use shoe inserts. (AR 171).

Contrary to plaintiff's representation to Dr. Howorth that "Dr. Stewart had been keeping her off work," there is absolutely nothing in Dr. Stewart's treatment notes indicating that plaintiff cannot or should not work due to any physical condition. (AR 171-173). Dr. Stewart only saw plaintiff once, on June 2, 2005, months after she stopped working. (AR 171, 100).

E.    Reliance Standard's Claim Decision

Reliance Standard concluded that plaintiff's medical records did not support her LTD claim. (AR 3-6, 47, 51, 55-56). As previously stated, in

8

order to be eligible to receive a Monthly Benefit, plaintiff had to demonstrate that she was Totally Disabled from performing the material duties of her regular occupation during the entire 180 day Elimination Period. (AR 84). In its November 1, 2005 denial letter, Reliance Standard specifically explained that the medical information did not support her claim that she was Totally Disabled. (AR 3-6). Also in that denial letter, Reliance Standard informed plaintiff of her right to one appeal and, further, of her rights under ERISA. (AR 5-6).

After receiving the decision, plaintiff requested a review of Reliance Standard's denial of her claim. (AR 48-50, 46). In particular, plaintiff asserted that the records of Dr. Hamo "should have been given much more consideration than those of Dr. Graham Howorth, an Orthopedic Surgeon or Dr. Stewart, a Podiatrist." (AR 49). In her appeal plaintiff asserted that Reliance Standard's determination that Dr. Hamo's records contained "minimal findings or normal results" was incorrect and that Reliance Standard should have just accepted Dr. Hamo's statement that plaintiff is "unable to work. (AR 49).

As part of the claim's review process, Reliance Standard forwarded plaintiff's records for an independent medical review. (AR 37-42, 143, 153). This independent review was performed by John E. Robinton, M.D.,

9

Board Certified in Neurology and Neurophysiology. Dr. Robinton concluded that: "I find no evidence of a disabling condition within my specialty which would keep this patient out of work." (AR 137-139, 147-150). In his May 31, 2006 report, Dr. Robinton specifically addressed Dr. Hamo's reports and concluded that "the neurologic examination as provided by Dr. Hamo described no consistent objective evidence of neurology dysfunction." (AR 138). In addition, Dr. Robinton concluded that despite plaintiff's numerous complaints of pain and memory loss, "[n]o consistent motor or sensory abnormalities are noted." (AR 138). Dr. Robinton also noted that plaintiff had only been diagnosed with carpal tunnel syndrome, for which she was treated with a splint in October 2004, and that there was no other documentation to support her other complaints. (AR 138).

In his report, the doctor individually addressed each of plaintiff's "disabling" complaints. He concluded:

> Despite the reported memory problems, there is no documentation of memory difficulties. Despite the reported neuropathy, nerve conduction studies revealed no evidence of a generalized neuropathic process. Despite the reported complaints of lumbar radiculopathy, MRI of the lumbar spine fails to reveal evidence of a significant lesion which might be resulting in radiculopathy."

(AR 138). In fact, Dr. Robinton sharply disagreed with plaintiff's assertion

10

that the reports from Dr. Hamo, a neurologist, should have been given greater weight than others. "I am not certain that this patient needs a neurologic follow up. Her complaints appear to be primarily musculoskeletal. Follow up with a rheumatologist is most appropriate." (AR 138). Dr. Robinton also questioned plaintiff's need for many of the prescribed medications by stating "[d]ocumentation of abnormalities in the chart does not indicate that there is a need for several of the medications being prescribed." (AR 139). After reviewing this report and all of the medical records, Reliance Standard upheld its denial of plaintiff's claim on August 3, 2006. (AR 28-36, 142).

## III.  LEGAL STANDARD

### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment should be entered when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the movant is entitled to judgment in its favor as a matter of law. Factual disputes that are irrelevant or unnecessary are not material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment must show that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Once

11

this burden is met, the burden then shifts to the non-movant to show that a genuine issue of material fact does exist. *Anderson,* 477 U.S. at 257. When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

B.     ERISA Standard of Review

When evaluating a decision to deny benefits, the Court must first determine the appropriate standard of review. *See Hunt v. Hawthorne Assoc., Inc.,* 119 F.3d 888, 912 (11th Cir. 1997). In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Court held that a denial of benefits should be reviewed under the *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. The Eleventh Circuit has adopted three standards of review for plan decisions: (1) the *de novo* standard if the plan fiduciary is not afforded discretion, (2) the arbitrary and capricious standard when the plan grants discretion, and (3) the heightened arbitrary and capricious standard where there is a conflict of interest. *See Paramore v. Delta Airlines, Inc.,* 129 F.3d 1446 (11th Cir. 1997); *Buckley v. Metropolitan Life*, 115 F.3d 936, 939 (11th Cir. 1997).

No matter what standard of review applies, the first step in the court's

12

inquiry is to decide if the plan's decision was "wrong." *HCA Health*

*Services of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993

(11th Cir. 2001); *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132,

1137-38 (11th Cir. 2004). "Wrong" is the term used by the Eleventh Circuit

to describe the conclusion reached by a court when, after reviewing the

plan's decision, the court disagrees with it. *Yochum v. Barnett Banks, Inc.*,

234 F.3d 541 (11th Cir. 2000). Applying this standard, the Eleventh Circuit

has set forth the following test:

1.  If the court does not disagree with the plan's decision, then the inquiry ends and judgment is entered for the defendant.
2.  If the plan's decision is *de novo* "wrong," then the court looks to whether there is a grant of discretion. (If there is no grant of discretion, judgment is entered for the plaintiff.)
3.  If the plan's decision is *de novo* "wrong" and there was a grant of discretion, the court looks to whether "reasonable" grounds support the decision based on the more deferential arbitrary and capricious standard.
4.  If there are no reasonable grounds, then the court's inquiry ends and the denial of benefits is reversed. If, on the other hand, reasonable grounds exist, the court looks to whether the defendant was operating under a conflict of interest.
5.  If there is no conflict of interest, the inquiry ends and the denial of benefits is affirmed.
6.  If there is a conflict of interest, then the court applies a heightened arbitrary and capricious review and the burden shifts to the plan to prove that its interpretation was not tainted by self-interest.

*Id.*

Here, Reliance Standard both insured the Policy and made its claim

13

eligibility decisions. (AR 86). Thus, defendant recognizes that a "heightened arbitrary and capricious" standard will apply. *Id.* Before applying this standard to the decision, however, the decision must be reviewed *de novo* to see if it is "wrong." As explained more fully below, the claim decision cannot be *de novo* "wrong," therefore, Reliance Standard's determination should be upheld.

## RELIANCE STANDARD'S CLAIM DECISION WAS NOT "WRONG"

The record in this case firmly establishes that the decision was reasonable and not "wrong." *See Williams*, 373 F.3d at 1138. Dr. Hamo's "note" excusing plaintiff from work has no medical basis and contradicts the findings of her other doctors. Without any explanation, she requested a walker against the advice of her orthopedist. (AR 230). She requested that her orthopedist back-date her off work activities after missing four scheduled appointments. (AR 230). She wrongly advised one doctor that her podiatrist had been "keeping her off work." (AR 231). Moreover, there is very little treatment during the Elimination Period, during which time she was required to be *continuously* Totally Disabled.

Pursuant to the Policy, a claimant must complete an Elimination Period before any benefit is payable. (AR 81, 83). Under the Policy, the Elimination Period is 180 consecutive days of Total Disability which, in this

14

case, ran from April 29, 2005 through October 29, 2005. (AR 60, 81, 83, 100). As described above, plaintiff treated only a few times during the entire six months of the Elimination Period. If plaintiff's condition worsened, one would expect there to be more treatment.

In this case, plaintiff's physical condition did not prevent her from working. The record reveals that plaintiff's numerous diagnostic tests, including MRI and x-ray, all produced normal-for-age results. (AR 171-72, 189-90, 193, 232). While Dr. Hamo said that plaintiff was unable to work, he failed to explain his opinion. He failed to even indicate whether plaintiff met the criteria for fibromyalgia, the condition on which plaintiff bases her claim.

Aside from the lack of treatment, other evidence raises serious questions about the disability claim. Plaintiff requested a walker from her physical therapist without discussing it first with her treating physician. (AR 230). Dr. Howorth was "confused" by this request. Dr. Howorth told the physical therapist that plaintiff "had normal weight bearing status and she did not need a walker." (AR 230). Ms. Daugherty also asked Dr. Howorth to "backdate off work activities until the last time that we had seen her, as she has missed 4 appointments. This is the standard that we do not do this, and if she has been seeing other physicians, then I feel that this would be

15

more appropriate for them to compete this information for her." (AR 230). This note is also important because if plaintiff's condition was disabling, she would not miss four office visits.

In support of her request that Dr. Howorth support her disability, plaintiff stated that "Dr. Stewart had been keeping her off work." (AR 231). Dr. Stewart treated plaintiff one time. (AR 171-173). In the notes from that visit there is no indication that Dr. Stewart took plaintiff off work or indicated that she was physically incapable of working. (AR 171-173). Nor did Dr. Howorth agree to support her claim.

Contrary to the argument of plaintiff during the appeal, Reliance Standard was not obligated to follow the opinion of her treating physician Dr. Hamo, especially under the circumstances described above. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Additionally, Dr. Robinton's report fully supports Reliance Standard's denial of plaintiff's claim for benefits. In *Paramore v. Delta Airlines, Inc.*, 129 F.3d 1446 (11th Cir. 1997), the Court held that when faced with conflicting opinions, it is the duty of the plan fiduciary to resolve those conflicts and reach a conclusion. This is what was done by Reliance Standard in this claim.

Because the denial of benefits in this case cannot be considered "wrong," there is no reason for the Court to perform the remaining analysis

identified in *Williams*. In any event, in applying the heightened arbitrary and capricious standard of review, the denial of this claim is also reasonable. Nor is there any evidence that the denial was influenced by a conflict of interest. As many courts have observed, by seeking an independent review, it is evidence that defendant was acting in good faith and conducting a thorough investigation. *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998); *See Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1015 (10 Cir. 2004). Here, Reliance Standard received an opinion from Dr. Robinton prior to the final decision which supports the denial of benefits.

## IV.  **CONCLUSION**

Plaintiff's claim was properly denied because the medical evidence does not support the assertion that she is Totally Disabled. Because a rational and reasonable basis exists for the denial of the claim, it cannot be considered "wrong" or arbitrary and capricious, and the decision should be affirmed.

/s/ *Christopher L. Yeilding*

One of the Attorneys for Defendant,
Reliance Standard Life Insurance
Company

17

**OF COUNSEL:**

Steven F. Casey
Christopher L. Yeilding
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2008, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to the following:

Angela J. Hill
139 S. Broadnax Street
Dadeville, AL 36853

/s/ *Christopher L. Yeilding*

_____
Of Counsel

# EXHIBIT B

# PART 1



Danielle

RUSSELL HOSPITAL
2005-236-113
DAUGHERTY, CAROL
08/24/2005

LSC0099500-

LTD



AR 1

## Quality Review Appeal Summary

**Claimant Name: Carol Dougherty**
**Policy No: LSC 99500**
**Prepared by: Bill Ross**

**Claim Number: 2005-236-113**
**Policyholder: Russell Hospital**

**Claim Summary:**
55 year-old female Buyer, light, last worked 4/30/05 due to low back pain. No benefits were paid based on, in part, "...the medical records do not support the conclusion that you are totally disabled from doing your own occupation as a Buyer."

On appeal the claimant's **attorney** arguing our denial was based on an orthopedic evaluation and not the neurological report from Dr. Wael Hamo.

**Medical Review:**
**10/27/05** "Please see prior reviews for additional details new records document treated 6/2/05 for plantar fascitis with follow up to be in 2 weeks, although these records were not sent until 10/18/05 there is not follow up note. Given this information it would appear that the exercise and shoe inserts resolved these complaints and restrictions and limitations previously reported of light with occasional fingering remain supported since the date of loss with the exception of 6/2-05-6/16/05 when sedentary restrictions and limitations would have been reasonable."

**10/14/05** "Claimant with multiple subjective complaints without corresponding findings despite multiple x-rays and MRI's. The only test with positive results has been an EMG from 110/04 positive for mild to moderate carpal tunnel syndrome treated with splinting. Based on information on file claimant since the date of loss with light restrictions and limitations with occasional fingering."

**Investigation:**
Submitted with appeal
    1. 10/28/05 letter from Dr. Hamo
    2. 4/18/05 statement from Dr. Hamo regarding work status "Pt to work up until 4-29-05 next appt 6-2-05.
    3. 7/12/05 statement from Dr. Hamo claimant is not able to work.
    Treatment notes from (unknown) from 10/25/05 to 3/22/06. Other physicians are listed as Dr. Powers and Dr. Hamo.
Prior records in file;
    1. Dr. Hamo 7/27/05. 8/9/05, 8/15/05, 7/11/05, 6/9/05, 6/2/05, 5/27/05, 5/25/05, 5/12/05,4/27/05 4/14/05, 4/7/05, 2/8/05,12/14/05,11/16/04, and prior.
Acknowledgment letter to attorney
Referred for RN review
**Disposition:**

**Date:  5/5/06**

**RELIANCE STANDARD**
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103-7090
(267) 256-3500
(800) 351-7500

November 1, 2005

Carol Daugherty
Rt 3 Box 155-C
Goodwater, AL 35072

RE:  Claimant:      Carol Daugherty
     Claim No.:     2005-236-113
     Policyholder:  Russell Hospital
     Policy No.:    LSC 99500

Dear Ms. Daugherty:

We would like to express our appreciation for your patience and cooperation during the review of your claim for Long Term Disability (LTD) benefits. We have now completed our determination regarding your eligibility for benefits under the above group LTD policy.

To be eligible for benefits, the group policy requires that medical documentation substantiate that an employee, while insured under the group policy, meets the group policy's definition of Total Disability. The group policy defines Total Disability as follows:

"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:

1.    during the Elimination Period and for the first 36 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his\her regular occupation;

     a.    "Partially Disabled" and "Partial Disability" mean that a result of an Injury or Sickness an Insured is capable of performing the material duties of his\her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period.

     b.    "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and...

Please be aware that your own or regular occupation is not your job with a specific employer, it is not your job in a particular work environment, nor is it your specialty in a particular occupational field. In evaluating your eligibility for benefits, we must evaluate your inability to perform your own or regular occupation as it is performed in a typical work setting for any employer in the general economy.

a *DELPHI* company

AR 3

**RELIANCE STANDARD**
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103-7090
(267) 256-3500
(800) 351-7500

The **Benefit Provisions** section of group LSC 99500 states, in part:

**Insuring Clause:** We will pay a monthly benefit if an Insured:

1. is Totally Disabled as the result of a Sickness or Injury covered by this policy;
2. is under the regular care of a Physician;
3. has completed the Elimination Period;
4. submits satisfactory proof of Total Disability to us.

Medical records were obtained from your treating physicians, Dr. Wael Hamo and Dr. Graham Howorth. Records from Dr. Howorth document treatment from April 7, 2005 to July 7, 2005. The office visit of April 7, 2005 , does not support work impairment and the ability to perform your occupation as a Buyer, you were being treated for intermittent left knee pain, back and left hip pain. Additional visit on July 6, 2005 you were seen for evaluation and multiple complaints. It was noted that you had missed 4 prior appointments and requested that Dr. Howorth backdate off work activities until the last time you were seen, he declined and referred you to the physicians that you had been treating with.

Dr. Wael Hamo records were also reviewed, multiple x-ray, MRI, EEG results from October through March 2005 were reviewed, most with minimal finding or normal results. The EMG performed October 19, 2004 did have findings of mild to moderate carpal tunnel syndrome, which was treated with splinting. At your visit on April 7, 2005 your complaints were headache, neck pain, low back pain and aggravation of fibromyalgia with activity mainly and with weather changes. Dr. Hamo at this time reviewed all your test results and changes some of your medications and you were to be seen again in 2 months. The visit on April 14, 2005 found again that you have grossly intact extraocular movement and visual field exam, intact and symmetrical motor and sensory facial exam and your cerebellar and gait exam were within normal limits. You have many subjective complaints that are not supported with testing.

Dr. Douglas Stewarts records were also reviewed, you were treated by him for Plantar Fascitis on June 2, 2005, you were given exercise instructions and inserts for your shoes and instructed to return in 2 weeks for a recheck. No additional records after June 2, 2005 were received for review from Dr. Stewart.

The medical information provided must document an impairment with limitations and restrictions precluding your ability to perform the material duties of your own occupation. The medical information received does not support this.

In addition, your complete file has been reviewed by a member of our vocational staff. Based on the pertinent file information regarding your medical condition and vocational history, an member of our vocational staff has determined you can perform the material duties of your own occupation as a Buyer.

a *DELPHI* company

# RELIANCE STANDARD
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103-7090
(267) 256-3500
(800) 351-7500

Our determination regarding whether you meet your group policy's definition of disability is, and must be, based on the medical documentation in your claim file. We have no basis on which to measure subjective complaints or medical opinions that are not substantiated by the medical findings. We must determine if medical information documents the presence of a physical or mental condition limiting your ability to perform your own or regular occupation.

In summary, the medical records do not support the conclusion that you are totally disabled from doing your own occupation as a Buyer.

We regret our decision could not be more favorable. Our determination has been based on the information contained in your file and the policy provision applicable to your claim.

You may request a review of this denial by writing to:

**Reliance Standard Life Insurance Company**
**Quality Review Unit**
**P.O. Box 8330**
**Philadelphia, PA 19101-8330**

This written request for review must be submitted within 180 days of receipt of this letter. Your request should state any reasons why you feel this determination is incorrect, and should include any written comments, documents, records or other information relating to your claim for benefits. Only one review will be allowed, and your request must be submitted within 180 days of your receipt of this letter to be considered.

Under normal circumstances, you will be notified in writing of the final determination within 45 days of the date we receive your request for review. If we determine that special circumstances require an extension of the time for processing, you will ordinarily be notified of the decision no later than 90 days of the date we receive your request for review.

We will, upon specific request and free of charge, provide copies of all documents, records, and\or other information relevant to your claim for benefits. We will also, upon specific request and free of charge, provide copies of any internal rule, guideline, protocol or other similar criterion (if any) relied upon in making this determination.

In the event that your claim is subject to the Employment Retirement Income Security Act of 1974 ("the Act"), you have the right to bring civil action under section 502(a) of the Act following an adverse benefit determination on review. Your failure to exhaust the administrative remedies available under the Act, and may affect your ability to bring civil action under the Act.

a *DELPHI* company

**RELIANCE STANDARD**
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103-7090
(267) 256-3500
(800) 351-7500

Nothing in this letter should be construed as a waiver of any of Reliance Standard Life Insurance Company's rights and defenses under the above captioned policy, and all these rights and defenses are reserved to the Company, whether or not specifically mentioned herein.

Should you have any questions, please contact me at 800-351-7500, ext: 3652.

Sincerely,

Danielle N. Buggs, Examiner
Group LTD Claims Department

**RELIANCE STANDARD**
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103-7090
(267) 256-3500
(800) 351-7500

November 3, 2005

Russell Hospital
Attn: Cindy Whately
1506 Highway 280 By-Pass
Alexander City, AL 350111

RE:    Policy No.   : LSC 99500
       Claim No.    : 2005-236-113
       Policyholder: Russell Hospital

Dear Ms. Whately:

This letter is to inform you that the above referenced claim has been denied.

A more detailed denial letter has been sent to Carol J. Daugherty. Due to the confidential nature of the information contained within this letter, we cannot release a copy to you without the specific written consent of the claimant.

If you should have any questions, please contact me directly at 1-800-351-7500.

Sincerely,

Danielle N. Buggs, Examiner
LTD Claims Department
Ext. 3652

a **DELPHI** company

AR 7

October 17, 2005

Carol J. Daugherty
Rt3 Box 155-C
Goodwater, AL 35072

RE:    Claimant      :Carol J. Daugherty
       Policy No     :LSC 99500
       Claim No      :2005-236-113

Dear Ms. Daugherty:

We have received your application for disability benefits and have begun the initial processing of your claim. Our determination regarding your eligibility for benefits will be based on the provisions of the applicable policy, a copy of which is available upon request.

It is important to note that all of the following information must be received before we can begin processing your claim:

In addition, we have requested information from the following sources:

| Information Requested | Request Date | Request Sent To |
|---|---|---|
| Medical Records | 9/2/05;2nd request 10/17/05 | Dr. Douglas Stewart |

While we have requested the above information as a courtesy to you, it is ultimately your responsibility to follow up to ensure that the requested information is provided to us at the address below. Until all of requested information is received, we will be unable to process your claim.

If all of the requested information is not received **no later than October 31, 2005**, your claim will be considered incomplete and your file may be closed.

Once this information is received, your claim will receive our prompt attention. If you have any questions, please contact our Customer Service Department at (800) 351-7500 extension 4149. Thank you for your prompt attention in this matter.

Sincerely,

Danielle Buggs, Claims Examiner
Group LTD Claims Department

# RELIANCE STANDARD
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103-7090
(267) 256-3500
(800) 351-7500

September 2, 2005

Dr. Douglas Stewart
1649 Highway 22
Suite #1
Alexander City, AL 35010

*[handwritten: 2nd & final request 10-17-05 May we hear from you]*
regarding our previous request.

RE:  Claimant  : Carol J.Daugherty
     S.S. No.  : 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
     D.O.B.    : 2-9-51
     Claim No. : 2005-236-113

Dear Dr. Stewart:

We are reviewing a Long Term Disability (LTD) claim submitted by
your patient, Carol J. Daugherty. As part of our evaluation of
their eligibility for LTD benefits, we must ask that you provide us
with the following information:

  _X_  Please provide us with copies of all medical treatment
       records you have on file for this patient; including
       copies of chart notes, hospital treatment records, X-rays
       and other radiographic tests, and laboratory test results
       for the period from 6-2-05 to present.


  ___  Please complete the enclosed medical questionnaire based
       on your most recent evaluation of the patient's condition.

Accompanying this request is an authorization for the release of
this information signed by the patient.  If there is a fee for
providing the information to us, please include appropriate billing
and your tax identification number with your reply.  If there is an
advance fee for copying the records, or if you have any other
questions or concerns regarding this request, please contact me
directly at (267) 256-3652.  You may also FAX your response to my
attention at (267) 256-3535.

Sincerely,


Danielle N. Buggs , Examiner
Group LTD Claims Department

a DELPHI company

AR 9

# RELIANCE STANDARD
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103-7090
(267) 256-3500
(800) 351-7500

September 2, 2005

Dr. Douglas Stewart
1649 Highway 22
Suite #1
Alexander City, AL 35010

*No final request 10.17.05*
*May we hear from you*
*regarding our previous request.*

RE:  Claimant   : Carol J. Daugherty
     S.S. No.   : 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
     D.O.B.     : 2-9-51
     Claim No.  : 2005-236-113

Dear Dr. Stewart:

We are reviewing a Long Term Disability (LTD) claim submitted by your patient, Carol J. Daugherty. As part of our evaluation of their eligibility for LTD benefits, we must ask that you provide us with the following information:

   **X**  Please provide us with copies of all medical treatment records you have on file for this patient; including copies of chart notes, hospital treatment records, X-rays and other radiographic tests, and laboratory test results for the period from 6-2-05 to present.

   ____  Please complete the enclosed medical questionnaire based on your most recent evaluation of the patient's condition.

Accompanying this request is an authorization for the release of this information signed by the patient. If there is a fee for providing the information to us, please include appropriate billing and your tax identification number with your reply. If there is an advance fee for copying the records, or if you have any other questions or concerns regarding this request, please contact me directly at (267) 256-3652. You may also FAX your response to my attention at (267) 256-3535.

Sincerely,

Danielle N. Buggs, Examiner
Group LTD Claims Department

a *DELPHI* company

**RELIANCE STANDARD**
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103

a *DELPHI* company

## AUTHORIZATION FOR USE IN OBTAINING INFORMATION

NAME OF INSURED: *Carol Jean Daugherty*

INSURED'S SSN: *266 04 7470*

POLICYHOLDER: *Carol J. Daugherty*

To all physicians and other health care professionals, hospitals, other health care institutions, insurers, medical, hospital and prepaid health plans, pharmacies, employers, group policyholders, contract holders, governmental agencies, private and/or public benefit plan administrators, and/or attorney representatives, including but not limited to covered entities and business associates under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the accompanying regulations:

You are authorized to provide Reliance Standard Life Insurance Company and/or its authorized administrators with information concerning medical care, advice, and/or treatment provided to me, the above named Insured, and/or any employment, salary and/or benefit-related information concerning me, the above named Insured. I understand that the disclosure of information may include disclosure of protected health information under HIPAA and the accompanying regulations, information regarding treatment for mental illness, the human immunodeficiency virus (HIV) and/or the use of drugs and alcohol. I also understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and will no longer be subject to protection under HIPAA and the accompanying regulations. A statement of Reliance Standard Life Insurance Company's privacy policy is available at www.rsli.com or upon request.

I understand that any such information will be used for the purpose of evaluating my claim for benefits. Upon request, I understand that I am entitled to receive a copy of this Authorization. This Authorization is valid from the date signed for the duration of the claim, and may be revoked by me at any time upon written request to the address below. A reproduction of this Authorization shall be considered as valid as the original.

*9/3/05*
Date

*Carol Daugherty*
Insured's Signature

**(If the Insured is unable to sign, an authorized person may sign.)**

_____
Date

_____
Authorized Person's Signature

Description of Authorized Person's authority to sign on behalf of Insured: _____

_____

Reliance Standard Life Insurance Company
P. O. Box 8330, Philadelphia, PA 19101-8330

EF-1217

**AR 11**

**INITIAL TELEPHONE INTERVIEW**

DATE:  September 20, 2005                                    TIME:
8:30 am

Claimant: Carol Jean Daugherty                              STD
☐  LTD ☒

Examiner:  Danielle Buggs

I.    Medical

a.   What condition is causing your absence from work?
     fibro, both hands carpel tunnel, suffering a lot of numbness has memory problem. The right foot has
severe torn aligment

b.   When did this condition begin?
     October 2004

c.   Who is treating you for this condition?
     Dr. Hamo

d.   Is that physician your general practitioner or a specialist?  If a specialist, what type?
     specialist, a neurologist

e.   Do you have a general practitioner who oversees your medical care?
     yes, Dr. Edward Hill

f.   What estimate had your doctor given you concerning a return to work in your job?  any job?
     not be able to retrun to work with any job

g.   (If appropriate) Do you require any orthopedic appliance or medical equipment? (such as a cast,
     braces, wheel chair, walker, cane, oxygen, etc.)
     cane, a much as she can.

h.   Has your doctor placed you on a treatment program or recommended surgery?  Explain?
     surgery is out. getting treatment such as medication and home exercise

II.   Activities

a.   What are your current activities or explain a typical day?
     still in the bed. cannot sleep at all. On medication to sleep. take a long time to get going

b.   Do you currently do your own cooking, housework, yardwork, babysitting, driving?
     husband does the yardwork. claimant drives some. drive around to the grocery. Husband goes with
the claimant ot go to the grocery store.

c.   What driving restrictions do you have, if any?
     no

d.   What hobbies do you have and how have they been affected?
     use to do garden, unable to do the yardwork. can not ndo any horse back riding anymore. Do not do
     anything

III.  Financial

a.   Do you currently have medical insurance?  If so, through your employer, spouse's employer or an
     individual plan?
     yes, throught the employer
EF-1118

b.  Are you pursuing or receiving worker's compensation, pension, state disability, etc? If yes, how much
and ask for a copy of documentation to support amount.
pension, not able to rewceive pension as of yet.

c.  What is your maritial status?
married

d.  Is your spouse employed full-time? part-time? What is your spouse's occupation?
disabled

e.  Have you applied for benefits from any other disability policy? (group or individual) If yes, ask for
details.
n\a

f.  Any pending litigation? (if the result of an accident)
n\a

IV.  Employability/Rehabilitation

a.  What part of your job duties can you currently do?
do a little of the written work.

b.  What part of your job can't you do?
can't do the lifting, the walking, unable to function with the short term memory

c.  When do you expect to return to your job? (If before 12 months, do not pursue with Social Security
questions below)
never

d.  What is your education level?
12th grade

e.  How may employees are employed by your employer? Would your employer be considered a major
corporation or a small corporation?
major corporation

f.  Are you located in a rural (country) or urban (city or suburban) area?
country

g.  Have you kept in touch with anyone from work?
yes

h.  Is your employer holding your job open for you?
no

V.  Social Security

a.  Are you receiving Social Security Disability or Retirement benefits?
not at this time

If yes, ask how much per month and ask for a copy of Award Letter. (Put amount in CAS)

If no, proceed with the following question:

Have you filed an application for Social Security Disability benefits? yes, have applied in June 2004

If yes, have you had a reply from Social Security? (send copy to us) Advise claimant to appeal if they
were denied.

If no, advise claimant to call us as soon as they hear from Social Security.
EF-1118

(Where applicable) If claimant has not applied for Social Security, advise them that we will have our In-house Social Security Specialist call them and/or claimant can call.  Give them the name and extension of our Specialist. Also, advise them of the advantages of applying for Social Security and explain our estimation policy (refer to the applicable policy).

EF-1118

# Hamo Neurology Clinic
## *Pre-Payment Form*

Date: 9-8-05

To: Danielle Bupp Examiner
267-256-3535

From:    Dr. Wael Hamo, M.D.
209 West Spring Street
Suite 304
Sylacauga, AL 35150

Tax ID #63-1194637

RE: Carol Daugherty

Description: Research fee                    5 00
Ul 1st 25 pays                  25 00
.50 x 24                        12

PAID

Total Amount Due $  42 00

**RELIANCE STANDARD**
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103
(800) 351-7500

September 2, 2005

Dr. Graham Howorth
1120 Airport Drive
Alexander City, AL 35010

RE: Claimant  : Carol J.Daugherty
    S.S. No.  : 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
    D.O.B.    : 2-9-51
    Claim No. : 2005 236 113

Dear Dr. Howorth:

We are reviewing a Long Term Disability (LTD) claim submitted by
your patient, Carol J. Daugherty. As part of our evaluation of
their eligibility for LTD benefits, we must ask that you provide us
with the following information:

　X　 Please provide us with copies of all medical treatment
     records you have on file for this patient; including
     copies of chart notes, hospital treatment records, X-rays
     and other radiographic tests, and laboratory test results
     for the period from 3-15-05 to present.

　　　 Please complete the enclosed medical questionnaire based
     on your most recent evaluation of the patient's condition.

Accompanying this request is an authorization for the release of
this information signed by the patient. If there is a fee for
providing the information to us, please include appropriate billing
and your tax identification number with your reply. If there is an
advance fee for copying the records, or if you have any other
questions or concerns regarding this request, please contact me
directly at (267) 256-3652. You may also FAX your response to my
attention at (267) 256-3535.

Sincerely,

Danyelle N. Buggs, Examiner
Group LTD Claims Department

a *DELPHI* company

# Graham L. Howorth, M.D., P.C.
## Orthopaedic Surgery
1120 Airport Dr. Ste. 101
Alexander City, Al. 35010
(256) 234-0989
(256) 234-3114 Fax

Name _Carol Daugherty_

Account Number _1788_    Date _9-8-05_

Please indicate with a circle the requested information and enclose pre-payment fee as shown for prompt handling.

1. **MEDICAL RECORDS:** $5.00 labor fee, $1.00 per sheet up to 25 sheets and $.50 per sheet thereafter.

2. **COMPREHENSIVE NARRATIVE REPORT** with anticipated date of maximum medical improvement, anticipated partial permanent impairment, opinion of current work limitations. $195.00

3. **COMPREHENSIVE EXAMINATION AND REPORT,** review of extensive old records with anticipated or determination of partial permanent impairment, work limitations, anticipated further medical treatment and medical cost. $275.00

Thank you,

Amy Miller

**Medical Records Dept.**

3 pages @ 1.00 PP
5.00 search fee
1.00 mail fee
_____
$9.00 Total Due

TAX ID # 710679823

September 2, 2005

Dr. Wael Hamo
209 W. Spring Street
Sylacauga, AL 35150

RE:   Claimant  : Carol J.Daugherty
      S.S. No.   : 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
      D.O.B.     : 2-9-51
      Claim No.  : 2005-236-113

Dear Dr. Hamo:

We are reviewing a Long Term Disability (LTD) claim submitted by
your patient, Carol J. Daugherty. As part of our evaluation of
their eligibility for LTD benefits, we must ask that you provide us
with the following information:

  _X_  Please provide us with copies of all medical treatment
       records you have on file for this patient; including
       copies of chart notes, hospital treatment records, X-rays
       and other radiographic tests, and laboratory test results
       for the period from 10-19-04 to present.


  ___  Please complete the enclosed medical questionnaire based
       on your most recent evaluation of the patient's condition.

Accompanying this request is an authorization for the release of
this information signed by the patient.  If there is a fee for
providing the information to us, please include appropriate billing
and your tax identification number with your reply.  If there is an
advance fee for copying the records, or if you have any other
questions or concerns regarding this request, please contact me
directly at (267) 256-3652.  You may also FAX your response to my
attention at (267) 256-3535.

Sincerely,


Danielle N. Buggs , Examiner
Group LTD Claims Department

September 2, 2005

Dr. Graham Howorth
1120 Airport Drive
Alexander City, AL 35010

RE:   Claimant   : Carol J.Daugherty
      S.S. No.   : 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
      D.O.B.     : 2-9-51
      Claim No.  : 2005-236-113

Dear Dr. Howorth:

We are reviewing a Long Term Disability (LTD) claim submitted by
your patient, Carol J. Daugherty. As part of our evaluation of
their eligibility for LTD benefits, we must ask that you provide us
with the following information:

   __X__ Please provide us with copies of all medical treatment
      records you have on file for this patient; including
      copies of chart notes, hospital treatment records, X-rays
      and other radiographic tests, and laboratory test results
      for the period from 3-15-05 to present.


   ____ Please complete the enclosed medical questionnaire based
      on your most recent evaluation of the patient's condition.

Accompanying this request is an authorization for the release of
this information signed by the patient.  If there is a fee for
providing the information to us, please include appropriate billing
and your tax identification number with your reply.  If there is an
advance fee for copying the records, or if you have any other
questions or concerns regarding this request, please contact me
directly at (267) 256-3652.  You may also FAX your response to my
attention at (267) 256-3535.

Sincerely,


Danielle N. Buggs , Examiner
Group LTD Claims Department

September 2, 2005

Dr. Douglas Stewart
1649 Highway 22
Suite #1
Alexander City, AL 35010

RE:  Claimant  : Carol J.Daugherty
     S.S. No.  : 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
     D.O.B.    : 2-9-51
     Claim No. : 2005-236-113

Dear Dr. Stewart:

We are reviewing a Long Term Disability (LTD) claim submitted by
your patient, Carol J. Daugherty. As part of our evaluation of
their eligibility for LTD benefits, we must ask that you provide us
with the following information:

   **X** Please provide us with copies of all medical treatment
        records you have on file for this patient; including
        copies of chart notes, hospital treatment records, X-rays
        and other radiographic tests, and laboratory test results
        for the period from 6-2-05 to present.


   ___ Please complete the enclosed medical questionnaire based
        on your most recent evaluation of the patient's condition.

Accompanying this request is an authorization for the release of
this information signed by the patient. If there is a fee for
providing the information to us, please include appropriate billing
and your tax identification number with your reply. If there is an
advance fee for copying the records, or if you have any other
questions or concerns regarding this request, please contact me
directly at (267) 256-3652. You may also FAX your response to my
attention at (267) 256-3535.

Sincerely,


Danielle N. Buggs , Examiner
Group LTD Claims Department

September 2, 2005

Russell Hospital
Attn: Cindy Whately
1506 Highway 280 By Pass
Alexander City, AL 35011

RE:          Claimant:    Carol J. Daugherty
             Claim number:2005-236-113
             Policy number:LSC 99500

Dear Ms. Whately:

Additional Information needed for claim processing, please supply
us with the item(s) indicated below:

[x] What was her hourly rate of pay as of 4/29/05? $_____

[x] What is the weekly amount of her  STD?
   $_____ Begin date___/___/___ End date ___/___/___

[x] Please send in copies of her payroll records 3 months prior to her last day worked.
   1/29/2005 to 4/29/05.

[x] Please send in a copy of her enrollment form.

[x] Other: Please send the above information to my attention no later than September 25,
2005.

Thank you,

Danielle Buggs,  Examiner
267-256-3652

September 2, 2005

Russell Hospital
Attn: Cindy Whately
1506 Highway 280 By Pass
Alexander City, AL 35011

Re:   Policy No.   :LSC 99500
      Claim No.    :2005-236-113
      Policyholder :Russell Hospital

Dear Ms. Whately:

We have received an application for Long Term Disability benefits and initiated the processing of a claim for Carol J. Daugherty.

In order to properly evaluate your application, we have found necessary to request additional information. This information has been requested today under separate cover.

In the meantime, please be assured that once this necessary information is received we will give Ms. Daugherty's claim our prompt attention. If you have any questions regarding this matter, please contact me at 1-800-351-7500.

Sincerely,

Danielle Buggs, Examiner
LTD Claims Department
Ext.3652

September 2, 2005

Carol J. Daugherty
Rt3 Box 155-C
Goodwater, AL 35072

RE:     Claimant        :Carol J. Daugherty
        Policy No       :LSC 99500
        Claim No        :2005-236-113

Dear Ms. Daugherty:

We have received your application for disability benefits and have begun the initial processing of
your claim. Our determination regarding your eligibility for benefits will be based on the
provisions of the applicable policy, a copy of which is available upon request.

It is important to note that all of the following information must be received before we can begin
processing your claim:

In addition, we have requested information from the following sources:

| Information Requested | Request Date | Request Sent To |
|---|---|---|
| Payroll Records, STD, detail job description | 9/2/05 | Russell Hospital |
| Medical Records | 9/2/05 | Dr. Wail Hamo |
| Medical Records | 9/2/05 | Dr. Graham Howorth |
| Medical Records | 9/2/05 | Dr. Douglas Stewart |

While we have requested the above information as a courtesy to you, it is ultimately your
responsibility to follow up to ensure that the requested information is provided to us at the
address below. Until all of requested information is received, we will be unable to process your
claim.

If all of the requested information is not received within **45 days** from the date of this letter, your
claim will be considered incomplete and your file may be closed.

Once this information is received, your claim will receive our prompt attention. If you have any
questions, please contact our Customer Service Department at (800) 351-7500 extension 4149.
Thank you for your prompt attention in this matter.

Sincerely,


Danielle Buggs, Claims Examiner
Group LTD Claims Department

## TELEPHONE CONVERSATION RECORD

Check here if Initial Interview ☐

Check all that apply: ☐ Life  ☐ WOP  ☐ LTD  ☐ STD  ☐ Other: _____

Insured name: _____   SS#: _____

Claim Number: _____   Policy Number: _____

Conversation with: _____   Call taken/made by: _____

☐ Incoming Call   ☐ Outgoing Call   Telephone Number: _____

## DON'T FORGET TO INCLUDE DATE AND TIME!

| Date | Time | |
|------|------|--|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

EF-1124

# RELIANCE STANDARD
Life Insurance Company

Disability Claims Department
P.O. Box 8330
Philadelphia, PA 19101-8330
(267) 256-3500
(800) 351-7500

8/25/2005

Carol Daugherty
Rt. 3 Box 155-C
Goodwater, AL 35072

RE:    Claimant        : Carol Daugherty
       Policy No       :LSC  099500
       Claim No.       :2005-236-113


Dear Ms. Daugherty,

We have received your claim for Long Term Disability benefits under the above noted policy.
Initial processing activities have begun and continue at this time.

We will be contacting you shortly to discuss your claim.  Be assured that once we have obtained the necessary information, a decision will be made and communicated in a timely manner.

Additionally, if you feel you have an illness or injury that is expected to prevent you from performing substantial work activity for a period of not less than twelve (12) months, you should apply for Social Security Disability Insurance Benefits. You can call the Social Security Administration office to apply for these benefits.  For instructions on the application process, you can contact the Social Security Administration at (800) SSA-1213.  Social Security has some special advantages that group disability insurance cannot provide for you.

Enclosed you will find a list of Social Security Disability Benefits and a  Social  Security Questionnaire and Authorization Form.  We have also enclosed a current authorization form that must be signed, dated and returned to us. Please complete both forms and return them to my attention as soon as possible. A self-addressed envelope is enclosed for your convenience.

If you have questions about the claim administration process, want to inquire about the status of your claim, or would like to provide us with additional information, please feel free to contact us at   (800) 351-7500, extension 3749.

Sincerely,

Danielle Buggs        Examiner
LTD Claims Department

**DB**/pw

Enclosures

cc:     Russell Hospital
        RGO: ATL                    758


a **DELPHI** company

## ADVANTAGES OF SOCIAL SECURITY DISABILITY BENEFITS

If you have an illness or injury that is expected to prevent you from performing substantial work activity for a period of not less than twelve (12) months and you are under the age of 64 years and six (6) months, you should apply for Social Security Disability benefits.

There are many advantages to applying for and becoming entitled to Social Security Disability Insurance.

1) The Social Security Administration will stop your record of earnings at the point in which you are found to be disabled. This results in:

    a) a higher Social Security benefit amount and

    b) if you improve such that you are able to return to work, the period that you were determined to be disabled is closed thus giving you a higher benefit amount if you become disabled again or at the point in which you become entitled to Social Security Retirement benefits.

2) Social Security benefits may be payable to:

    a) your spouse over the age of 62

    b) your spouse who is caring for your children under the age of sixteen (16)

    c) your dependent children. Social Security defines a dependent child as a child under age sixteen (16) or over age sixteen (16) attending high school on a full time basis.

    d) your adult child who because of a disability, which began before age 22, is unable to work

    e) your parent (s) if you are providing ½ of their support

3) Under the Social Security provisions, as they currently exist, each December you will receive a Cost of Living Adjustment (COLA). In other words, you will receive an increase in the amount of your Social Security check. Most LTD policies exclude the increase due to a COLA as countable income.(It should be noted that an increase due to COLA is different from an increase to Social Security benefits due to earnings.)

4) After twenty-four (24) consecutive months of entitlement to Social Security Disability benefits, you are entitled to medical coverage (Medicare). Medicare is in two (2) parts. There is no premium for Hospital Insurance. There is a minimal premium for the Medical Insurance.

# RELIANCE STANDARD
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103
(800) 351-7500

November 13, 2006

Angela J. Hill
Attorney at Law
139 South Broadnax St.
Dadeville, AL 36853

| Re: | Carol Daugherty |
|-----|-----------------|
| Claim #: | 2005-236-113 |
| Policy #: | LSC 99500 |

Dear Ms. Hill:

Your correspondence of November 10, 2006 has been forwarded to my attention, as Mr. Ross is currently on an extended absence. We have received your request for another appeal of the denial of the above claim. Unfortunately, Reliance Standard Life Insurance's procedures only provide for one appeal, and according to our records, this appeal has already been conducted. As a result, our previous determination is final and the claim file is closed.

Ms. Daugherty has exhausted his administrative appeals. We are therefore returning your request for another appeal (along with any enclosures) as the claim file is now closed.

Sincerely,

Karen McGill
Quality Review Unit

a *DELPHI* company

AR 27

# *RELIANCE STANDARD*
Life Insurance Company

Disability Claims Department
P.O. Box 8330
Philadelphia, PA 19101-8330
(267) 256-3500
(800) 351-7500

August 3, 2006

Angela J. Hill, LLC
Attorney at Law
139 S. Broadnax Street
Dadeville, AL 36853-8251

Re:         Carol Daugherty
            Claim Number:      2005-236-113
            Policy Number:     LSC 99500

Dear Ms. Hill :

We are writing to you regarding the appeal of our decision to terminate your client's claim for Long Term Disability ("LTD") benefits. Please be advised that Reliance Standard Life Insurance Company ("RSL") strives to treat all claimants fairly and evaluate claims submitted to us in an objective and equitable manner.

Under RSL guidelines your client is entitled to an independent review of the claim facts and the determination made regarding her eligibility for benefits. The file was referred to our Quality Review Unit to conduct such a review. This review has been conducted separately from the individual (s) who made the original decision to terminate benefits.

We have conducted an independent review of your client's claim file and have determined that our original decision to terminate benefits was appropriate.

Based on the information in your client's claim file, she last worked on April 29, 2005 due to "Pain in neck, face, back etc." The diagnosis included neck pain, tension type headache, low back pain, and memory problem.

Your client's claim was denied stating in part, "In summary, the medical records do not support the conclusion that you are totally disabled from doing your own occupation as a Buyer."

To be eligible for benefits, group Policy# LSC 99500 requires that medical documentation must substantiate that an employee, while insured under the group policy, meets the group policy's definition of Total Disability as defined on page 2.1 in the Policy as follows:

*Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:*

*(1)  during the Elimination Period and the first 24 months for which a monthly benefit is payable, an Insured is not capable of performing the material duties of his/her regular occupation.*

> *(a)  "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full- time basis. An Insured who is Partially Disabled will be Totally Disabled, except during the Elimination Period.*

> *(b)  "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and*

*(2) After a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured "Totally Disabled" if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis.*

Under DEFINITIONS on page 2.0 the Policy also states;

> *"Sickness" means illness or disease causing Total Disability which begins while insurance coverage is in effect for the Insured. Sickness includes pregnancy, childbirth, miscarriage or abortion, or any complications therefrom.*

> *"Injury" means bodily injury resulting directly from an accident, independent of all other causes. The Injury must cause Total Disability which begins while insurance coverage is in effect for the Insured.*

> *"Elimination Period" means a period of consecutive days of Total Disability, as shown on the Schedule of Benefits page, for which no benefit is payable. It begins on the first day of Total Disability.*

The Elimination Period under the Policy is 180 consecutive days of "Total Disability

Based on the information in your client's claim file, she last worked on April 29, 2005 due to "Pain in neck, face, back etc." The diagnosis included neck pain, tension type headache, low back pain, and memory problem.

Your client's medical records show that Ms. Daugherty visited Dr. Howorth , Jr. on March 15, 2005, for an evaluation of a painful left hip, knee, and feet bilaterally. He notes, "MRI of lumbosacral spine was reviewed from that done 10/24/04 and is unremarkable for normal-for-age degenerative changes. The physical examination was "remarkable for left trochanteric bursitis, focal tenderness over trochenteric bursa. ..She has chondromalacia of the left knee. Knee ROM is full.

On April 7, 2005 Ms. Daugherty was "...seen in follow up of visit of 3/15/05 with left trochanteric bursitis, left sciatica, left Baker's cyst, left patella chondromalacin, fibromyalgia, bilateral feet PTI

dysfunction." The X-rays show "MRI scan of the lumbosacral spine was previously performed and remarkable for no disc herniation, spinal stensos, degenerative changes....X-ray of her left knee is unremarkable for age of 3/15/05. MRI scan was remarkable for mild myxoid degeneration without tear." The Plan was Low dose Prednisone, PT, RTC in 3 weeks, consider left hip trochanteric bursa injection."

The visit on July 6, 2005 was listed as a work-in. She was seen for evaluation and complaints of multiple problems. She missed four appointments on 06/07/05, on 05/23/05, on 05/09/05, on 04/28/05, with her last visit on 04/07/05.

The examination notes;

> I discussed with her she has missed 4 appointments. She states that PT put her on crutches and they wanted records so they could see what to do. This is incredibly confusing as PT called us. We told them she had normal weightbearing status and that she did not need a walker. She has been off work since April 29th of 2004 or 2005. I am uncertain of the year.

> She has symptoms of carpel tunnel, plantar fascitis, right shoulder bursitis. She has been followed by Dr. Powers with a history of fibromyalgia and rheumatological work up as needed. She has mild symptoms of trochanteric bursitis, complaints of bilateral foot pain, and has a myriad of complaints. She has asked we backdate off work activities until the last time that we had seen her, as she has missed 4 appointments. This is the standard that we do not do this, and if she is seeing other physicians, then I feel that this would be more appropriate for them to complete this information for her."

An addendum was added stating, "She did see Dr. Stewart. Dr. Stewart's note of 06/02/05 was reviewed. His diagnosis was plantar fascitis, and this was treated with front ankle medical arch accommodations. She states Dr. Stewart had been keeping her off work. Again it would be more appropriate for him to fill in her disability forms at this time."

Our medical staff reviewed the file and opined, "There are no records on file from 4/7/05 till 7/6/05 as claimant missed 4 appointments. Office notes of 4/7/05 does not support impairment.'

Thus, despite Ms. Daugherty's request for Dr, Howorth to verify total disability, it is quite clear that Dr. Howorth's medical examination did not support work impairment.

Further information in file shows Ms. Daugherty's treatment notes from Dr. Wael Hamo, M.D. with a visit on October 19, 2004. He noted the "patient has a history of fibromyalgia for many years with neck pain with pain distribution down both upper extremities and bilateral hand numbness over the last year more prominent on the right side as compared to the left side. History of low back pain with distribution down the right lower extremity with numbness. Also, she complains of headache with nausea without vomiting or visual changes. Pt. Complains of dizziness and light headiness, especially with standing and walking around. Denies history of MRI of cervical and lumbosacral spine area. She had a CT of the head and lumbosacral spine back in 1993 following MVA without any fracture reported a t that time...."His examination noted "...alert and oriented times four. Intact language and comprehension exam with good performance on memory exam."

The cranial examination showed "Equal pupils reactive to light. "Grossly intact extraocular movement and visual field exam. Intact and symmetrical motor and sensory facial exam. No slurred speech, tongue deviation or tongue fasciculation noticed on exam.

The Muscoskeletal exam showed "Some restriction on neck movement exam flexing the neck laterally to the right side around 45 degrees. Tenderness in the right occipital and right upper trapezius area. Straight leg sign was positive on the right side around 70 degrees. Tenderness in both right and left wrist area and right lumbosacral area and right paraspinal area and right sciatic notch are.

Dr. Hamo's impression was
   1. Low back pain with pain distribution down to the right lower extremity-right lumbosacral radiculopaty should be considered.
   2. Neck pain with pain distribution down the right upper extremity. Right cervical radiculopathy should be considered.
   3. Bilateral hand pain and numbness...
   4. With the right lower extremity symptoms mononeuropathhy of right lower extremity should be considered
   5. Tendinitis and arthritis are contributing to prs symptoms of the upper extremities
   6. Headaches which seem to be neck related headache in nature
   7. Dizziness consistent with presyncope...
   8. History of fatigue with some response to Zoloft with some features of depression in the past...

Ms. Daugherty continued working and treating with Dr. Hamo and on October 26, 2004 Dr. Hamo notes "Pt has been complaining of neck pain, headache, low back pain with fatigue. MRI of the lumbar spine from October 22, 2004 revealed normal for age with degenerative changes present. MRI of the cervical spine revealed normal study on October 22, 2004. The exam was unremarkable and the plan was to increase Zoloft as coverage for depression and fatigue with other medication adjustments, blood work etc.

The visit of November 16, 2004 notes the blood work for fatigue was discussed with the patient with a negative MRI of cervical and lumbosacral spine. The exam was "Grossly intact extraocular movement and visual field. Intact symmetrical and sensory facial exam. MSE-100/100-both upper extremities 80-90-100- both opponens muscles. 80-90-100- right triceps and deltoid muscle restricted by pain. 100/100 both lower extremities. Right hip flexors restricted by pain. Cerebellar, gait and tandem gait exam was WNL." The plan was modification of medications with EEG study and restrictions regarding her neck, low back pain and CTS.

Again, Ms. Daugherty continued working with the complaints described above.

The follow up visit of December 14, 2004 with Dr. Hamo notes her history and also notes, "Pt. Has been having problems going to sleep at night. EEG study for further eval of memory problem-early features of dementia revealed normal study with a follow up planned for two months.

Your client then visited Dr. Hamo again on April 7, 2005 with a history that she was evaluated by Dr. Howorth with a diagnosis of tumor behind her left knee. Bursitis of both hip. Dr, Hamo also notes,

"Regarding her work up for further eval of headache and memory problem and dizziness- her carotid Doppler from March 2, 2005 revealed no significant stenosis. MRI of February 15, 2005 revealed minimal symmetrical areas of encephalomalcia which are tiny involving inferior aspect of the cerebralpeduncle bilaterally. Normal study otherwise which can be consistent with history of migraine headaches. Additionally, Zmyelin basic protein was 0.2 – WNL, aoligoclonal bands,-negative,. Cryptococcal antigen was negative VDRL of CFS was not reactive SPEP was WNL. CFS protein and India ink were negative. Further eval. of microangiopathis changes were noticed on the brain MRI included also lipid profile on March 1, 2005 which revealed cholesterol 211 with normal HDL. LDL was mildly elevated at 137.

The exam was noted as "Grossly intact extraocular movement and visual field exam. Intact and symmetrical motor and sensory facial exam. MSE – 100/100-both upper and both lower extremities, symmetrical. 80-90/100-both opponens muscles, right triceps and deltoid muscle. 100/100- both lower extremities. 80-90/100 both hip flexors. Cerebellar exam and exam and gait exam WNL." The plan was to continue adjusting and monitoring medications, the use of wrist splints, and continue on neck and back exercise twice a day as tolerated with a follow up visit in two months.

However, Ms. Daugherty visited Dr. Hamo one week later on April 14, 2005 and it was noted "Her headaches, neck pain and low back pain has been about the same, usually activity related. Pt. has been restricted by her fibromyalgia, chronic neck pain and low back pain. Unable to do much restricting her work."

The exams were relatively the same as the last visit consisting of "Grossly intact extraocular movement and visual field exam. Intact and symmetrical motor and sensory facial exam. MSE – 100/100 – both upper and both lower extremities, symmetrical. 80-90/100 – both opponens muscles, right triceps and deltoid muscle. 100/100 both lower extremities, 80-90/100 – right hip flexors. Cerebellar and gait exam WNL.

The plan notes;
1. After a long discussion regarding pt's restriction at work, the decision was made to proceed with processing for disability because pt's restriction by her neck pain, low back pain and fibromyalgia. Her current job does not provide her with restrictions. There are no light duty jobs available. She stated that she cannot work any more with her current job description.

7.Pt. to be on restrictions. Avoid repetitive and hard activity of right and left hand and wrist area and right lower extremity. Limited stopping, climbing and bending. May lift up to 20 pounds. Avoid sitting for longer than one hour at one time. Avoid standing for longer than ?5 minutes at one time.

Our medical staff reviewed these records on October 14, 2005 and opined, "Claimant with multiple subjective complaints without corresponding findings despite multiple x-rays and MRI's. The only test with positive results has been an EMG from 10/04 positive for mild to moderate carpal tunnel syndrome treated with splinting. Based on information on file claimant since the date of loss with light restrictions and limitations with occasional fingering.."

Subsequent to that review we received a copy of an office note from Dr. Stewart indicating he treated Ms. Daugherty on June 2, 2005 for a complaint "of painful b/l heel pain and chronic intense itching in your feet at night." The examination resulted in a diagnosis of Plantar Fasciitis with stretching instructions given along with a medial arch.

The additional information was reviewed with our medical staff on October 27, 2005, who opined, "Please see prior reviews for additional details new records document treated 6/2/05 for plantar fasciitis with follow up to be in two weeks, although these records were not sent until 10/18/05 there is no follow up note. Given this information it would appear that the exercise and shoe inserts resolved these complaints and restrictions and limitations previously reported of light with occasional fingering remain supported since date of loss with the exception of 6/2-05-6/16/05 when sedentary restrictions and limitations would have been reasonable."

Your client's file was then reviewed by John J. Zurick, M.Ed, LPC, CRC, CVE, Vocational Rehabilitation Specialist of our vocational staff who conducted an Own Occupation Review of the claimant's occupation and current physical restrictions to determine if the claimant is prohibited from performing her Own Occupation

Mr. Zurich further stated, "Based on my review and understanding of the information noted above, it is my professional opinion that the established work restrictions (with the exception of the 14 day period referenced above in 6/05) would be commensurate with the duties and demands of the claimant's occupation, per DOT criteria. Her documented capacity for work at the light exertion level with occasional fingering clearly and exactly matches the relevant parameters established for her occupation by the DOT."

On appeal you argue, "Ms. Daugherty is clearly eligible for her Long Term Disability benefits and we respectfully request that you immediately provide benefits for which she has paid your company for many years." In support of your position you presented information from Dr. Hamo.

With your appeal you included an undated and unsigned report, presumably from Dr. Hamo, an attending physician's statement, return to work and work restriction form, a CUNA Mutual Group attending physician form with office notes of 10/25/05, 11/21/05, 11/22/05, 12/22/05, 3/14/06, 3/21/06 and 3/22/06 all from Dr. Hamo.

In addition to our review, John E. Robinton, M.D., P.A., Board Certified American Board of Neurology & Psychiatry with added Qualifications in Geriatric Psychiatry, Forensic Psychiatry, and Addiction Psychiatry conducted an independent review of your entire file.

Dr. Robinton's medical review of your client's file includes the following;

> At your request, I reviewed the records forwarded to my attention on patient Carol Daugherty. She was initially seen in neurologic evaluation on 10/19/04 by Dr. Hamo. When she presented to his office, she noted a diagnosis of fibromyalgia which had been made by rheumatology. Ongoing symptomatology included neck pain, low back pain, bilateral hand and wrist pain and numbness. Initial neurologic examination revealed a question of weakness, though exam was unreliable because of pain. The patient was begun on treatment with Clonazepam and Zanaflex. EMG and nerve conduction studies were ordered as well as MRI of the lumbar spine.

Though MRI of the lumbar spine revealed degenerative changes, reportedly EMG performed by Dr. Hamo revealed the presence of radiculopathy. EMG and nerve conduction studies also revealed evidence of mild carpal tunnel syndrome bilaterally. There is no evidence of a generalized neuropathic process. Provigil was added. Extensive blood studies were performed which were unrevealing. On follow-up visit dated 11/16/04, an additional complaint of memory loss was offered, However, initial neurologic examination had documented memory was excellent. EEG was performed for evaluation of memory. Aricept was added to the regime. On follow-up visit, Aricept dosage was increased. MRI of the brain was performed. Reminyl was added to replace Aricept. Subsequent evaluation included spinal fluid analysis which was unremarkable. Cymbalta was added to the regime to replace Zoloft. Kepra was added on a visit of 6/2/05 for what were labeled "neuropathic symptoms". On the final follow-up visit which is documented of 8/9/05, medications included Reminyl, Zanaflex, Zoloft, and Clonazepam. The use of wrist splints for carpal tunnel was recommended.

A disability form dated 7/12/05 by Dr. Hamo states the patient is unable to work.

Dr. Robinton further commented

Neurologic examination as provided by Dr. Hamo described no consistent objective evidence of neurologic dysfunction. No consistent motor or sensory abnormalities are noted. Despite the reported memory problems, on formal mental status examination abnormalities are not documented.

Only a diagnosis of bilateral median neuropathy at the wrist presenting as carpal tunnel has been documented. Despite the reported memory problems, there is no documentation of memory difficulties. Despite the reported neuropathy, nerve conduction studies revealed no evidence of a generalized neuropathic process. Despite the reported complaints of lumbar radiculopathy, MRI of the lumbar spine fails to reveal evidence of a significant lesion which might be resulting in radiculopathy.

Based on his review, Dr. Robinton opined.

Only a diagnosis of carpal tunnel has been documented within my specialty. If this patient fails to respond to conservative treatment, then one would expect cure with surgical decompression of the median nerve, given the fact that a generalized condition which might have resulted in the median neuropathies has not been documented.

Regarding Ms. Daugherty's disability, Dr. Robinton states;

I find no evidence of a disabling condition within my specialty which would keep this patient out of work. I would expect she would be able to return back to work immediately without restrictions based on my review of the records. .

A short paragraph which is entitled To Whom It May Concern signed by Dr. Hamo on October 28, 2005, defines work restrictions which should include "she is to avoid repetitive and hard activity of the right and left hand in wrist area and right lower extremity. Limited stooping, climbing, and bending. May lift up to 20 pounds. Avoid sitting for more than one hour at a time. Avoid standing for no longer than 15 minutes at one time." Though he states in his notes she is unable to work, he does provide reasonable limitation for her return to work within that note.

Our medical staff reviewed the file and opined, "Claimant found to lack support for work limitations. In addition it is noted that although the treating neurologist Dr. Hamo reports claimant without work function he does provide restrictions and limitations. Based on record review claimant able to return to work without limitations.

Please refer to the **Benefit Provisions** section of the Policy which states:
**INSURING CLAUSE: We will pay a Monthly Benefit if an Insured:**

      (1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy;
      (2) is under the regular care of a Physician;
      (3) has completed the Elimination Period; and
      (4) *submits satisfactory proof of Total Disability to us.* (Emphasis Added)

In order to be eligible for benefits, there must be documentation of a physical or mental impairment which substantiates that you meet the group policy's definition of total disability as defined above. The duration of the Total Disability must be longer than the Elimination Period of 180 days.

In summary, based on our comprehensive review of the medical information provided, including the review of an independent physician, we have determined that your client was not "Totally Disabled" as defined by the group Policy at the time she ceased work on April 29, 2005, at which time she ceased being a member of an eligible class of employees.

The group Policy also states under "Schedule of Benefits" on page 1.0

      **ELIGIBLE CLASS:** Each active, Full-time, salaried employee except any person employed on a temporary or seasonal basis.

On page 2.0 of the policy it states,
    "Eligible Person" means a person who meets the Eligibility Requirements of this Policy.
    "Full-time" means working for you for a minimum of 28 hours during a person's regular work week.

And on page 5.0 of the policy it states,

      **ELIGIBILITY REQUIREMENTS:** A person is eligible for insurance under this Policy if he/she:
    (1)    is a member of an Eligible Class, as shown on the Schedule of Benefits page; and
    (2)    has completed the Waiting Period, as shown on the Schedule of Benefits page.

      **TERMINATION OF INDIVIDUAL INSURANCE: The insurance of an Insured will terminate on the first of the following to occur:**
    (1)    the first of the Policy month coinciding with or next following the date this Policy terminates;
    (2)    the first of the Policy month coinciding with or next following the date the Insured ceases to meet the Eligibility Requirements;
    (3)    the end of the period for which Premium has been paid for the insured; or

(4)     the first of the Policy month coinciding with or next following the date the Insured
        enters military service (not including Reserve or National Guard).

In conclusion, although your client suffered from physical conditions, there is nothing in the presented
medical information indicating that she was prevented from performing the required functional level of
her own occupation due to a physical condition at the time she ceased work on April 29, 2005 and
continuing through the elimination period. Consequently, we have determined the Claims Department
denial of LTD benefits of your client's claim was appropriate.

We regret that our decision could not have been more favorable to you, however, we are limited by the
provision of the Policy. Please be advised that our claim decision is now final, as you client has
exhausted any administrative remedies available to her under the terms of the Policy.

Nothing in this letter should be construed as a waiver of any of RSL's rights and defenses under the
above captioned policy, and all of these rights and defenses are reserved to the Company, whether or
not specifically mentioned herein.

We will, upon specific request and free of charge, provide copies of all documents, records, and/or
other information relevant to your client's claim for benefits. We will also, upon specific request and
free of charge, provide copies of any internal rule, guideline, protocol or other similar criterion (if any)
relied upon in making this determination.

In the event that your client's claim is subject to the Employee Retirement Income Security Act of
1974 ("the Act"), she has the right to bring a civil action under section 502 (a) of the Act following an
adverse benefit determination on review. Ms. Daugherty and her plan may have other voluntary
alternative dispute resolution options, such as mediation. One way to find out what may be available is
to contact your local U.S. Department of Labor Office and your State insurance regulatory agency.

Sincerely,

William F. Ross
Senior Benefit Analyst
Quality Review Unit

# RELIANCE STANDARD
Life Insurance Company

Disability Claims Department
P.O. Box 8330
Philadelphia, PA 19101-8330
(267) 256-3500
(800) 351-7500

July 27, 2006

Angela J. Hill, LLC
Attorney at Law
139 S. Broadnax Street
Dadeville, LA 36853-8251

Re:        Carol Daugherty
           Claim Number:        2005-236-113
           Policy Number:        LSC 99500

Dear Ms. Hill:

This letter serves as an update regarding the review of your client's claim for Long Term Disability benefits (LTD).

We have followed up to determine the status of the independent medical review of your client's file and we have been advised the physician has just returned from vacation.

Further, the report is expected to be sent to our office by the end of next week for our review.

Therefore, we are still in the process of investigating, and completing our review. We will be contacting you in the near future with an update or to inform you if additional information will be required.

Should you have any questions, please do not hesitate to contact me at 1-800-351-7500, extension 3862.

Thank you for your patience and cooperation during this review process.

Sincerely,

William F. Ross
Senior Benefit Analyst
Qualify Review Unit

a *DELPHI* company

# RELIANCE STANDARD
Life Insurance Company

Disability Claims Department
P.O. Box 8330
Philadelphia, PA 19101-8330
(267) 256-3500
(800) 351-7500

July 17, 2006

Angela J. Hill, LLC
Attorney at Law
139 S. Broadnax Street
Dadeville, LA 36853-8251

Re:　　　Carol Daugherty
　　　　　Claim Number:　　2005-236-113
　　　　　Policy Number:　　LSC 99500

Dear Ms. Hill:

This letter serves as an update regarding the review of your client's claim for Long Term Disability benefits (LTD).

As you are aware, your client's file has been referred for an independent medical review. We have contacted them for the results and await their response.

Therefore, we are still in the process of investigating, and completing our review. We will be contacting you in the near future with an update or to inform you if additional information will be required.

Should you have any questions, please do not hesitate to contact me at 1-800-351-7500, extension 3862.

Thank you for your patience and cooperation during this review process.

Sincerely,

William F. Ross
Senior Benefit Analyst
Qualify Review Unit

a *DELPHI* company

# RELIANCE STANDARD
Life Insurance Company

Disability Claims Department
P.O. Box 8330
Philadelphia, PA 19101-8330
(267) 256-3500
(800) 351-7500

June 8, 2006

Angela J. Hill, LLC
Attorney at Law
139 S. Broadnax Street
Dadeville, LA 36853-8251

Re:    Carol Daugherty
       Claim Number:    2005-236-113
       Policy Number:   LSC 99500

Dear Ms. Hill:

This letter serves as an update regarding the review of your client's claim for Long Term Disability benefits (LTD).

Under the Reliance Standard Life Insurance Company (RSL) guidelines your client is entitled to an independent review of the claim facts and the determination made regarding her eligibility for benefits. This review is conducted separately from the individual(s) who made the original claim determination. The review will not only address the basis for the original determination on the claim file but will also evaluate the claim facts in their entirety and determine if additional investigation is necessary in order to determine your client's eligibility for benefits under the group Policy.

RSL guidelines requires that we make a decision within 45 days of the date of the appeal but allows for an additional 45 days if circumstances do not permit us to make a decision within the initial 45 day time frame. Please allow this letter to serve as notice of our intention to take beyond 45 days to make a final decision on your client's appeal.

As you are aware, your client's file has been referred for an independent medical review.

Therefore, we are still in the process of investigating, and completing our review. We will be contacting you in the near future with an update or to inform you if additional information will be required.

Should you have any questions, please do not hesitate to contact me at 1-800-351-7500, extension 3862.

Thank you for your patience and cooperation during this review process.

Sincerely,

William F. Ross
Senior Benefit Analyst
Qualify Review Unit

# TELEPHONE CONVERSATION RECORD

Check here if Initial Interview __
*Circle all that apply:*    LIFE    WOP    LTD    STD    Other: _____

Insured name: Carol Daugherty                    SS #: _____
Claim Number: 2005 - 236 - 113          Policy Number: _____

Conversation with: Angela Hall - Attorney    Call taken/made by: _____
☐ Incoming Call    ☐ Outgoing Call    Telephone Number: 256-825-8251

## *Don't forget to include Date & Time!*

| Date | Time | |
|------|------|---|
| 5-26-06 | 2:43 P.M. | Spoke with attorney — She will review file — she may have additional info to send. I told her the file is out for "Peer Review". She will contact me next week & let me know if additional needed is forthcoming. |

AR 41

tcr9/97

# RELIANCE STANDARD
Life Insurance Company

Disability Claims Department
P.O. Box 8330
Philadelphia, PA 19101-8330
(267) 256-3500
(800) 351-7500

May 22, 2006

Angela J. Hill, LLC
Attorney at Law
139 S. Broadnax Street
Dadeville, LA 36853-8251

Re:        Carol Daugherty
           Claim Number:      2005-236-113
           Policy Number:     LSC 99500

Dear Ms. Hill:

This letter serves as an update regarding the review of your client's claim for Long Term Disability benefits (LTD).

We have reviewed your client's file with our medical staff and have determined an <u>independent</u> medical physician review is required at this time.

Accordingly, the file will be sent to a third party vendor to arrange for such a review.

Therefore, we are still in the process of investigating, and completing our review. We will be contacting you in the near future with an update or to inform you if additional information will be required.

Should you have any questions, please do not hesitate to let us know.

Sincerely,

William F. Ross
Sr. Benefit Analysis
Quality Review Unit
1-800-351-7500 Ext. 3862

a *DELPHI* company

AR 42



# *Angela J. Hill*
### ATTORNEY AT LAW

**Robin F. Reynolds, P.C.**
139 S. Broadnax St.
Dadeville, AL 36853-1701
Phone: 256.825.8251
Fax: 256.825.8201
robin_law@bellsouth.net

**Angela J. Hill, LLC**
139 S. Broadnax St.
Dadeville, AL 36853-1701
Phone: 256.825.8251
Fax: 256.825.8201
ajhill_law@bellsouth.net

May 8, 2006

Reliance Standard Life Insurance Company
Attn.: William Ross, Benefit Analyst
P.O. Box 8330
Philadelphia, PA 19101-8330

Re: Carol Daugherty
    Claim Number: 2005-236-113
    Policy Number: LSC 99500

Dear Mr. Ross:

Enclosed you will find the executed release authorizing Reliance to obtain information regarding my client, Carol Daugherty. Please advice if further assistance is needed from my office in order for you to review the denial of this policy.

Sincerely Yours,

Angela J. Hill
Attorney at Law

AJH/acc
enclosure

AR 43

*J# 2005-236-113*

**RELIANCE STANDARD**
Life Insurance Company

*a DELPHI company*

P.O. Box 8330
Philadelphia, PA 19101

## AUTHORIZATION FOR USE IN OBTAINING INFORMATION

NAME OF INSURED: *Carol Daugherty*
INSURED'S SSN:
POLICYHOLDER: *Russell Hosp*

To all physicians and other health care professionals, hospitals, other health care institutions, insurers, medical, hospital and prepaid health plans, pharmacies, employers, group policyholders, contract holders, governmental agencies (including but not limited to the Social Security Administration), private and/or public benefit plan administrators, and/or attorney representatives, including but not limited to covered entities and business associates under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the accompanying regulations:

You are authorized to provide Reliance Standard Life Insurance Company and/or its authorized administrators with information concerning medical care, advice, and/or treatment provided to me, the above named Insured, and/or any employment, salary and/or benefit-related information concerning me, the above named Insured. I understand that the disclosure of information may include disclosure of protected health information under HIPAA and the accompanying regulations, information regarding treatment for mental illness, the human immunodeficiency virus (HIV) and/or the use of drugs and alcohol. I also understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and will no longer be subject to protection under HIPAA and the accompanying regulations. A statement of Reliance Standard Life Insurance Company's privacy policy is available at www.rsli.com or upon request.

I understand that any such information will be used for the purpose of evaluating my claim for benefits. Upon request, I understand that I am entitled to receive a copy of this Authorization. This Authorization is valid from the date signed for the duration of the claim, and may be revoked by me at any time upon written request to the address above. A reproduction of this Authorization shall be considered as valid as the original.

_____5/3/06_____          _____Carol Daugherty_____
Date                                         Insured's Signature
**(If the Insured is unable to sign, an authorized person may sign.)**

_____          _____
Date                                         Authorized Person's Signature

Description of Authorized Person's authority to sign on behalf of Insured: _____

EF-1217

*Angela J. Hill*
ATTORNEY AT LAW
139 S. Broadnax Street
Dadeville, AL 36853-1701

MONTGOMERY AL 361

09 MAY 2006 PM 3 T

Reliance Standard Life Insurance Company
Attn.: William Ross, Benefit Analyst
P.O. Box 8330
Philadelphia, PA 19101-8330

19101+8330

AR 45

# RELIANCE STANDARD
Life Insurance Company

Disability Claims Department
P.O. Box 8330
Philadelphia, PA 19101-8330
(267) 256-3500
(800) 351-7500

May 5, 2006

Angela J. Hill, LLC
Attorney at Law
139 S. Broadnax Street
Dadeville, LA 36853-8251

Re:     Carol Daugherty
        Claim Number:      2005-236-113
        Policy Number:     LSC 99500

Dear Ms. Hill:

This will acknowledge receipt of your appeal of our denial of your client's Long- term disability (LTD) claim for benefits.

We have reviewed your client's appeal and have referred the file to our medical staff for review.

Therefore, we are still in the process of investigating, and completing our review. We will be contacting you in the near future with an update or to inform you if additional information will be required.

Should you have any questions, please do not hesitate to let us know.

Sincerely,

William F. Ross
Sr. Benefit Analysis
Quality Review Unit
1-800-351-7500 Ext. 3862

a *DELPHI* company

# APPEAL REFERRAL

Claimant Name:  Carol Daugherty

Claim Number: 2005-236-113

Policyholder:  Russell Hospital

Policy Number:  LSC 99500

Examiner:  Danielle Buggs

Date of Initial Denial: November 1, 2005

Phone Extension: 3652

Date of Appeal Received: April 24, 2006

Coverage:     ☐ Life     ☐ AD&D     ☒ LTD     ☐ STD     ☐ Other:

CAS Closed Status Code:  62

Reason Denied:  Based on the medical obtained in the claim file, there is no records on file from April 7, 2005 ill July 6, 2005 as claimant missed 4 appointments. Office note of April 7, 2005 does not support work impairment. According to the medical review conducted on October 14, 2005 the claimant with multiple subjective complaints without corresponding findings despite multiple x-rays and MRI's. However, the only test with positive results has been an EMG from October 2004 for mild to moderate carpal tunnel syndrome which was treated with a splint. Based on the file claimant since the date of loss with light restrictions and limitations with occassional fingering. Based on the information obtained, the claimant is not TD from performing her own occupation. Conducted a own occ review that revealed the following:

the established work restrictions (with the exception of the 14 day period referenced above in June 2005) would commensurate with duties and demands of the claimant's occupation, per her job description and the DOT. The documented capacity for work at the light exertion with occasional fingering clearly and exactly matches the relevant parameters established for her own occupation.

Additional Comments:

RECEIVED
APR 2 5 2006
CLAIMS ADMINISTRATION

EF-1125

# RELIANCE STANDARD
Life Insurance Company

Disability Claims Department
P.O. Box 8330
Philadelphia, PA 19101-8330
(267) 256-3500
(800) 351-7500

April 27, 2006

Angela J. Hill, LLC
Attorney at Law
139 S. Broadnax St.
Dadeville, AL 36853-8251

RE:   Carol Daugherty
      Claim Number:      2005-236-113
      Policy Number:     LSC 99500

Dear Ms. Hill,

We have received your letter requesting a review of the adverse benefit determination in the above claim.

The representative handling your request will be conducting a review of your claim file and will contact you if any additional information is needed or if there will be any delay.

Please also complete and return the enclosed authorization to William Ross, Benefit Analyst which will allow Reliance Standard Life's Quality Review Unit to obtain updated medical information if it is needed during the review of your appeal.

In the interim, if you have any new or additional information regarding your appeal, please contact William Ross, Benefit Analyst at (267) 256-3862.

Sincerely,

*Claims Department*

a ***DELPHI*** company



## *Angela J. Hill*
### ATTORNEY AT LAW

**Robin F. Reynolds, P.C.**
139 S. Broadnax St.
Dadeville, AL 36853-1701
Phone: 256.825.8251
Fax: 256.825.8201
robin_law@bellsouth.net

**Angela J. Hill, LLC**
139 S. Broadnax St.
Dadeville, AL 36853-1701
Phone: 256.825.8251
Fax: 256.825.8201
ajhill_law@bellsouth.net

March 14, 2006

Reliance Standard Life Insurance Company
Attn: Quality Review
P.O. Box 8330
Philadelphia, PA 19101-8330

Re: Claim No.: 2005.236-113
    Policy holder: Russell Hospital
    Policy number: LSC 99500

Dear Ladies and Gentleman:

Please be advised that my client, Carol Daugherty, is hereby requesting review of your denial of your eligibility for her long term disability benefits. Mrs. Daugherty is totally disabled and said disability is supported by medical findings.

Enclosed you will find records and statements regarding her condition which have been documented by her treating physician. Ms. Daugherty's primary disability is Fibromyalgia. Fibromyalgia is a medical condition which is best treated and diagnosed by a neurologist. Therefore, we contend that the records and statements from Dr. Wael Hamo should be given much more consideration than those of Dr. Graham Howorth, an Orthopedic Surgeon or Dr. Stewart, a Podiatrist. Dr. Hamo clearly states that Carol Daugherty is "unable to work." We completely disagree with your statement that Dr. Hamo's records contained "minimal findings or normal results."

Your denial of my client's long term disability cites that Dr. Howorth's records do not support work impairment. Again, Dr. Howorth is an Orthopaedic Surgeon and is not in a position to make an assessment regarding an impairment from Fibromyalgia. Furthermore, your denial references his notations of "4 missed appointments." This reference is totally irrelevant. As I am sure you are aware, this is not a prerequisit for coverage.

Ms. Daugherty is clearly eligible for her Long Term Disability benefits and we respectfully request that you immediately provide the benefits for which she has paid your company for many years.

In support of this request, please once again note the following:

1. Medical documentation from her primary health care provider who treats

**AR 49**

her for her disability condition clearly confirms that your insured/my client is "totally disabled" and unable to perform the natural duties of her regular occupation; a buyer. See Exhibit "A". Your denial fails to reference the specific findings of Ms. Daugherty's total disability by Dr. Wael Hamo, M.D. which are included in this Exhibit.

Please advise if you need further assistance with this matter.

Sincerely yours,

Angela J. Hill
Attorney at Law

AJH/rmn

enclosure

cc: C. Daugherty

# CLAIMS REFERRAL

| | |
|---|---|
| From:  Danielle Buggs | To: Martha |
| Department:  Long Term Disability | Department:  Long Term Disability |
| Extension: 3652 | Date: 10/28/05 |

| | |
|---|---|
| Insured's Name:  Carol Daugherty | Claim Number:  2005-236-113 |
| Policyholder:  Russell Hospital | Policy Number:  LSC 99500 |

Coverage
(Check all that apply):  ☐ Life     ☐ AD&D     ☒ LTD     ☐ STD     ☐ Other:

Reason For Referral:  ☐ Medical   ☐ Underwriting  ☐ Legal   ☒ Other: denial

Claim Facts:

54 year old female
occ: buyer
dx: low back pain

based on the medical obtained in  the claim file, there is no records on file from 4/7/05 till 7/6/05 as claimant missed 4 appointments. Office note of 4/7/05 does not support work impairment. According to the medical review conducted on October 14, 2005 the claimant with multiple subjective complaints without corresponding findings despite multiple x-rays and MRI's. However, the only test with positive results has been an EMG from October 2004 for mild to moderate carpal tunnel syndrome which was treated with a splint. Based on the file claimant since the date of loss with light restrictions and limitations with occassional fingering.

Based on the information obtained, the claimant is not TD from performing her own occupation. Conducted a owr occ review that revealed the following:

the established work restrictions (with the exception of the 14 day period referenced above in June 2005) would commensurate with duties and demands of the claimant's occupation, per her job description and the DOT. The documented capacity for work at the light exertion level with occasional fingering clearly and exactly matches the relevant parameters established for her own occupation.

Examiner's Recommendation:

1. denial

Reply: NO treatment At DOL 4/30 or 5/2 - till 6/2 -
l agree w/ Denial - As ee did not have
treatment when she stopped working, findings
recd did not supp t.
M. J. Mc____   10/? a/2005

EF-1150

AR 51

**RELIANCE STANDARD**
Life Insurance Company

*a DELPHI company*

2001 Market Street, Suite 1500
Philadelphia, PA 19103

## AUTHORIZATION FOR USE IN OBTAINING INFORMATION

NAME OF INSURED: *Carol Jean Daugherty*

INSURED'S SSN: *266 04 7470*

POLICYHOLDER: *Carol J. Daugherty*

To all physicians and other health care professionals, hospitals, other health care institutions, insurers, medical, hospital and prepaid health plans, pharmacies, employers, group policyholders, contract holders, governmental agencies, private and/or public benefit plan administrators, and/or attorney representatives, including but not limited to covered entities and business associates under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the accompanying regulations:

You are authorized to provide Reliance Standard Life Insurance Company and/or its authorized administrators with information concerning medical care, advice, and/or treatment provided to me, the above named Insured, and/or any employment, salary and/or benefit-related information concerning me, the above named Insured. I understand that the disclosure of information may include disclosure of protected health information under HIPAA and the accompanying regulations, information regarding treatment for mental illness, the human immunodeficiency virus (HIV) and/or the use of drugs and alcohol. I also understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and will no longer be subject to protection under HIPAA and the accompanying regulations. A statement of Reliance Standard Life Insurance Company's privacy policy is available at www.rsli.com or upon request.

I understand that any such information will be used for the purpose of evaluating my claim for benefits. Upon request, I understand that I am entitled to receive a copy of this Authorization. This Authorization is valid from the date signed for the duration of the claim, and may be revoked by me at any time upon written request to the address below. A reproduction of this Authorization shall be considered as valid as the original.

*9/3/05*
Date

*Carol Daugherty*
Insured's Signature

**(If the Insured is unable to sign, an authorized person may sign.)**

_____
Date

_____
Authorized Person's Signature

Description of Authorized Person's authority to sign on behalf of Insured: _____

_____

Reliance Standard Life Insurance Company
P. O. Box 8330, Philadelphia, PA 19101-8330

EF-1217

**RELIANCE STANDARD**
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103

a *DELPHI* company

## AUTHORIZATION FOR USE IN OBTAINING INFORMATION

NAME OF INSURED: *Carol Jean Daugherty*

INSURED'S SSN: *266 04 7470*

POLICYHOLDER: *Carol J. Daugherty*

To all physicians and other health care professionals, hospitals, other health care institutions, insurers, medical, hospital and prepaid health plans, pharmacies, employers, group policyholders, contract holders, governmental agencies, private and/or public benefit plan administrators, and/or attorney representatives, including but not limited to covered entities and business associates under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the accompanying regulations:

You are authorized to provide Reliance Standard Life Insurance Company and/or its authorized administrators with information concerning medical care, advice, and/or treatment provided to me, the above named Insured, and/or any employment, salary and/or benefit-related information concerning me, the above named Insured. I understand that the disclosure of information may include disclosure of protected health information under HIPAA and the accompanying regulations, information regarding treatment for mental illness, the human immunodeficiency virus (HIV) and/or the use of drugs and alcohol. I also understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and will no longer be subject to protection under HIPAA and the accompanying regulations. A statement of Reliance Standard Life Insurance Company's privacy policy is available at www.rsli.com or upon request.

I understand that any such information will be used for the purpose of evaluating my claim for benefits. Upon request, I understand that I am entitled to receive a copy of this Authorization. This Authorization is valid from the date signed for the duration of the claim, and may be revoked by me at any time upon written request to the address below. A reproduction of this Authorization shall be considered as valid as the original.

_9/3/05_
Date

_Carol Daugherty_
Insured's Signature

**(If the Insured is unable to sign, an authorized person may sign.)**

_____
Date

_____
Authorized Person's Signature

Description of Authorized Person's authority to sign on behalf of Insured: _____

_____

Reliance Standard Life Insurance Company
P. O. Box 8330, Philadelphia, PA 19101-8330

EF-1217

AR 53

**RELIANCE STANDARD**
Life Insurance Company

*a DELPHI company*

2001 Market Street, Suite 1500
Philadelphia, PA 19103

## AUTHORIZATION FOR USE IN OBTAINING INFORMATION

NAME OF INSURED: *Carol Jean Daugherty*

INSURED'S SSN: *266 04 7470*

POLICYHOLDER: *Carol J. Daugherty*

To all physicians and other health care professionals, hospitals, other health care institutions, insurers, medical, hospital and prepaid health plans, pharmacies, employers, group policyholders, contract holders, governmental agencies, private and/or public benefit plan administrators, and/or attorney representatives, including but not limited to covered entities and business associates under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the accompanying regulations:

You are authorized to provide Reliance Standard Life Insurance Company and/or its authorized administrators with information concerning medical care, advice, and/or treatment provided to me, the above named Insured, and/or any employment, salary and/or benefit-related information concerning me, the above named Insured. I understand that the disclosure of information may include disclosure of protected health information under HIPAA and the accompanying regulations, information regarding treatment for mental illness, the human immunodeficiency virus (HIV) and/or the use of drugs and alcohol. I also understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and will no longer be subject to protection under HIPAA and the accompanying regulations. A statement of Reliance Standard Life Insurance Company's privacy policy is available at www.rsli.com or upon request.

I understand that any such information will be used for the purpose of evaluating my claim for benefits. Upon request, I understand that I am entitled to receive a copy of this Authorization. This Authorization is valid from the date signed for the duration of the claim, and may be revoked by me at any time upon written request to the address below. A reproduction of this Authorization shall be considered as valid as the original.

*9/3/05*
_____
Date

*Carol Daugherty*
_____
Insured's Signature

**(If the Insured is unable to sign, an authorized person may sign.)**

_____
Date

_____
Authorized Person's Signature

Description of Authorized Person's authority to sign on behalf of Insured: _____

_____

Reliance Standard Life Insurance Company
P. O. Box 8330, Philadelphia, PA 19101-8330

EF-1217

## CLAIM FILE NOTES/UPDATED MANAGEMENT PLAN

Examiner:  Danielle Buggs

Claimant: Carol J. Daugherty

Date: 10/17/05

Claim Number: 2005-236-113

Conducted a medical review on October 14, 2005 that revealed the following:

Claimant with multiple subjective complaints without corresponding findings despite mulitple x-rays and MRI's. The only test with positive results has been an EMG from 10/04 positive for mild to moderate carpal tunnel syndrome treated with splinting. Based on information on file claimant since the date of loss with ligh restrictions and limitations with occasional fingering.

Send out 2nd and final result for Dr. Douglas Stewart.

Recommend the following:

1. send out the a 2nd and final request to Dr. Douglas Stewart giving the treating physician 15 days to respond and sending the claiamnt a delay letter advising if we do not receive the infomration witin 15 days, the file will be closed.

EF-1316

AR 55

## CLAIM FILE NOTES/UPDATED MANAGEMENT PLAN

Examiner:  Danielle Buggs

Date: 9/29/05

Claimant: Carol J. Daugherty

Claim Number: 2005-236-113

Conducted a medical review on September 29, 2005 that revealed the following:

There are no records on file from 4/7/05 till 7/6/05 as claimant missed 4 appointments. Office note of 4/7/05 does not support work impairment. Please determine all physicians claimant has seen since 4/1/05 and obtain records and return when all information received. Based on currently available information O am unable to assess any work impairment.

Recommend before closing the file, to wait for the medical records requested from the claimant other treating physicians.

EF-1316

## CLAIM FILE NOTES/UPDATED MANAGEMENT PLAN

Examiner: _Danielle Briggs_          Date: _8·30·05_

Claimant: _Carol J. Daugherty_     Claim Number: _2005-236/13_

- Dr. Wael Hanus
  209 W. Spring Street
  Sylacauga, AL 35150
  10·14·04 to present

- Dr. Graham Howorth
  1120 Airport Drive
  Alexander City, AL 35010
  3·15·05 to present

- Dr. Douglas Stewart
  1649 Hwy 22
  Ste #1
  Alexander City, AL 35010
  6·2·05 to present.

1- STD benefits
2- payroll records one month prior
3- enrollment card

CFN(10/97)

AR 57

**RELIANCE STANDARD**
Life Insurance Company

a *DELPHI* company

2001 Market Street, Suite 1500
Philadelphia, PA 19103

### AUTHORIZATION FOR USE IN OBTAINING INFORMATION

NAME OF INSURED: *Carol Jean Daugherty*

INSURED'S SSN: *266 04 7470*

POLICYHOLDER: *Carol J. Daugherty*

To all physicians and other health care professionals, hospitals, other health care institutions, insurers, medical, hospital and prepaid health plans, pharmacies, employers, group policyholders, contract holders, governmental agencies, private and/or public benefit plan administrators, and/or attorney representatives, including but not limited to covered entities and business associates under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the accompanying regulations:

You are authorized to provide Reliance Standard Life Insurance Company and/or its authorized administrators with information concerning medical care, advice, and/or treatment provided to me, the above named Insured, and/or any employment, salary and/or benefit-related information concerning me, the above named Insured. I understand that the disclosure of information may include disclosure of protected health information under HIPAA and the accompanying regulations, information regarding treatment for mental illness, the human immunodeficiency virus (HIV) and/or the use of drugs and alcohol. I also understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and will no longer be subject to protection under HIPAA and the accompanying regulations. A statement of Reliance Standard Life Insurance Company's privacy policy is available at www.rsli.com or upon request.

I understand that any such information will be used for the purpose of evaluating my claim for benefits. Upon request, I understand that I am entitled to receive a copy of this Authorization. This Authorization is valid from the date signed for the duration of the claim, and may be revoked by me at any time upon written request to the address below. A reproduction of this Authorization shall be considered as valid as the original.

_9/3/05_
Date

_Carol Daugherty_
Insured's Signature

**(If the Insured is unable to sign, an authorized person may sign.)**

_____
Date

_____
Authorized Person's Signature

Description of Authorized Person's authority to sign on behalf of Insured: _____

_____

Reliance Standard Life Insurance Company
P. O. Box 8330, Philadelphia, PA 19101-8330

EF-1217

CLAIM MANAGEMENT PLAN

Claimant Name: _Carol J. Daugherty_          Claim #: _2005-236.113_

Date of Loss: _4·30·05_                      Any Occ Date: _10·27·08_

Claim Synopsis: _54 year old female_
_Occ: Buyer_
_dx: low back pain_

Primary Plan Direction: _following_
_1- STD benefits_
_2. payroll records - one month prior_
_3. enrollment card_
_4 request medical records_
_5. conduct telephone interview_

Examiner Name: _____   Date: _____

CMP(10-37)

## LTD CLAIM FACE SHEET

| <u>Claim Number</u> | <u>Policy #</u> | <u>Policy Eff. Date</u> | <u>Date of Disability</u> | <u>Certificate #</u> |
|---|---|---|---|---|
| 2005-236-113 | 99500 | 1.1.97 | 4-28-0 4-30-05 | 266.04.7470 |

| Date Claim Received: Set Up: | <u>Service Waiting Period</u> N/A | <u>Date of Hire</u> 4-23-84 | <u>Occupation</u> Buyer | <u>Individual Eff. Date</u> 1.1.97 |
|---|---|---|---|---|

| <u>State</u> AL | <u>Sex</u> F | Cause Code AE | <u>Diagnosis Code</u> 780 | <u>Diagnosis</u> low back pain | <u>Date of Birth</u> 8.9.51 | Age @ onset of Disability 54 | <u>Elimination Period</u> # of Days: 180 Benefits Begin: 10.27.05 |
|---|---|---|---|---|---|---|---|

**Insured's Name/Address/Telephone #**

Carol J. Daugherty
Rt 3 Box 955-C
Goodwater, AL 35072
256-839.5265

Mail To:          Pay To:

**Policyholder's Name/Address/Telephone # & Correspondents Name**

Russell Hospital
Attn: Cindy Whately
1506 Highway 280 By Pass
Alexander City, AL 35011

**Policy Provisions:**
Class 1
Benefit %: 60
All-Source: _____ Backdoor: _____
Max. $ 6,000
Min. $ 100
Offset Integration: full 70
Contribution: _____ % ER, 100 % EE  Pre or (Post)
Rehab. 50 Standard or Mandatory
Cola N/A %
Surv. Benefit 3 Lump Sum or Monthly Inc.
Interruption Period: 30
Def. Full-Time: 28

**Definition of Disability:** AL/AL
Partial:
Residual:
Own Occ 3 Years
Definition of Disability:

**Yes or No**

| | | |
|---|---|---|
| ☑ | ☐ | M/N 2 years |
| ☑ | ☐ | A/D 2 years |
| ☑ | ☐ | Pre-X 12/6/84 Dates: _____ |
| ☑ | ☐ | NLNG/COC |
| | | Prior Carrier: _____ |
| | | Prior Carrier Eff. Date: _____ |
| ☐ | ☑ | Transfer Coverage |
| ☑ | ☐ | Specific Indemnity |
| ☐ | ☐ | Dis. Freeze |
| ☐ | ☐ | Supp. Pension |
| ☐ | ☐ | Work Incent/Child Care _____ Months |
| ☐ | ☐ | Living Benefit Rider |
| ☐ | ☐ | Catastrophic Care Benefit |
| ☑ | ☐ | Worksite Modification |
| ☐ | ☐ | Other Limitations of Benefits |
| ☐ | ☐ | FMLA |
| ☑ | ☐ | Maternity as any other illness |

| <u>Own Occ End Date:</u> 10.27.08 | <u>Termination Date:</u> 66 2.9.2017 | <u>Prognosis:</u> unknown | <u>ESSD Begins:</u> 10.1.05 | <u>FICA End Date:</u> 11.1.05 |
|---|---|---|---|---|

**Financial Information:**

Hourly Rate x 4.333 x # hour/week = $_____

Monthly Salary: _____

Monthly Benefit: _____

Net Monthly Benefit: _____
(Prior to deductions for Taxes)

Premium Paid to Date: 8.05

**Offsets:**

| ESSD: $_____ | DSSD: $_____ |
|---|---|
| PSSD: $_____ | State Disability : $_____ |
| WC: $_____ | Other: $_____ |
| STD: $_____ | **Taxes:** |
| Pension: $_____ | FIT: $_____ |
| Salary Cont.: $_____ | State Tax: $_____ |

Other Coverage: NOC

Payment Calculation Worksheet

Claimant: _____                    Pre-disability earnings: _____

Claim Number: _____                    % of Benefit: _____
                                                 (Gross Monthly Benefit)

Benefit Period:    To: _____            70% of Benefit:
                                                 (For 70% Backdoor and
                   From: _____             70% All Source Calculations)

---

## OFFSETS:

Awarded Social Security (182): $ _____        Dependent Social Security: $ _____

Estimated Social Security (092): $ _____      Pension or Retirement: $ _____

Salary Continuance (089): $ _____             State Disability (084): $ _____

Workers' Compensation (083): $ _____

## CALCULATIONS:

**1) Full Family Direct:**

| | |
|---|---|
| $ _____ | Gross Monthly Benefit |
| -$ _____ | Offset |
| -$ _____ | Offset |
| =$ _____ | Net Monthly Benefit |

**2) 70% Backdoor:**

| | |
|---|---|
| $ _____ | Gross Monthly Benefit |
| +$ _____ | Offset |
| +$ _____ | Offset |
| =$ _____ | Subtotal |
| -$ _____ | 70% of Salary |
| =$ _____ | Excess Offset |
| NMB = | GMB |
| - _____ | Primary Social Security |
| - _____ | Excess |
| $ _____ | NMB |

**3) 70% Allsource:**

| | |
|---|---|
| $ _____ | Gross Monthly Benefit |
| +$ _____ | Offset |
| +$ _____ | Offset |
| | Subtotal |
| -$ _____ | 70% |
| =$ _____ | Excess |
| NMB = | GMB |
| | Excess |
| | NMB |

2501 Parkway, Philadelphia, Pennsylvania 19130-2499
(215) 787-4000
(800) 351-7500

AR 61

**ELIMINATION PERIOD**                                    **ELIGIBILITY**

| REQUIREMENT | YES | NO | WAIVED | PLAN & FOLLOW-UP |
|---|---|---|---|---|
| Worker's Comp. | | | | |
| Primary SSD | | | | |
| Family SSD | | | | |
| Salary | | | | |
| Short Term Disability | | | | |
| State Disability | | | | |
| Other offset | | | | |
| Employee Statement | | | | |
| Employer Statement | | | | |
| Attending Physician's Statement | | | | |
| Job Description | | | | |
| Enrollment Card | | | | |
| Independent Medical Exam | | | | |
| Narrative/Records | | | | |
| Hospital Records | | | | |
| Late Submission | | | | |
| Attendance Records | | | | |
| Pre-Existing? | | | | |
| Competency? | | | | |
| NL/NG - Transfer or Coverage | | | | |
| Reinsurance | | | | |
| ASO Procedures | | | | |
| DOD from LDW | | | | |

**RECOMMENDED ACTION:**



Initials:          Date:


**APPROVAL COMMENTS:**



Initials:          Date:


AR 62

# RELIANCE STANDARD LTD Digest Report

Report Run
Friday, December 03, 2004   /        5:55:43 AM
                              v2.0

| Policy Number: | 099500 | version: | 15 | Effective Date: | 11/1/04 |
|---|---|---|---|---|---|
| Company: | RSL | | | Expiry Date: | 12/31/2999 |

## Client/Admin Information

*Nov*

| | |
|---|---|
| Client Name: | RUSSELL HOSPITAL |
| Client Street Address: | 1506 HIGHWAY 280 BY-PASS |

| | | | | | |
|---|---|---|---|---|---|
| Client City: | ALEXANDER CITY | Client State: | AL | Client Zip Code: | 3501105 |
| Phone Number: | 2053297394 | | | | |
| Executive Correspondent Name: | FRANK HARRIS | | | | |
| Executive Correspondent Title: | EXECUTIVE | | | | |
| Routine Correspondent Name: | JANE SHERMAN | | | | |
| Routine Correspondent Title: | ROUTINE | | | | |
| Routine Correspondent Street Address: | P.O. BOX 939 | | | | |
| Routine Correspondent City: | ALEXANDER | Correspondent State: | AL | Correspondent Zip Code: | 350110939 |
| SIC Code: | 8062 | | | | |
| FEIN: | 630385130 | | | | |
| NAICS Code: | | | | | |
| Nature of Business: | HOSPITAL | | | | |

## Policy Information:

| | | | |
|---|---|---|---|
| Original Effective Date: | 01/01/1997 | Version Effective Date: | 11/01/2004 |
| Expiry Date: | 12/31/2999 | Policy Anniversary Date: | 1/01 |
| Next Renewal Date: | 01/01/2006 | Estimated Annual Premium: | 33081.63 |
| Policy Status: | ACTIVE | Premium Due Day: | 1 |
| Eligible Number of Lives: | 300 | Grace Period: | 31 |
| Risk Size: | 6 | Number of Bill Groups: | 1 |
| Premium Mode: | Monthly | Brochure Product: | No |
| Premium Due - in Advance or Arrears: | Advance | RSL Trust?: | No |
| Client State Tax Code: | 01 | | |
| Type of Billing: | ListBill | | |
| Small Group: | No | | |
| Claim Dis. Checks: | Claimant-Copy to Policyholder | | |

## RSO/Sales Rep Information

| | | | |
|---|---|---|---|
| RSO: | ATL | Sales Rep Name: | Monte Steen |
| Sales Rep Code: | 80 | | |
| Sales Rep Share Percentage: | 100 | | |

AR 63

Report Run

# *RELIANCE STANDARD* LTD Digest Report

Friday, December 03, 2004    /    5:55:43 AM
v2.0

## Agent Information

| | | | | |
|---|---|---|---|---|
| Is this the Writing Agent?: | No | | | |
| Agent Code: | 273286 | | | |
| Agent Name: | NO ASSIGNED AGENT | | | |
| Agent Street Address: | R S L INC CO /AGENCY DEPT 12TH FL | | | |

| | | | | |
|---|---|---|---|---|
| Agent City: | PHILA | Agent State: | PA | |
| Agent Phone: | 2672563979 | Agent Zip Code: | 1910300000 | |
| Agent Tax Identification: | | Agent Social Security Number: | 999999999 | |
| Agent Type: | Individual | Agent Plan Code: | | |
| Agent Share Percentage: | 0 | Agent Commission Percentage: | 0 | |
| Agent Fee: | 0 | Agent Fee Percentage: | 0 | |
| Agent Annualization Percentage: | 0 | Agent Override Percentage: | 0 | |

| | | | | |
|---|---|---|---|---|
| Is this the Writing Agent?: | Yes | | | |
| Agent Code: | 050673 | | | |
| Agent Name: | MICHAEL REA MEREDITH | | | |
| Agent Street Address: | C/O WILLIS CORROON CORP OF GEORGIA | | | |
| | 100 MANSELL COURT E STE 200 | | | |

| | | | | |
|---|---|---|---|---|
| Agent City: | ROSWELL | Agent State: | GA | |
| Agent Phone: | 7706402940 | Agent Zip Code: | 3007600000 | |
| Agent Tax Identification: | | Agent Social Security Number: | 549378661 | |
| Agent Type: | Individual | Agent Plan Code: | | |
| Agent Share Percentage: | 100 | Agent Commission Percentage: | 20 | |
| Agent Fee: | 0 | Agent Fee Percentage: | 0 | |
| Agent Annualization Percentage: | 0 | Agent Override Percentage: | 0 | |

AR 64

Report Run

# RELIANCE STANDARD LTD Digest Report

Friday, December 03, 2004    /    5:55:43 AM
v2.0

## Special Administrative

Class: 099, Contract_Class.CASE_remarks:
1. THE REASON WE HAVE MADE THIS EXCEPTION IS THE CASE WAS WRITTEN ORIGINALLY AS A
2. VLTD CASE. THERE WAS AN ERROR IN THE PRINTING OF THE BROCHURES THAT WERE USED
3. TO ENROLL THE GROUP. RSL PRINTED THE BROCHURE & THUS WE WANTED TO HONOR THE
4. RATES. OUR SOLUTION WAS TO WRITE OUR STANDARD LTD PRODUCT WITH A 45% MINIMUM
5. PARTICIPATION REQUIREMENT.

AR 65

Report Run

# RELIANCE STANDARD LTD Digest Report

Friday, December 03, 2004      /          5:55:43 AM
v2.0

## Special Administrative

SpecialProvison:
THE EMPLOYEES ARE CURRENTLY ON VLT 10079
SEE BARBARA CARPENTER WITH ANY PROBLEMS

PER BILL KEEN, POLICYHOLDER CAN MAKE 13 PAYMENTS. WILL HAVE TO MAKE COPY OF
FIRST BILL TO MAKE THE 13TH PAYMENT. POLICYHOLDER MUST WRITE PAY PERIOD AT THE
TOP OF THE BILL.

1/6/98--PER APPROVAL OF KATHY WICHERT.  RENEWAL DATE IS CHANGED TO 1/1/99 (WAS
4/1/98).

AR 66

**RELIANCE STANDARD** LTD Digest Report

Report Run

Friday, December 03, 2004      /      5:55:44 AM
v2.0

## General Eligibility

Class Description:          Full-time:


Excluded Person:          No
Comments:

Number of Classes:          1
Covered Persons:          134
Eligibility - Domestic Partner:  No
Comments:

Employees Actively at Work?          Yes
Comments:


Grandfather Employee Not Active?          No
Options:


Data:


Employee or Other:          Employee:


Dependent Definition:          Standard:


Continuation of Coverage:          Standard:


Full-Time Hours:          28
Part-Time Hours:

AR 67

Report Run

**RELIANCE STANDARD** LTD Digest Report

Friday, December 03, 2004     /     5:55:44 AM
v2.0

| | |
|---|---|
| **Class number:** | **01** |
| Class description: | Each Active Full-Time Employee |

| | |
|---|---|
| Class Employee or Other: | Employee |
| Class Employee excluded: | No |
| Comments: | |

| **Individual information** | | **Earnings definition information:** | |
|---|---|---|---|
| Service waiting period: | No Differentiation: | | |
| | | | |
| Present 1: | None | Earnings determination: | The Day: 0 |
| Present 2: | None | Earnings definition - basis: | Other |
| Future 1: | 60 Days | Apply averging to whom: | |
| Future 2: | | What is being averaged: | |
| Full-time hours: | 28 | Average on Period: | |
| Part-time hours: | 0 | W-2 earnings include: | |
| | | 401k Info: | 401k |
| Individual effective date: | First of the mo coinciding with or next following | | |
| Individual termination date: | First of the month coinciding with or next following | | |
| Earnings benefit change date: | The Date | | |
| Age benefit change date: | The Date | | |
| Class benefit change date: | The Date | | |
| Reinstatement date: | Waiting Period Applies:   months | | |

AR 68

# RELIANCE STANDARD Digest Report

## LTD Benefit Plan:

| | Core | Class 1 -> 01 BuyUp1 | BuyUp2 | Core | Class 2 -> BuyUp1 | BuyUp2 | Core | Class 3 -> BuyUp1 | BuyUp2 |
|---|---|---|---|---|---|---|---|---|---|
| Benefit Percentage (1) | 60 | | | | | | | | |
| Maximum Monthly Benefit | 6000 | | | | | | | | |
| Benefit Duration | ADEA-B+AGE | | | | | | | | |
| Minimum Monthly Benefit | 100 | | | | | | | | |
| Elimination Period (days) | 180 | | | | | | | | |
| Integration Offset | FULL | | | | | | | | |
| Integration Offset Percentage | 70 | | | | | | | | |
| Interruption Period | 30 DAYS | | | | | | | | |
| Family Medical Leave | No | | | | | | | | |
| Own Occ Period | 36mos | | | | | | | | |
| Partial Disability | YES | | | | | | | | |
| Residual Disability | YES | | | | | | | | |
| Non-hazardous occupation wording Included | NO | | | | | | | | |
| Rate Guarantee (months) | 12 | | | | | | | | |
| SIC Code | 8062 | | | | | | | | |
| Mental & Nervous | 2 | | | | | | | | |
| Drug / Alcohol | 2 | | | | | | | | |
| Pre-Existing Condition Limit | 12/6/24 | | | | | | | | |
| Pre-Ex Future Employees Only | NO | | | | | | | | |
| Pre-Existing on Increased Benefits | NONE | | | | | | | | |
| Pre-Existing on Open Enrollment | 12/6/24 | | | | | | | | |
| Pre-Ex Increase Benefit Amount | | | | | | | | | |
| Pre-Ex Increase Benefit Date | | | | | | | | | |
| Employee Contribution Amount | 0 | | | | | | | | |
| Employee Contribution Percent | 100 | | | | | | | | |
| Employer Contribution Amount | 0 | | | | | | | | |
| Employer Contribution Percent | 0 | | | | | | | | |
| Employee Benefit Contic. Taxable | NO | | | | | | | | |
| Integration Offset Items | STANDARD | | | | | | | | |
| Participation Requirements | 44.7 | | | | | | | | |
| Maternity | FULL COVERAGE | | | | | | | | |
| EOI Excess Amount/Other | | | | | | | | | |
| Extended Disability Rider | No | | | | | | | | |
| Section 125/Cafeteria Plan | NO | | | | | | | | |
| Halfway Proof of Disability | NO | | | | | | | | |
| Pilots Definition | NO | | | | | | | | |
| Policyholder Responsibility | YES | | | | | | | | |
| Rehab Benefit | Manag. Red. | | | | | | | | |
| Rehab Offset Percentage | 50% | | | | | | | | |
| Specific Indemnity | YES | | | | | | | | |
| Transfer of Coverage | NO | | | | | | | | |
| Worksite Benefit | NO | | | | | | | | |
| Worksite Maximum Amount | 0 | | | | | | | | |
| Worksite Med Percentage | 0 | | | | | | | | |

# RELIANCE STANDARD Digest Report

| | |
|---|---|
| WorldNet | No |
| Limited Benefit Period (months) | NONE |
| Survivor Benefit | NONE |
| Lump Sum (number of payments) | Lump Sum |
| Monthly Income Duration (months) | 3 |
| Monthly Income Percentage | NONE |

Report Run

Friday, December 03,  /  5:55:44 AM

# RELIANCE STANDARD Digest Report

Maximum Insurable Salary:

Class 1, Plan-Type 1:10000

Report Run

Friday, December 03,   /   5:55:44 AM

AR 71

# RELIANCE STANDARD Digest Report

Evidence of Insurability:

Class 1, Plan-Type 1: Late Applicant,Open Enrollment,Requirements Not Met

Class 1, Plan-Type 2:

Class 1, Plan-Type 3:

Class 2, Plan-Type 1:

Class 2, Plan-Type 2:

Class 2, Plan-Type 3:

Class 3, Plan-Type 1:

Class 3, Plan-Type 2:

Class 3, Plan-Type 3:

Class 4, Plan-Type 1:

Class 4, Plan-Type 2:

Class 4, Plan-Type 3:

Report Run

**RELIANCE STANDARD** LTD Digest Report

Friday, December 03, 2004    /    5:55:45 AM
v2.0

## Rating Information

Class    1 /

| | |
|---|---|
| Sic Code: | 8062 |
| Final manual rate: | 1.1626 |
| Sold rate: | 0.88 |
| Rate guarantee period: | 4 |
| Prepare W2: | No |

| | |
|---|---|
| Step age band 18-24 | 0.22 |
| Step age band 25-29 | 0.26 |
| Step age band 30-34 | 0.35 |
| Step age band 35-39 | 0.51 |
| Step age band 40-44 | 0.62 |
| Step age band 45-49 | 1.06 |
| Step age band 50-54 | 1.51 |
| Step age band 55-59 | 2.25 |
| Step age band 60-64 | 2.1 |
| Step age band 65-69 | 1.38 |
| Step age band 70-74 | 0 |
| Step age band 70-99 | 0 |
| Step age band 70+ | 0.99 |

## Misc. Case Information

| | |
|---|---|
| Previous Insurance Carrier Name: | RENEWAL |
| Initial Deposit: | 1 |
| Initial Deposit Annualized: | 12 |
| Check Amount: | 1 |
| Home Office Underwriter: | |
| Date Case Approved: | 11/16/04 |

AR 73

**RELIANCE STANDARD** LTD Digest Report

Report Run

Friday, December 03, 2004 / 5:55:45 AM
v2.0

**Special Contract Provisions:** 5/3/03

SpecialProvison:
CHANGES IN SALARY AND AGE TO OCCUR IMMEDIATELY

AR 74

Report Run

# RELIANCE STANDARD LTD Digest Report

Friday, December 03, 2004  /  5:55:45 AM
v2.0

**Special Contract Provisions:**                    1/7/04

Minimum Participation Requirement is 29%

Bill Group Number:          000001
Bill group Name:            RUSSELL HOSPITAL
Bill Group Street Address:  CINDY WHATLEY
                            PO BOX 939

Bill Group City:            ALEXANDER CITY
Bill Group State:           AL
Bill Group Zip:             3501100000
Bill Group Correspondent:

AR 75

**POLICYHOLDER:** RUSSELL HOSPITAL

**POLICY NUMBER:** LSC 099500

**EFFECTIVE DATE:** January 1, 1997

**ANNIVERSARY DATES:** January 1, 1998 and each January 1 thereafter

**PREMIUM DUE DATES:** The first Premium is due on the Effective Date. Further Premiums are due monthly, in advance, on the first day of each month.

This Policy is delivered in Alabama and is governed by its laws.

Reliance Standard Life Insurance Company is referred to as "we", "our" or "us" in this Policy.

The Policyholder and any subsidiaries, divisions or affiliates are referred to as "you", "your" or "yours" in this Policy.

We agree to provide insurance to you in exchange for the payment of Premium and a signed Application. This Policy provides income replacement benefits for Total Disability from Sickness or Injury. It insures those Eligible Persons for the Monthly Benefit shown on the Schedule of Benefits. The insurance is subject to the terms and conditions of this Policy.

The Effective Date of this Policy is shown above. This Policy stays in effect as long as Premium is paid when due. The "TERMINATION OF THIS POLICY" section of the GENERAL PROVISIONS explains when the insurance terminates.

This Policy is signed by our President and Secretary.

SECRETARY

PRESIDENT

Countersigned _____

Licensed Resident Agent

**GROUP LONG TERM DISABILITY INSURANCE
NON-PARTICIPATING**

LRS-6564 Ed. 2/83

R  U  S  S  E  L  L      H  O  L  S  C  0  9  9  5  0  0      0  0

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
Home Office: Chicago, Illinois
Administrative Office: Philadelphia, Pennsylvania

**GROUP POLICY NUMBER:** LSC 099500          **POLICY EFFECTIVE DATE:** January 1, 1997

**POLICY DELIVERED IN:** Alabama          **ANNIVERSARY DATE:** January 1 in each year

Application is made to us by: RUSSELL HOSPITAL

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at _____ this _____ day of _____.

Policyholder: _____     Agent: _____

*By:* _____     _____
_____ (Signature)     (Licensed Resident Agent)

_____
(Title)

Please sign and return.

LRS-6564-1 Ed. 2/83

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
Home Office: Chicago, Illinois
Administrative Office: Philadelphia, Pennsylvania

**GROUP POLICY NUMBER:** LSC 099500              **POLICY EFFECTIVE DATE:** January 1, 1997

**POLICY DELIVERED IN:** Alabama                    **ANNIVERSARY DATE:** January 1 in each year

Application is made to us by: RUSSELL HOSPITAL

This Application is completed in duplicate, one copy to be attached to your Policy and the other returned to us.

It is agreed that this Application takes the place of any previous application for your Policy.

Signed at _____ this _____ day of _____ .

Policyholder: _____  Agent: _____

By: _____      _____
                    (Signature)                                      (Licensed Resident Agent)

_____
                    (Title)

LRS-6564-1 Ed. 2/83

AR 79

# TABLE OF CONTENTS

                                                                      **Page**

SCHEDULE OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.0

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.0

GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.0
    Entire Contract
    Changes
    Time Limit On Certain Defenses
    Records Maintained
    Clerical Error
    Misstatement Of Age
    Not In Lieu Of Worker's Compensation
    Conformity With State Laws
    Certificate Of Insurance
    Termination Of This Policy

CLAIMS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.0
    Notice Of Claim
    Claim Forms
    Written Proof Of Total Disability
    Payment of Claims
    Arbitration of Claims
    Physical Examination And Autopsy
    Legal Actions

INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . 5.0
    General Group
    Eligibility Requirements
    Waiting Period
    Effective Date Of Individual Insurance
    Termination Of Individual Insurance
    Individual Reinstatement

PREMIUMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6.0

BENEFIT PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.0

EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.0

LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.0

SPECIFIC INDEMNITY BENEFIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10.0

SURVIVOR BENEFIT — LUMP SUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11.0

## SCHEDULE OF BENEFITS

NAME OF SUBSIDIARIES, DIVISIONS OR AFFILIATES TO BE COVERED: None

ELIGIBLE CLASSES:  Each active, Full-time employee except any person employed on a temporary or seasonal basis.

WAITING PERIOD:  Present Employees: none
                        Future Employees: 60 days

INDIVIDUAL EFFECTIVE DATE:  The first of the Policy month coinciding with or next following completion of the Waiting Period, if applicable.

INDIVIDUAL REINSTATEMENT: 6 months

MINIMUM PARTICIPATION REQUIREMENTS: Percentage: 45% Number of Insureds: 10

LONG TERM DISABILITY BENEFIT

ELIMINATION PERIOD: 180 consecutive days of Total Disability.

MONTHLY BENEFIT:  The Monthly Benefit is an amount equal to 60% of Covered Monthly Earnings, payable in accordance with the section entitled Benefit Amount.

MINIMUM MONTHLY BENEFIT:  In no event will the Monthly Benefit payable to an Insured be less than $100.00

MAXIMUM MONTHLY BENEFIT: $6,000.00 (this is equal to a maximum Covered Monthly Earnings of $10,000.00).

MAXIMUM DURATION OF BENEFITS: Benefits will not accrue beyond the longer of: the Duration of Benefits; or Normal Retirement Age; specified below:

| Age at Disablement | Duration of Benefits (in years) |
|---|---|
| 61 or less | To Age 65 |
| 62 | 3-1/2 |
| 63 | 3 |
| 64 | 2-1/2 |
| 65 | 2 |
| 66 | 1-3/4 |
| 67 | 1-1/2 |
| 68 | 1-1/4 |
| 69 or more | 1 |

OR

Normal Retirement Age as defined by the 1983 Amendments to the United States Social Security Act and determined by the Insured's year of birth, as follows:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 or before | 65 years |
| 1938 | 65 years and 2 months |
| 1939 | 65 years and 4 months |
| 1940 | 65 years and 6 months |
| 1941 | 65 years and 8 months |
| 1942 | 65 years and 10 months |
| 1943 thru 1954 | 66 years |
| 1955 | 66 years and 2 months |
| 1956 | 66 years and 4 months |
| 1957 | 66 years and 6 months |
| 1958 | 66 years and 8 months |
| 1959 | 66 years and 10 months |
| 1960 and after | 67 years |

CHANGES IN MONTHLY BENEFIT: Increases in the Monthly Benefit are effective on the date of the change, provided the Insured is Actively at Work on the effective date of the change. If the Insured is not Actively at Work on that date, the effective date of the change will be deferred until the date the Insured returns to Active Work.

Decreases in the Monthly Benefit are effective on the date the change occurs.

CONTRIBUTIONS: Insured: 100%

LRS-6564-3-0690                    1.1

## DEFINITIONS

"Actively at Work" and "Active Work" mean actually performing on a Full-time basis the material duties pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of an Injury or Sickness.

"Claimant" means an Insured who makes a claim for benefits under this Policy for a loss covered by this Policy as a result of an Injury to or a Sickness of the Insured.

"Covered Monthly Earnings" means the Insured's monthly salary received from you on the day just before the date of Total Disability, prior to any deductions to a 401(k) plan. Covered Monthly Earnings do not include commissions, overtime pay, bonuses or any other special compensation not received as Covered Monthly Earnings.

If hourly paid employees are insured, the number of hours worked during a regular work week, not to exceed forty (40) hours per week, times 4.333, will be used to determine Covered Monthly Earnings. If an employee is paid on an annual basis, then the Covered Monthly Earnings will be determined by dividing the basic annual salary by 12.

"Eligible Person" means a person who meets the Eligibility Requirements of this Policy.

"Elimination Period" means a period of consecutive days of Total Disability, as shown on the Schedule of Benefits page, for which no benefit is payable. It begins on the first day of Total Disability.

Interruption Period: If, during the Elimination Period, an Insured returns to Active Work for less than 30 days, then the same or related Total Disability will be treated as continuous. Days that the Insured is Actively at Work during this interruption period will not count towards the Elimination Period. This interruption of the Elimination Period will not apply to an Insured who becomes eligible under any other group long term disability insurance plan.

"Full-time" means working for you for a minimum of 28 hours during a person's regular work week.

"Hospital" or "Institution" means a facility licensed to provide care and treatment for the condition causing the Insured's Total Disability.

"Injury" means bodily injury resulting directly from an accident, independent of all other causes. The Injury must cause Total Disability which begins while insurance coverage is in effect for the Insured.

"Insured" means a person who meets the Eligibility Requirements of this Policy and is enrolled for this insurance.

"Physician" means a duly licensed practitioner who is recognized by the law of the state in which treatment is received as qualified to treat the type of Injury or Sickness for which claim is made. The Physician may not be the Insured or a member of his/her immediate family.

"Pre-existing Condition" means any Sickness or Injury for which the Insured received medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicines, during the 12 months immediately prior to the Insured's effective date of insurance.

"Premium" means the amount of money needed to keep this Policy in force.

"Rehabilitative Employment" means work in any gainful occupation for which the Insured's training, education or experience will reasonably allow. The work must be supervised by a Physician or a licensed rehabilitation specialist approved by us. Rehabilitative Employment includes work performed while Partially Disabled, but does not include performing all the material duties of his/her regular occupation on a Full-time basis.

"Retirement Benefits" mean money which the Insured is entitled to receive upon early or normal retirement or disability retirement under:

    (1)   any plan of a state, county or municipal retirement system, if such pension benefits include any credit for employment with you;

    (2)   Retirement Benefits under the United States Social Security Act of 1935, as amended, or under any similar plan or act; or

(3) an employer's retirement plan where payments are made in a lump sum or periodically and do not represent contributions made by an Insured.

Retirement Benefits do not include:
(1) a federal government employee pension benefit;
(2) a thrift plan;
(3) a deferred compensation plan;
(4) an individual retirement account (IRA);
(5) a tax sheltered annuity (TSA);
(6) a stock ownership plan; or
(7) a profit sharing plan.

"Sickness" means illness or disease causing Total Disability which begins while insurance coverage is in effect for the Insured. Sickness includes pregnancy, childbirth, miscarriage or abortion, or any complications therefrom.

"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
(1) during the Elimination Period and for the first 36 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;
    (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;
    (b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and
(2) after a Monthly Benefit has been paid for 36 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

If an Insured is employed by you and requires a license for such occupation, the loss of such license for any reason does not in and of itself constitute "Total Disability".

LRS-6564-4-0892                                  2.1

## GENERAL PROVISIONS

**ENTIRE CONTRACT:** The entire contract between you and us is this Policy, your Application (a copy of which is attached at issue) and any attached amendments.

**CHANGES:** No agent has authority to change or waive any part of this Policy. To be valid, any change or waiver must be in writing, signed by either our President, a Vice President, or a Secretary. The change or waiver must also be attached to this Policy.

**TIME LIMIT ON CERTAIN DEFENSES:** After this Policy has been in force for two (2) years from its Effective Date, no statement made by you shall be used to void this Policy; and no statement by any Insured on a written application for insurance shall be used to reduce or deny a claim after the Insured's insurance coverage, with respect to which claim has been made, has been in effect for two (2) years.

**RECORDS MAINTAINED:** You must maintain records of all Insureds. Such records must show the essential data of the insurance, including new persons, terminations, changes, etc. This information must be reported to us regularly. We reserve the right to examine the insurance records maintained at the place where they are kept. This review will only take place during normal business hours.

**CLERICAL ERROR:** Clerical errors in connection with this Policy or delays in keeping records for this Policy, whether by you, us, or the Plan Administrator:

   (1)   will not terminate insurance that would otherwise have been effective; and
   (2)   will not continue insurance that would otherwise have ceased or should not have been in effect.

If appropriate, a fair adjustment of premium will be made to correct a clerical error.

**MISSTATEMENT OF AGE:** If an Insured's age is misstated, the Premium will be adjusted. If the Insured's benefit is affected by the misstated age, it will also be adjusted. The benefit will be changed to the amount the Insured is entitled to at his/her correct age.

**NOT IN LIEU OF WORKER'S COMPENSATION:** This Policy is not a Worker's Compensation Policy. It does not provide Worker's Compensation benefits.

**CONFORMITY WITH STATE LAWS:** Any section of this Policy, which on its Effective Date, conflicts with the laws of the state in which this Policy is issued, is amended by this provision. This Policy is amended to meet the minimum requirements of those laws.

**CERTIFICATE OF INSURANCE:** We will send to you an individual certificate for each Insured. The certificate will outline the insurance coverage, state this Policy's provisions that affect the Insured, and explain to whom benefits are payable.

**TERMINATION OF THIS POLICY:** You may cancel this Policy at any time by giving us written notice. This Policy will be cancelled on the date we receive your notice or, if later, the date requested in your notice.

This Policy will terminate at the end of the Grace Period if Premium has not been paid by that date.

We may cancel this Policy within thirty-one (31) days of written notice prior to the date of cancellation, only:

   (1)   if the number of Insureds is less than the Minimum Participation Number shown on the Schedule of Benefits; or
   (2)   if the percentage of Eligible Persons insured is less than the Minimum Participation Percentage shown on the Schedule of Benefits.

You will still owe us any Premium that is not paid up to the date this Policy is cancelled. We will return, pro-rata, any part of the Premium paid beyond the date this Policy is cancelled.

Termination of this Policy will not affect any claim which was covered prior to termination, subject to the terms and conditions of this Policy.

LRS-6564-5-0394

3.0

## CLAIMS PROVISIONS

**NOTICE OF CLAIM:** Written notice must be given to us within thirty-one (31) days after a Total Disability covered by this Policy occurs, or as soon as reasonably possible. The notice should be sent to us at our Administrative Office or to our authorized agent. The notice should include your name, the Policy Number and the Insured's name.

**CLAIM FORMS:** When we receive the notice of claim, we will send the Claimant the claim forms to file with us. We will send them within fifteen (15) days after we receive notice. If we do not, then proof of Total Disability will be met by giving us a written statement of the type and extent of the Total Disability. The statement must be sent within ninety (90) days after the loss began.

**WRITTEN PROOF OF TOTAL DISABILITY:** For any Total Disability covered by this Policy, written proof must be sent to us within ninety (90) days after the Total Disability occurs. If written proof is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof was given as soon as was reasonably possible. In any event, proof must be given within one (1) year after the Total Disability occurs, unless the Claimant is legally incapable of doing so.

**PAYMENT OF CLAIMS:** When we receive written proof of Total Disability covered by this Policy, we will pay any benefits due. Benefits that provide for periodic payment will be paid for each period as we become liable.

We will pay benefits to the Insured, if living, or else to his/her estate.

If the Insured has died and we have not paid all benefits due, we may pay up to $1,000.00 to any relative by blood or marriage, or to the executor or administrator of the Insured's estate. The payment will only be made to persons entitled to it. An expense incurred as a result of the Insured's last illness, death or burial will entitle a person to this payment. The payments will cease when a valid claim is made for the benefit. We will not be liable for any payment we have made in good faith.

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

**ARBITRATION OF CLAIMS:** Any claim or dispute arising from or relating to our determination regarding the Insured's Total Disability may be settled by arbitration when agreed to by the Insured and us in accordance with the Rules for Health and Accident Claims of the American Arbitration Association or by any other method agreeable to the Insured and us. In the case of a claim under an Employee Retirement Income Security Act (hereinafter referred to as ERISA) Plan, the Insured's ERISA claim appeal remedies, if applicable, must be exhausted before the claim may be submitted to arbitration. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction over such awards.

Unless otherwise agreed to by the Insured and us, any such award will be binding on the Insured and us for a period of twelve (12) months after it is rendered assuming that the award is not based on fraudulent information and the Insured continues to be Totally Disabled. At the end of such twelve (12) month period, the issue of Total Disability may again be submitted to arbitration in accordance with this provision.

Any costs of said arbitration proceedings levied by the American Arbitration Association or the organization or person(s) conducting the proceedings will be paid by us.

**PHYSICAL EXAMINATION AND AUTOPSY:** We will, at our expense, have the right to have a Claimant interviewed and/or examined:
    (1)  physically;
    (2)  psychologically; and/or
    (3)  psychiatrically;

to determine the existence of any Total Disability which is the basis for a claim. This right may be used as often as it is reasonably required while a claim is pending.

We can have an autopsy made unless prohibited by law.

LRS-6564-6-0394                                   4.0

**LEGAL ACTIONS:** No legal action may be brought against us to recover on this Policy within sixty (60) days after written proof of loss has been given as required by this Policy. No action may be brought after three (3) years (Kansas, five (5) years; South Carolina, six (6) years) from the time written proof of loss is received.

LRS-6564-6-0394

4.1

## INDIVIDUAL ELIGIBILITY, EFFECTIVE DATE AND TERMINATION

**GENERAL GROUP:** The general group will be your employees and employees of any subsidiaries, divisions or affiliates named on the Schedule of Benefits page.

**ELIGIBILITY REQUIREMENTS:** A person is eligible for insurance under this Policy if he/she:
    (1)  is a member of an Eligible Class, as shown on the Schedule of Benefits page; and
    (2)  has completed the Waiting Period, as shown on the Schedule of Benefits page.

**WAITING PERIOD:** A person who is continuously employed on a Full-time basis with you for the period specified on the Schedule of Benefits page has satisfied the Waiting Period. The Waiting Period for Present Employees applies to persons who are members of the Eligible Classes on this Policy's Effective Date. The Waiting Period for Future Employees applies to persons who become members of the Eligible Classes after this Policy's Effective Date.

**EFFECTIVE DATE OF INDIVIDUAL INSURANCE:** If you pay the entire Premium due for an Eligible Person, the insurance for such Eligible Person will go into effect on the Individual Effective Date, as shown on the Schedule of Benefits page.

If an Eligible Person pays a part of the Premium, he/she must apply in writing for the insurance to go into effect. He/she will become insured on the latest of:
    (1)  the Individual Effective Date as shown on the Schedule of Benefits page, if he/she applies on or before that date;
    (2)  on the date he/she applies, if he/she applies within thirty-one (31) days from the date he/she first met the Eligibility Requirements; or
    (3)  on the date we approve any required proof of health acceptable to us. We require this proof if a person applies:
        (a)  after thirty-one (31) days from the date he/she first met the Eligibility Requirements; or
        (b)  after he/she terminated this insurance but remained in an Eligible Class as shown on the Schedule of Benefits page.

The insurance for an Eligible Person will not go into effect on a date he/she is not Actively at Work because of a Sickness or Injury. The insurance will go into effect after the person is Actively at Work for one (1) full day in an Eligible Class, as shown on the Schedule of Benefits page.

**TERMINATION OF INDIVIDUAL INSURANCE:** The insurance of an Insured will terminate on the first of the following to occur:
    (1)  the first of the Policy month coinciding with or next following the date this Policy terminates;
    (2)  the first of the Policy month coinciding with or next following the date the Insured ceases to meet the Eligibility Requirements;
    (3)  the end of the period for which Premium has been paid for the Insured; or
    (4)  the first of the Policy month coinciding with or next following the date the Insured enters military service (not including Reserve or National Guard).

**INDIVIDUAL REINSTATEMENT:** The insurance of a terminated person may be reinstated if he/she returns to Active Work with you within the period of time as shown on the Schedule of Benefits page. He/she must also be a member of an Eligible Class, as shown on the Schedule of Benefits page, and have been:
    (1)  on a leave of absence approved by you; or
    (2)  on temporary lay-off.

The person will not be required to fulfill the Eligibility Requirements of this Policy again. The insurance will go into effect after he/she returns to Active Work for one (1) full day. If a person returns after having resigned or having been discharged, he/she will be required to fulfill the Eligibility Requirements of this Policy again. If a person returns after terminating insurance at his/her request or for failure to pay Premium when due, proof of health acceptable to us must be submitted before he/she may be reinstated.

## PREMIUMS

**PREMIUM PAYMENT:** All Premiums are to be paid by you to us, or to an authorized agent, on or before the due date. The Premium Due Dates are stated on this Policy's face page.

**PREMIUM RATE:** The Premium due will be the rate per $100.00 of the entire amount of Covered Monthly Earnings then in force. We will furnish to you the Premium Rate on this Policy's Effective Date and when it is changed. We have the right to change the Premium Rate:

    (1)   when the extent of coverage is changed by amendment;

    (2)   on any Premium Due Date after the first Policy Anniversary.

We will not change the Premium Rate due to (2) above more than once in any twelve (12) month period. We will tell you in writing at least 31 days before the date of a change due to (2) above.

**GRACE PERIOD:** You may pay the Premium up to 31 days after the date it is due. This Policy stays in force during this time. If the Premium is not paid during the grace period, this Policy will terminate. You will still owe us the Premium up to the date this Policy terminates.

**WAIVER OF PREMIUM:** No Premium is due us for an Insured while he/she is receiving Monthly Benefits from us. Once Monthly Benefits cease due to the end of his/her Total Disability, Premium payments must begin again if insurance is to continue.

LRS-6564-8 Ed. 2/83

.6.0

**BENEFIT PROVISIONS**

**INSURING CLAUSE:** We will pay a Monthly Benefit if an Insured:
    (1)   is Totally Disabled as the result of a Sickness or Injury covered by this Policy;
    (2)   is under the regular care of a Physician;
    (3)   has completed the Elimination Period; and
    (4)   submits satisfactory proof of Total Disability to us.

**BENEFIT AMOUNT:** To figure the benefit amount payable:
    (1)   multiply an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits page;
    (2)   take the lesser of the amount:
        (a)   of step (1) above; or
        (b)   the Maximum Monthly Benefit, as shown on the Schedule of Benefits page; and
    (3)   subtract Other Income Benefits, as shown below, from step (2) above.

We will pay at least the Minimum Monthly Benefit, if any, as shown on the Schedule of Benefits page.

**OTHER INCOME BENEFITS:** Other Income Benefits are benefits resulting from the same Total Disability for which a Monthly Benefit is payable under this Policy. These Other Income Benefits are:
    (1)   disability income benefits an Insured is eligible to receive under any group insurance plan(s);
    (2)   disability income benefits an Insured is eligible to receive under any governmental retirement system, except benefits payable under a federal government employee pension benefit;
    (3)   disability income benefits an Insured is eligible to receive under:
        (a)   Worker's Compensation Laws;
        (b)   occupational disease law;
        (c)   any other laws of like intent as (a) or (b) above; and
        (d)   any compulsory benefit law;
    (4)   any of the following that the Insured is entitled to receive from you:
        (a)   wages, excluding the amount allowable under the Rehabilitation Provision; and
        (b)   commissions or monies, including vested renewal commissions but, excluding commissions or monies that the Insured earned prior to Total Disability which are paid after Total Disability has begun;
    (5)   that part of disability or Retirement Benefits paid for by you that an Insured is eligible to receive under a group retirement plan; and
    (6)   disability or Retirement Benefits under the United States Social Security Act, the Canadian pension plans, federal or provincial plans, or any similar law for which:
        (a)   an Insured is eligible to receive because of his/her Total Disability or eligibility for Retirement Benefits; and
        (b)   an Insured's dependents are eligible to receive due to (a) above.

Disability and early Retirement Benefits will be offset only if such benefits are elected by the Insured or do not reduce the amount of his/her accrued normal Retirement Benefits then funded.

Retirement Benefits under number 6 above will not apply to disabilities which begin after age 70 for those Insureds already receiving Social Security Retirement Benefits while continuing to work beyond age 70.

Benefits above will be estimated if the benefits:
    (1)   have not been applied for; or
    (3)   have been denied and the denial is being appealed.

The Monthly Benefit will be reduced by the estimated amount. If benefits have been estimated, the Monthly Benefit will be adjusted when we receive proof:
    (1)   of the amount awarded; and
    (2)   that benefits have been denied and the denial cannot be further appealed.

If we have underpaid the Monthly Benefit for any reason, we will make a lump sum payment. If we have overpaid the Monthly Benefit for any reason, the overpayment must be repaid to us. At our option, we may reduce the Monthly Benefit

or ask for a lump sum refund. If we reduce the Monthly Benefit, the Minimum Monthly Benefit, if any, as shown on the Schedule of Benefits page, would not apply.

For each day of a period of Total Disability less than a full month, the amount payable will be 1/30th of the Monthly Benefit.

**COST OF LIVING FREEZE:** After the initial deduction for any Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost of living increases payable under these Other Income Benefits.

**LUMP SUM PAYMENTS:** If Other Income Benefits are paid in a lump sum, the sum will be broken down to a monthly amount for the period of time the sum is payable. If no period of time is given, the sum will be broken down to a monthly amount for the period of time we expect the Insured to be disabled based on actuarial tables of disabled lives.

**TERMINATION OF MONTHLY BENEFIT:** The Monthly Benefit will stop on the earliest of:
    (1)   the date the Insured ceases to be Totally Disabled;
    (2)   the date the Insured dies;
    (3)   the Maximum Duration of Benefits, as shown on the Schedule of Benefits page, has ended; or
    (4)   the date the Insured fails to furnish the required proof of Total Disability.

**REHABILITATION PROVISION:** If, during a period of Total Disability for which a Monthly Benefit is payable, an Insured accepts Rehabilitative Employment, then we will continue to pay the Monthly Benefit less 50% of any of the money received from this Rehabilitative Employment.  If an Insured is entitled to Substance Abuse Benefits, Rehabilitative Employment Benefits will not be available for Total Disability as a result of such Substance Abuse.

**RECURRENT DISABILITY:** If, after a period of Total Disability for which benefits are payable, an Insured returns to Active Work for at least six (6) consecutive months, any recurrent Total Disability for the same or related cause will be part of a new period of Total Disability.  A new Elimination Period must be completed before any further Monthly Benefits are payable.

If an Insured returns to Active Work for less than six (6) months, a recurrent Total Disability for a same or related cause will be part of the same Total Disability.  A new Elimination Period is not required. Our liability for the entire period will be subject to the terms of this Policy for the original period of Total Disability.

This Recurrent Disability section will not apply to an Insured who becomes eligible for insurance coverage under any other group long term disability insurance plan.

## EXCLUSIONS

We will not pay a Monthly Benefit for any Total Disability caused by:

(1)    an act of war, declared or undeclared;
(2)    an intentionally self-inflicted Injury;
(3)    the Insured committing a felony; or
(4)    an Injury or Sickness that occurs while the Insured is confined in any penal or correctional institution.

LRS-6564-10-1189                                     8.0

## LIMITATIONS

**MENTAL OR NERVOUS DISORDERS:** Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months unless the Insured is in a Hospital or Institution at the end of the twenty-four (24) month period. The Monthly Benefit will be payable while so confined, but not beyond the Maximum Duration of Benefits.

If an Insured was confined in a Hospital or Institution and:
    (1)   Total Disability continues beyond discharge;
    (2)   the confinement was during a period of Total Disability; and
    (3)   the period of confinement was for at least fourteen (14) consecutive days;
then upon discharge, Monthly Benefits will be payable for the greater of:
    (1)   the unused portion of the twenty-four (24) month period; or
    (2)   ninety (90) days;
but in no event beyond the Maximum Duration of Benefits, as shown on the Schedule of Benefits page.

Mental or Nervous Disorders are defined to include disorders which are diagnosed to include a condition such as:
    (1)   bipolar disorder (manic depressive syndrome);
    (2)   schizophrenia;
    (3)   delusional (paranoid) disorders;
    (4)   psychotic disorders;
    (5)   depressive disorders;
    (6)   anxiety disorders;
    (7)   somatoform disorders (psychosomatic illness);
    (8)   eating disorders; or
    (9)   mental illness.

**SUBSTANCE ABUSE:** Monthly Benefits for Total Disability due to alcoholism or drug addiction will be payable while the Insured is a participant in a Substance Abuse Rehabilitation Program. The Monthly Benefit will not be payable beyond twenty-four (24) months.

If, during a period of Total Disability due to Substance Abuse for which a Monthly Benefit is payable, an Insured is able to perform Rehabilitative Employment, the Monthly Benefit, less 50% of any of the money received from this Rehabilitative Employment will be paid until: (1) the Insured is performing all the material duties of his/her regular occupation on a full-time basis; or (2) the end of twenty-four (24) consecutive months from the date that the Elimination Period is satisfied, whichever is earlier. All terms and conditions of the Rehabilitation Benefit will apply to Rehabilitative Employment due to Substance Abuse.

"Substance Abuse" means the pattern of pathological use of a Substance which is characterized by:
    (1)   impairments in social and/or occupational functioning;
    (2)   debilitating physical condition;
    (3)   inability to abstain from or reduce consumption of the Substance; or
    (4)   the need for daily Substance use for adequate functioning.

"Substance" means alcohol and those drugs included on the Department of Health, Retardation and Hospitals' Substance Abuse list of addictive drugs, except tobacco and caffeine are excluded.

A Substance Abuse Rehabilitative Program means a program supervised by a Physician or a licensed rehabilitation specialist approved by us.

**PRE-EXISTING CONDITIONS:** Benefits will not be paid for a Total Disability:
    (1)   caused by;
    (2)   contributed to by; or
    (3)   resulting from;
a Pre-existing Condition unless the Insured has been Actively at Work for one (1) full day following the end of:
    (1)  6 consecutive months during which the Insured has not:
        (a)  had consultation with a Physician; or

LRS-6564-11-0994                  9.0

    (b)   received medical care, treatment or services, including diagnostic procedures or took prescribed drugs or medicines, for such condition; or

(2)  24 consecutive months from the date he/she became an Insured.

## SPECIFIC INDEMNITY BENEFIT

If the Insured suffers any one of the Losses listed below from an accident resulting in an Injury, we will pay a guaranteed minimum number of Monthly Benefit payments, as shown below. However:

    (1)   the Loss must occur within one hundred and eighty (180) days; and

    (2)   the Insured must live past the Elimination Period.

| For Loss of: | Number of Monthly Benefit Payments: |
|---|---|
| Both Hands | 46 months |
| Both Feet | 46 months |
| Entire Sight in Both Eyes | 46 months |
| Hearing in Both Ears | 46 months |
| Speech | 46 months |
| One Hand and One Foot | 46 months |
| One Hand and Entire Sight in One Eye | 46 months |
| One Foot and Entire Sight in One Eye | 46 months |
| One Arm | 35 months |
| One Leg | 35 months |
| One Hand | 23 months |
| One Foot | 23 months |
| Entire Sight in One Eye | 15 months |
| Hearing in One Ear | 15 months |

"Loss(es)" with respect to:

    (1)   hand or foot, means the complete severance through or above the wrist or ankle joint;

    (2)   arm or leg, means the complete severance through or above the elbow or knee joint; or

    (3)   sight, speech or hearing, means total and irrecoverable Loss thereof.

If more than one (1) Loss results from any one accident, payment will be made for the Loss for which the greatest number of Monthly Benefit payments is provided.

The amount payable is the Monthly Benefit, as shown on the Schedule of Benefits page, with no reduction from Other Income Benefits. The number of Monthly Benefit payments will not cease if the Insured returns to Active Work.

If death occurs after we begin paying Monthly Benefits, but before the Specific Indemnity Benefit has been paid according to the above schedule, the balance remaining at time of death will be paid to the Insured's estate, unless a beneficiary is on record with us under this Policy.

Benefits may be payable longer than shown above as long as the Insured is still Totally Disabled, subject to the Maximum Duration of Benefits, as shown on the Schedule of Benefits page.

## SURVIVOR BENEFIT — LUMP SUM

We will pay a benefit to an Insured's Survivor when we receive proof that the Insured died while:

   (1)   he/she was receiving Monthly Benefits from us; and
   (2)   he/she was Totally Disabled for at least one hundred and eighty (180) consecutive days.

The benefit will be an amount equal to 3 times the Insured's last Monthly Benefit. The last Monthly Benefit is the benefit the Insured was eligible to receive right before his/her death. It is not reduced by wages earned while in Rehabilitative Employment.

"Survivor" means an Insured's spouse. If the spouse dies before the Insured or if the Insured was legally separated, then the Insured's natural, legally adopted or step-children, who are under age twenty-five (25) will be the Survivor(s). If there are no eligible Survivors, payment will be made to the Insured's estate, unless a beneficiary is on record with us under this Policy.

A benefit payable to a minor may be paid to the minor's legally appointed guardian. If there is no guardian, at our option, we may pay the benefit to the adult that has, in our opinion, assumed the custody and main support of the minor. We will not be liable for any payment we have made in good faith.

LRS-6564-14 Ed. 2/83               11.0


**Reliance Standard Life**
**Insurance Company®**

Claim Number: _____

Policy Number: _LTD-099500_

## AUTHORIZATION

To Whom It May Concern:

I, _CAROL Daugherty_____, hereby authorize any hospital, physician, medical practitioner, clinic, other medical or medically-related facility, pharmacy, insurance company or Government Agency (including the Social Security Administration and the Internal Revenue Service) or any past or present employer to disclose or furnish to Reliance Standard Life Insurance Company or its representatives, any and all information with respect to any illness including mental illness, drug/alcohol abuse, injury, medical history, consultations, prescriptions, treatments or benefits, or other documents and copies of all applicable records that may be requested. I also authorize any employer to disclose all information needed to process my claim.

The information provided to Reliance Standard Life Insurance Company or its representatives is to be used solely for the administration of claim(s). A photostatic copy of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

_8/16/05_____
Date

_Carol Daugherty_
Signature

NOTE: A true copy of this authorization is available to the employee at any time upon request.

RS—1815-A

**RSL** Reliance Standard Life
Insurance Company®

Claim Number: _____

Policy Number: __LTD-099500__

## AUTHORIZATION

To Whom It May Concern:

I, __CAROL Daugherty__ , hereby authorize any hospital, physician, medical practitioner, clinic, other medical or medically-related facility, pharmacy, insurance company or Government Agency (including the Social Security Administration and the Internal Revenue Service) or any past or present employer to disclose or furnish to Reliance Standard Life Insurance Company or its representatives, any and all information with respect to any illness including mental illness, drug/alcohol abuse, injury, medical history, consultations, prescriptions, treatments or benefits, or other documents and copies of all applicable records that may be requested. I also authorize any employer to disclose all information needed to process my claim.

The information provided to Reliance Standard Life Insurance Company or its representatives is to be used solely for the administration of claim(s). A photostatic copy of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

__8/16/05__
_____
Date

_Carol Daugherty_ (signature)
_____
Signature

NOTE: A true copy of this authorization is available to the employee at any time upon request.

RS—1815-A

**AR 98**


**Reliance Standard Life Insurance Company**®

Claim Number: _____

Policy Number: _LTD-099500_

## AUTHORIZATION

To Whom It May Concern:

I, _CAROL Daugherty_ , hereby authorize any hospital, physician, medical practitioner, clinic, other medical or medically-related facility, pharmacy, insurance company or Government Agency (including the Social Security Administration and the Internal Revenue Service) or any past or present employer to disclose or furnish to Reliance Standard Life Insurance Company or its representatives, any and all information with respect to any illness including mental illness, drug/alcohol abuse, injury, medical history, consultations, prescriptions, treatments or benefits, or other documents and copies of all applicable records that may be requested. I also authorize any employer to disclose all information needed to process my claim.

The information provided to Reliance Standard Life Insurance Company or its representatives is to be used solely for the administration of claim(s). A photostatic copy of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

_8/16/05_
Date

_Carol Daugherty_
Signature

NOTE: A true copy of this authorization is available to the employee at any time upon request.

RS—1815-A



**Reliance Standard Life Insurance Company** ®

**DISABILITY CLAIM**
**(LONG TERM, WAIVER OF PREMIUM)**
**EMPLOYER'S STATEMENT**

**TO BE COMPLETED BY THE EMPLOYER**

| THIS CLAIM IS FOR (EMPLOYEE NAME) | SOCIAL SECURITY NUMBER | DATE OF BIRTH |
|---|---|---|
| CAROL J. Daugherty | 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 | 2/9/51 |

## A. INFORMATION ABOUT THE EMPLOYER

1. COMPANY'S NAME  Russell Medical Center       2. GROUP POLICY NUMBER    LIFE        LONG TERM DISABILITY 09950

3. ADDRESS (STREET, CITY, STATE, ZIP)  PO Box 939 Alex City AL 35011    TELEPHONE: 256 329-7335   FAX: 256 329-7339

4. NAME AND ADDRESS OF DIVISION WHERE EMPLOYEE WORKS (IF DIFFERENT FROM ABOVE)

## B. INFORMATION ABOUT THE EMPLOYEE

1. DATE EMPLOYEE WAS HIRED? (MTH, DAY, YR)  04/23/84

2. DATE EMPLOYEE BECAME INSURED UNDER THIS PLAN? 01/01/97  MTH DAY YR
UNDER YOUR PRIOR PLAN?    MTH DAY YR

3. WHAT WAS THE EMPLOYEE'S REGULARLY SCHEDULED WORK WEEK?  40  hrs/wk.

4. PLEASE IDENTIFY THE CLASS OF THIS EMPLOYEE: _____

5. DATE TO WHICH PREMIUM IS PAID FOR THIS EMPLOYEE:  08/01/05   MTH DAY YR

6. THE EMPLOYEE IS (CHECK ALL THAT APPLY)

- [x] HOURLY (RATE:        )
- [ ] SALARIED
- [ ] UNION
- [x] NON-UNION
- [ ] EXEMPT
- [x] NON-EXEMPT
- [x] FULL-TIME
- [ ] PART-TIME
- [ ] COMMISSIONED
- [ ] RECEIVES BONUSES

7. IF SALARIED, BASIC MONTHLY EARNINGS AS OF LAST DAY WORKED  

8. EFFECTIVE DATE OF CURRENT SALARY OR HOURLY RATE:  /  /  MTH DAY YR

9. WILL EMPLOYEE FILE FOR DISABILITY BENEFITS PROVIDED BY ANY EMPLOYER/EMPLOYEE LABOR MANAGEMENT, STATE DISABILITY OR UNION WELFARE PLAN?  [ ] YES  [x] NO

A. IF YES, WHAT IS THE WEEKLY AMOUNT? $ _____   B. WHAT TYPE OF BENEFIT? _____

C. WHEN DO BENEFITS BEGIN? _____   END? _____

10. IS EMPLOYEE'S CONDITION WORK RELATED?  [ ] YES  [x] NO

11. HAS CLAIM BEEN FILED WITH WORKER'S COMPENSATION?  [ ] YES  [x] NO
IF YES, SEND INITIAL REPORT OF ILLNESS OR INJURY AND AWARD NOTICE.

12. NAME AND ADDRESS OF YOUR WORKER'S COMPENSATION CARRIER:  N/A

13. NAME AND ADDRESS OF YOUR MEDICAL INSURANCE CARRIER OR ADMINISTRATOR IF SELF FUNDED:  BCBS of AL

## C. INFORMATION NEEDED FOR WITHOLDING AND REPORTING TAXES

1. DOES EMPLOYEE CONTRIBUTE TOWARDS THE PREMIUM?  [x] YES  [ ] NO

2. IF YES, WHAT PERCENT IS PAID BY THE EMPLOYEE? ON A PRE TAX BASIS _____ %   ON A POST TAX BASIS 100 %
IF YOU LEAVE THIS SECTION BLANK, WE WILL ASSUME IT IS 100% EMPLOYER CONTRIBUTION AND CALCULATE FICA TAXES ACCORDINGLY.

## D. INFORMATION ABOUT THE CLAIM

1. WERE THERE ANY CHANGES TO THE EMPLOYEE'S JOB RESPONSIBILITIES DUE TO THE DISABLING CONDITION BEFORE THE EMPLOYEE BECAME FULLY DISABLED?  [ ] YES  [x] NO   IF YES, WHAT WERE THE CHANGES AND WHEN WERE THEY MADE?

2. WHAT WAS THE EMPLOYEE'S PERMANENT JOB ON HIS OR HER LAST DAY AT WORK?  Buyer

3. HOW LONG HAS THE EMPLOYEE BEEN IN THIS JOB?  21 Years

4. LAST DAY EMPLOYEE ACTUALLY WORKED (MONTH, DAY, YR.)  04/29/05

5. ON THAT DAY, DID THE EMPLOYEE WORK A FULL DAY?  [x] YES  [ ] NO   IF NO, HOW MANY HOURS WERE WORKED? _____

6. WHY DID EMPLOYEE STOP WORKING?

- [ ] LAYOFF
- [ ] TERMINATION FOR CAUSE
- [x] FAMILY MEDICAL LEAVE ACT
- [ ] RESIGNATION
- [ ] RETIRED
- [ ] DISABILITY

RS-1936

## DISABILITY CLAIM EMPLOYER'S STATEMENT

### E. INFORMATION ABOUT YOUR PENSION PLAN (DO NOT COMPLETE FOR MATERNITY CLAIM)

1. DO YOU HAVE A PENSION PLAN?  ☒ YES  ☐ NO

2. IF YES, WHAT TYPE?

☐ DEFINED BENEFIT SHARING  ☒ 401K  ☐ DEFINED CONTRIBUTION  ☐ PROFIT SHARING  ☐ OTHER (EXPLAIN)

3. IS THE EMPLOYEE ELIGIBLE FOR YOUR PENSION PLAN?  ☒ YES  ☐ NO

4. IF ELIGIBLE, DOES THE EMPLOYEE CONTRIBUTE?  ☒ YES  ☐ NO

5. IF YES, WHAT PERCENTAGE?  1%

6. IF THE EMPLOYEE IS PARTICIPATING, WHEN IS HE OR SHE ELIGIBLE FOR BENEFITS UNDER THE PLAN?  (MONTH/DAY/YEAR)

Retirement

### F. INFORMATION ABOUT YOUR REHIRE OR RETURN-TO-WORK POLICIES

1. DOES YOUR COMPANY HAVE A REHIRE OR RETURN-TO-WORK POLICY FOR DISABLED EMPLOYEES?  ☐ YES  ☒ NO

2. DO YOU HAVE FULL OR PART-TIME POSITIONS AVAILABLE THAT THIS EMPLOYEE WOULD BE SUITED FOR UNDER A SUPERVISED REHABILITATION PROGRAM?  ☐ YES  ☒ NO

3. WHAT IS THE NAME, TITLE AND TELEPHONE NUMBER OF THE INDIVIDUAL WE SHOULD CONTACT IF WE IDENTIFY A REHABILITATION OR RETURN-TO-WORK OPTION?

### G. REQUIRED ATTACHMENTS AND SIGNATURE

IF EMPLOYEE WAS COVERED UNDER A PRIOR PLAN, INCLUDE COPY OF PRIOR PLAN.

IF THE EMPLOYEE CONTRIBUTES TO THE PREMIUMS, ATTACH A COPY OF THE ENROLLMENT FORM.

IF SALARY IS BASED ON W-2, K1, 1099, OR SIMILAR DOCUMENT, ATTACH A COPY OF THE DOCUMENT.

IF YOU HAVE MEDICAL INFORMATION FROM THE EMPLOYEE'S FILE RELATING TO DISABILITY, PLEASE ATTACH COPIES.

IF A WORKER'S COMPENSATION CLAIM IS FILED, SEND INITIAL REPORT OF INJURY OR ILLNESS AND AWARD NOTICE.

NAME/TITLE OF PERSON COMPLETING THIS FORM.

Cindy Whatley – Benefits Specialist

"A PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE AN INSURANCE COMPANY, FILES A STATEMENT OF CLAIM CONTAINING FALSE, INCOMPLETE OR MISLEADING INFORMATION COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME."

*I CERTIFY THAT THE FACTS AS INDICATED ABOVE ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE.*

X Cindy Whatley
SIGNATURE

DATE  8-2-05

Benefits Specialist
TITLE

**RP** Insurance Compan...

**TO BE COMPLETED BY THE EMPLOYER**

| THIS CLAIM IS FOR (EMPLOYEE'S NAME) | SOCIAL SECURITY NUMBER | DATE OF DISABILITY (MONTH, DAY, YEAR) |
|---|---|---|
| Carol Daugherty | 2066-04-7470 | 05-02-05 |

## A. GENERAL INFORMATION ABOUT THE EMPLOYEE'S JOB

| JOB TITLE | DOT CODE (DICTIONARY OF OCCUPATIONAL TITLES) | MINIMUM EDUCATION OR TRAINING REQUIRED |
|---|---|---|
| Buyer | | H.S. Diploma |

DOES THE EMPLOYEE PERFORM SUPERVISORY FUNCTIONS? ☐ YES ☒ NO IF YES, HOW MANY PEOPLE ARE SUPERVISED? _____
DESCRIBE JOB DUTIES.

CHECK THE ITEMS BELOW THAT RELATE TO THE EMPLOYEE'S JOB. USE THESE DEFINITIONS FOR THE FREQUENCY OF OCCURRENCE:

**OCCASIONALLY** MEANS THE PERSON DOES THE ACTIVITY 1% TO 33% OF THE TIME
**FREQUENTLY** MEANS THE PERSON DOES THE ACTIVITY 34% TO 66% OF THE TIME
**CONTINUOUSLY** MEANS THE PERSON DOES THE ACTIVITY 67% TO 100% OF THE TIME

| | OCCASIONALLY | FREQUENTLY | CONTINUOUSLY |
|---|---|---|---|
| RELATE TO OTHERS | ☐ | ☐ | ☒ |
| WRITTEN AND VERBAL COMMUNICATIONS | ☐ | ☒ | ☐ |
| REASONING, MATH AND LANGUAGE | ☐ | ☒ | ☐ |
| MAKE INDEPENDENT JUDGEMENTS | ☐ | ☒ | ☐ |

WHICH OF THE FOLLOWING DESCRIBE THE EMPLOYEE'S WORKING ENVIRONMENT? CHECK ALL THAT APPLY.

☐ UNPROTECTED HEIGHTS      ☐ CHANGES IN TEMPERATURE OR HUMIDITY
☐ EXPOSURE TO DUST, FUMES, AND GASES      ☐ BEING NEAR MOVING MACHINERY
☐ DRIVING AUTOMOTIVE EQUIPMENT      ☐ OTHER HAZARDS

IS THE EMPLOYEE REQUIRED TO TRAVEL? ☐ YES ☒ NO
IF YES, COMPLETE THE FOLLOWING INFORMATION:

| HOW DOES THE EMPLOYEE TRAVEL? (AUTOMOBILE, PLANE, TRAIN, ETC.) | WHERE DOES THE EMPLOYEE TRAVEL? | WHAT PERCENT OF THE TIME DOES THE EMPLOYEE TRAVEL? |
|---|---|---|
| | | |

## B. INFORMATION ABOUT THE PHYSICAL ASPECT OF THE EMPLOYEE'S JOB

CHECK THE ITEMS BELOW THAT RELATE TO THE EMPLOYEE'S JOB AND COMPLETE THE INFORMATION REQUESTED. USE THESE DEFINITIONS FOR THE FREQUENCY OF OCCURRENCE:

**OCCASIONALLY** MEANS THE PERSON DOES THE ACTIVITY 1% TO 33% OF THE TIME
**FREQUENTLY** MEANS THE PERSON DOES THE ACTIVITY 34% TO 66% OF THE TIME
**CONTINUOUSLY** MEANS THE PERSON DOES THE ACTIVITY 67% TO 100% OF THE TIME

| ACTIVITY | NEVER | OCCASIONALLY | FREQUENTLY | CONTINUOUSLY |
|---|---|---|---|---|
| STANDING | ☐ | ☐ | ☒ | ☐ |
| WALKING | ☐ | ☐ | ☒ | ☐ |
| SITTING | ☐ | ☐ | ☒ | ☐ |
| BALANCING | ☐ | ☐ | ☒ | ☐ |
| STOOPING | ☐ | ☒ | ☐ | ☐ |
| KNEELING | ☐ | ☒ | ☐ | ☐ |
| CROUCHING | ☐ | ☒ | ☐ | ☐ |
| CRAWLING | ☒ | ☐ | ☐ | ☐ |
| REACHING/WORKING OVERHEAD | ☐ | ☒ | ☐ | ☐ |
| CLIMBING | ☐ | ☒ | ☐ | ☐ |
|    STAIRS Number of Stairs: 3 | ☐ | ☐ | ☐ | ☐ |
|    LADDERS Height of Ladder: | ☐ | ☐ | ☐ | ☐ |
| **Describe Activity** | | | | |
|    PUSHING. 50 LBS. | ☐ | ☒ | ☐ | ☐ |
|    PULLING. 50 LBS. | ☐ | ☒ | ☐ | ☐ |
|    LIFTING/CARRYING 50 LBS. | ☐ | ☒ | ☐ | ☐ |

CAN THE JOB BE PERFORMED BY ALTERNATING SITTING AND STANDING? ☐ YES ☒ NO

DOES THE JOB REQUIRE USING FEET TO OPERATE FOOT CONTROLS? ☐ YES ☒ NO   IF YES, ON WHAT TYPE OF EQUIPMENT.

IS GOOD VISUAL ACUITY REQUIRED IN THE JOB?    Yes

| WHAT ARE THE MAJOR TASKS REQUIRING USE OF ONE OR BOTH HANDS | ONE HAND | BOTH HANDS |
|---|---|---|
| Maintains the Medical Centers General Stores Inventory | | ✓ |
| Maintains accounts records, reports, and Contracts | | ✓ |
| Maintains vendor relationships | | ✓ |

AR 102

## C. INFORMATION ABOUT THE JOB AS IT RELATES TO THE DISABILTY

CAN THE JOB BE MODIFIED TO ACCOMMODATE THE DISABILITY EITHER TEMPORARILY OR PREMANENTLY?  ☐ YES  ☒ NO   IF YES, EXPLAIN.

IS IT POSSIBLE TO OFFER THE EMPLOYEE ASSISTANCE IN DOING THE JOB (THROUGH USE OF TECHNOLOGY OR PERSONAL ASSISTANCE FOR EXAMPLE)?  ☐ YES  ☒ NO   IF YES, EXPLAIN.

## D.  ATTACHMENTS AND SIGNATURE (ATTACH COPY OF THE EMPLOYEE'S JOB DESCRIPTION)

"A PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE AN INSURANCE COMPANY, FILES A STATEMENT OF CLAIM CONTAINING FALSE, INCOMPLETE OR MISLEADING INFORMATION COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME."

*I CERTIFY THAT THE FACTS AS INDICATED ABOVE ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE.*

X _Cindy Whatley_
SIGNATURE

DATE _7/27/05_

TELEPHONE _(256) 329-7395_

TITLE _Benefits Specialist_

FAX _(256) 329-7335_

AR 103



**Reliance Standard Life**
**Insurance Company®**

**DISABILITY CLAIM**
**(LONG TERM, WAIVER OF PREMIUM)**
**EMPLOYEE'S STATEMENT**

TO BE COMPLETED BY THE EMPLOYEE

## A. INFORMATION ABOUT YOU

1. LAST NAME: Daugherty    FIRST: Carol    MIDDLE INITIAL: J

2. ADDRESS: Rt. 3 Box 155-C    CITY: Goodwater    STATE/PROVINCE: AL    ZIP: 35072

3. TELEPHONE AREA CODE: 256 8395265

4. SOCIAL SECURITY NUMBER: 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

5. DATE OF BIRTH (MONTH, DAY, YR.): 2/9/51
6. HEIGHT: 5'3½"    WEIGHT: 204
7. ☐ MALE  ☒ FEMALE
8. MARITAL STATUS: ☐ SINGLE  ☒ MARRIED  ☐ WIDOWED  ☐ DIVORCED

9. YOUR EMPLOYER (INCLUDE DIVISION IF APPLICABLE): Russell Medical Center - Purchasing (Materials Management)

10. OCCUPATION: Buyer
11. DOMINANT HAND: RIGHT ☒  LEFT ☐

## B. INFORMATION ABOUT YOUR FAMILY
### (REQUIRED TO DETERMINE YOUR ELIGIBILITY FOR SOCIAL SECURITY BENEFITS)

1. SPOUSE'S NAME (LAST, FIRST): Daugherty Donald J.

2. SPOUSE'S SOCIAL SECURITY NUMBER: 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
3. DATE OF BIRTH (MONTH, DAY, YR.): 3/26/47
4. IS YOUR SPOUSE EMPLOYED? ☐ YES  ☒ NO

5. DO YOU HAVE ANY CHILDREN UNDER AGE 18? ☐ YES  ☒ NO  6. DO YOU HAVE HANDICAPPED CHILDREN (REGARDLESS OF AGE)? ☒ YES  ☒ NO

7. DO YOU HAVE ANY CHILDREN AGE 18-19, WHO ARE FULL TIME STUDENTS IN ELEMENTARY OR SECONDARY SCHOOLS? ☐ YES  ☒ NO

IF YOU ANSWERED YES TO ANY OF THE ABOVE QUESTIONS, PLEASE LIST NAMES. (LAST, FIRST)    DATE OF BIRTH

## C. INFORMATION ABOUT THE CONDITION CAUSING YOUR DISABILITY

PLEASE ANSWER THE FOLLOWING QUESTIONS:

1. WHAT WERE YOUR FIRST SYMPTOMS? Pain in Face, Neck, Back, Legs & Feet Memory Loss Confusion Headaches, Dizziness, Fatigue, Ringing in Ears Numbness & Tingling Both Hands Pain

2. WHEN DID YOU NOTICE THEM? Became severe Sept. 05
3. DATE YOU WERE FIRST TREATED BY A PHYSICIAN? (MONTH, DAY, YR.) Long ago

4. WHY ARE YOU UNABLE TO WORK? Legs & feet cause walking difficulty loss in Dizziness Pain Constant Pain through out my Body- Neverending Confusion & Memory with Fatigue of Hands/wrists

5. BEFORE YOU STOPPED WORKING, DID YOUR CONDITION REQUIRE YOU TO CHANGE YOUR JOB OR THE WAY YOU DID YOUR JOB? ☒ YES ☐ NO Painful I had to make notes to remember what to do and could not lift or pull, walking was difficult.

6. HAVE YOU FILED, OR DO YOU INTEND TO FILE A WORKER'S COMPENSATION CLAIM? ☐ YES  ☒ NO

FOR AN INJURY, ANSWER THE FOLLOWING QUESTIONS:

7. WHERE AND HOW DID THE INJURY OCCUR? I fell Down A long Staircase at Home due to weakness & Pain in Leg & feet.

8. DATE THE INJURY OCCURRED (MONTH, DAY, YR.): DEC 04
9. DATE YOU WERE FIRST TREATED FOR THIS INJURY BY A PHYSICIAN (MONTH, DAY, YR.): 3/5/05

## D. INFORMATION ABOUT THE DISABILITY

1. DATE YOU WERE FIRST UNABLE TO WORK ON A FULL TIME BASIS (MONTH, DAY, YR.): 5/2/05

2. LAST DAY YOU WORKED BEFORE THE DISABILITY (MONTH, DAY, YR.): 4/29/05

3. DID YOU WORK A FULL DAY? ☒ YES  ☐ NO
IF NO, EXPLAIN.

4. HAVE YOU RETURNED TO WORK? ☐ YES  ☒ NO
PART TIME (DATE) _____    FULL TIME (DATE) _____

5. IF YOU HAVE NOT RETURNED TO WORK, DO YOU EXPECT TO? ☐ YES  ☒ NO
PART TIME (DATE) _____    FULL TIME (DATE) _____

AR 104

**DISABILITY CLAIM EMPLOYEES'S STATEMENT**

## E. INFORMATION ABOUT PHYSICIANS AND HOSPITALS

1. DATE YOU WERE FIRST TREATED FOR THE CURRENT ILLNESS OR INJURY: **10/19/04**
   *LIST ALL MEDICAL PRACTITIONERS CONSULTED FOR THIS CONDITION:*

DOCTOR'S NAME **DR. WAEL HAMO**
TELEPHONE **256 249-0091** SPECIALTY: **Neurology 11/4/04**
FAX **256 249-0024**
ADDRESS (STREET, CITY, STATE; ZIP) **209 W. Spring St. Sylacauga AL 35150**
DATES SEEN **10/19/04  12/14/04**  **4/1/05 - 6/2/05  4/14/05**

DOCTOR'S NAME **DR. GRAHAM HOWORTH**
TELEPHONE **256 2340989**
FAX ( )
SPECIALTY: **Orthopedic Surgery**
ADDRESS (STREET, CITY, STATE; ZIP) **1120 Airport Dr. Alex City AL 35010**
DATES SEEN **3/15/05  4/1/05  7/6/05**

*PLEASE ATTACH ADDITIONAL INFORMATION ON SEPARATE SHEET IF MORE DOCTORS WERE CONSULTED.*

HOSPITAL **Doctor Dr. Douglas Stewart     — Podiatric Surgery** **(250)2153596**
**(250) 825 5339 After Hrs.**
ADDRESS (STREET, CITY, STATE; ZIP) **1649 Hwy 22 Suite 1 Alex City AL 35010**
DATES OCCUPIED
FROM **6/2/05** TO **Return**

## F. INFORMATION ABOUT OTHER DISABILITY INCOME

(CHECK THE OTHER INCOME BENEFITS YOU ARE RECEIVING OR ARE ELIGIBLE TO RECEIVE AS A RESULT OF YOUR DISABILITY AND COMPLETE THE INFORMATION REQUESTED)

| SOURCE OF INCOME | AMOUNT (WK, MONTH) | DATE CLAIM WAS FILED | DATE PAYMENTS BEGAN | DATE PAYMENTS ENDED |
|---|---|---|---|---|
| SALARY CONTINUANCE | $ _____ / ____ | | | |
| SHORT TERM DISABILITY | $ _____ / ____ | | | |
| STATE DISABILITY | $ _____ / ____ | | | |
| WORKER'S COMPENSATION | $ _____ / ____ | | | |
| SOCIAL SECURITY/RETIREMENT | $ _____ / ____ | | | |
| SOCIAL SECURITY/DISABILITY | $ _____ / ____ | | | |
| SOCIAL SECURITY FOR DEPENDANTS | $ _____ / ____ | | | |
| CANADIAN PENSION PLAN | $ _____ / ____ | | | |
| PENSION/RETIREMENT | $ _____ / ____ | | | |
| PENSION/DISABILITY | $ _____ / ____ | | | |
| UNEMPLOYMENT | $ _____ / ____ | | | |
| NO-FAULT INSURANCE | $ _____ / ____ | | | |
| JONES ACT | $ _____ / ____ | | | |
| RAILROAD RETIREMENT | $ _____ / ____ | | | |
| OTHER (INCLUDE INDIVIDUAL OR GROUP) | $ _____ / ____ | | | |

## G. INFORMATION ABOUT INCOME TAX WITHOLDING

IF YOUR REQUEST FOR BENEFITS IS APPROVED, SHOULD INCOME TAXES BE WITHELD FROM YOUR BENEFIT CHECKS?  ☐ YES  ☒ NO  IF YES, HOW MUCH SHOULD BE WITHELD FROM EACH CHECK.

FEDERAL TAXES (MINIMUM IS $87.00 PER MONTH)  $ _____ .00
STATE TAXES (MINIMUM IS $10.00 PER MONTH)  $ _____ .00

## H. SIGNATURE (REQUIRED FOR ALL CLAIMS)

"A PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE AN INSURANCE COMPANY FILES A STATEMENT OF CLAIM CONTAINING FALSE, INCOMPLETE OR MISLEADING INFORMATION COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME."

*I CERTIFY THAT THE FACTS AS INDICATED ABOVE ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE.*

AR 105

X **Carol Daugherty**
SIGNATURE EMPLOYEE

**7/24/05**
DATE

**RSL  Reliance Standard Life Insurance Company®**

---

## I. EMPLOYMENT AND EDUCATION INFORMATION

**PLEASE PRINT ALL INFORMATION**

1. CLAIMANT'S NAME: *CAROL J. Daugherty*

2. POLICY NUMBER: *Group # 099500*

3. SOCIAL SECURITY NUMBER: *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*

**PLEASE COMPLETE THE FOLLOWING INFORMATION AS ACCURATELY AS POSSIBLE. THIS DATA IS NEEDED TO HELP MAKE A THOROUGH EVALUATION OF YOUR CLAIM.**

**EDUCATION/TRAINING**

HIGH SCHOOL: *Hialeah Highschool, Hialeah FL.*

1. COURSE OF STUDY:

2. HIGHEST GRADE COMPLETED: *12th GRADE*

3. DID YOU OBTAIN YOUR GED IF YOU DID NOT GRADUATE FROM HIGH SCHOOL?   ☐ YES   ☐ NO

   IF YES, WHEN? _____

   IF NO, DO YOU PLAN TO?   ☐ YES   ☐ NO

**COLLEGE:**

1. DID YOU ATTEND COLLEGE?   ☐ YES   ☒ NO

2. WHERE?

3. COURSE OF STUDY:

4. DEGREE   ☐ YES   ☐ NO      5. NUMBER OF YEARS COMPLETED:

6. TYPE OF DEGREE:      WHEN?

**VOCATIONAL TRAINING:** *ON THE JOB*

1. WHERE?

2. WHAT TYPE?

3. CERTIFICATE OR LICENSE OBTAINED:

4. WHAT SPECIALIZED TRAINING HAVE YOU HAD INCLUDING EQUIPMENT/MACHINERY USED? *Computer - WORK PROGRAMS - USED on the JOB*
*Pallet Jacks*
*Portible Dock*
*Postage machine*

5. DO YOU HAVE KNOWLEDGE OR PROFICIENCY WITH PERSONAL COMPUTERS?   ☐ YES   ☒ NO

6. IF YES, PLEASE LIST SOFTWARE PROGRAMS YOU HAVE USED:

*(illegible scribbled text)*

AR 106

**EMPLOYMENT HISTORY**

STARTING WITH PRESENT EMPLOYER, PLEASE LIST AND DESCRIBE ALL JOBS YOU HAVE HELD IN THE PAST 15 YEARS.
IF MORE THAN 1 JOB WITH ANY EMPLOYER, PLEASE LIST EACH.

1. NAME OF EMPLOYER: 21 yrs — Russell Medical Center – Alexander City, AL.

2. START DATE: 4/23/84

3. JOB TITLE: Buyer

4. MONTHLY SALARY: $2068.80

5. REASON FOR LEAVING: Unable to perform my job.

6. DETAIL YOUR JOB DUTIES: Data entry on computer – including ordering, processing purchase orders, calling orders, checking backorders, interaction with Dept. managers, problem solving, assistant to manager. Inventory warehouse, monitor shelf counts daily/weekly, assist personnel in receiving or

7. WHAT WERE THE PHYSICAL/MENTAL REQUIREMENTS? Lifting Distribution.
Daily walking, stooping, reaching in inventory, Assist in Distribution and Receiving requiring lifting, pulling, standing + walking + climbing. Mental Stress - Constant phone calls, problem solving, decisions of

8. NAME OF EMPLOYER: Stock levels, ordering, receiving errors, data entry + returns. Interaction daily with Hospital Managers and personnel for needs and

9. START DATE: Research on products/equipment/services.
Assistant to manager in daily activities.

11. MONTHLY SALARY:

12. REASON FOR LEAVING:

13. DETAIL YOUR JOB DUTIES:

14. WHAT WERE THE PHYSICAL/MENTAL REQUIREMENTS?

15. NAME OF EMPLOYER:

16. START DATE:

17. JOB TITLE:

18. MONTHLY SALARY:

19. REASON FOR LEAVING:

20. DETAIL YOUR JOB DUTIES:

21. WHAT WERE THE PHYSICAL/MENTAL REQUIREMENTS?

22. WHAT IS YOUR PROJECTED RETURN TO WORK DATE? Unknown

23. HAVE YOU CONTACTED YOUR FORMER EMPLOYER? ☐ YES ☑ NO

24. HAVE YOU BEEN LOOKING FOR A JOB? ☐ YES ☑ NO

25. ARE YOU FAMILIAR WITH YOUR LTD POLICY REGARDING RETURN TO WORK INCENTIVES AND REHABILITATION SERVICES? Yes

RSA3    N H    001                          G R A D S                              PAGE 1 OF 1
                              B I L L    G R O U P    B R O W S E                  SCREEN GBBG01

          CANCEL (Y/N): N          POLICY: LTD099500          SUB-POLICY: 01

          ENTER THE SELECTION NUMBER OR "M" TO VIEW MORE:    M

| SELECTION | ID | EFFECTIVE MM/DD/YY | STATUS | REMIT | BILLED-TO MM/YY | PAID-TO MM/YY |
|---|---|---|---|---|---|---|
| 1 | 000001 | 01/01/97 | ACTIVE | GROSS | 10/05 | 08/05 |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |

NO MORE BG SEGMENTS PRESENT

AR 110

```
                        G R A D S                         PAGE 1 OF 2
                     B I L L   G R O U P                  SCREEN GFBG01

SELECT K/M:            POLICY: LTD099500          MODE: INQUIRY
SUB POLICY: 01                             BILL GROUP: 000001
BILLING TYPE: RSL LB
                        --DATES--              MONTH MODE : 01
PREMIUM DUE : 01     EFFECTIVE : 010197        COMM AGENT : 000000
BILL NOTICE : 24     TERMINATE : 000000        TERM REASON:
GRACE PERIOD:  31    HIST START: 010197        BG STATUS  : 0
MODAL/TERM  : M            END: 000000         NET/GROSS  : G
BILL ON DAY :        BILLED TO: 1005           PART PAYMNT: F
PRINT ALL EE: Y (Y/N)   PAID TO: 0805          MED. CONVER: N
                                               DELETE ALL EB: N (Y/N)

NAME: RUSSELL HOSPITAL
ADDR: CINDY WHATLEY
ADDR: PO BOX 939
CITY: ALEXANDER CITY              ST: AL   ZIP: 35011   0

CLIENT-NUMBER: LTD099500    COMBINED FOR BILLING: N (Y/N)
CHECK VARIANCE: Y (Y/N)     MANUAL REVIEW: N (Y/N)
```

# VOCATIONAL REHABILITATION REVIEW OF OWN OCCUPATION

CLAIMANT:       Carol Daugherty
CLAIM NUMBER:  2005-236-113
DATE:           10/27//05

Per a referral from the Claims Examiner, the above referenced file was reviewed for this Vocational Rehabilitation Specialist's opinion regarding the claimant's ability to perform the material duties of her own occupation, in light of the work restrictions established in the 10/27/05 medical review completed by Marianne Lubrecht, BSN, RN.

Per the job description information available in the claim file, Ms. Daugherty was employed as a Buyer with Russell Hospital. Based on the nature and scope of the duties described, DOT 162.157-038 – Buyer was assigned and would appear to represent the best available designation for the claimant's regular occupation, in my professional opinion. Per DOT criteria, this occupation is classified at the light exertion level and requires occasional upper extremity use for reaching, handling, and fingering. Please refer to the attached DOT printout for additional details regarding the duties and physical demands of this occupation.

The Claims Examiner has referenced the medical review cited above for this own occupation analysis. Based on this review, the following work restrictions are established:
> Capable of work at the light exertion level with occasional fingering, with the exception of 6/2/05 to 6/16/05 when sedentary capacity was supported.

Based on my review and understanding of the information noted above, it is my professional opinion that the established work restrictions (with the exception of the 14 day period referenced above in 6/05) would be commensurate with the duties and demands of the claimant's occupation, per DOT criteria. Her documented capacity for work at the light exertion level with occasional fingering clearly and exactly matches the relevant parameters established for her occupation by the DOT.

I hope this information is helpful in the handling of this claim. Please feel free to contact me for further discussion, as warranted.

*John J. Zurick*

John J. Zurick, M.Ed., LPC, CRC, CVE
Vocational Rehabilitation Specialist

# OCCUPATIONAL DESCRIPTION

**Title: Buyer**                                               **DOT Code: 162.157-038**

Coordinates activities involved with procuring goods and services, such as raw materials, equipment, tools, parts, supplies, and advertising, for establishment:

**Tasks**

1. Reviews requisitions.

2. Confers with vendors to obtain product or service information, such as price, availability, and delivery schedule.

3. Selects products for purchase by testing, observing, or examining items.

4. Estimates values according to knowledge of market price.

5. Determines method of procurement, such as direct purchase or bid.

6. Prepares purchase orders or bid requests.

7. Reviews bid proposals and negotiates contracts within budgetary limitations and scope of authority.

8. Maintains manual or computerized procurement records, such as items or services purchased, costs, delivery, product quality or performance, and inventories.

9. Discusses defective or unacceptable goods or services with inspection or quality control personnel, users, vendors, and others to determine source of trouble and take corrective action.

**May Also Include:**

1. May approve invoices for payment.

2. May expedite delivery of goods to users.

**Alternate Titles:** Buyer

DLU: 1987

AR 113

# OCCUPATIONAL REQUIREMENTS

**Title:** Buyer
**Industry:** Professional and Kindred

**DOT Code:** 162.157-038

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning Grades 9-12
Mathematics Grades 7-8
Language Grades 9-12

**Strength:** Light

Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

**Physical Demands:**

| | | | |
|---|---|---|---|
| Climbing | Never | **Environmental Conditions:** | |
| Balancing | Never | Noise Intensity Level | Quiet |
| Stooping | Never | Exposure to Weather | Never |
| Kneeling | Never | Extreme Cold | Never |
| Crouching | Never | Extreme Heat | Never |
| Crawling | Never | Wet and/or Humid | Never |
| Reaching | Occasionally | Vibration | Never |
| Handling | Occasionally | Atmospheric Conditions | Never |
| Fingering | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Feeling | Never | Exposure to Electrical Shock | Never |
| Talking | Frequently | Working in High Exposed Places | Never |
| Hearing | Frequently | Exposure to Radiation | Never |
| Tasting/Smelling | Never | Working with Explosives | Never |
| Near Acuity | Frequently | Exposure to Toxic or Caustic Chemicals | Never |
| Far Acuity | Never | Other Environmental Conditions | Never |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Occasionally | | |
| Field of Vision | Never | | |

**Work Situations:** Directing, Controlling, or Planning Activities of Others
Influencing People in Their Opinions, Attitudes, and Judgments
Dealing with People (Beyond receiving work instructions)
Making Judgments and Decisions

**Data:** Coordinating
**People:** Persuading
**Things:** Handling

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89%) | 3+ (56 - 66%) |
| Verbal Aptitude | 2 (67-89%) | 3- (34 - 44%) |
| Numerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Spatial Aptitude | 4 (11-33%) | Not Included |
| Form Perception | 3 (34-66%) | Not Included |
| Clerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Motor Coordination | 4 (11-33%) | Not Included |
| Finger Dexterity | 4 (11-33%) | Not Included |
| Manual Dexterity | 4 (11-33%) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11%) | |
| Color Discrimination | 4 (11-33%) | |

# VOCATIONAL REHABILITATION REFERRAL

Examiner: Danielle Buggs                Date: 10/27/2005

## CLAIMANT INFORMATION

Name: carol J. Daugherty                Age: 54

Diagnosis: low back pain                Benefit Termination Date: 2/9/2017

Any Occ Date: 10/27/08                  Managed Rehab Policy? No
                                        (If yes, attach policy provision)

Current Benefit Amount:

## SERVICE(S) REQUESTED

### (Check appropriate item(s) & provide all required info with referral.)

A. ☐ **Review for Rehabilitation Services** (Rehab assessment of claimant vocational rehabilitation potential with vendor referral as appropriate)

B. ☐ **DOT** (Designation for own occupation) Must include job description info.

C. ☒ **Own Occ Review** (Rehab assessment of claimant ability to perform own occupation)

Reference specific medical information (PCA, FCE, RN Review, etc.) on which assessment is to be based: <u>please conduct a own occ review based on the medical review dated October 27, 2005. Claimant has light with occasional fingering</u>

D. ☐ **REA** (Residual Employability Analysis - Rehab assessment of other occupations claimant could perform, commensurate with training, education & experience)

**REA Requested For:**

☐ Any Occ. Determination
☐ WOP Determination
☐ SS Review

Reference specific medical information (PCA, FCE, RN Review, etc.) on which assessment is to be based: _____

E. ☐ **Other** (Please explain.) _____

EF-1127

vrr (11/00)

# EXHIBIT B

# PART 2

# ALABAMA

## DISABILITY DETERMINATION SERVICE

**TO:** Reliance Standard Life
Attn. Danielle Buggs

**FROM:** DDS

**DATE:** 9/20/05

**SUBJECT:** Carrie Daugherty

---

**NUMBER OF PAGES:** Cover plus __8__

**FAX number for the DDS's Administrative Section is (205) 989-2295.**

**If you do not receive all information that is transmitted, please call (205) 989-2100.**

AR 116

# DISABILITY DETERMINATION DIVISION
## POST OFFICE BOX 830300
## BIRMINGHAM, ALABAMA  35283-0300

**Local Number  989-2100**

**Toll Free Number 1-800-292-8106**

September 20, 2005

M E M O R A N D U M

TO:           Reliance Standard Life Insurance
                  Attn:  Danielle Buggs

FROM:        Disability Determination Service
                  Birmingham

RE:           Carol Jean Daugherty- 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
                  Claim # 2005236113

Per your request of the status on Ms. Daugherty's claim:

Claim is still pending.   A consultative examination has been requested.  Will probably be another 30 days.

/ka

# RELIANCE STANDARD
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103
(800) 351-7500

September 2, 2005

Russell Hospital
Attn: Cindy Whately
1506 Highway 280 By Pass
Alexander City, AL 35011

RE:         Claimant:    Carol J. Daugherty
            Claim number: 2005-236-113
            Policy number: LSC 99500

Dear Ms. Whately:

Additional Information needed for claim processing, please supply
us with the item(s) indicated below:

[x] What was her hourly rate of pay as of 4/29/05? $ _12.928_

[x] What is the weekly amount of her STD?  Does not have STD
    $_____ Begin date ___/___/___ End date ___/___/___

[x] Please send in copies of her payroll records 3 months prior to her last day worked.
    1/29/2005 to 4/29/05.

[x] Please send in a copy of her enrollment form.

[x] Other: Please send the above information to my attention no later than September 25,
2005.

Thank you,

Danielle Buggs, Examiner
267-256-3652

**RELIANCE STANDARD**
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103
(800) 351-7500

September 2, 2005

Russell Hospital
Attn: Cindy Whately
1506 Highway 280 By Pass
Alexander City, AL 35011

Re:   Policy No.    :LSC 99500
      Claim No.     :2005-236-113
      Policyholder :Russell Hospital

Dear Ms. Whately:

We have received an application for Long Term Disability benefits and initiated the processing of a claim for Carol J. Daugherty.

In order to properly evaluate your application, we have found necessary to request additional information. This information has been requested today under separate cover.

In the meantime, please be assured that once this necessary information is received we will give Ms. Daugherty's claim our prompt attention. If you have any questions regarding this matter, please contact me at 1-800-351-7500.

Sincerely,

Danielle Buggs, Examiner
LTD Claims Department
Ext.3652

a *DELPHI* company

AR 119

**Reliance Standard Life Insurance Company**　　　　**Group Enrollment Card**

| EMPLOYER SECTION | (1) Policyholder Russell Hospital |
|---|---|

(2) Policy No.

(3) Location

(4) Full Time Employment Date

(5) Class

(6) Hours Per Week 40

(7) Occupation Buyer 480,80

(8) Salary □ Hrly. □ Mthly. $ □ Wkly. □ Yrly.

(9) Employee's Full Name CAROL JEAN Daugherty

(10) S.S. No. 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

(11) □ Male ☒ Female

(12) Employee's Birth Date mm 2 dd 9 yy 54

(13) Spouse's Birth Date mm 3 dd 26 yy

(14) Beneficiary(ies) Full Name(s) Donald Joseph Daugherty

Relationship Husband

% Of Proceeds 100%

(15) I request to purchase the following Group Insurance Coverages:
□ Life/AD&D □ Supp. Life □ Dep. Life □ Weekly Income ☒ Long Term Disability

(16) I authorize my employer to deduct from my salary or wages, if applicable, the necessary premium for the coverage(s) requested above. This signature is also to verify: (1) the accuracy of the information contained on this card; and (2) the beneficiary(ies) I have designated.

Carol A. Daugherty　　　Employee Signature

12/11/96　Date

LRS—8485-0589

Basic & Optional

AR 120

Russell Medical Center P/D **LIVE**
EMPLOYEE PAYROLL HISTORY

PAGE 1

RUN DATE: 09/12/05
RUN TIME: 1419
RUN USER: AP.CBW

EMPLOYEE #: 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

DAUGHERTY, CAROL JEAN
Timecards Paid From 01/01/05 to 05/01/05

| PAY/TD DATE | NET PAY | DD OR CHECK # | EARNING | HOURS-RPT | JOB CODE | DEPARTMENT | RATE | AMOUNT | WITHHOLD | WITHHOLDING AMOUNT | PLAN | BENEFITS ER.BASE | EARNED | TAKEN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | ACCD PNL | 24.06 | PT | 82.650 | 8.615 | 6.000 |
| | | | | | | | | | HLTH-SGV | 34.13 | PI | 82.650 | 2.660 | |
| | | | | | | | | | VISN-ONE | 7.03 | | | | |
| | | | | | | | | | DNTL-ONE | 15.50 | | | | |
| | | | | | | | | | OASDI | 61.30 | | | | |
| | | | | | | | | | HI | 14.34 | | | | |
| | | | | | | | | | 403(b) | 10.69 | | | | |
| | | | | | | | | | FIT | 26.39 | | | | |
| | | | | | | | | | SIT | 29.09 | | | | |
| | | | | | | | | | TERMLIFE | 11.50 | | | | |
| | | | | | | | | | RELIANCE | 16.92 | | | | |
| 01/14/05 | 779.60 | 058460 | (STANDARD) | | 833112610l 01 8331 | | 12.92800 | | RELIANCE | 260.13 | | 10.357 | | 8.000 |
| | | | RR | 32.000 | | | 12.92800 | 409.77 | ACCD PNL | 24.06 | PT | 79.000 | 8.508 | 8.000 |
| | | | PT | 8.000 | | | 12.92800 | 103.42 | HLTH-SGV | 34.13 | PI | 79.000 | 2.429 | |
| | | | RR | 0.050 | | | 12.92800 | 518.42 | VISN-ONE | 7.03 | | | | |
| | | | OT | 0.950 | | | 19.39200 | 18.42 | DNTL-ONE | 15.50 | | | | |
| | | | | | | | | | OASDI | 59.27 | | | | |
| | | | | | | | | | HI | 13.91 | | | | |
| | | | | | | | | | 403(b) | 10.40 | | | | |
| | | | | | | | | | FIT | 39.45 | | | | |
| | | | | | | | | | SIT | 27.77 | | | | |
| | | | | | | | | | TERMLIFE | 11.50 | | | | |
| | | | | | | | | | RELIANCE | 16.92 | | | | |
| 01/23/05 | | 058733 | | | | | | 1063.47 | RELIANCE | 266.95 | | 11.075 | | 6.000 |
| | | | RR | 34.300 | | | 12.92800 | 443.43 | ACCD PNL | 24.06 | PI | 74.300 | 8.001 | |
| | | | RR | 40.000 | | | 12.92800 | 517.12 | HLTH-SGV | 34.13 | PI | 74.300 | 2.285 | |
| | | | OT | 0.350 | | | 19.39200 | 6.78 | DNTL-ONE | 16.13 | | | | |
| | | | | | | | | | VISN-ONE | 7.03 | | | | |
| 02/11/05 | 733.34 | 059061 | (STANDARD) | | 833112610l 01 8331 | | 12.92800 | 517.12 | OASDI | | PI | | | |
| 02/06/05 | | POSTED | RR | 40.000 | | | 12.92800 | | HI | 13.00 | | | | |
| | | | | | | | | | 403(b) | 8.70 | | | | |
| | | | | | | | | | FIT | 33.24 | | | | |
| | | | | | | | | | SIT | 24.97 | | | | |
| | | | | | | | | | TERMLIFE | 11.50 | | | | |
| | | | | | | | | | RELIANCE | 16.92 | | | | |
| 02/25/05 | 174.24 | 059358 | (STANDARD) | 40.000 | 833112610l 01 8331 | | 12.92800 | 977.03 | RELIANCE | 245.69 | | 10.286 | | |
| 02/20/05 | | POSTED | OT | 3.850 | | | 12.92800 | 517.12 | ACCD PNL | 24.06 | PT | 79.700 | 8.583 | 16.000 |
| | | | RR | 23.700 | | | 12.92800 | 306.39 | DNTL-ONE | 15.50 | | 79.700 | 2.451 | |

RUN DATE: 09/12/05
RUN TIME: 1419
RUN USER: AP-CBW

Russell Medical Center P/R **LIVE**
EMPLOYEE PAYROLL HISTORY

PAGE 2

EMPLOYEE #: 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

DAUGHERTY, CAROL JEAN
Financial Paid From 01/01/05 to 06/01/05

RUN DATE: 09/12/05
RUN TIME: 1419
RUN USER: AP/CSM

**Russell Medical Center P/P **LIVE***
EMPLOYEE PAYROLL HISTORY**

PAGE 3

EMPLOYEE #: 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

DAUGHERTY (CAROL JEAN)
Elapsed P&R from 01/01/05 to 08/01/05

| PAY/TD DATE | NET PAY | DD OR CHECK # | EARNING | HOURS SHP JOB CODE DEPARTMENT | RATE | AMOUNT | WITHHOLD | WITHHOLDING AMOUNT | PLAN | BENEFITS HR EARN | BENEFITS EARNED | TAKEN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/22/05 | 693.06 | 060598 | | | | | 403(b) | 10.70 | | | | |
| 04/17/05 | | POSTED | | | | | FIT | 41.27 | | | | |
| | | | | | | | SIT | 28.59 | | | | |
| | | | | | | | FRANZ | 3.00 | | | | |
| | | | | | | | RELIANCE | 16.92 | | | | |

(STANDARD)     1  8331126101 01.8331

| | | | EARNING | HOURS | | RATE | AMOUNT | WITHHOLD | | BENEFIT | | EARNED | TAKEN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

RR   30.650            12.92800        12.92800     403(b)   10.70
SH   40.000            12.92800   336.24  SUPR TIME        11.50  SH
OT    0.750            19.39200  14.55   SIT     517.12    ACCD PNL   24.06  PT   70.650   2,172
                                                 HLTH-SGL   44.10
                                                 DNTL-ONE   15.50
                                                 VISN-ONE    7.01
                                                 OASDI      51.81
                                                 HI         12.12
                                                 403(b)      9.28
                                                 SIT        22.23
                                                 SIT        22.27
                                                 FRANZ      16.92
                                                 RELIANCE

                        81.750                       1059.80           267.48              11.040

| TOTALS | | EARNING | HOURS | AMOUNT | WITHHOLDING | AMOUNT | BENEFIT | EARNED | TAKEN |
|---|---|---|---|---|---|---|---|---|---|
| | RR | 514.350 | 6649.51 | SUB INS | 46.00 | PT | 66.089 | 63.000 |
| | OT | 7.350 | 140.60 | ACCD PNL | 339.68 | PT | 18.472 | 40.000 |
| | PT | 62.000 | 801.53 | HLTH-SGL | 273.04 | | | |
| | PI | 40.000 | 517.12 | DNTL-ONE | 124.00 | | | |
| | | | | VISN-ONE | 56.24 | | | |
| | | | | OASDI | 453.85 | | | |
| | | | | HI | 107.55 | | | |
| | | | | 403(b) | 81.08 | | | |
| | | | | FIT | 290.28 | | | |
| | | | | SIT | 240.74 | | | |
| | | | | FRANZ2 | 9.00 | | | |
| | | | | TUITNX | 88.38 | | | |
| | | | | RELIANCE | 135.36 | | | |

71.400                      927.91              234.85         9.780

623.600   8108.76       2031.62     84.960   102.000   NET PAY $6077.14

AR 123

# RELIANCE STANDARD
Life Insurance Company

**Social Security/Railroad Retirement Board
Questionnaire And Authorization**

Because you may be eligible for Social Security and/or Railroad Retirement Board ("SS/RRB") disability benefits, it is important that you promptly advise Reliance Standard Life Insurance Company ("RSL") of any such benefit awards or denials. Your RSL disability benefit may be reduced by any amounts you are eligible to receive from SS/RRB. SS/RRB dependent benefit awards may also affect the amount of your RSL disability benefit. SS/RRB benefits are generally available if you have been totally disabled for five months and the disability is expected to continue for twelve months. We urge you to apply if you meet this criteria. Until you submit proof that SS/RRB benefits have been applied for or that these benefits have been denied and cannot be further appealed, we may deduct the estimated amount of these benefits from any RSL disability benefit payable. Any overpayment of benefits must be refunded to RSL. See your RSL policy for details. Please provide the following information:

| Have you applied for<br><br>Social Security/Railroad Retirement Board benefits? | ☒ Yes   ☐ No | If yes, what is the date of your application?<br><br>July 05 |
|---|---|---|

Address of Local Social Security/Railroad Retirement Board Office

| Have you received<br><br>an Award or Denial?<br>If yes, when? | ☐ Yes   ☒ No | If yes, please<br><br>attach a copy. | If you have not applied for Social Security/Railroad<br>  ☐ Yes   ☐ No<br>Retirement Board benefits, do you intend to?<br>If no, why? |
|---|---|---|---|

## Dependent Information

| If married, state:<br><br>If spouse is employed:<br>NO | Name of Spouse: DONALD J. Daugherty<br>Name and Address of Employer<br>DISABLED | Date of Birth 3/26/47<br><br>Date of Employment |
|---|---|---|

Please list all children under 18 years of age.

| Name | Date of Birth | Name | Date of Birth |
|---|---|---|---|
| 1 | | 4 | |
| 2 | | 5 | |
| 3 | | 6 | |

I understand and agree that my disability benefits will be reduced according to the terms of the group long term disability policy issued by Reliance Standard Life Insurance Company under which I am claiming benefits. I understand that the disability benefit is also affected by all retroactive Social Security/Railroad Retirement Board Awards.

Any person who knowingly and with intent to injure, defraud or deceive Reliance Standard Life Insurance Company files a statement of claim or submits any information in conjunction with a claim containing fraudulent, false, misleading, incomplete or deceptive information commits a fraudulent insurance act, which is a crime. These actions will result in the denial of your claim, and are subject to prosecution under state and/or federal law. Reliance Standard Life Insurance Company will pursue any and all appropriate legal remedies arising from such fraudulent insurance acts.

| Signature | | Date 9/3/05 |
|---|---|---|
| Address RT 3 BOX 1550-C<br>GoodWATER AL 35072 | | Social Security Number 266 04 7470<br>Date of Birth 2/9/51 |

Please Return This Form To: Reliance Standard Life Insurance Company
LTD Claims Department
P.O. Box 8330
Philadelphia, PA 19101-8330

EF 1045

3/2000

**Social Security Administration**
**Consent for Release of Information**

TO: Social Security Administration

_CAROL JEAN Daugherty_    _2/9/51_    _266 04 7470_

Name    Date of Birth    Social Security Number

I authorize the Social Security Administration to release information or records about me to:

NAME    ADDRESS

_Reliance Standard_    _P.O. Box 8330_
_Life Insurance Co._    _Philadelphia, PA  19101-8330_

I want this information released because:

_I have Applied for my Long Term Disability from above Company, I have this policy for many years._

(There may be a charge for releasing information.)

Please release the following information:

_____ Social Security Number
_____ Identifying information (includes date and place of birth, parents' names)
_____ Monthly Social Security benefit amount
_____ Monthly Supplemental Security Income payment amount
_____ Information about benefit/payments I received from _____ to _____
_____ Information about my Medicare claim/coverage from _____ to _____
          (specify) _____
_____ Medical records
_____ Record(s) from my file (specify) _____
          _____
_____ Other (specify) _____    _____

I am the individual to whom the information/record applies or that person's parent (if a minor) or legal guardian. I know that if I make any representation which I know is false to obtain information from Social Security records, I could be punished by a fine or imprisonment or both.

Signature: _Carol Daugherty_
(Show signatures, names and address of people if signed by a mark.)

Date: _9/3/05_ _____    Relationship: _____

# OCCUPATIONAL DESCRIPTION

**Title:** Buyer                                          **DOT Code:** 162.157-038

Coordinates activities involved with procuring goods and services, such as raw materials, equipment, tools, parts, supplies, and advertising, for establishment:

**Tasks**

1. Reviews requisitions.

2. Confers with vendors to obtain product or service information, such as price, availability, and delivery schedule.

3. Selects products for purchase by testing, observing, or examining items.

4. Estimates values according to knowledge of market price.

5. Determines method of procurement, such as direct purchase or bid.

6. Prepares purchase orders or bid requests.

7. Reviews bid proposals and negotiates contracts within budgetary limitations and scope of authority.

8. Maintains manual or computerized procurement records, such as items or services purchased, costs, delivery, product quality or performance, and inventories.

9. Discusses defective or unacceptable goods or services with inspection or quality control personnel, users, vendors, and others to determine source of trouble and take corrective action.

**May Also Include:**

1. May approve invoices for payment.

2. May expedite delivery of goods to users.

**Alternate Titles:** Buyer

DLU: 1987

# OCCUPATIONAL REQUIREMENTS

**Title:** Buyer
**Industry:** Professional and Kindred

**DOT Code:** 162.157-038

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:**
Reasoning Grades 9-12
Mathematics Grades 7-8
Language Grades 9-12

**Strength:** Light

Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Quiet |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Occasionally | Atmospheric Conditions | Never |
| Handling | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Fingering | Occasionally | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Occasionally | | |
| Field of Vision | Never | | |

| Work Situations: | Directing, Controlling, or Planning Activities of Others | | |
|---|---|---|---|
| | Influencing People in Their Opinions, Attitudes, and Judgments | **Data:** | Coordinating |
| | Dealing with People (Beyond receiving work instructions) | **People:** | Persuading |
| | Making Judgments and Decisions | **Things:** | Handling |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89%) | 3+ (56 - 66%) |
| Verbal Aptitude | 2 (67-89%) | 3- (34 - 44%) |
| Numerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Spatial Aptitude | 4 (11-33%) | Not Included |
| Form Perception | 3 (34-66%) | Not Included |
| Clerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Motor Coordination | 4 (11-33%) | Not Included |
| Finger Dexterity | 4 (11-33%) | Not Included |
| Manual Dexterity | 4 (11-33%) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11%) | |
| Color Discrimination | 4 (11-33%) | |

08/26/2005

Page 2

AR 127

# JOB DESCRIPTION

Name: __Carol Daugherty____        Soc. Sec. __266047470_____

Title: _____Buyer_____        Job Code: _____126-101_____

Department: _____833_____ Appraisal Period From: _____ to: ____

## JOB SUMMARY:

Responsible for monitoring and purchasing of inventory supplies for the Medical Center. Provides purchasing service and assistance to other departments and personnel.

## SUPERVISION:

SUPERVISED BY: Director of Materiel Management

SUPERVISES:              N/A

## MINIMUM QUALIFICATIONS:

EDUCATION:

B:     EXPERIENCE:       Minimum of two years in Purchasing and Inventory Control

C:     LICENSES, CERTIFICATION, AND/OR REGISTRATIONS:     None

D:     EQUIPMENT, TOOLS, WORK AIDS:     Computer, office machines

E.     SPECIALIZED KNOWLEDGE AND SKILLS:     Inventory control techniques, Hospital Information System, Spreadsheets

## WORKING CONDITIONS:

ENVIRONMENTAL WORK CONDITIONS:

Subject to: Normal working conditions

1

AR 128

INFECTIOUS MATERIAL EXPOSURE:    No routine exposure

## JOB DESCRIPTION

**KEY RESULTS PLAN:**

**Customer Satisfaction Focus:**

**Primary Focus**                    **Secondary Focus**

Patient Population Served:

|  | Importance | Evaluation |
|---|---|---|

1. **Essential Key Results Areas:**

**Maintains the Medical Center's Medical General Stores Inventory.**

A. Ensures inventory items are ordered
   And are available for use.                    C

B. Constantly monitors inventory utilization
   and adjust par levels when appropriate.

C. Performs inventory count on a cycle basis
   Or as directed.  Completes a minimum of
   One cycle per month.

D. Reviews data received through the Information
   System for accuracy.

2

E. Utilizes EDI for order placement whenever possible.

F. Researches and corrects errors and discrepancies
Found in inventory count or inventory system.

G. Always informs the Director of stock outs or other
Potential inventory or supply problems.

H. Researches methos to reduce costs through product
Review, product conversion, and value analysis.

Supporting Statements: _____

_____

_____

## JOB DESCRIPTION

| | Importance | Evaluation |
|---|---|---|
| **2. Maintains accounts, records, reports, And contracts.** | C | |

A. Coordinates with Acoounts payable to assure
Invoices are correct and paid promptly.

B. Provides EOM reportssuch as Turnover
and ABC analysis to the Director.

C. Maintains and updates, via the inverntory
control system, contract pricing on inventory
Items.

D. Reviews Group Purchasing Contracts for
Possible utilization.

E. Utilizes contracts when in the best interest
Of the Medical Center.

3

Supporting Statements: _____

_____

_____

**3. Maintain vendor relationships** _____C_____     _____

A. Contacts, meets, and negotiates, with
   Vendor representatives.

B. Evaluates vendor performance according
   to fill rates, backorder frequencies, and
   correct invoiceing.

C. Expedites emergency procurement requests
   Through knowledge of vendors and
   relationships with surrounding medical
   complexes.

Supporting Statements: _____

_____

_____

## JOB DESCRIPTION

|  | **Importance** | **Evaluation** |
|---|---|---|
| **4.** | _____ | _____ |

Supporting Statements: _____

4

AR 131

5.

Supporting Statements: _____

_____

**JOB DESCRIPTION**

                          **Importance**           **Evaluation**

6.

Supporting Statements: _____

5

7. _____

Supporting Statements: _____

|  | Importance | Evaluation |
|---|---|---|

**Secondary Key Results Areas:**

8.

6

Supporting Statements: _____

_____

_____

**Population/Age specific Key Results:**

1. Performs care, treatment and assessment based on _____ _____
   Population/age specific criteria
   Department policies/procedures # _____ located in
   _____ are followed.

Supporting Statements: _____

_____

_____

**Project (s) :**                              _____  _____

_____

_____

_____

_____

_____

7.

|  | Importance | Evaluation |
|---|---|---|
| 2. _____ | _____ | _____ |

All job requirements listed indicate the minimum level of knowledge, skills and/or ability deemed necessary to perform the job proficiently. This job description is not to be construed as an exhaustive statement of duties, responsibilities or requirements. Employees will be required to perform any other job – related instructions as requested by their supervisor, subject to reasonable accommodations.

Employee Signature _____     Date _____

[ ] Job description has changed since last evaluation period. _____

Employees initials

8

EXAMINER: Bill

# Review of Peer Review Report

| | |
|---|---|
| DATE:  August 3, 2006 | CLAIM NUMBER: 2005-236-113 |
| CLAIMANT NAME:  Carol Daugherty | |
| CURRENT R&L'S:  None | DURATION: |

Date of Report:  5/31/06 (amended report)

Reviewer Specialty: Neurology

## *SUMMARY*

Please see report for specific details. Claimant found to lack support for work limitations. In addition it is noted that although the treating neurologist Dr. Hamo reports claimant without work function he does provide restrictions and limitations. Based on record review claimant able to return to work without limitation.

Please let me know if I can be of further assistance on this file.

The medical opinion provided is based on the data available as of this date. The signature below asserts that I have the training and experience in the area of nursing practice encompassed in this review.

Marianne P. Aubrecht, BSN, RN

JUN. 7. 2006 10:41AM

# JOHN E. ROBINTON, M.D., P.A.

FELLOW OF THE AMERICAN ACADEMY OF NEUROLOGY

33 NORTH FULLERTON AVENUE
MONTCLAIR, NEW JERSEY 07042
PHONE (973) 783-6303
FAX (973) 783-4484

BOARD CERTIFIED IN NEUROLOGY
AND NEUROPHYSIOLOGY BY THE
AMERICAN BOARD OF
PSYCHIATRY AND NEUROLOGY

May 31, 2006

United Review Services
10 Corporate Place South, Suite 2-06
Piscataway, NJ 08854

Attention: Ms. Patricia Wallace, LPN

**Patient: Carol Daugherty**
**File #: P70570**

At your request, I reviewed the records forwarded to my attention on patient Carol Daugherty. She was initially seen in neurologic evaluation on 10/19/04 by Dr. Hamo. When she presented to his office, she noted a diagnosis of fibromyalgia which had been made by rheumatology. Ongoing symptomatology included neck pain, low back pain, bilateral hand and wrist pain and numbness. Initial neurologic examination revealed a question of weakness, though exam was unreliable because of pain. The patient was begun on treatment with Clonazepam and Zanaflex. EMG and nerve conduction studies were ordered as well as MRI of the lumbar spine. Though MRI of the lumbar spine revealed degenerative changes, reportedly EMG performed by Dr. Hamo revealed the presence of radiculopathy. EMG and nerve conduction studies also revealed evidence of mild carpal tunnel syndrome bilaterally. There is no evidence of a generalized neuropathic process. Provigil was added. Extensive blood studies were performed which were unrevealing. On follow-up visit dated 11/16/04, an additional complaint of memory loss was offered. However, initial neurologic examination had documented memory was excellent. EEG was performed for evaluation of memory. Aricept was added to the regime. On follow-up visit, Aricept dosage was increased. MRI of the brain was performed. Reminyl was added to replace Aricept. Subsequent evaluation included spinal fluid analysis which was unremarkable. Cymbalta was added to the regime to replace Zoloft. Kepra was added on a visit of 6/2/05 for what were labeled "neuropathic symptoms". On the final follow-up visit which is documented of 8/9/05, medications included Reminyl, Zanaflex, Zoloft, and Clonazepam. The use of

wrist splints for carpal tunnel was recommended.

A disability form dated 7/12/05 by Dr. Hamo states the patient is unable to work.

United Review Services
Attention  Ms. Patricia Wallace, LPN
Re:  Carol Daugherty
May 31, 2006
Page 2

**Conclusions:**

1. Describe your examination and findings in detail.

   Neurologic examination as provided by Dr. Hamo described no consistent objective evidence of neurologic dysfunction.  No consistent motor or sensory abnormalities are noted.  Despite the  reported memory problems, on formal mental status examination abnormalities are not documented.

2. What are the claimant's specific diagnoses and prognosis within your field of specialty?

   Only a diagnosis of bilateral median neuropathy at the wrist presenting as carpal tunnel has been documented.  Despite the reported memory problems, there is no documentation of memory difficulties.  Despite the reported neuropathy, nerve conduction studies revealed no evidence of a generalized neuropathic process.  Despite the reported complaints of lumbar radiculopathy, MRI of the lumbar spine fails to reveal evidence of a significant lesion which might be resulting in radiculopathy.

3. Will the claimant's condition and her physical capabilities improve with any specific treatment?

   It is my opinion that this patient might be better off if several of the medications which have been prescribed would be discontinued.  No rationale exists for the use of the Zanaflex, Reminyl, Kepra, or Clonazepam.

4. Please give specific recommendations for treatment.

   I am not certain that this patient needs neurologic follow up.  Her complaints appear to be primarily musculoskeletal.  Follow up with a rheumatologist is most appropriate.

AR 138

5. Is treatment appropriate?

Documentation of abnormalities in the chart does not indicate that there is a need for   several of the medications being prescribed.

6. How long do you anticipate the length of treatment and recovery?

Only a diagnosis of carpal tunnel has been documented within my specialty. If this patient fails to respond to conservative treatment, then one would expect cure with surgical decompression of the median nerve, given the fact that a generalized condition which might have resulted in the median neuropathies has not been documented.

7. What, if any, restrictions or limitations should be in place? What is the prognosis for return back to work?

I find no evidence of a disabling condition within my specialty which would keep this   patient out of work. I would expect she would be able to return back to work immediately without restrictions based on my review of the records..

A short paragraph which is entitled To Whom It May Concern signed by Dr. Hamo on October 28, 2005, defines work restrictions which should include "she is to avoid repetitive and hard activity of the right and left hand in wrist area and right lower extremity. Limited stooping, climbing, and bending. May lift up to 20 pounds. Avoid sitting for more than one hour at a time. Avoid standing for no longer than 15 minutes at one time." Though he states in his notes she is unable to work, he does provide reasonable limitation for her return to work within that note.

If you have any questions, please feel free to call.

Respectfully yours,


John E. Robinton, M.D.

JER:ss


AR 139

**From:**     William Ross
**To:**       Lubrecht, Marianne
**Date:**     07/18/2006 8:14:59 AM
**Subject:**  Re: Clarification on Peer on Carol Daugherty by Dr. Robinton

Hi Marianne,

Would you please provide an update on the above captioned.

Thanks


William F. Ross
Reliance Standard Life Insurance Company
Attention Quality Review Unit
PO Box 8330
Philadelphia, PA 19101-8330
1-800-351-7500 Ext. 3862
1-267-256-3862 (Direct)
1-267-256-3538 (Fax)
william.ross@rsli.com



>>> Marianne Lubrecht 06/14/2006 1:08 PM >>>
Dr. Robinton on page 2 of his report states he does not find a disabling condition. He goes on to discuss
the discrepancy with Dr. Hamo from no work to CAPS of 10/05. Does Dr. Robinton feel claimant is limited
to these restrictions and limitations or without limitation?

Thanks,

Marianne

Marianne Lubrecht, RN, BSN
Supervisor Medical Services
Reliance Standard Life Insurance, Inc
Phone - 267-256-3710
Fax - 267-256-3554
e-Mail - marianne.lubrecht@RSLI.com

| | |
|---|---|
| **From:** | Marianne Lubrecht |
| **To:** | Wallace, Pat |
| **Date:** | 06/14/2006 1:08:49 PM |
| **Subject:** | Clarification on Peer on Carol Daugherty by Dr. Robinton |

Dr. Robinton on page 2 of his report states he does not find a disabling condition. He goes on to discuss the discrepancy with Dr. Hamo from no work to CAPS of 10/05. Does Dr. Robinton feel claimant is limited to these restrictions and limitations or without limitation?

Thanks,

Marianne

Marianne Lubrecht, RN, BSN
Supervisor Medical Services
Reliance Standard Life Insurance, Inc
Phone - 267-256-3710
Fax - 267-256-3554
e-Mail - marianne.lubrecht@RSLI.com

**CC:**        Ross, William

# Review of Peer Review Report

| | |
|---|---|
| DATE:  June 8, 2006 | CLAIM NUMBER: 2005-236-113 |
| CLAIMANT NAME:  Carol Daugherty | |
| CURRENT R&L'S:  None | DURATION: |

Date of Report:  5/31/06

Reviewer Specialty: Neurology

## *SUMMARY*

Please see report for specific details. Claimant found to lack support for work limitations. In addition it is noted that although the treating neurologist Dr. Hamo reports claimant without work function he does provide restrictions and limitations.

Please let me know if I can be of further assistance on this file.

The medical opinion provided is based on the data available as of this date. The signature below asserts that I have the training and experience in the area of nursing practice encompassed in this review.

Marianne P. Lubrecht, BSN, RN

# UNITED REVIEW SERVICES, INC.
■ *Independent Medical and Dental Consultants* ■

INDEPENDENT MEDICAL EXAMINATION REPORT

Christine Mullen, R.N., Reliance Standard Life Insurance
2001 Market Street, Suite 1500
Philadelphia, PA  19103-7090

<u>Claimant</u>:     Carol Daugherty
<u>Your File</u>:    2005-236-113
<u>URS File</u>:    70570
<u>Exam Date</u>:
<u>Exam Type</u>:    Neurology Peer Review
<u>Examiner</u>:    Dr. John E. Robinton
<u>Report Date</u>: 6/7/2006

<u>FINDINGS</u>:

The attached report was reviewed and found to be complete.  The following is
a summary of the physician's findings.  Please refer to the attached report
for detailed findings and recommendations.

<u>RECOMMENDATION</u>:

Thank you for this referral!  The physician's report is attached.  We hope
our service has been helpful and look forward to being of assistance again
soon.

Patricia Wallace, LPN
IME Coordinator
Telephone: 877-970-9525

Attachment:  Physician's Report, Invoice

10 Corporate Place South, Suite 206, Piscataway, NJ 08854 ■ 732-815-0330 ■ Fax 732-382-2035
www.unitedreviewservices.com  1-800-497-2930

AR 143

70570
x 985

# JOHN E. ROBINTON, M.D., P.A.

FELLOW OF THE AMERICAN ACADEMY OF NEUROLOGY

BOARD CERTIFIED IN NEUROLOGY
AND NEUROPHYSIOLOGY BY THE
AMERICAN BOARD OF
PSYCHIATRY AND NEUROLOGY

33 NORTH FULLERTON AVENUE
MONTCLAIR, NEW JERSEY 07042
PHONE (973) 783-6303
FAX (973) 783-4484

May 31, 2006

United Review Services
10 Corporate Place South, Suite 2-06
Piscataway, NJ  08854

Attention:  Ms. Patricia Wallace, LPN

**Patient:  Carol Daugherty**                              **File #:  P70570**

At your request, I reviewed the records forwarded to my attention on patient Carol Daugherty. She was initially seen in neurologic evaluation on 10/19/04 by Dr. Hamo. When she presented to his office, she noted a diagnosis of fibromyalgia which had been made by rheumatology. Ongoing symptomatology included neck pain, low back pain, bilateral hand and wrist pain and numbness. Initial neurologic examination revealed a question of weakness, though exam was unreliable because of pain.  The patient was begun on treatment with Clonazepam and Zanaflex. EMG and nerve conduction studies were ordered as well as MRI of the lumbar spine. Though MRI of the lumbar spine revealed degenerative changes, reportedly EMG performed by Dr. Hamo revealed the presence of radiculopathy.  EMG and nerve conduction studies also revealed evidence of mild carpal tunnel syndrome bilaterally.  There is no evidence of a generalized neuropathic process. Provigil was added. Extensive blood studies were performed which were unrevealing.  On follow-up visit dated 11/16/04, an additional complaint of memory loss was offered.  However, initial neurologic examination had documented memory was excellent. EEG was performed for evaluation of memory. Aricept was added to the regime. On follow-up visit, Aricept dosage was increased.  MRI of the brain was performed.  Reminyl was added to replace Aricept.  Subsequent evaluation included spinal fluid analysis which was unremarkable.  Cymbalta was added to the regime to replace Zoloft.  Kepra was added on a visit of 6/2/05 for what were labeled "neuropathic symptoms".  On the final follow-up visit which is documented of 8/9/05, medications included Reminyl, Zanaflex, Zoloft, and Clonazepam. The use of wrist splints for carpal tunnel was recommended.

A disability form dated 7/12/05 by Dr. Hamo states the patient is unable to work.

JUN 0 8 2006

United Review Services
Attention: Ms. Patricia Wallace, LPN
Re: Carol Daugherty
May 31, 2006
Page 2

## Conclusions:

1. Describe your examination and findings in detail.

   Neurologic examination as provided by Dr. Hamo described no consistent objective evidence of neurologic dysfunction. No consistent motor or sensory abnormalities are noted. Despite the reported memory problems, on formal mental status examination abnormalities are not documented.

2. What are the claimant's specific diagnoses and prognosis within your field of specialty?

   Only a diagnosis of bilateral median neuropathy at the wrist presenting as carpal tunnel has been documented. Despite the reported memory problems, there is no documentation of memory difficulties. Despite the reported neuropathy, nerve conduction studies revealed no evidence of a generalized neuropathic process. Despite the reported complaints of lumbar radiculopathy, MRI of the lumbar spine fails to reveal evidence of a significant lesion which might be resulting in radiculopathy.

3. Will the claimant's condition and her physical capabilities improve with any specific treatment?

   It is my opinion that this patient might be better off if several of the medications which have been prescribed would be discontinued. No rationale exists for the use of the Zanaflex, Reminyl, Kepra, or Clonazepam.

4. Please give specific recommendations for treatment.

   I am not certain that this patient needs neurologic follow up. Her complaints appear to be primarily musculoskeletal. Follow up with a rheumatologist is most appropriate.

5. Is treatment appropriate?

   Documentation of abnormalities in the chart does not indicate that there is a need for several of the medications being prescribed.

6. How long do you anticipate the length of treatment and recovery?

   Only a diagnosis of carpal tunnel has been documented within my specialty. If this patient fails to respond to conservative treatment, then one would expect cure with

AR 145

United Review Services
Attention: Ms. Patricia Wallace, LPN
Re: Carol Daugherty
May 31, 2006
Page 2

surgical decompression of the median nerve, given the fact that a generalized condition which might have resulted in the median neuropathies has not been documented.

7. What, if any, restrictions or limitations should be in place?  What is the prognosis for return back to work?

I find no evidence of a disabling condition within my specialty which would keep this patient out of work.  I would expect she would be able to return back to work immediately.

A short paragraph which is entitled To Whom It May Concern signed by Dr. Hamo on October 28, 2005, defines work restrictions which should include "she is to avoid repetitive and hard activity of the right and left hand in wrist area and right lower extremity.  Limited stooping, climbing, and bending.  May lift up to 20 pounds.  Avoid sitting for more than one hour at a time.  Avoid standing for no longer than 15 minutes at one time."  Though he states in his notes she is unable to work, he does provide reasonable limitation for her return to work within that note.

If you have any questions, please feel free to call.

Respectfully yours,

John E. Robinton, M.D.

JER:ss

*R6303*
*R6304*

# CURRICULUM VITAE

JOHN E. ROBINTON, M.D.                   John E. Robinton, M.D.
50 Crest Drive                           Office Address:
South Orange, New Jersey                 33 N. Fullerton Avenue
Date of Birth:  August 20, 1952          Montclair, NJ  07042
Place of Birth: New York, New York

## EDUCATION

| September 1974 – July 1978 | Cornell University Medical School |
| | New York, New York        M.D. |

September 1970 – May 1974                Princeton University
                                         Princeton, New Jersey       A.B.

## POST-DOCTORAL TRAINING

July 1980 – July 1983                    Neurology Resident
                                         Albert Einstein College of Medicine
                                         Bronx, New York

July 1979 – July 1980                    Junior Resident in Internal Medicine
                                         Albany Medical College
                                         Albany, New York

July 1978 – July 1979                    Intern in Internal Medicine
                                         Albany Medical College
                                         Albany, New York

## RESEARCH

July 1983 – June 1985                    Neuromuscular Fellowship
                                         Tufts-New England Medical Center
                                         Boston, Massachusetts

July 1983 – June 1985                    ALS and Neuropeptides
                                         Theodore L. Munsat, M.D.
                                         Tufts-New England Medical Center
                                         Boston, Massachussetts

Summer 1976:                             "Mesmerism"
                                         Eric Carlson, M.D.
                                         Cornell University Medical School
                                         New York, New York

September 1971 – May 1974                "The Structure and Replication of the
                                         E. Coli Chromosomes"
                                         Abraham Worcel, M.D.
                                         Princeton University
                                         Princeton, New Jersey

JOHN E. ROBINTON, M.D.
CIRRICULUM VITAE

## LICENSURE

New Jersey Medical License:      June, 1985; # MA46203

## CERTIFICATION

Specialty Board:                 American Board of Neurology & Psychiatry
                                 Certified:  November, 1984
                                 Special Qualifications in Clinical Neurophysiology: 1994

Sub-Specialty Board:             American Board of Electrodiagnostic Medicine
                                 By Exam:  May 1985

## UNIVERSITY APPPOINTMENTS

A. Assistant Clinical Professor of Neurology, UMDNJ

B. Assistant Professor of Neurology,  Seton Hall University

## HOSPITAL APPOINTMENTS

July, 1985:                      Mountainside Hospital
                                 Clara Maass Hospital
April, 1988:                     St.Barnabus Medical Center
August, 1988:                    University of Medicine & Dentistry of NJ
April, 1988:                     Neuromuscular Diseases- St, Michael's Medical Center

## OTHER PROFESSIONAL POSITIONS AND MAJOR VISITING APPOINTMENTS

Director of EMG Lab, UMDNJ  (1988-1989)

## AWARDS AND HONORS

Princeton University Scholar
Bogart Scholarship

## BOARDS OF DIRECTORS/TRUSTEES

June, 1987 to Present            New Jersey Myasthenia Gravis Foundation-Board of
                                Directors and Scientific Advisory Committee

May, 1998 to Present            Association of Retarded Citizens of Essex County Board
                                of Directors

1992 - 1995                     Mountainside Hospital Medical Board

JOHN E. ROBINTON, M.D.
CURRICULUM VITAE

## MAJOR COMMITTEE ASSIGNMENTS

AAEM Professional Standards Committee  (1988-1992)
AMA-DATTA (1988 to Present)

## OFFICE & COMMITTEE ASSIGNMENTS IN PROFESSIONAL SOCIETIES

American Association of Electromyography and Electrodiagnosis-NJ Liaison
New Jersey Association of Electrodiagnostic Medicine
Appointment to AAEM Task Force on Report Standards-2/02

## MAJOR TEACHING APPOINTMENTS

| | |
|---|---|
| 1983 - 1985 | Tufts University, Department of Neurology, New England Medical Center, EMG |
| 1988 - Present | UMDNJ, Seton Hall, St. Michaels |

## PRIVATE PRACTICE

| | |
|---|---|
| July, 1985- | 33 North Fullerton Avenue Montclair, NJ 07042 |
| Consulting- | Medical Director, One Call Medical, Inc., Neurodiagnostics |

## BIBLIOGRAPHY

Articles

Worcel A., Bergi E., Robinton J.E., Carlson L.   Studies in the Folded Chromosome of E. Coli.  Cold Springs Harbor Symposium of Quantitative Biology, Vol. 38, 1973.

Abstracts

Munsat T.L., Mora J.S., Robinton J.E., Jackson I., Lechan R., Hedlund W., Tafts J., Reichlin S., Schiefe R., (Boston, MA) Intrathecal TRH on amyotrophic lateral sclerosis: preliminary observations.  Neurology, Vol. 34, suppl. 1, pp 239, April 1984.

Munsat T.L., Kopei K. Robinton J.E., Mora J.S., Bernaman L.P., Hedlund W., Observations on the use of intrathecal interferon (ITIFN).  Neurology, Vol. 34, suppl. 1, pp 239, April 1984.

Taft J., Musant T.L., Jackson I., Robinton J.E., Benedict C., Kaplan M., Schiefe R.  A constant infusion pump for intrathecal delivery of TRH on ALS.  Neurology, Vol. 35, #4, suppl. 1, pp 106, April 1985.

Robinton J.E., Kelly, J., Quality of Assessment and improvement in electrodiagnostic studies. Muscle and Nerve, Supplement 12/September 2003, pp S143.

## JOHN E. ROBINTON, M.D.

Board certification in Neurology

Board certification by the American Board of Electrodiagnostic Medicine (EMG)

Board certifications in Neurology with special qualifications in clinical neurophysiology ( specialty exam first given in 1992—only Board in EMG,EEG, and evoked potentials that is recognized by the American Board of Medical Specialties)

Has served as liaison from the State of New Jersey to the American Association of Electrodiagnostic Medicine for the past twelve years and has served as President of the New Jersey Association of Electrodiagnostic Medicine

Former Director of the EMG Lab at the Medical School

Medical Director of National EMG network for the past several years

Extensive experience in providing in-service lectures (for nursing credits) on topics such as fraud and abuse in electrophysiologic testing, pitfalls in EMG, and EMG for workers' compensation

APPROVED OMB-0938-0008

PLEASE
DO NOT
STAPLE
IN THIS
AREA

UNITED REVIEW
10 CORPORATE PLACE SOUTH
SUITE 206
PISCATAWAY NJ 08854

| | PICA | HEALTH INSURANCE CLAIM FORM | | PICA | |

1. MEDICARE  MEDICAID  CHAMPUS  CHAMPVA  GROUP HEALTH PLAN  FECA BLK LUNG  OTHER
*(Medicare #)* *(Medicaid #)* *(Sponsor's SSN)* *(VA File #)* (SSN or ID) (SSN) (ID)

1a. INSURED'S I.D. NUMBER (FOR PROGRAM IN ITEM 1)
P70570

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
DAUGHERTY, CAROL

3. PATIENT'S BIRTH DATE  SEX
MM DD YY  M  F X

4. INSURED'S NAME (Last Name, First Name, Middle Initial)
DAUGHERTY    CAROL

5. PATIENT'S ADDRESS (No., Street)
10 CORPORATE PLACE SOUTH

6. PATIENT RELATIONSHIP TO INSURED
Self X  Spouse  Child  Other

7. INSURED'S ADDRESS (No., Street)
10 CORPORATE PLACE SOUTH

CITY
PISCATAWAY

STATE
NJ

8. PATIENT STATUS
Single  Married  Other

CITY
PISCATAWAY

STATE
NJ

ZIP CODE
08854

TELEPHONE (Include Area Code)
(732-815-0330)

Employed  Full-Time Student  Part-Time Student

ZIP CODE
08854

TELEPHONE (INCLUDE AREA CODE)
(732-815-0330)

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER
PATRICIA WALLACE

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (CURRENT OR PREVIOUS)
YES  NO X

a. INSURED'S DATE OF BIRTH
MM DD YY  SEX  M  F X

b. OTHER INSURED'S DATE OF BIRTH
MM DD YY  SEX  M  F

b. AUTO ACCIDENT?  PLACE (State)
YES  NO X

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?
YES  NO X

c. INSURANCE PLAN NAME OR PROGRAM NAME
UNITED REVIEW

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?
YES  NO X  If yes, return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.
SIGNATURE ON FILE

SIGNED _____ DATE 06022006

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.
SIGNATURE ON FILE

SIGNED _____

14. DATE OF CURRENT:  ILLNESS (First symptom) OR  INJURY (Accident) OR  PREGNANCY (LMP)
MM DD YY  06 08 2006

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION
FROM MM DD YY  TO MM DD YY

17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE

17a. I.D. NUMBER OF REFERRING PHYSICIAN

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES
FROM MM DD YY  TO MM DD YY

19. RESERVED FOR LOCAL USE

20. OUTSIDE LAB?  $ CHARGES
YES  NO X

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE)
1. L_____
2. L_____
3. L_____
4. L_____

22. MEDICAID RESUBMISSION CODE  ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| 24. A DATE(S) OF SERVICE | | B Place of Service | C Type of Service | D PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS  MODIFIER | E DIAGNOSIS CODE | F $ CHARGES | G DAYS OR UNITS | H EPSDT Family Plan | I EMG | J COB | K RESERVED FOR LOCAL USE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FROM MM DD YY | TO MM DD YY | | | | | | | | | | |
| 05 31 2006 | 05 31 2006 | 11 | 1 | 99358 | 1 | 245 00 | 1 | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

25. FEDERAL TAX I.D. NUMBER  SSN  EIN
22 3430287  X

26. PATIENT'S ACCOUNT NO.
DAUGCA-00

27. ACCEPT ASSIGNMENT? (For govt. claims, see back)
YES X  NO

28. TOTAL CHARGE
$ 245 00

29. AMOUNT PAID
$ 0 00

30. BALANCE DUE
$ 245 00

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)
JOHN E ROBINSON (PEE
SIGNED _____ 06022006

32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)
JOHN E ROBINSON, MD PA
33 NORTH FULLERTON AVENUE
MONTCLAIR    NJ 07042-3412

33. PHYSICIAN'S SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE & PHONE #
JOHN E ROBINSON, MD PA
33 NORTH FULLERTON AVENUE
NJ 07042-3412
973-783-6305
PIN#  GRP#

(APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88)  PLEASE PRINT OR TYPE

APPROVED OMB-0938-0008 FORM CMS-1500 (12-90)  FORM RRB-1500.
APPROVED OMB-1215-0055 FORM OWCP-1500,  APPROVED OMB-0720-0001 (CHAMPUS)

AR 151





**UR** UNITED REVIEW SERVICES, INC.

P.O. Box 339  Piscataway, N.J. 08855          Tele. (732) 815-0330  Fax (732) 382-2035

| URS FILE | ACCOUNT FILE | CLAIM REPRESENTATIVE |
|---|---|---|
| 70570 | 2005-236-113 | Christine    Mullen, R.N. |

| INVOICE # 70570  : F  : Y | ACCOUNT CODE  R400 |
|---|---|

| CLAIMANT<br>Carol     Daugherty | Reliance Standard Life Insurance<br>2001 Market Street<br>Suite 1500<br>Philadelphia          PA<br>19103-7090 |
|---|---|
| PHYSICIAN  R6303    22-3430287<br>John E.     Robinton | |

| ORIGINAL<br>INVOICE DATE<br>06/07/2006 | REVISED<br>INVOICE DATE | SERVICE DATE<br>SPECIALTY<br>Neurology Peer Review |
|---|---|---|

| DATE | SERVICE | PROVIDER<br>FEES | URS<br>FEES | TOTAL<br>CHARGES |
|---|---|---|---|---|
| 05/24/2006 | Additional Expense (Postage, etc) | | 4.84 | 4.84 |
| 05/31/2006 | Physician Peer Review | 245.00 | | 245.00 |
| 06/07/2006 | Scheduling / Set-up | | 130.00 | 130.00 |

| SUBTOTALS | |
|---|---|
| PROVIDER CHARGES | 245.00 |
| URS CHARGES | 134.84 |
| TOTAL CHARGES | 379.84 |
| CREDITS APPLIED | |
| PAY THIS AMOUNT | 379.84 |

Taxpayer I.D.
22-2853893

Please Return Copy of Invoice With Payment
THANK YOU FOR YOUR BUSINESS

AR 152

 **UNITED REVIEW SERVICES, INC.**
■ *Independent Medical and Dental Consultants* ■



5/24/2006

Christine Mullen, R.N.
Reliance Standard Life Insurance
2001 Market Street
Suite 1500
Philadelphia, PA 19103-7090

Re: Carol Daugherty
Your file: 2005-236-113
Our file:  P70570
Exam type: Neurology Peer Review
DOA: 4/30/2005

Dear Christine:

Thank you for requesting our IME management services in this case.

All medicals records available have been sent to the physcian noted below for utilization review:

| | |
|---|---|
| Physician: | John E. Robinton |
| Address: | 33 North Fullerton Ave |
| | Montclair, NJ 07042 |
| Phone: | 973-783-6303 |
| Tax Id: | 22-3430287 |

Our completed report will be sent to you by 6/7/2006.
Please feel free to call if you need further information.
Thank you for this referral!

Sincerely Yours,

Patricia Wallace LPN
Ime Coordinator
Telephone: 877-970-9525

**AR 153**

# Reliance Standard Life Referral For Vendor Services

Date of Referral  5/18/06

Vendor  URS

Referred by  Christine Mullen

Phone Number     267-256-3893

Fax Number       267-256-3554

Service Requested:

☐ IME specialty
x☐ Peer Review neurology
☐ FCE

Claim Number:  2005-236-113
Insurance Coverage: ☐ LTD  ☐ STD  x☐ Appeals

**Claimant Information:**

Name:  Carol Daugherty

Address:

Telephone Number:

Date of Birth: 2/9/51

Date of Loss 4/30/05

Diagnosis  fibromyalgia

Attending Physician:  Dr Hamo

Physical Therapy Provider:

**Attorney Information:**

Name:

Address:

Telephone Number:

Fax Number:

**Information Requested:**

☐ Standard FCE Guidelines
☐ Diagnosis
☐ Recommendation for Treatment
☐ Appropriateness of Treatment
☒ Other:  What if any are the restrictions and limitations?  What is the prognosis for return to work?

☐ Anticipated Length of Treatment/Recovery
☐ Prognosis

**Special Instructions:**
Christine Mullen  RN BSN
267-256-3893

# MEDICAL/VOCATIONAL REVIEW

To be completed by the Examiner:

Claimant Name: Carol Daugherty       DOL: 04-30-05        Date: 05/05/06
Claim #: 2005-236-113                DOB: 02/09/51        Examiner: William Ross
Policy #: LSC 99500                  Occ: Buyer
Diagnosis: Fibromyalgia              Exertion Level: Light

Date of most current medical records: 3/22/06
Comments/Questions:
The above claimant last worked 4/30/05 due to low back pain. No benefits were paid
based on, in part, "…the medical records do not support the conclusion that you are
totally disabled from doing your own occupation as a Buyer."

On appeal the claimant's **attorney** arguing our denial was based on an orthopedic
evaluation and not the neurological report from Dr. Wael Hamo.
Additional information was submitted for review.
Please advise if you agree the claim should be referred for a Peer Review by a
Rheumatologist specialist to determine R&L's beginning the LDW of 4/30/05.


To be completed by the Medical Department:        Date:  May 15, 2006
Not Enough Information to set Duration:
Anticipated R&L's:                        See below
Anticipated Duration:
Need Records to Support Beyond:

Other Comments: Records continue to lack support for restrictions and limitations less
than sedentary since the date of loss. Claimant's primary provider is a neurologist and
given her complaints of memory loss and radiculopathy along with upper extremity
neurologic complaints would recommend neurology peer not rheumatology.

The medical opinion provided is based on the data available as of this date. The signature
below asserts that I have the training and experience in the area of nursing practice
encompassed in this review.

RN: Marianne P. Lubrecht, BSN, RN

To be completed by the Vocational Rehabilitation Department:
                        Date:  _____

        Refer for a vocational evaluation after claimant obtains SSDI

        Refer to the Vocational Rehabilitation Department for an initial evaluation
EF-1322

_Exhibit A_

# ...mo Neurology Cli...

## Dr. Wael Hamo, M.D. - Neurology Board Certified

209 West Spring Street, Suite 304
Sylacauga, AL 35150
Tel: (256) 249-0091
Fax: (256) 249-0024

3368 Hwy 280, Suite 208
Alexander City, AL 35010
Tel: (256) 409-2166
Fax: (256) 409-2178

October 28, 2005

TO WHOM IT MAY CONCERN:

CAROL DAUGHTERY IS A PATIENT OF MINE AND DUE TO HER MEDICAL CONDITION OF FIBROMYALGIA SHE IS UNABLE TO WORK.THE FIBROMYALGIA CAUSES HER TO HAVE SEVERE NECK AND BACK PAIN. SHE IS TO AVOID REPETITIVE AND HARD ACTIVITY OF RIGHT AND LEFT HAND AND WRIST AREA AND RIGHT LOWER EXTREMITY. LIMITED STOOPING,CLIMBING, AND BENDING. MAY LIFT UP TO 20 POUNDS. AVOID SITTING FOR LONGER THAN ONE HOUR AT A TIME. AVOID STANDING FOR LONGER THAN 15 MINUTES AT ONE TIME. SHE IS CURRENTLY TAKING REMINYL FOR HER MEMORY PROBLEMS - DEMENTIA , ZOLOFT FOR DEPRESSION, WEARS WRIST SPLINTS OVER RIGHT AND LEFT WRIST AREA AS COVERAGE OF BILATERAL CARPAL TUNNEL SYNDROME, LIDODERM PATCHES FOR PAIN, ZANAFLEX AND KLONOPIN EVERY NIGHT. HER CONDITION CAUSES HER ALOT OF CONSTANT PAIN.
IF YOU HAVE ANY QUESTIONS PLEASE FEEL FREE TO CONTACT OUR OFFICE AT 256-249-0091.

WAEL HAMO,M.D.

P.001    256 249 0024    APR-18-2005  11:30

# HAMO NEUROLOGY CLINIC

Wael Hamo, M.D.  Neurology Board Certified
209 West Spring Street - Suite 304
Sylacauga, AL 35150
(256) 249-0091

PATIENT _Daugherty Carol_    DATE _4·18·05_  DOB _2·9·51_
    (last)    (first)

Medical Number _____    Ref.Physician _Wael Hamo_

Diagnosis: _Ls Radiculopathy fatigue_ Date of Injury (if any)_____

## RETURN TO WORK AND WORK RESTRICTION FORM

Able to work:  Yes_____  No_____  Anticipated return to work date: _____

Off work until return appointment:  Yes_____    No_____

If Yes:  Return Appointment Date _____

Able to work under no restrictions:  Yes_____    No_____

If No Please FOLLOW the following marked RESTRICTIONS:

_____ May lift up to _____ lbs.
_____ May sit up to _____ hour(s) at one time.
_____ May stand up to _____ hour(s) at one time.
_____ Climbing:  No_____  Limited_____
_____ Bending:  No_____  Limited_____
_____ Stooping:  No_____  Limited_____
_____ Avoid repetitive or hard activity of:
    _____Hand _____ Upper extremity _____Lower extremity
_____ Not to work in high places, close to fire or hazardous machinery or
    with sharp devices or knives.
_____ No driving until patient is free of any SEIZURE or Loss or Change
    of Consciousness spells at least for six months.

__X__ Others: _Pt to work up until 4·29·05 next appt_
    _6·2·05_

Physician signature: _Wael Hamo MD_  Date: _4·18·05_

_faxed to 329-7200_

AR 157

*CAROL DAUGHERTY*

## Certification of Health Care Provider
### (Family and Medical Leave Act of 1993)

1.  Employee's Name: *Carol Daugherty*

2.  Patient's Name (if different from employee):

3.  The attached sheet describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

    (1) ☐   (2) ☐   (3) ☐   (4) ☑   (5) ☐   (6) ☐   or None of the above ☐

4.  Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories: *4/5 Radiculopathy past gul*

5.  a.  State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present incapacity[2] if different): *unknown*

    b.  Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described in Item 6 below)?
    If yes, give the probable duration: *every month*

    c.  If the condition is a chronic condition (condition 4) or pregnancy, state whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity : *unknown*

6.  a.  If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments: *every month*

    If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide an estimate of the probable number and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

    b.  If any of these treatments will be provided by another provider of health services(e.g., physical therapist), please state the nature of the treatments:
    *Bed Rest*

---

[1] Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.
[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

c.   If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

7.   a.   If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?  *no*

b.   If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

c.   If neither a. nor b. applies, is it necessary for the employee to be absent from work for treatment?  *yes, f/u appointment*

8.   a.   If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?

b.   If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery?

c.   If the patient will need care only intermittently or on a part-time basis, please indicate the probable duration of this need:  *unknown*

_____
(Signature of Health Care Provider)            *neurology*
                                                _____
                                                (Type of Practice)

*209 W Springst Suite 304*                     *256 249 - 0091*
(Address)  *Sylacauga Al 35150*                 Telephone number)

To be completed by the employee needing family leave to care for a family member: State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_____                *4/26/05*
(Employee signature)                            _____
                                                (date)

Form WH-380
December 1994

TO WHOM IT MAY CONCERN:

CAROL DAUGHERTY IS A PATIENT OF MINE.WHOM HAS BEEN DX WITH THE FOLLOWING MEDICAL PROBLEMS:
FIBROMYALGIA, ALTERED MENTAL STATUS, BACK PAIN, CARPAL TUNNEL SYNDROME, NECK PAIN, ARTHRITIS, TENSION HEADACHES, ATAXIA, FATIGUE/MALAISE, INSOMNIA, L/S RADICULOPATHY, AND LIMB PAIN. SHE HAS NECK AND LOWER BACK PAIN W/PAIN DISTRIBUTION DOWN TO THE RIGHT LOWER EXTREMITY. BILATERAL CTS. DIZZINESS CONSISTENT WITH PRESYNCOPE WITH MEMORY PROBLEMS. PT WAS WALKING WITH CRUTCHES WITH THE DX OF LEFT KNEE ARTHRITIS AND BAKER CYST WITH LIGAMENT PROBLEM OF THE LEFT KNEE. SHE WAS TREATED WITH PT AND ALSO EVAL BY DR STEWART WITH THE DX OF PLANTAR FASCITIS, PT WAS STARTED ON PLANTAR SPLINTS ON BOTH SIDES CONSIDERING SURGICAL OPTIONS. ON 4/14/05 AFTER A LONG DISCUSSION REGARDING THE PT'S RESTRICTION AT WORK, THE DECISION WAS MADE TO PROCEED WITH PROCESSING FOR THE DISABILITY BECAUSE OF THE PT'S RESTRICTION BY HER NECK PAIN,LOWER BACK PAIN, AND FIBROMYALGIA. HER CURRENT JOB DOES NOT PROVIDE HER WITH ANY RESTRICTIONS. THERE ARE NO LIGHT DUTY JOBS AVAILABLE.
PT'S CURRENT MEDICATIONS CONSIST WITH THE FOLLOWING: REMINYL 8MG, ZANAFLEX, KEPPRA 500MG, CYMBALTA, MOBIC, ARICEPT, KLONOPIN, LIODERM PATCHES, PROVIGIL., ZOLOFT.


SINCERELY,

If you are filing a claim for disability or ~~er of premium~~, please have your employer and ~~cian complete~~ **PARTS 2 & 4.**

**PART 2**        **ATTENDING PHYSICIAN'S STATEMENT**

Patient's Name: ___Carol Daugherty___        Age: __54__

1. Diagnosis: __Arthritis, Fibromyalgia__

2. If condition is due to pregnancy, what is expected delivery date? Date __N/A__
   MO/DAY/YR

3. When did symptoms first appear or accident happen? Date __10/19/2004__
   MO/DAY/YR

4. When did patient first consult you for this condition? Date __09/03/1994__
   MO/DAY/YR

5. Has patient ever had same or similar condition? (If "yes," state when and describe.) __ Yes  _X_No
   _____

6. Describe any other diseases or infirmity affecting present condition. __Severe pain__

7. Nature of surgical or obstetrical procedure, if any (describe fully). __n/a__
   __own__

8. Is patient unable to perform job duties? ___ Yes  _X_No  If yes, from _____ through _____

9a. What specific job duties is patient unable to perform? _____

9b. Specific RESTRICTIONS (What the patient should not do and why). Please quantify in hours, weight, etc. __may lift up to 20lbs,__
   __avoid sitting standing for longer than 1hr at a time., landscaper__

9c. Specific LIMITATIONS (What the patient cannot do and why). __lifting standing sitting__

10. If retired or unemployed which activities of daily living (ADLs) is patient unable to perform? _____

11. Date patient last examined by you: __4-14-05__  Frequency of visits: __ weekly __ monthly __ other___

12. Is patient _✓_ ambulatory  __ bed confined  __ house confined  __ other____

13. If patient is hospitalized, give name and address of hospital.
    Hospital: __n/a__        City: _____        State: _____

14a. Date admitted: __n/a__        Date discharged: ___/___/___
     MO/DAY/YR                              MO/DAY/YR

14b. When do you expect patient to resume partial duties? __unknown__        Full duties? ___/___/___
     MO/DAY/YR                                                            MO/DAY/YR

14c. If patient is unemployed or retired, on what date would you expect a person of like age, gender and good health to resume his/her normal and
     necessary activities? __n/a__
     MO/DAY/YR

15. Is condition due to injury or sickness arising out of patient's employment? __ Yes  _✓_No
    If "yes," explain. _____

Name and address of referring physician if any.

Name: __Wall Hamo__        Address: __209 W Spring St__

City: __Sylacauga__        State: __AL__        Zip __35150__

16. Have you completed paperwork for any other insurance company? __ Yes  _✓_No   Social Security Disability? __ Yes  _✓_No

**If you are claiming CONTINUING DISABILITY, please have your employer and physician complete PARTS 3 & 4.**

**PART 3        ATTENDING PHYSICIAN'S STATEMENT FOR CONTINUING DISABILITY**

FIRST CLAIM FOR DISABILITY due to Accident or to Sickness: ___/___/___
                                                            MO/DAY/YR

1. Is this claim for continuation of a previous disability? __ Yes  _✓_No

2a. Diagnosis: __L5 Radiculopathy, Fibromyalgia__

3. Describe any other diseases or infirmity affecting present condition. __lower back pain, memory loss__

4. Date of initial disability due to this diagnosis __04/29/2005__
   MO/DAY/YR

5. Is patient unable to perform job duties? _✓_ Yes  __ No  If yes, may return to work __ part-time __ full-time on: ___/___/___
                                                                                                                    MO/DAY/YR

List any work restrictions: __stooping, climbing, bending__  If No, date expected to return to work: ___/___/___
__avoid standing or sitting for longer than 1 hr at a time__                                          MO/DAY/YR

**Remember, it is a crime to fill out this form with facts you know are false or to leave out facts you know are relevant and important. Check to
be sure that all information is correct before signing. Please refer to page 2 for notice specific to your state.**

**PHYSICIAN VERIFICATION**

Signed: _____ , MD  Date: ___/___/___  Phone: (281) 249-0091
                                    MO/DAY/YR

Street Address __209 W Spring St. Suite 304__

City/Town: __Sylacauga__

State/Province: __AL__        Zip Code: __35150__

AWD2117        **AR 161**        06/04)

# HAMO NEUROLOGY CLINIC
Wael Hamo, M.D.  Neurology Board Certified
209 West Spring Street - Suite 304
Sylacauga, AL 35150
(256) 249-0091

PATIENT _Murchrtri Carol_    DATE _7·12·05_  DOB _____
    (last)      (first)

Medical Number _____    Ref.Physician _Wael Hamo_

Diagnosis: _Neck Pain AMS Back Pain Tension HA Arthritis 4s Radiculopathy, Limb Pain Fibromyalgia, CTS_  Date of Injury (if any) _____

-----------------------------------------------------

## RETURN TO WORK AND WORK RESTRICTION FORM
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Able to work:  Yes_____  No __X__  Anticipated return to work date: _unknown_

Off work until return appointment:  Yes_____    No _____

If Yes:  Return Appointment Date _____

Able to work under no restrictions:  Yes _____    No _____

If No Please FOLLOW the following marked RESTRICTIONS:

_____  May lift up to _____ lbs.
_____  May sit up to _____ hour(s) at one time.
_____  May stand up to _____ hour(s) at one time.
_____  Climbing:    No _____  Limited_____
_____  Bending:    No _____  Limited _____
_____  Stooping:    No _____  Limited _____
_____  Avoid repetitive or hard activity of:
       _____Hand _____ Upper extremity _____Lower extremity
_____  Not to work in high places, close to fire or hazardous machinery or
       with sharp devices or knives.
_____  No driving until patient is free of any SEIZURE or Loss or Change
       of Consciousness spells at least for six months.

_____  Others: _____

Physician signature: _Wael Hamo MD_  Date: _7·12·05_

Dept. Bus: 800/621-6323 • Dept. Fax: 608/218-1998 • Voice/TTD 800/937-2644
www.cunamutual.com • E-Mail:Members.Claims@cunamutual.com

★ CUNA MUTUAL GROUP

Date: March 17, 2006
Member: Carol Daugherty
Claim Number: 2056067994

**This form is to be completed by the attending physician.** If a functional capacity evaluation has been completed and accurately reflects the patient's current work capacity, please include a copy.

| 1. | Is this patient totally disabled from performing her previous occupation? | ☒ Yes ☐ No |
|---|---|---|

If NO, please indicate the date patient was released to return to work: _____
(month, day, year)

How many hours per week? _____ hrs/wk
(Note: If you have released the patient to their previous occupation in a full time capacity, you do not need to complete the remaining questions. Please sign and date this form and return to CUNA Mutual Group.)

| 2. | Is this patient totally disabled from working at any other occupation or type of employment (full or part time), outside of their former occupation or employer? | ☒ Yes ☐ No |
|---|---|---|

If NO, on what date was the patient able to perform the duties of any occupation? _____
(month, day, year)

3. How many hours per week is the patient capable of working at any occupation? __0__ hrs/wk

4. How many hours per day can this patient:

|  | (circle one) | | | | | | | | | (circle one) |
|---|---|---|---|---|---|---|---|---|---|---|
| Stand: | 0 | 1 | ②| 3 | 4 | 5 | 6 | 7 | 8 | continuously | with breaks |
| Sit: | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | continuously | with breaks |
| Drive: | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | continuously | with breaks |
| Walk: | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | continuously | with breaks |

5. Work Capacity (Please check the patient's highest level of capacity):
  ☐ Very Heavy Work: Frequent lifting or carrying objects weighing 100 lbs. or more and/or capacity to lift over 100 lbs. occasionally.
  ☐ Heavy Work: Frequent lifting or carrying objects 0–50 lbs. and/or capacity to lift 100 lbs. maximum occasionally.
  ☐ Medium Work: Frequent lifting or carrying objects 0–25 lbs. and/or capacity to lift 50 lbs. maximum occasionally.
  ☐ Light Work: Frequent lifting or carrying objects 0–10 lbs. and/or capacity to lift 20 lbs. maximum occasionally.
  ☒ Sedentary Work: Occasional lifting 0–10 lbs. maximum (notebooks, small tools, etc.)

6. Which is the dominant hand?
  ☒ Right
  ☐ Left

7. Can the patient use hand(s) for repetitive movement?
  Right: ☐ Yes ☒ No
  Left: ☐ Yes ☒ No

Claim Number: 2056067994

8.  Can the patient reach above shoulder level?

Right arm:  ☒ Yes   ☐ No
Left arm:   ☒ Yes   ☐ No

9.  Cardiac functional capacity (please check one):
☒ Class 1 – No limitation
☐ Class 2 – Slight limitation
☐ Class 3 – Marked limitation
☐ Class 4 – Complete limitation

10. Current diagnosis (ICD–9 Codes preferred): _Fibromyalgia, dementia, degen disc dz_

11. What do you expect regarding this disability?
☐ Improvement
☒ No change
☐ Deterioration
☐ Unknown

12. What is your treatment plan for this patient?  (Include medications, tests, consultations, surgical plans, anticipated length of treatment, or other comments.)
_Neur / Rheumatologic evaluations in August_

13. Have you released this patient to any type of rehabilitation/therapy program?      ☐ Yes  ☒ No
If Yes:  ☐ Vocational
         ☐ Physical

14. Is this patient being treated by another physician for a separate condition?      ☒ Yes  ☐ No
If yes, please give name(s) and phone number(s) of other physician(s):
Dr. _Regues Powers_ (Rheumatology)  ( Dr. _Neel Hans_ (Neurology)
What other conditions are you aware of? _____

15. Most recent date you treated this patient: _3/14/2008_
(month, day, year)

16. Please include additional comments you may have regarding this patient's status:

I certify the above information is true and complete to the best of my knowledge.

Doctor Signature: _Vincent Lan_          Date: _4/3/08_
Printed Name: _Vincent Law_              Degree/Specialty: _M.D. (Family Medicine_
Address: _Temc_                          Telephone: ( 256 ) 234-4295
_1120 Pierpont Dr. Suite 102_
_Pell City, AL 35010_

**Patient Name** DAUGHERTY CAROL M   **Age** 55

**Address** RT 3 BOX 155 C

GOODWATER AL 35072.

**Telephone No.** 839-5265

**Emp.**

**Spouse:**   **Emp.**

**Insurance:** BC1   **Sub.**

**Medications** *(handwritten, illegible)*

| DATE | |
|---|---|
| 3·14·6 | Wt 203⁸  T 98°  P 82  O2 98% BP 134/78 *(illegible clinical notes)* |
| 3-21-6 | Toradol 60 + Phenergan 25 (R) hip — Am |
| 3-22-6 | Dr Power June 5 @ 1:00 — Am |

**PROGRESS NOTES**

Patient Name _Daugherty, Carol M._    Age _54_

Address _Rt 3 Box 155 C_

_Goodwater, Al. 35072_

Telephone No. _256-839-5265_

Emp. _NA_

Spouse: _Donald_    Emp. _____

Insurance: _BC1_

Medications _(illegible handwritten list)_

All: Ceclor _(illegible)_

| DATE | |
|---|---|
| 10-25-05 | Wt 207⁴  BP 120/71  T 98²  P 72  R 22  O₂ 94% |
| Pneumo | _(illegible)_ |
| vact | _(illegible)_ |
| Flu vac | _(illegible)_ |
| (L) deltoid | _(illegible)_ |

_(extensive illegible handwritten clinical notes)_

| 11/21/05 | Medrol dose OK / Goodwater / Delasey —— Am |
| 11/22/05 | T 99.2  Wt 208.8  BP 139/80  P 80  Sat 98%  (RD) |

_(illegible handwritten notes)_

| 12/22/05 | Cymbalta 60 = QD #30 X 3  q  Veltram 50 _(illegible)_ |
|  | _(illegible)_ T10 #60 / GW/home —— Am |

# MEDICAL/VOCATIONAL REVIEW

To be completed by the Examiner:

Claimant Name: carol j. daugherty
Claim #: 2005-236-113
Policy #: 99500
Diagnosis: low back pain

DOL: 4/30/05
DOB: 2/9/51
Occ: buyer
Exertion Level: light

Date: 10/25/05
Examiner: d. buggs

Date of most current medical records: 6/2/05
Comments/Questions: does the medcial from Dr. stewart office support the claimant impairment. if so, what is the restrictions and limitations. what is the anticipated duration of the medical on the file

---

To be completed by the Medical Department:

Date: October 27, 2005

Not Enough Information to set Duration: ☐
Anticipated R&L's:                          See Below
Anticipated Duration:
Need Records to Support Beyond:

Other Comments: Please see prior reviews for additional details new records document treated 6/2/05 for plantar fasciitis with follow up to be in 2 weeks, although these records were not sent until 10/18/05 there is not follow up note. Given this information it would appear that the exercise and shoe inserts resolved these complaints and restrictions and limitations previously reported of light with occasional fingering remain supported since the date of loss with the exception of 6/2-05-6/16/05 when sedentary restrictions and limitations would have been reasonable.

The medical opinion provided is based on the data available as of this date. The signature below asserts that I have the training and experience in the area of nursing practice encompassed in this review.

RN: Marianne P. Lubrecht, BSN, RN

---

To be completed by the Vocational Rehabilitation Department:

Date: _____

_____ Refer for a vocational evaluation after claimant obtains SSDI
_____ Refer to the Vocational Rehabilitation Department for an initial evaluation

EF-1322

AR 167

1647 Hwy 22 W., Suite 1
Alexander City, AL 35010

Phone: (256) 215-5596
Fax: (257) 215-5551



Medicine and Surgery of
the Foot

# Fax

To: _Danielle Buggs_   From: _Dr. Douglas Stewart_

Fax: _267-256-3535_   Date: _10/18/05_

Phone   Pages _6_

Re: _Carol Daughtery_   CC:

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

•Comments:

AR 168

**RELIANCE STANDARD**
Life Insurance Company

(267) 256-3500
(800) 351-7500

September 2, 2005

Dr. Douglas Stewart
1649 Highway 22
Suite #1
Alexander City, AL 35010

*2nd final request 10/17/05*
*May we hear from you*
*regarding our previous request.*

RE:   Claimant  : Carol J. Daugherty
      S.S. No.  : 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
      D.O.B.    : 2-9-51
      Claim No. : 2005-236-113

Dear Dr. Stewart:

We are reviewing a Long Term Disability (LTD) claim submitted by
your patient, Carol J. Daugherty. As part of our evaluation of
their eligibility for LTD benefits, we must ask that you provide us
with the following information:

   __X__  Please provide us with copies of all medical treatment
          records you have on file for this patient; including
          copies of chart notes, hospital treatment records, X-rays
          and other radiographic tests, and laboratory test results
          for the period from 6-2-05 to present.

   _____  Please complete the enclosed medical questionnaire based
          on your most recent evaluation of the patient's condition.

Accompanying this request is an authorization for the release of
this information signed by the patient. If there is a fee for
providing the information to us, please include appropriate billing
and your tax identification number with your reply. If there is an
advance fee for copying the records, or if you have any other
questions or concerns regarding this request, please contact me
directly at (267) 256-3652. You may also FAX your response to my
attention at (267) 256-3535.

Sincerely,

Danielle N. Buggs   Examiner
Group LTD Claims Department

a *DELPHI* company

AR 169

**RELIANCE STANDARD**
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103

a Delphi company

## AUTHORIZATION FOR USE IN OBTAINING INFORMATION

NAME OF INSURED: *Carol Jean Daugherty*

INSURED'S SSN: *266 04 7470*

POLICYHOLDER: *Carol J. Daugherty*

To all physicians and other health care professionals, hospitals, other health care institutions, insurers, medical, hospital and prepaid health plans, pharmacies, employers, group policyholders, contract holders, governmental agencies, private and/or public benefit plan administrators, and/or attorney representatives, including but not limited to covered entities and business associates under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the accompanying regulations:

You are authorized to provide Reliance Standard Life Insurance Company and/or its authorized administrators with information concerning medical care, advice, and/or treatment provided to me, the above named insured, and/or any employment, salary and/or benefit-related information concerning me, the above named insured. I understand that the disclosure of information may include disclosure of protected health information under HIPAA and the accompanying regulations, information regarding treatment for mental illness, the human immunodeficiency virus (HIV) and/or the use of drugs and alcohol. I also understand that information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and will no longer be subject to protection under HIPAA and the accompanying regulations. A statement of Reliance Standard Life Insurance Company's privacy policy is available at www.rsli.com or upon request.

I understand that any such information will be used for the purpose of evaluating my claim for benefits. Upon request, I understand that I am entitled to receive a copy of this Authorization. This Authorization is valid from the date signed for the duration of the claim, and may be revoked by me at any time upon written request to the address below. A reproduction of this Authorization shall be considered as valid as the original.

*9/3/05*

Date

*Carol Daugherty*

Insured's Signature

(If the insured is unable to sign, an authorized person may sign.)

_____

Date

_____

Authorized Person's Signature

Description of Authorized Person's authority to sign on behalf of insured: _____

_____

Reliance Standard Life Insurance Company
P. O. Box 8330, Philadelphia, PA 19101-8330

EP-1217

9895~06/02/2005
Carol Daughtery

Temple Medical Bldg Ste 1
Alexander City, AL 35010

S: 54 year old new patient PTC she complains of painful b/l heel pain and chronic intense itching in her feet at night, onset x several months, she is here for evaluation. PSH/PMH: Hx of bronchitis, hx of pneumonia, Bursitis b/l hips, torn ligament behind left knee, Bakers cyst left knee, Fibromyalgia, Carpal Tunnel syndrome b/l, Blood patch from recent lumbar, Partial hysterectomy.
Medications: Zoloft, ASA, Flexeril, Neurontin
Allergies: Ceclor
Social hx: Negative nicotine, Negative ETOH.
O: Upon exam the PT and DP pedal pulses are palpable bilateral, neuro is intact, Tinel sign is negative. There is pain with palpation of her bilateral plantar medial tubercle, dorsal flexion and stretching of the plantar fascia also elecits pain, there is no palpable mass, no erythema, no edema, no crepitation of the joint. There is no evidence of trauma to her feet b/l. Bilateral lateral x-ray views reveal no stress fracture, no bone cyst or other osseous pathology identified.
A: Plantar Fascitis
P: Plantar fascial information and stretching instructions dispensed and explained to the patient in depth, Trihawk inserts with medial arch accommodations were dispensed, she will trial these therapies and RTC in 2 weeks for recheck.

Douglas Stewart DPM

DOUGLAS STEWART, D.P.M.
1649 HIGHWAY 22 WEST SUITE ONE
ALEXANDER CITY, AL 35010
(256)215-5596

PATIENT'S
NAME: _Daugherty Carol J._

FOOT PROBLEM OR SYMPTOMS:

_Pain, Soreness, Tender to Touch, RT: Foot Worse_

HOW LONG HAVE YOU HAD THIS
PROBLEM_____DAYS____WEEKS _4_ MONTHS____YEARS.

**PLEASE MARK WITH AN "X" WHERE YOUR PAIN IS LOCATED:**



☐ STROKE  ☑ HEART ATTACK
☐ OTHER

DIABETES  ☐ ☑
IF YES, HOW DID YOU CONTROL YOUR DIABETES
☐ DIET   ☐ PILLS   ☐ INSULIN

LUNG PROBLEMS:
BRONCHITIS     ☑ ☐
ASTHMA        ☐ ☑
EMPHYSEMA     ☐ ☑
PNEUMONIA     ☑ ☐
TUBERCULOSIS  ☐ ☑
OTHER         ☐ ☑

LIVER PROBLEMS:
HEPATITIS     ☐ ☑
JAUNDICE      ☐ ☑
OTHER         ☐ ☑

CIRCULATION PROBLEMS:
VARICOSE VEINS  ☐ ☑
PHLEBITIS       ☐ ☑
PERIPHERAL VASCULAR DISEASE  ☐ ☑
POOR CIRCULATION  ☑ ☐

7.  LOW BLOOD PRESSURE          ☐ ☑
8.  ULCERS                      ☐ ☑
9.  ARTHRITIS                   ☐ ☑
10. GOUT                        ☐ ☑
11. HIGH CHOLESTEROL LEVELS     ☐ ☑
12. CANCER (TYPE        )       ☐ ☑
13. EPILEPSY OR SEIZURE DISORDER  ☐ ☑
14. KIDNEY PROBLEMS             ☑ ☐
15. THYROID CONDITION — Tested  ☐ ☐
16. GLAUCOMA                    ☐ ☑
17. HISTORY OF RHEUMATIC FEVER  ☐ ☑
18. ARTIFICIAL JOINT REPLACEMENT  ☐ ☑
19. IMMUNE SYSTEM DISORDERS     ☐ ☑
    (AIDS, HIV, ARC)
20. VENEREAL DISEASE            ☐ ☑
21. ANEMIA                      ☐ ☑
22. PRONE TO INFECTION          ☑ ☐
23. SCAR PROBLEMS               ☐ ☑
24. BLEEDING DISORDERS          ☐ ☑

OTHER MEDICAL CONDITIONS? Rectitis Both Hips — Tore Ligiment Behind Lt Knee / Bakers Cist pinch Nerve Back Fibromyalgia, Carpal Tunal — Both Hands — extreme Numbness

PHARMACY NAME goody Water Drugs
PHARMACY PHONE# 839-6361

OR RECENT SURGERIES? PLEASE LIST Blood Patch — From Recent Lumbar — Partial Hysterotomy

YOU TAKING ANY MEDICATIONS OVER THE COUNTER OR BY PRESCRIPTION?  ☐ ☐
PLEASE LIST OR PROVIDE NURSE WITH A LIST
oLoft 50mg QD, ASA QD, Flexiril PR's, Nasrotin QD

OU HAVE ANY GENERAL ALLERGIES?  ☐ ☐
AS ADHESIVE TAPE, HAY FEVER, METALS, FOODS, DUST, ETC.)
PLEASE LIST Common Allergies

OU HAVE ANY ALLERGIES TO MEDICATIONS?  ☑ ☐
PLEASE LIST Codine

OU SMOKE?  ☐ ☑

HOW MUCH PER WEEK _____

OU CONSUME ALCOHOL BEVERAGES?  ☐ ☑

AR 173

## GENERAL MEDICAL INFORMATION

AVE YOU EVER HAD ANY PROBLEMS WI..., OR HAVE NEEDED TO SEE A DOCTOR FOR:

HEART PROBLEMS

YES  NO
☐  ☒

☐ MITRAL VALVE PROLAPSE    ☐ HEART ATTACK

6.  HIGH BLOOD PRESSURE

YES  NO
☐  ☒

# MEDICAL/VOCATIONAL REVIEW

To be completed by the Examiner:

Claimant Name: carol j. daugherty
Claim #: 2005-236-113
Policy #: 99500
Diagnosis: low back pain

DOL: 4/30/05
DOB: 2/9/51
Occ: buyer
Exertion Level: light

Date: 10/11/05
Examiner: d. buggs

Date of most current medical records: 8/9/05
Comments/Questions: what is precluding the claimant from performing her occupation. claimant has an history of fibro. does the medical on the file support the claimant impairmenet. what is the current restrictions and limitations. what is the anticipated duration of the medical on the file.

To be completed by the Medical Department:

Date: October 14, 2005

Not Enough Information to set Duration: ☐
Anticipated R&L's:                              See Below
Anticipated Duration:
Need Records to Support Beyond:

Other Comments: Claimant with multiple subjective complaints without corresponding findings despite multiple x-rays and MRI's. The only test with positive results has been an EMG from 10/04 positive for mild to moderate carpal tunnel syndrome treated with splinting. Based on information on file claimant since the date of loss with light restrictions and limitations with occasional fingering.

The medical opinion provided is based on the data available as of this date. The signature below asserts that I have the training and experience in the area of nursing practice encompassed in this review.

RN: Marianne P. Lubrecht, BSN, RN

To be completed by the Vocational Rehabilitation Department:

Date: _____

_____

_____  Refer for a vocational evaluation after claimant obtains SSDI
_____  Refer to the Vocational Rehabilitation Department for an initial evaluation

EF-1322

# RELIANCE STANDARD
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103
(800) 351-7500

September 2, 2005

Dr. Wael Hamo
209 W. Spring Street
Sylacauga, AL 35160

RE:  Claimant  : Carol J. Daugherty
     S.S. No.  : 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
     D.O.B.    : 2-9-51
     Claim No. : 2005-236-113

Dear Dr. Hamo:

We are reviewing a Long Term Disability (LTD) claim submitted by
your patient, Carol J. Daugherty. As part of our evaluation of
their eligibility for LTD benefits, we must ask that you provide us
with the following information:

   __X__ Please provide us with copies of all medical treatment
     records you have on file for this patient; including
     copies of chart notes, hospital treatment records, X-rays
     and other radiographic tests, and laboratory test results
     for the period from 10-19-04 to present.

   ____ Please complete the enclosed medical questionnaire based
     on your most recent evaluation of the patient's condition.

Accompanying this request is an authorization for the release of
this information signed by the patient. If there is a fee for
providing the information to us, please include appropriate billing
and your tax identification number with your reply. If there is an
advance fee for copying the records, or if you have any other
questions or concerns regarding this request, please contact me
directly at (267) 256-3652. You may also FAX your response to my
attention at (267) 256-3535.

Sincerely,

Danielle N. Buggs , Examiner
Group LTD Claims Department

a **DELPHI** company



**Reliance Standard Life Insurance Company®**

Claim Number: _____

Policy Number: _LTD-099500_

## AUTHORIZATION

To Whom It May Concern:

I, _CAROL Daugherty_ , hereby authorize any hospital, physician, medical practitioner, clinic, other medical or medically-related facility, pharmacy, insurance company or Government Agency (including the Social Security Administration and the Internal Revenue Service) or any past or present employer to disclose or furnish to Reliance Standard Life Insurance Company or its representatives, any and all information with respect to any illness including mental illness, drug/alcohol abuse, injury, medical history, consultations, prescriptions, treatments or benefits, or other documents and copies of all applicable records that may be requested. I also authorize any employer to disclose all information needed to process my claim.

The information provided to Reliance Standard Life Insurance Company or its representatives is to be used solely for the administration of claim(s). A photostatic copy of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

_8/16/05_

Date

_Carol Daugherty_

Signature

NOTE: A true copy of this authorization is available to the employee at any time upon request.

RS—1815-A

AR 177

# Hamo Neurology Clinic
## Pre-Payment Form

Date: 9-8-05

To: Danielle Bupp Examiner
267-256-3535

From: Dr. Wael Hamo, M.D.
209 West Spring Street
Suite 304
Sylacauga, AL  35150

Tax ID #63-1194637

RE: Carol Daugherty

Description: Research fee                    5.00
ML  1st 25 pages              25.00
.50 x 24                      12

Total Amount Due $  42.00

AR 178

## HAMO NEUROLOGY CLINIC
Dr. Wael Hamo, M.D. - Neurology Board Certified

209 W. Spring Street, Ste 304
Sylacauga, AL 35150
Tel: (256) 249-0091
Fax: (256) 249-0024

3368 Highway 280, Ste 208
Alexander City, AL 35010
Tel: (256) 409-2166
Fax: (256) 409-2159 78

=====PROGRESS NOTES=====

Name: Carol Daughtery    DOB: 8-9-51    Sex: F

Insurance: BCBS    Occupation _____    Referred by: _____

Dates

7/27/05  mailed Records to DOS—M Phillips

8-9-05  FU

~~Keppra~~  ↑ work                       Keppra inj ↓ 8 g
~~Klonopin helped~~ ~~one~~              B10
Keppra inj helped                        √ ov hill
↑ fall                                   Arthritis N/W
~~off work.~~                            Zoloft 100
                                         ~~Klonopin 0.5~~
                                         Keppra xy5 30
                                         ④
                                              4 months

3-15-05  filled out long term disability
         form sent to AC to PP Topical—M Phillips

HAMO NEUROLOGY CLINIC
Dr. Wael Hamo, M.D. - Neurology Board Certified

209 W. Spring Street, Ste 304
Sylacauga, AL 35150
Tel: (256) 249-0091
Fax: (256) 249-0024

3368 Highway 280, Ste 208
Alexander City, AL 35010
Tel: (256) 409-2166
Fax: (256) 409-2159 78

PROGRESS NOTES

Name: Carol Daugherty DOB: 2-9-31 Sex: F
Insurance: BCBS Occupation Referred by:

| Dates | Notes |
|---|---|
| 6-1-05 | faxed requested information to Edwina c CUNA mutual group — MColley |
| 6-2-05 | FU |
| | Walks on crutches + ... [illegible] |
| | [illegible] |
| | [illegible] |
| | → fasciitis, on plantar splints |
| | → surgery |
| | Memory: still problems |
| | ... can't afford. |
| | (3) hand tingling. |
| | [illegible] — 2 Months |
| 6-9-05 | faxed information to all state — MColley |
| 6-9-05 | Spoke c Todd about pt's claim status I informed him that she has a PCL tear and that I would fax over information to verify. He stated that would be great and they would review — MColley |
| 6-9-05 | I spoke c pt. She states it is OK to fax information to Todd c CUNA — MColley |
| 7-11-05 | Rec'd all state letter c corrected date on it ... form from CUNA mutual group — MColley |
| 7-25-05 | faxed information to CUNA — MColley |

# HAMO NEUROLOGY CLINIC
## Dr. Wael Hamo, M.D. - Neurology Board Certified

209 W. Spring Street, Ste 304
Sylacauga, AL 35150
Tel: (256) 249-0091
Fax: (256) 249-0024

3368 Highway 280, Ste 208
Alexander City, AL 35010
Tel: (256) 409-2166
Fax: (256) 409-2159 78

=====================PROGRESS NOTES=====================

Name: Carol Daugherty    DOB: _____    Sex: F
Insurance: BCBS    Occupation _____    Referred by: _____

| Dates | Notes |
|---|---|
| 4-14-05 FU | |

4-27-05 – filled out form for FMLA and
Send to AC — McClurg

4-27-05 filled out form for all staff and
Send to AC for pt to pick up — McClurg

5-12-05 filled out and faxed questionnaire
form (Ins.) medical groups sent copy to AC
for pt to pickup — McClurg

AR 181

5-12-05 Called in Flexeril 10mg #90 ②
Goodwater Drug

5-25-05 Spoke t Karen from ENSI about prepayment
She states prepayment is in the mail — McClurg
5-27-05 medical records sent to ENSI Received _____

HAMO NEUROLOGY CLI[illegible]
Dr. Wael Hamo, M.D. - Neurology Board Certified

209 W. Spring Street, Ste 304
Sylacauga, AL 35150
Tel: (256) 249-0091
Fax: (256) 249-0024

3368 Highway 280, Ste 208
Alexander City, AL 35010
Tel: (256) 409-2166
Fax: (256) 409-2159 78

PROGRESS NOTES

Name: Carol Dougherty DOB: 2·9·51 Sex: F

Insurance: BCBS Occupation: ________ Referred by: Hill

| Dates | Notes |
| --- | --- |
| 4·7·05 FU | [illegible] |

AR 182

# HAMO NEUROLOGY CLINIC
## Dr. Wael Hamo, M.D. - Neurology Board Certified

209 W. Spring Street, Ste 304
Sylacauga, AL 35150
Tel: (256) 249-0091
Fax: (256) 249-0024

3368 Highway 280, Ste 208
Alexander City, AL 35010
Tel: (256) 409-2166
Fax: (256) 409-2159 78

=================PROGRESS NOTES=================

Name: _Carol Daugherty_ DOB: _2-9-51_ Sex: _F_

Insurance: _BCBS_    Occupation _____    Referred by: _Hill_

==========================================

| Dates | Notes |
|-------|-------|

12-14-04 FU

2-8-05 FU

# HAMO NEUROLOGY CLINIC
## Dr. Wael Hamo, M.D. - Neurology Board Certified

209 W. Spring Street, Ste 304
Sylacauga, AL 35150
Tel: (256) 249-0091
Fax: (256) 249-0024

3368 Highway 280, Ste 208
Alexander City, AL 35010
Tel: (256) 409-2166
Fax: (256) 409-2159

=========================PROGRESS NOTES=========================

Name: Carol Daugherty    DOB: 2-9-51    Sex: F

Insurance: BCBS    Occupation _____    Referred by: Hill

| Dates | Notes |
|-------|-------|

10-26-04 FU

_(handwritten clinical notes, largely illegible)_

11-16-04 FU

_(handwritten clinical notes, largely illegible)_

AR 184

# HAMO NEUROLOGY CLINIC

Dr. Wael Hamo, M.D. - Neurology Board Certified

209 W. Spring Street, Ste 304
Sylacauga, AL 35150
Tel: (256) 249-0091
Fax: (256) 249-0024

3368 Highway 280, Ste 208
Alexander City, AL 35010
Tel: (256) 409-2166
Fax: (256) 409-2159 78

PROGRESS NOTES

Name: Carol Daugherty DOB: 2-9-51 Sex: F

Insurance: BCBS Occupation____ Referred by: Hill

| Dates | Notes |
|---|---|
| 10-19-04 | NP Back Pain numbness |
| | - Fibromyalgia x many years. |
| | - Neck pain → (R) [illegible], (R) hand numbness |
| | x 1 year. (R) > (L) |
| | - [illegible] pain → (R) hand numbness |
| | - H/A: [illegible] |
| | - dizzy sometimes, lightheaded |
| | - [illegible] |
| | - [illegible] 1993 MVA [illegible] |
| | - fatigue, [illegible] insomnia. |
| | Psych: [illegible] |
| | - inj [illegible] years ago |
| | [illegible] multiple [illegible] no relief. |
| | → (R) [illegible] — 1 week |
| | — (R) [illegible] → [illegible] |
| | — Neurontin [illegible] |
| | 30 |
| | — Zanaflex |
| | — wrist splint (R) |
| | — EMG (R) [illegible] |
| | (R) [illegible] |
| | — MRI [illegible] |
| | spine |
| | — neck & back |
| | exercise |

**HAMO NEUROLOGY INC.**
**Wael Hamo, M.D.  Neurology Board Certified**
**209 West Spring Street – Suite 304**
**Sylacauga, AL 35150**
**(256) 249-0091**

**FOLLOW UP NOTE**
**DATE:**        **08/09/05**
**PATIENT:**     **CAROL J. DAUGHERTY**

Lady with history of fibromyalgia, neck pain, low back pain and pain distribution down to the right lower extremity.  Bilateral CTS.  Dizziness consistent with presyncope with memory problem.  Pt. stopped Keppra because it has not been working.  Pt. stated that Klonopin has helped much better.  Reminyl has been helping her memory.  Denies any recent falls.  Pt. has been off work because of her neck pain, low back pain and upper/lower extremity symptoms – fibromyalgia, activity related.

**EXAM:**
Grossly intact extraocular movement and visual field exam.  Intact and symmetrical motor and sensory facial exam.  MSE – 100/100 – both upper and both lower extremities, symmetrical.  80-90/100 – both opponens muscles.  100/100 – both lower extremities.  80-90/100 – both hip flexors.  Cerebellar and gait exam was WNL.

**IMPRESSION/PLAN:**
1. Reminyl 8 mg. twice a day as coverage of memory problem – dementia.
2. Zanaflex 4 mg. half to one pill up to three times a day as coverage of neck pain, tension type headache and low back pain.
3. Zoloft 100 mg. one tablet every day as coverage of depression.
4. Neck and back exercise twice a day as coverage of neck pain, tension type headache and low back pain.
5. Klonopin 0.5 mg. at bedtime as coverage of sleep difficulties, radicular neck and back pain component – 30 tablets with four refills.
6. Pt. to proceed with arthritis blood work up to be eval. by her primary physician, Dr. Hill for this purpose considering blood work up, CBC, Chem 14, ESR, C-reactive protein, Rheumatoid factor, SSA, SSB antibodies, Anti-DNA antibodies and Uric Acid.
7. Wrist splint over right and left wrist area as coverage of bilateral CTS.  Continue on the same restrictions regarding her bilateral CTS, chronic neck pain and low back pain.
8. I will see how she does in four months.

Wael Hamo, M.D.
WH/gsb

AR 186

HAMO NEUROLOGY
Wael Hamo, M.D.  Neurology Board Certified
209 West Spring Street - Suite 304
Sylacauga, AL 35150
(256) 249-0091

FOLLOW UP NOTE
DATE:       06/02/05
PATIENT:    CAROL J. DAUGHERTY

Lady with history of fibromyalgia.  Neck pain and low back pain with pain distribution down to the right lower extremity.  Bilateral CTS.  Dizziness consistent with presyncope with memory problem.  Pt. was walking with crutches with the diagnosis of left knee arthritis and Baker cyst with ligament problem of the left knee.  She was treated with PT and also she was eval. by Dr. Stewart with the diagnosis of plantar fasciitis.  Pt. was started on plantar splints on both sides considering surgical options.  Pt. stated that she is still having memory problem. Cymbalta she could not afford.  She has been complaining of bilateral hand numbness and tingling as aggravation of CTS.

EXAM:
Grossly intact extraocular movement and visual field exam.  Intact and symmetrical motor and sensory facial exam. MSE - 100/100 - both upper and both lower extremities, symmetrical.  80-90/100 - both opponens muscles.  100/100 - both lower extremities.  80-90/100 - both hip flexors.  Cerebellar and gait exam was WNL.

IMPRESSION/PLAN:
1. Increase Reminyl to 8 mg. twice a day or better coverage of memory problem - dementia.
2. Zanaflex 4 mg. up to three times a day as coverage of neck pain, tension type headache and low back pain.
3. Zoloft as coverage of depression.
4. Neck and back exercise twice a day as coverage of neck pain, tension type headache and low back pain and fibromyalgia.
5. Keppra 500 mg. half tablet at bedtime for three days and then to be increased to one tablet at bedtime for one week and then to be increased to half tablet in the morning and one tablet at bedtime as coverage of neuropathic symptoms of upper and lower extremities, neck pain, low back pain, migraine and tension type headache.
6. Wrist splint over right and left wrist area as coverage of bilateral CTS.  Carpal tunnel injection was considered, however, pt is not willing to proceed with injections at this point.
7. I will see how she does in two months.

WAEL HAMO, M.D.
WH/gsb

HAMO NEUROLOGY
Wael Hamo, M.D. Neurology Board Certified
209 West Spring Street - Suite 304
Sylacauga, AL 35150
(256) 249-0091

FOLLOW UP NOTE
DATE:        04/14/05
PATIENT:     CAROL DAUGHERTY

Lady with history of fibromyalgia, neck pain and low back pain and pain distribution down to the right lower extremity - bilateral CTS. Dizziness consistent with presyncope and memory problem. Pt. was eval. by Dr. Howorth with MRI of the left knee revealing PCL tear with left hip bursitis. Pt. has been on Prednisone pack for five days. There was consideration of injection if the pt. does not respond to PT. Refer to PT of left knee and left hip joint. Denies any recent falls. Her headache, neck pain and low back pain has been about the same, usually activity related. Pt. has been restricted by her fibromyalgia, chronic neck pain and low back pain. Unable to do much restricting her work.

EXAM:
Grossly intact extraocular movement and visual field exam. Intact and symmetrical motor and sensory facial exam. MSE - 100/100 - both upper and both lower extremities, symmetrical. 80-90/100 - both opponens muscles, right triceps and deltoid muscle. 100/100 - both lower extremities. 80-90/100 - right hip flexors. Cerebellar and gait exam was WNL.

IMPRESSION/PLAN:
1. After a long discussion regarding the pt's restriction at work, the decision was made to proceed with processing for the disability because of the pt's restriction by her neck pain, low back pain and fibromyalgia. Her current job does not provide her with any restrictions. There are no light duty jobs available. She stated that she cannot work any more with her current job description.
2. Continue on Reminyl increasing the dose gradually to 8 mg. twice a day as recommended last visit.
3. Zanaflex 4 mg. up to three times a day as coverage of neck pain, tension type headache and low back pain.
4. Cymbalta increasing the dose to 60 mg at bedtime gradually as recommended on last visit as coverage of depression, fibromyalgia, chronic neck pain and low back pain.
5. Check with Dr. Hill, primary physician regarding the safety of Mobic as coverage of upper extremity tendinitis, hip and knee bursitis.
6. Lidoderm patches 5% over cervical and lumbosacral spine area over 12 hours as needed for pain.
7. Pt. to be on restrictions. Avoid repetitive and hard activity of right and left hand and wrist area and right lower extremity. Limited stooping, climbing and bending. May lift up to 20 pounds. Avoid sitting for longer than one hour at one time. Avoid standing for longer than 5 minutes at one time.
8. I will see her as scheduled before.

WAEL HAMO, M.D.
WH/gsb

HAMO NEUROLOGY
Wael Hamo, M.D.  Neurology Board Certified
209 West Spring Street - Suite 304
Sylacauga, AL 35150
(256) 249-0091

**FOLLOW UP NOTE**
**DATE:**       04/07/05
**PATIENT:**    CAROL DAUGHERTY

Lady with history of fibromyalgia and chronic neck pain and low back pain with pain distribution down to the right lower extremity. Bilateral CTS. Dizziness consistent with presyncope and memory problem consistent with early dementia. Pt. was eval. by Dr. Howorth with the diagnosis of tumor behind her left knee. Bursitis of both hips. She had MRI of left knee recently and she will see Dr. Howorth today for further eval. Regarding her work up for further eval. of headache and memory problem and dizziness - her carotid doppler from March 2, 2005 revealed no significant stenosis. MRI on February 15, 2005 revealed minimal symmetrical areas of encephalomalacia which are tiny involving inferior aspect of the cerebral peduncle bilaterally. Normal study otherwise which can be consistent with history of migraine headache. However, there was concern about possible MS. Proceeded with CSF study on March 1, 2005. Myelin basic protein was 3.2 - WNL. Oligoclonal bands - negative. Cryptococcal antigen was negative. VDRL of CSF was not reactive. SPEP was WNL. CSF protein electrophoresis was WNL. Her CSF and WBC was 2. RBC was 10. CSF Glucose 51, CSF Protein was 24. Gram stain and India ink were negative. Further eval. of microangiopathic changes noticed on brain MRI included also lipid profile on March 1, 2005 which revealed cholesterol 211 with normal HDL. LDL was mildly elevated at 137. Results were explained to the pt. Pt. has been complaining of headache, neck pain, low back pain and aggravation of fibromyalgia with activity mainly and with weather changes. Her memory has been poor. Pt. has been off Klonopin without any response. Pt. still has problems going to sleep at night.

**EXAM:**
Grossly intact extraocular movement and visual field exam. Intact and symmetrical motor and sensory facial exam. MSE - 100/100 - both upper and both lower extremities, symmetrical. 80-90/100 - both opponens muscles, right triceps and deltoid muscle. 100/100 - both lower extremities. 80-90/100 - both hip flexors. Cerebellar exam and gait exam was WNL.

**IMPRESSION/PLAN:**
1. Increase Reminyl to 4 mg. in the morning and 8 mg. at bedtime for one month and then if tolerated to be increased to 8 mg. twice a day as coverage of memory problem and early dementia.
2. Zanaflex 4 mg. half to one pill up to three times a day as coverage of neck pain, tension type headache and low back pain.
3. Wrist splint over right and left wrist area as coverage of bilateral CTS.
4. Pt. to stop Zoloft and switch to Cymbalta 30 mg. at bedtime for one week and then to be increased to 60 mg. at bedtime if tolerated as coverage of fibromyalgia, chronic neck pain, low back pain and depression.
5. Consider Mobic 15 mg. up to twice a day on a full stomach as coverage of neck pain, low back pain and upper extremity tendinitis if that is agreeable to her primary physician, Dr. Hill.
6. Wrist splint over right and left wrist area as coverage of bilateral CTS and tendinitis.
7. Continue on neck and back exercise twice a day as tolerated.
8. I will see how pt. does in two months.

**WAEL HAMO, M.D.**
WH/gsb

HAMO NEUROLOGY
Wael Hamo, M.D. Neurology Board Certified
209 West Spring Street - Suite 304
Sylacauga, AL 35150
(256) 249-0091

**FOLLOW UP NOTE**
**DATE:**      02/08/05
**PATIENT:**   CAROL DAUGHERTY

Lady with history of fibromyalgia. History of neck pain and low back pain with pain distribution down to the right lower extremity with bilateral CTS. Dizziness consistent with presyncope. Also, pt. has been complaining of memory problem and increased the dose of Aricept to 10 mg. recently. She stated that her memory has been about the same. No response. She has been complaining of low back pain, left hip and left knee pain since her fall. Pt. had negative x-rays for further eval. of her injury with lumbosacral spine x-rays revealing minimal discogenic degenerative changes at L1-L2. No other significant abnormality seen. Left knee x-rays. No fracture or dislocation. Left hip x-ray. No significant abnormality seen with normal cervical spine MRI with normal MRI of the lumbar spine. These results were explained to the pt. F·· also complains of some memory problem and imbalance. She is still on her dose of Zoloft 100 mg. every day.

**EXAM:**
Grossly intact extraocular movement and visual field exam. Intact and symmetrical motor and sensory facial exam. MSE - 100/100 - both upper and both lower extremities, symmetrical. 80-90/100 - both opponens muscles and right triceps and deltoid muscles. 100/100 - both lower extremities. 80-90/100 - right hip flexors. Cerebellar and gait exam was WNL.

**IMPRESSION/PLAN:**
1. Will refer pt. to Dr. Howorth following her recent injury with low back pain, left hip and left knee pain for further eval. of left hip and left knee injury.
2. MRI of the brain for further eval. of questionable history of imbalance - ataxia and memory problem.
3. Reminyl 4 mg. twice a day instead of Aricept. Pt. to stop Aricept and proceed with Reminyl one tablet twice a day as coverage of memory problem and dementia.
4. Lidoderm patches 5% to be applied over cervical and lumbosacral spine area over 12 hours as needed for pain.
5. Zanaflex 2 mg. up to three times a day as coverage of neck pain, low back pain and tension type headache.
6. Wrist splint over right and left wrist area as coverage of bilateral CTS.
7. Continue on Klonopin 0.5 mg. half tablet at bedtime as coverage of anxiety and sleep difficulties.
8. Zoloft 100 mg. as coverage of depression and fatigue.
9. Pt. to continue on neck and back exercise twice a day as tolerated. May use Celebrex only on prn basis to avoid the possible risk of cardiac side effects. Considering switching pt. to Mobic 15 mg. up to twice a day on a full stomach as coverage of neck pain, back pain and tendinitis.
10. I will see how she does in two months.

WAEL HAMO, M.D.
WH/gsb

HAMO NEUROLOGY
Wael Hamo, M.D. Neurology Board Certified
209 West Spring Street - Suite 304
Sylacauga, AL 35150
(256) 249-0091

**FOLLOW UP NOTE**
DATE:        12/14/04
PATIENT:     CAROL J. DAUGHERTY

Lady with history of fibromyalgia, low back pain and pain distribution down to the right lower extremity. Neck pain with pain distribution down to the right upper extremity with bilateral CTS. Dizziness consistent with presyncope. Pt. has been having problems going to sleep at night. Zanaflex has been helping some. EEG study for further eval. of memory problem - early features of dementia revealed normal study. Aricept has been helping. Pt. denies any recent falls. No suicidal ideation, suicidal attempts or prominent depression.

**EXAM:**
Grossly intact extraocular movement and visual field exam. Intact and symmetrical motor and sensory facial exam. MSE - 100/100 - both upper extremities. 80-90/100 - both opponens muscles. 80-90/100/100 - right triceps and deltoid muscle. 100/100 - both lower extremities. 80-90/100 - right hip flexor restricted by pain. Cerebellar and gait exam was WNL.

**IMPRESSION/PLAN:**
1. Increase Aricept to 10 mg. at bedtime for better coverage of memory problem.
2. Zanaflex 2 mg. half to one pill up to three times a day as coverage of neck pain, tension type headache and low back pain.
3. Klonopin 0.5 mg. half pill at bedtime as needed for anxiety and sleep difficulties.
4. Continue on Zoloft 100 mg. every day as coverage of depression and fatigue.
5. Celebrex 200 mg. one capsule twice a day as coverage of neck pain, low back pain and upper extremity tendinitis.
6. Wrist splint over right and left wrist area as coverage of bilateral CTS.
7. Proceed with sleep study for further eval. of sleep difficulties.
8. Neck and back exercise twice a day as tolerated.
9. Continue on restrictions regarding her low back pain, neck pain and CTS.
10. I will see how she does in two months.

**WAEL HAMO, M.D.**
WH/gsb

**HAMO NEUROLOGY**
Wael Hamo, M.D. Neurology Board Certified
209 West Spring Street - Suite 304
Sylacauga, AL 35150
(256) 249-0091

**FOLLOW UP NOTE**
**DATE:**        11/16/04
**PATIENT:**    CAROL J. DAUGHERTY

Lady with history of fibromyalgia, low back pain with pain distribution down to the right lower extremity. Neck pain with pain distribution down to the right upper extremity. Bilateral hand and wrist pain and numbness - bilateral CTS. Headache which seems to be neck related headache in nature. Dizziness consistent with presyncope with history of fatigue. We proceeded with blood work up for further eval. of fatigue. Acetyl Choline Receptor antibodies was less than 0.03 - WNL. Aldolase was WNL. Ca was decreased to 5.6. Normal TFT, Vitamin B12, Folic Acid otherwise. Normal CBC and electrolytes. Normal LFT and CPK. Results were explained to the pt. with negative MRI of cervical and lumbosacral spine. Pt. had a fall Friday afternoon. Pt. has been drowsy in the morning following the dose of Klonopin 0.5 mg. at bedtime. However, she has been sleeping very well at night. She is still complaining of neck and back pain with left elbow, shoulder, wrist and knee injury without any fractures. She did not have any visits ton the E.R. She does not think that she had any fracture. Pt. had only mild help on Provigil. Zoloft 100 mg. helped. Pt. was tried on Neurontin in the past without any relief. Also, she has been complaining some memory problem without any confusion spells or hallucinations.

**EXAM:**
Grossly intact extraocular movement and visual field exam. Intact and symmetrical motor and sensory facial exam. MSE - 100/100 - both upper extremities. 80-90/100 - both opponens muscles. 80-90/100 - right triceps and deltoid muscle restricted by pain. 100/100 - both lower extremities. 80-90/100 - right hip flexors restricted by pain. Cerebellar, gait and tandem gait exam was WNL.

**IMPRESSION/PLAN:**
1. Decrease Zanaflex to 2 mg. up to three times a day as coverage of neck pain, tension type headache and low back pain.
2. Decreased Klonopin to 0.5 mg. half tablet at bedtime as coverage of restless leg syndrome and sleep difficulties to avoid drowsiness in the morning.
3. Consider Topamax as coverage of fibromyalgia, chronic neck ain and low back pain.
4. Celebrex 200 mg. one capsule up to twice a day as coverage of neck pain, low back pain and upper extremity tendinitis.
5. Wrist splint over right and left wrist area as coverage of bilateral CTS.
6. Aricept 5 mg. at bedtime as coverage of memory problem.
7. EEG study for further eval. of memory problem. Rule out Epileptiform discharges.
8. Neck and back exercise twice a day as tolerated.
9. Pt. to be on restrictions regarding her neck, low back pain and CTS.
10. I will see how he does in one month from now.

**WAEL HAMO, M.D.**
WH/gsb

HAMO NEUROLOGY
Wael Hamo, M.D.  Neurology Board Certified
239 West Spring Street - Suite 304
Sylacauga, AL 35150
(256) 249-0091

FOLLOW UP NOTE
DATE:          10/26/04
PATIENT:    CAROL J. DAUGHERTY

Lady who was seen by me on October 19, 2004 with features of fibromyalgia, neck pain and possibility of right cervical radiculopathy, bilateral CTS, low back pain with possible right lumbosacral radiculopathy. Pt. has been complaining of neck pain, headache, low back pain with fatigue. MRI of the lumbar spine from October 22, 2004 revealed normal for age with mild degenerative changes present. MRI of cervical spine revealed normal study on October 22, 2004. Denies any recent falls. She did not have any improvement of her sleep problems. She is still having problems going to sleep at night. Pt. is concerned about her fatigue. She is tired most of the day. Pt. did not start Klonopin yet.

EXAM:
Grossly intact extraocular movement and visual field exam. Intact and symmetrical motor and sensory facial exam. MSE - 100/100 - both upper extremities. 90-90/100 - both opponens muscles and right deltoid muscle. 100/100 - left lower extremity. 80-90/100 - right hip flexors and extensors. 100/100 - right lower extremity. Cerebellar and gait exam including tandem gait exam was WNL.

IMPRESSION/PLAN:
1. Increase Zoloft to 100 mg. every day as coverage of depression and fatigue.
2. Klonopin 0.5 mg. at bedtime to be started as coverage of sleep difficulties, radicular neck and back pain component.
3. Zanaflex 4 mg. half to one pill up to three times a day as coverage of neck pain, tension type headache and low back pain.
4. Wrist splint over right and left wrist area as coverage of bilateral CTS.
5. Neck and back exercise twice a day as coverage of neck pain and low back pain.
6. Proceed with blood work up for further eval. of fatigue checking for CBC, chem 14, TFT, Vitamin B12, Folic Acid, Acetyl Choline Receptor antibodies, CPK and Aldolase.
7. Provigil 200 mg. every day as coverage of fatigue. Pt. was advised to call me if she has any side effects on the above mentioned medication.
8. I will see how she does in three weeks from now.


WAEL HAMO, M.D.
WH/gsb

HAMO NEUROLOGY
Wael Hamo, M.D.  Neurology Board Certified
2?9 West Spring Street - Suite 304
Sylacauga, AL 35150
(256) 249-0091

NEW PATIENT EVALUATION
DATE:       10/19/04
PATIENT:    CAROL DAUGHERTY

CONSULTING PHYSICIAN:    Edward Hill, M.D.

Thank you Dr. Hill for this nice consultation. 53 yr. old right handed caucasian lady who presented to my office with history of fibromyalgia, neck pain, low back pain, bilateral hand and wrist pain and numbness. Pt. has history of fibromyalgia for many years with neck pain with pain distribution down to both upper extremities with bilateral hand numbness over the last year, more prominent on the right side as compared to the left side. History of low back pain with pain distribution down to the right lower extremity with numbness. Also, she complains of headache with nausea without any vomiting or visual changes. Pt. complains of dizziness as light headiness, especially with standing and walking around. Denies any history of MRI of cervical and lumbosacral spine area. She had CT of head and lumbosacral spine back in 1993 following MVA without any fracture reported at that time. Pt. has history of fatigue and she has been Zoloft. Also, she has history of sleep difficulties. Pt. also history of earache and she had negative ENT work up. She had cervical spine injections in the past without any relief. That was years ago. Pt. also had cervical and lumbosacral spine PT on multiple occasions without any relief.

ALLERGIES:
Ceclor.

CURRENT MEDICATIONS:
Laxative. Zoloft, Naprosyn, Sudafed.

PAST MEDICAL HX:
Hemorrhoids, chronic diarrhea, leg swelling, chronic cough, back pain, neck pain, chest pain, headache, ringing in ears and dizziness.

FAMILY HX:
Significant for cancer, diabetes, heart disease, hypertension and stroke.

PAST SURG. HX:
Significant for tubal ligation and partial hysterectomy.

SOCIAL HX:
Denies any history of smoking, ethanol or illegal drug use.

ROS:
Denies any history of loss of vision in one eye or the other or double vision. No history of language, comprehension problem or difficulty finding words. No history of slurred speech or swallowing problem. No history of chest pain, shortness of breath or palpitation. No history of fall, head, neck or back injury. No change or loss of consciousness or any witnessed convulsive activity. No confusion, hallucinations or memory lapses. No depression, anxiety or panic attacks. No fever or sinus infection. No suicidal ideation or suicidal attempts.

October 19, 2004
Page 2
Re: Carol Daugherty

## EXAM:
This is a nice lady who is alert and oriented times four. Intact language and comprehension exam with good performance on memory exam. WT 205 lbs. HT: 5'3".

## NECK:
Supple. No audible carotid bruits.

## HEART:
RR.

## CRANIAL NERVE EXAM:
Equal pupils reactive to light. Grossly intact extraocular movement and visual field exam. Intact and symmetrical motor and sensory facial exam. No slurred speech, tongue deviation or tongue fasciculation noticed on exam.

## MOTOR STRENGTH EXAM:
80/100 - both opponens muscles. 80-90/100 - right upper extremity restricted by pain. 100/100 - left upper extremity. 80-90/100 - left hand grip. 80/100 - left opponens muscle. 100/100 - left lower extremity. 80-90/100 - right lower extremity restricted by pain.

## CEREBELLAR EXAM:
Intact and symmetrical for finger to nose and heel to shin bilaterally.

## GAIT:
Gait exam including tandem gait was WN. Romberg sign was negative. No pronator drift seen on exam.

## DEEP TENDON REFLEXES:
+2 in both upper extremities, both knees and both ankles, symmetrical. Plantar reflex - downgoing toes bilaterally. No cogwheel rigidity noticed in either right or left upper extremities.

## SENSORY EXAM:
Intact and symmetrical over upper and lower extremities including pinprick and position sensation.

## MUSCULOSKELETAL EXAM:
Some restriction on neck movement exam flexing the neck laterally to the right side around 45 degrees. Tenderness in the right occipital and right upper trapezius area. Straight leg sign was positive on the right side around 70 degrees. Tenderness in both right and left wrist area and right lumbosacral paraspinal area and right sciatic notch area.

## IMPRESSION:
1. Low back pain with pain distribution down to the right lower extremity - right lumbosacral radiculopathy should be considered.
2. Neck pain with pain distribution down to the right upper extremity. Right cervical radiculopathy should be considered.

October 19, 2004
Page 3
Re: Carol Daugherty

3. Bilateral hand pain and numbness.  Entrapment neuropathy of upper extremity - CTS should be considered.
4. With the right lower extremity symptoms, mononeuropathy of right lower extremity should be considered.
5. Tendinitis and arthritis contributing to pts symptoms of upper extremities.
6. Headache which seems to be neck related headache in nature with a component of migraine headache sometimes.
7. Dizziness consistent with presyncope.  Pt. does not have any risk factors of carotid artery disease at this point.
8. History of fatigue with some response to Zoloft with some features of depression in the past.  Other treatable causes of fatigue should be considered.

PLAN:
1. Klonopin 0.5 mg. at bedtime as coverage of sleep difficulties.  Radicular neck and back pain component and fibromyalgia.
2. Zanaflex 4 mg. half to one pill up to three times a day as coverage of neck pain, tension type headache and low back pain.
3. Pt. was given prescription of Klonopin 30 tablets without refill.
4. Consider Provigil 200 mg. up to twice a day as coverage of fatigue.
5. Wrist splint over right and left wrist area as coverage of bilateral CTS.
6. EMG study of right upper and right lower extremity for further eval. of neck pain, low back pain, upper and lower extremity mononeuropathy.
7. MRI of cervical and lumbosacral spine for further eval. of neck pain and low back pain.
8. Neck and back exercise twice a day as coverage of neck pain, tension type headache and back pain.
9. Pt. to avoid repetitive and hard activity of right and left hand and wrist area and right upper and right lower extremity.  Limited stooping, climbing and bending.  May lift up to 20 pounds.  Avoid sitting or standing for longer than one hour at one time.  May lift up to 20 pounds.
10. Pt. to continue Naprosyn as coverage of tendinitis of upper extremities and continue on Zoloft as coverage of fatigue.
11. Consider blood work up checking for CBC, Chem 14, TFT, Vitamin B12 and Folic Acid level for further eval. of fatigue after reviewing the results of the blood work up from Dr. Hill's office.
12. I will see how she does in one week from now.

WAEL HAMO, M.D.
WH/gsb

**LABORATORY CORPORATION OF AMERICA**
1801 1st Avenue South Birmingham, AL 35233

---

SPIFE SPE Split Beta  Sample 49   03-03-2005  05:09:22:48

| | | | | | |
|---|---|---|---|---|---|
| ID Number | 06140200250 | | Gel Number | | 06140200250  CAROL DAUGHERTY |
| Patient Name | DAUGHERTY | | Sex | | PID=M0011802  DID=HAMO |
| Total | 6.5 | | | | Russell Medical Center |
| | | | | | Hwy 280 By Pass |
| | | | | | Alexander City AL  350109026 |



| Fraction | % | % Range | g/dL | g/dL Range | |
|---|---|---|---|---|---|
| Albumin | 59.1 | | 3.8 | 3.2 | 5.6 |
| Alpha 1 | 2.9 | | 0.2 | 0.1 | 0.4 |
| Alpha 2 | 9.5 | | 0.6 | 0.6 | 1.2 |
| Beta | 16.0 | | 1.0 | 0.6 | 1.3 |
| Gamma | 12.5 | | 0.8 | 0.5 | 1.6 |
| Total | | | 6.5 | 6.0 | 8.5 |

Ratio

A/G    1.4

Comment

Interpretation

```
RUN DATE: Mar 9, 2005          Russell Med Center Laboratory * *IVE**        PAGE 1
RUN TIME: 10:26 am                        3316 Highway 280
RUN.USER: LABBKGJOB                    Alexander City, AL  35010
                                        NEW RESULTS REPORT
```

| PATIENT: DAUGHERTY, CAROL J. | ACCT #: V011529203 | LOC:  ERCLINIC | U #: M0011802 |
|---|---|---|---|
| | AGE/SX: 54/F | ROOM: | REG: 03/01/05 |
| REG DR: Hamo,Wael | STATUS: DEP ER | BED: | DIS: |

```
SPEC #: 0301:C00088S        COLL: 03/01/05-0930     STATUS:  COMP         REQ #: 00632297
                            RECD: 03/01/05-0930     SUBM DR: Hamo,Wael

ENTERED:  03/01/05-0923                             OTHR DR:
ORDERED:  CSF ANALYSIS, IgG INDEX, CSF, MYELIN BAS PROT, OLIGOCLONAL, CRYP AG CSF,
          VDRL (CSF)
```

| Test | Result | Flag | Reference |
|---|---|---|---|
| | **** LabCorp **** | | |
| IgG INDEX, CSF | Test not performed(@a) | | 0.0-0.7 |
| | *CANCELED DUE TO LACK OF SPECIMEN* | | |

```
SPEC #: 0301:H00040S        COLL: 03/01/05-0930     STATUS:  CAN          REQ #: 00632297
                            RECD: 03/01/05-0930     SUBM DR: Hamo,Wael

ENTERED:  03/01/05-0923                             OTHR DR:
ORDERED:  CC/DIFF CSF
```

| Test | Result | Flag | Reference |
|---|---|---|---|
| ** CANCELLED ** | | | |
| | *NOT ON PHYSICIAN'S ORDERS* | | |

```
(@a) LABCORP
```

| Patient: DAUGHERTY, CAROL J | Age/Sex: 54/F | Acct#V011529203 | Unit#M0011802 |
|---|---|---|---|

```
RUN DATE: Mar 1, 2005              Russell Med Center Laboratory ** ..IVE**         PAGE 1
RUN TIME: 10:11 am                           3316 Highway 280
RUN.USER: LABBKGJOB                     Alexander City, AL  35010
                                          NEW RESULTS REPORT
```

| PATIENT: DAUGHERTY, CAROL J. | ACCT #: V011529203 | LOC: ERCLINIC | U #: M0011802 |
|---|---|---|---|
| | AGE/SX: 54/F | ROOM: | REG: 03/01/05 |
| REG DR: Hamo,Wael | STATUS: REG ER | BED: | DIS: |

```
SPEC #: 0301:C00086R     COLL: 03/01/05-0930     STATUS:  COMP          REQ #: 00632293
                         RECD: 03/01/05-0930     SUBM DR: Hamo,Wael

ENTERED:  03/01/05-0918                          OTHR DR:
ORDERED:  LIPID PROF
```

| Test | Result | Flag | Reference |
|---|---|---|---|
| | **** CHEMISTRY **** | | |
| *LIPID PROF* | | | |
| CHOLESTEROL | 211 | H | 0.0-200 mg/dL |
| TRIG | 122.0 | | 0-200 mg/dL |
| HDL | 55.7 | | 35.0-85.0 mg/dL |
| LDL CHOLESTEROL | 137 | H | 0.0-130.0 mg/dL |
| VLDL | 24 | | 1.0-48.0 mg/dl |
| CHOL/HDL RATIO | 3.8 | | 3.4-4.7 |

```
SPEC #: 0301:R00009R     COLL: 03/01/05-0930     STATUS:  RECD          REQ #: 00632293
                         RECD: 03/01/05-0930     SUBM DR: Hamo,Wael

ENTERED:  03/01/05-0918                          OTHR DR:
ORDERED:  PROT ELEC SERUM
```

| Test | Result | Flag | Reference |
|---|---|---|---|
| PROT ELEC SERUM | PENDING | | |

| Patient: DAUGHERTY, CAROL J. | Age/Sex: 54/F | Acct#V011529203 | Unit#M0011802 |
|---|---|---|---|

AR 199

```
RUN DATE: Mar 1, 2005              Russell Med Center Laboratory * LIVE**           PAGE 1
RUN TIME: 10:27 am                         3316 Highway 280
RUN USER: LABBKGJOB                    Alexander City, AL  35010
                                        NEW RESULTS REPORT
```

| | | | |
|---|---|---|---|
| PATIENT: DAUGHERTY, CAROL J. | ACCT #: V011529203 | LOC: ERCLINIC | U #: M0011802 |
| | AGE/SX: 54/F | ROOM: | REG: 03/01/05 |
| REG DR: Hamo, Wael | STATUS: REG ER | BED: | DIS: |

```
SPEC #: 0301:C00088S      COLL: 03/01/05-0930     STATUS:  RES          REQ #: 00632297
                          RECD: 03/01/05-0930     SUBM DR: Hamo, Wael

ENTERED:  03/01/05-0923                   OTHR DR:
ORDERED:  CSF ANALYSIS, IgG INDEX, CSF, MYELIN BAS PROT, OLIGOCLONAL, CRYP AG CSF,
          VDRL (CSF)
```

| Test | Result | Flag | Reference |
|---|---|---|---|
| | **** HEMATOLOGY **** | | |
| | ** BODY FLUID ANALYSIS ** | | |
| CC/DIFF CSF | | | |
| NEUTROPHILS | 0.0 | % | |
| LYMPHOCYTES | 100.0 | % | |

```
SPEC #: 0301:H00040S      COLL: 03/01/05-0930     STATUS:  CAN          REQ #: 00632297
                          RECD: 03/01/05-0930     SUBM DR: Hamo, Wael

ENTERED:  03/01/05-0923                   OTHR DR:
ORDERED:  CC/DIFF CSF
```

| Test | Result | Flag | Reference |
|---|---|---|---|
| ** CANCELLED ** | | | |
| *NOT ON PHYSICIAN'S ORDERS* | | | |

| | | |
|---|---|---|
| Patient: DAUGHERTY, CAROL J. | Age/Sex: 54/F | Acct#V011529203    Unit#M0011802 |

AR 200

RUN DATE: Mar 1, 2005
RUN TIME: 10:14 am
RUN USER: LABBKGJOB

Russell Med Center Laboratory · IVE**
3316 Highway 280
Alexander City, AL 35010
NEW RESULTS REPORT

PAGE 1

| PATIENT: DAUGHERTY, CAROL J. | ACCT #: V011529203 | LOC: ERCLINIC | U #: M0011802 |
| --- | --- | --- | --- |
| | AGE/SEX: 54/F | ROOM: | REG: 03/01/05 |
| REG DR: Hamo,Wael | STATUS: REG ER | BED: | DIS: |

SPEC #: 0301:C00088S    COLL: 03/01/05-0930    STATUS: RES    REQ #: 00632297
                        RECD: 03/01/05-0930    SUBM DR: Hamo,Wael

ENTERED: 03/01/05-0923                          OTHR DR:
ORDERED: CSF ANALYSIS, IgG INDEX, CSF, MYELIN BAS PROT, OLIGOCLONAL, CRYP AG CSF,
         VDRL (CSF)

| Test | Result | Flag | Reference |
| --- | --- | --- | --- |
| | **** HEMATOLOGY **** | | |
| | ** BODY FLUID ANALYSIS ** | | |
| CC/DIFF CSF | | | |
| COLOR | COLORLESS | | |
| APPEARANCE | CLEAR | | |
| WBC | 2 | | /mm3 |
| RBC | 10 | | /mm3 |

SPEC #: 0301:H00040S    COLL: 03/01/05-0930    STATUS: CAN    REQ #: 00632297
                        RECD: 03/01/05-0930    SUBM DR: Hamo,Wael

ENTERED: 03/01/05-0923                          OTHR DR:
ORDERED: CC/DIFF CSF

| Test | Result | Flag | Reference |
| --- | --- | --- | --- |
| ** CANCELLED ** | | | |
| *NOT ON PHYSICIAN'S ORDERS* | | | |

| Patient: DAUGHERTY, CAROL J. | Age/Sex: 54/F | Acct#V011529203 | Unit#M0011802 |
| --- | --- | --- | --- |

AR 201

```
RUN DATE: Mar 1, 2005             Russell Med Center Laboratory    .IVE**        PAGE 1
RUN TIME: 10:03 am                      3316 Highway 280
RUN USER: LABBKGJOB                  Alexander City, AL  35010
                                     NEW RESULTS REPORT
```

| | |
|---|---|
| PATIENT: DAUGHERTY, CAROL J. | ACCT #: V011529203    LOC: ERCLINIC    U #: M0011802 |
| | AGE/SX: 54/F    ROOM:    REG: 03/01/05 |
| REG DR: Hamo, Wael | STATUS: REG ER    PED:    DIS: |

```
SPEC #: 0301:C00088S      COLL: 03/01/05-0930    STATUS:  RES         REQ #: 00632297
                          RECD: 03/01/05-0930    SUBM DR: Hamo, Wael

ENTERED:  03/01/05-0923                          OTHR DR:
ORDERED:  CSF ANALYSIS, IgG INDEX, CSF, MYELIN BAS PROT, OLIGOCLONAL, CRYP AG CSF,
          VDRL (CSF)
```

| Test | Result | Flag | Reference |
|---|---|---|---|
| | **** HEMATOLOGY **** | | |
| | ** BODY FLUID ANALYSIS ** | | |
| *CC/DIFF CSF* | | | |
| COLOR | PENDING | | |
| APPEARANCE | PENDING | | |
| WBC | PENDING | | |
| RBC | PENDING | | |
| NEUTROPHILS | PENDING | | |
| LYMPHOCYTES | PENDING | | |
| MONOCYTES | PENDING | | |
| CSF GLUCOSE | 61 | | 45-75 mg/dL |
| MY BAS PROT CSF | PENDING | | |
| *OLIGOCLONAL(@a)* | | | |
| OLIGO BANDS, CSF | PENDING | | |
| CSFPROTEIN | 24 | | 15-45 mg/dL |
| CRYPTO AG, CSF | PENDING | | |
| VDRL, CSF | PENDING | | |
| | **** LabCorp **** | | |
| IgG INDEX, CSF | PENDING | | |
| MY BAS PROT CSF | PENDING | | |
| *OLIGOCLONAL(@a)* | | | |
| OLIGO BANDS, CSF | PENDING | | |
| CSFPROTEIN | 24 | | 15-45 mg/dL |

(@a) LABCORP

| | | |
|---|---|---|
| Patient: DAUGHERTY, CAROL J. | Age/Sex: 54/F    Acct#V011529203    Unit#M0011802 |

```
RUN DATE: Mar 1, 2005          Russell Med Center Laboratory * **VE**          PAGE 1
RUN TIME: 1:28 pm                        3316 Highway 280
RUN.USER: LABBKGJOB                   Alexander City, AL  35010
                                        NEW RESULTS REPORT
```

```
PATIENT: DAUGHERTY, CAROL J.        ACCT #: V011529203    LOC:  ERCLINIC    U #: M0011802
                                    AGE/SX: 54/F          ROOM:             REG: 03/01/05
REG DR:  Hamo, Wael                 STATUS: DEP ER        BED:              DIS:
```

```
Specimen: 05:M0001220S     COMP    Collected: 03/01/05-0930    Received:   03/01/05-0930
                                   Source:    CSF             Sp Descrip:
```

| Procedure | Result |
| --- | --- |
| **GRAM STAIN** Final | |
| RESULT | NO ORGANISMS SEEN |
| **INDIA INK** Final | |
| INDIA INK | NEGATIVE |

RUN DATE: Nov 4, 2004                    Russell Med Center Laboratory **LIVE**                    PAGE 1
RUN TIME: 9:47 am                                3316 Highway 280
RUN USER: LABBKGJOB                          Alexander City, AL  35010
                                                 NEW RESULTS REPORT

| PATIENT: DAUGHERTY, CAROL J. | ACCT #: V011232907 | LOC:  LAB | U #: M0011802 |
|---|---|---|---|
| | AGE/SX: 53/F | ROOM: | REG: 11/01/04 |
| REG DR: Hamo, Wael | STATUS: REG CLI | BED: | DIS: |

---

SPEC #: 1101:C00171R      COLL: 11/01/04-1127      STATUS:  COMP          REQ #: 00594933
                          RECD: 11/01/04-1127      SUBM DR: Hamo, Wael

ENTERED:  11/01/04-1129                            OTHR DR:
ORDERED:  CHEM14, CK, B12, FOLATE, T UPTAKE, T4, FTI, TSH

| Test | Result | Flag | Reference |
|---|---|---|---|
| | <No reportable results> | | |

---

SPEC #: 1101:H00057R      COLL: 11/01/04-1127      STATUS:  COMP          REQ #: 00594933
                          RECD: 11/01/04-1127      SUBM DR: Hamo, Wael

ENTERED:  11/01/04-1129                            OTHR DR:
ORDERED:  CBC & DIFF

| Test | Result | Flag | Reference |
|---|---|---|---|
| | <No reportable results> | | |

---

SPEC #: 1101:R00011R      COLL: 11/01/04-1127      STATUS:  COMP          REQ #: 00594933
                          RECD: 11/01/04-1127      SUBM DR: Hamo, Wael

ENTERED:  11/01/04-1129                            OTHR DR:
ORDERED:  ACETYL RECEP AB, ALDOLASE

| Test | Result | Flag | Reference |
|---|---|---|---|
| ACETYL RECPT AB | < 0.03(@a) | | 0-0.40 nMol/L |

********** *   FOR RESEARCH USE ONLY   **************
*TEST DEVELOPED BY LABORATORY MEDICINE, MAYO CLINIC.*
*IT HAS NOT BEEN APPROVED BY US FOOD & DRUG ADM.*

*TEST PERFORMED BY: MAYO MEDICAL LABORATORIES*

(@a) LABCORP

---

| Patient: DAUGHERTY, CAROL J. | Age/Sex: 53/F | Acct#V011232907 | Unit#M0011802 |
|---|---|---|---|

```
RUN DATE: Nov 3, 2004          Russell Med Center Laboratory **LIVE**          PAGE 1
RUN TIME: 7:13 am                        3316 Highway 280
RUN USER: LABBKGJOB                  Alexander City, AL  35010
                                        NEW RESULTS REPORT
```

| PATIENT: DAUGHERTY, CAROL J. | ACCT #: V011232907 | LOC: LAB | U #: M0011802 |
|---|---|---|---|
| | AGE/SX: 53/F | ROOM: | REG: 11/01/04 |
| REG DR: Hamo, Wael | STATUS: REG CLI | BED: | DIS: |

```
SPEC #: 1101:C00171R    COLL: 11/01/04-1127    STATUS:  COMP        REQ #: 00594933
                        RECD: 11/01/04-1127    SUBM DR: Hamo,Wael

ENTERED:   11/01/04-1129                       OTHR DR:
ORDERED:   CHEM14, CK, B12, FOLATE, T UPTAKE, T4, FTI, TSH
```

| Test | Result | Flag | Reference |
|---|---|---|---|
| | <No reportable results> | | |

```
SPEC #: 1101:H00057R    COLL: 11/01/04-1127    STATUS:  COMP        REQ #: 00594933
                        RECD: 11/01/04-1127    SUBM DR: Hamo,Wael

ENTERED:   11/01/04-1129                       OTHR DR:
ORDERED:   CBC & DIFF
```

| Test | Result | Flag | Reference |
|---|---|---|---|
| | <No reportable results> | | |

```
SPEC #: 1101:R00011R    COLL: 11/01/04-1127    STATUS:  RES         REQ #: 00594933
                        RECD: 11/01/04-1127    SUBM DR: Hamo,Wael

ENTERED:   11/01/04-1129                       OTHR DR:
ORDERED:   ACETYL RECEP AB, ALDOLASE
```

| Test | Result | Flag | Reference |
|---|---|---|---|
| | **** LabCorp **** | | |
| ALDOLASE | 3.7(@a) | | 1.2-7.6 U/L |

```
(@a) LABCORP
```

| Patient: DAUGHERTY, CAROL J. | Age/Sex: 53/F | Acct#V011232907 | Unit#M0011802 |
|---|---|---|---|

RUN DATE: Nov 1, 2004                    Russell Med Center Laboratory **LIVE**                    PAGE 1
RUN TIME: 1:23 pm                              3316 Highway 280
RUN.USER: LABBKGJOB                        Alexander City, AL  35010
                                              NEW RESULTS REPORT

| PATIENT: DAUGHERTY, CAROL J. | ACCT #: V011232907 | LOC: LAB | U #: M0011802 |
| --- | --- | --- | --- |
| | AGE/SX: 53/F | ROOM: | REG: 11/01/04 |
| REG DR: Hamo, Wael | STATUS: REG CLI | BED: | DIS: |

SPEC #: 1101:C00171R        COLL: 11/01/04-1127     STATUS:  COMP          REQ #: 00594933
                           RECD: 11/01/04-1127     SUBM DR: Hamo, Wael

ENTERED:   11/01/04-1129                           OTHR DR:
ORDERED:   CHEM14, CK, B12, FOLATE, T UPTAKE, T4, FTI, TSH

| Test | Result | | Flag | Reference |
| --- | --- | --- | --- | --- |
| | **** CHEMISTRY **** | | | |
| T UPTAKE | 36.1 | | | 32.0-48.4 % |
| | **** NEW REFERENCE RANGE **** | | | |
| T4,TOTAL | 5.60 | | L | 6.09-12.23 ug/dL |
| FTI | 2.0 | | | 1.5-3.5 ug/dl |
| TSH | 1.24 | | | 0.34-5.6 mIU/mL |
| VITAMIN B12 | 606 | | | 180-914 pg/mL |
| | **** NEW REFERENCE RANGE **** | | | |
| FOLATE | 12.0 | | | >3.0 ng/mL |
| | **** NEW REFERENCE RANGE **** | | | |

SPEC #: 1101:H00057R        COLL: 11/01/04-1127     STATUS:  COMP          REQ #: 00594933
                           RECD: 11/01/04-1127     SUBM DR: Hamo, Wael

ENTERED:   11/01/04-1129                           OTHR DR:
ORDERED:   CBC & DIFF

| Test | Result | Flag | Reference |
| --- | --- | --- | --- |
| | <No reportable results> | | |

SPEC #: 1101:R00011R        COLL: 11/01/04-1127     STATUS:  RECD          REQ #: 00594933
                           RECD: 11/01/04-1127     SUBM DR: Hamo, Wael

ENTERED:   11/01/04-1129                           OTHR DR:
ORDERED:   ACETYL RECEP AB, ALDOLASE

| Test | Result | Flag | Reference |
| --- | --- | --- | --- |
| | <All results are pending> | | |

*Fax to Pri—ry MD*

| Patient: DAUGHERTY, CAROL J. | Age/Sex: 53/F | Acct#V011232907 | Unit#M0011802 |
| --- | --- | --- | --- |

AR 206

```
RUN DATE: Nov 1, 2004          Russell Med Center Laboratory **LIVE**          PAGE 1
RUN TIME: 12:09 pm                      3316 Highway 280
RUN USER: LABBKGJOB                 Alexander City, AL  35010
                                       NEW RESULTS REPORT
```

| PATIENT: DAUGHERTY, CAROL J | ACCT #: V011232907 | LOC: LAB | U #: M0011802 |
|---|---|---|---|
| | AGE/SX: 53/F | ROOM: | REG: 11/01/04 |
| REG DR: Hamo, Wael | STATUS: REG CLI | BED: | DIS: |

```
SPEC #: 1101:C00171R      COLL: 11/01/04-1127    STATUS:  RECD      REQ #: 00594933
                          RECD: 11/01/04-1127    SUBM DR: Hamo, Wael

ENTERED:  11/01/04-1129                          OTHR DR:
ORDERED:  CHEM14, CK, B12, FOLATE, T UPTAKE, T4, FTI, TSH
```

| Test | | Result | Flag | Reference |
|---|---|---|---|---|
| CHEM14 | PENDING | | | |
| CK | PENDING | | | |
| B12 | PENDING | | | |
| FOLATE | PENDING | | | |
| T UPTAKE | PENDING | | | |
| T4 | PENDING | | | |
| FTI | PENDING | | | |
| TSH | PENDING | | | |

```
SPEC #: 1101:H00057R      COLL: 11/01/04-1127    STATUS:  COMP      REQ #: 00594933
                          RECD: 11/01/04-1127    SUBM DR: Hamo, Wael

ENTERED:  11/01/04-1129                          OTHR DR:
ORDERED:  CBC & DIFF
```

| Test | | Result | Flag | Reference |
|---|---|---|---|---|

**** HEMATOLOGY ****

| Test | Result | Reference |
|---|---|---|
| *CBC & DIFF* | | |
| WBC | 6.1 | 4.3-11.0 K/CMM |
| RBC | 4.71 | 4.2-5.4 M/CMM |
| HGB | 13.7 | 12.0-16.0 gm/L |
| HCT | 39.3 | 38-47 % |
| MCV | 83.4 | 74-102 fl |
| MCH | 29.0 | 26-33 pg |
| MCHC | 34.8 | 31-36 % |
| PLATELET COUNT | 274 | 150-375 K/CMM |
| RDW-CV | 13.9 | % |
| MPV | 8.1 | fl |
| GRANULOCYTES | 58.0 | 37.0-80.0 % |
| LYMPHOCYTE | 28.8 | 15.0-55.0 % |
| MONOCYTES | 9.9 | 0.0-15.0 % |
| EOSINOPHIL | 2.6 | 0.0-7.0 % |
| BASOPHIL | 0.7 | 0-3.0 % |
| GRANULOCYTE # | 3.5 | 1.5-7.0 |
| LYMPHOCYTE # | 1.8 | 1.0-4.8 /UL |
| MONOCYTE # | 0.6 | 0.0-0.7 /UL |
| EOSINOPHIL # | 0.2 | /UL |
| BASOPHIL # | 0.00 | /UL |

AR 207

RUN DATE: Nov 1, 2004
RUN TIME: 12:09 pm
RUN USER: LABBKGJOB

Russell Med Center Laboratory **LIVE**
3316 Highway 280
Alexander City, AL  35010
NEW RESULTS REPORT

PAGE 3

| Patient: DAUGHERTY, CAROL J. | #V011232907 | (Continued) |
|---|---|---|

SPEC #: 1101:R00011R      COLL: 11/01/04-1127      STATUS:   RECD          REQ #: 00594933
                          RECD: 11/01/04-1127      SUBM DR: Hamo,Wael

ENTERED:  11/01/04-1129                            OTHR DR:
ORDERED:  ACETYL RECEP AB, ALDOLASE

| Test | Result | Flag | Reference |
|---|---|---|---|
| ACETYL RECEP AB | PENDING | | |
| ALDOLASE | PENDING | | |

| Patient: DAUGHERTY, CAROL J. | Age/Sex: 53/F | Acct#V011232907 | Unit#M0011802 |
|---|---|---|---|

RUN DATE: Nov 1, 2004          Russell Med Center Laboratory **LIVE**          PAGE 1
RUN TIME: 12:25 pm                      3316 Highway 280
RUN USER: LABBKGJOB                Alexander City, AL  35010
                                   NEW RESULTS REPORT

| PATIENT: DAUGHERTY, CAROL J. | ACCT #: V011232907 | LOC: LAB | U #: M0011802 |
|---|---|---|---|
| | AGE/SX: 53/F | ROOM: | REG: 11/01/04 |
| REG DR: Hamo, Wael | STATUS: REG CLI | BED: | DIS: |

SPEC #: 1101:C00171R     COLL: 11/01/04-1127     STATUS: RES       REQ #: 00594933
                         RECD: 11/01/04-1127     SUBM DR: Hamo, Wael

ENTERED:  11/01/04-1129                          OTHR DR:
ORDERED:  CHEM14, CK, B12, FOLATE, T UPTAKE, T4, FTI, TSH

| Test | Result | Flag | Reference |
|---|---|---|---|

**** CHEMISTRY ****

| CHEM14 | | | |
|---|---|---|---|
| NA | 142 | | 137-147 mEq/L |
| K | 4.4 | | 3.5-5.0 mEq/L |
| CHLORIDE | 108 | | 99.0-113 mEq/L |
| CO2 | 28 | | 22-31 mEq/L |
| GLUCOSE | 97 | | 65-120 mg/dL |
| BUN | 16.0 | | 9.0-20 mg/dL |
| CREATININE | 1.2 | H | 0.4-1.0 mg/dL |
| BUN/CREAT RATIO | 13.3 | | 10.0-14.0 |
| CALCIUM | 9.0 | | 8.9-10.3 mg/dL |
| TOTAL PROTEIN | 6.1 | | 6.1-7.9 g/dL |
| ALB | 3.8 | | 3.5-4.8 g/dL |
| ALB/GLOB RATIO | 1.7 | | |
| BILI, TOTAL | 0.6 | | 0.2-1.3 mg/dL |
| AST | 22 | | 15-41 U/L |
| ALT | 24 | | 14-54 U/L |
| ALK PHOSPHATASE | 79 | | 38.0-126 IU/L |
| CPK | 96 | | 30-289 U/L |

SPEC #: 1101:H00057R     COLL: 11/01/04-1127     STATUS: COMP      REQ #: 00594933
                         RECD: 11/01/04-1127     SUBM DR: Hamo, Wael

ENTERED:  11/01/04-1129                          OTHR DR:
ORDERED:  CBC & DIFF

| Test | Result | Flag | Reference |
|---|---|---|---|

&lt;No reportable results&gt;

| Patient: DAUGHERTY, CAROL J. | Age/Sex: 53/F | Acct#V011232907 | Unit#M0011802 |
|---|---|---|---|

AR 209

**RUSSELL**
**Medical Center**
P.O. Box 939
Alexander City, Alabama 35010

**Transcription Report**

Name: DAU  ERTY,CAROL J.
Phys: Hamo,Wael
DOB: 02/09/1951 Age: 54        Sex: F
Acct: V011516382 Loc: RAD
Exam Date: 03/02/2005 Status: REG CLI
Radiology No: 00021524
Unit No: M0011802

Wael Hamo
Medical Arts Building
Suite 2
Alexander City, Al 35010

(256)215-4049

| EXAM# | TYPE/EXAM | RESULT |
|---|---|---|
| 000528744 | US/DOPPLER CAROTID U/S | |

DAUGHERTY, CAROL J.

*CAROTID DOPPLER ULTRASOUND 3-2-05:*

CLINICAL INDICATION: Syncope.

TECHNIQUE: Real time ultrasound was performed of the common, internal, and external carotid arteries utilizing spectral and color Doppler techniques.

FINDINGS:
RIGHT CAROTID ARTERY: No significant plaque can be seen in the right carotid system. The peak systolic and end diastolic velocities of the ICA measure 0.79 and 0.26 meters/sec, respectively. The internal to common carotid ratio is 0.79.

LEFT CAROTID ARTERY: No significant plaque is seen in the left carotid system. The peak systolic and end diastolic velocities of the ICA measure 0.91 and 0.43 meters/sec, respectively. The internal to common carotid ratio is 0.92.

Both vertebral arteries are visualized and demonstrate antegrade flow.

PAGE 1                    Wael Hamo                        (CONTINUED)

AR 210

**RUSSELL**
Medical Center
P.O. Box 939
Alexander City, Alabama 35010

**Transcription Report**

Name: DAUGHERTY, CAROL J.
Phys: Hamo, Wael
DOB: 02/09/1951 Age: 54      Sex: F
Acct: V011516382 Loc: RAD
Exam Date: 03/02/2005 Status: REG CLI
Radiology No: 00021524
Unit No: M0011802

| EXAM# | TYPE/EXAM | RESULT |
|-------|-----------|--------|
| 000528744 | US/DOPPLER CAROTID U/S | |

      &lt;Continued&gt;

*IMPRESSION:*
*No significant flow limiting stenosis.*

               ** REPORT SIGNATURE ON FILE 03/05/2005 **
               Reported And Signed By: KENNETH (JAKE) BURTON, MD

CC: Wael Hamo

Technologist: DEAN, KRISTINA RT (R)
Transcribed Date/Time: 03/04/2005 (1855)
Transcriptionist: RAD.JCS
Printed Date/Time: 03/05/2005 (1437)

PAGE 2               Wael Hamo

AR 211

**RUSSELL**
**Medical Center**
P.O. Box 939
Alexander City, Alabama 35010

**Transcription Report**

```
Name: DAUC    Y,CAROL J.
Phys: Hamc  Wael
DOB: 02/09/1951 Age: 54        Sex: F
Acct: V011470143 Loc: RAD
Exam Date: 02/15/2005 Status: REG CLI
Radiology No: 00021524
Unit No: M0011802
```

Wael Hamo
Medical Arts Building
Suite 2
Alexander City, Al 35010

(256)215-4049

| EXAM# | TYPE/EXAM | RESULT |
|---|---|---|
| 000526213 | MRI/MRI BRAIN WITHOUT CONTRAST | |

DAUGHERTY, CAROL
HISTORY: 54 year old with headaches, altered mental status.
Additional history obtained by the technologists is of headaches for
two years with a fall down the stairs in 11-04. The patient complains
of imbalance, of pain at the base of the skull and neck pain as well
as bilateral shoulder pain. Right sided hearing loss and increased
memory loss.
*MRI SCAN OF THE BRAIN 2-15-05:*
No prior studies. No correlating CT. Routine RMC pulse sequences and
planes submitted. These include diffusion-weighted axial images.

Tiny areas of encephalomalacia are suggested in the inferior aspect of
the cerebral peduncles bilaterally. The brain stem, cerebellum, and
cerebrum are otherwise unremarkable. There is no evidence of acute
stroke. The area of the sella and foramen magnum, the region of the
7th/8th nerve complexes and the mastoid air cells, the sinuses and
orbits as seen are normal.
*IMPRESSION:*

1. *Minimal symmetrical areas of encephalomalacia which are tiny
   involving inferior aspect of the cerebral peduncle bilaterally.*
2. *Normal study otherwise.*


          ** REPORT SIGNATURE ON FILE 02/17/2005 **
          Reported By: LOUISE R. GEARY, MD
          Signed By:   GEARY,LOUISE MD

CC: Wael Hamo

Technologist: JOSHUA W. TUCKER, RT (R) (MR)
Transcribed Date/Time: 02/16/2005 (1321)
Transcriptionist: RAD.JCS
Printed Date/Time: 02/17/2005 (0839)

PAGE 1                    Wael Hamo

? Spinal tap.
- carotid doppler
- ASA.  CVA
       7802

AR 212

RUN DATE: Mar 7, 2005
RUN TIME: 8:54 am
RUN USER: LABBKGJOB

Russell Med Center Laboratory  *LIVE**
3316 Highway 280
Alexander City, AL  35010
NEW RESULTS REPORT

PAGE 1

| PATIENT: DAUGHERTY, CAROL J. | ACCT #: V011529203 | LOC: ERCLINIC | U #: M0011802 |
| | AGE/SX: 54/F | ROOM: | REG: 03/01/05 |
| REG DR: Hamo, Wael | STATUS: DEP ER | BED: | DIS: |

---

**SPEC #: 0301:C00088S**     COLL: 03/01/05-0930     STATUS: RES          REQ #: 00632297
                            RECD: 03/01/05-0930     SUBM DR: Hamo, Wael

ENTERED:  03/01/05-0923                          OTHR DR:
ORDERED:  CSF ANALYSIS, IgG INDEX, CSF, MYELIN BAS PROT, OLIGOCLONAL, CRYP AG CSF,
          VDRL (CSF)

| Test | Result | Flag | Reference |
|------|--------|------|-----------|

**** HEMATOLOGY ****

** BODY FLUID ANALYSIS **

MY BAS PROT CSF                0.2(@a)                    0.0-2.2 ng/mL
OLIGOCLONAL(@a)
   OLIGO BANDS, CSF            NEG
                   CSF is negative for oligoclonal bands.

                        **** LabCorp ****

MY BAS PROT CSF                0.2(@a)                    0.0-2.2 ng/mL
OLIGOCLONAL(@a)
   OLIGO BANDS, CSF            NEG
                   CSF is negative for oligoclonal bands.

---

**SPEC #: 0301:H00040S**     COLL: 03/01/05-0930     STATUS: CAN          REQ #: 00632297
                            RECD: 03/01/05-0930     SUBM DR: Hamo, Wael

ENTERED:  03/01/05-0923                          OTHR DR:
ORDERED:  CC/DIFF CSF

| Test | Result | Flag | Reference |
|------|--------|------|-----------|

** CANCELLED **
                   NOT ON PHYSICIAN'S ORDERS

(@a) LABCORP

| Patient: DAUGHERTY, CAROL J. | Age/Sex: 54/F | Acct#V011529203 | Unit#M0011802 |

**AR 213**

```
RUN DATE: Mar 4, 2005          Russell Med Center Laboratory  **LIVE**          PAGE 1
RUN TIME: 3:32 pm                      3316 Highway 280
RUN.USER: LABBKGJOB               Alexander City, AL  35010
                                    NEW RESULTS REPORT
```

| | | | |
|---|---|---|---|
| PATIENT: DAUGHERTY, CAROL J. | ACCT #: V011529203 | LOC: ERCLINIC | U #: M0011802 |
| | AGE/SX: 54/F | ROOM: | REG: 03/01/05 |
| REG DR: Hamo, Wael | STATUS: DEP ER | BED: | DIS: |

```
SPEC #: 0301:C00088S        COLL: 03/01/05-0930    STATUS: RES
                            RECD: 03/01/05-0930    SUBM DR: Hamo, Wael       REQ #: 00632297

ENTERED: 03/01/05-0923
ORDERED: CSF ANALYSIS, IgG INDEX, CSF, MYELIN BAS PROT, OLIGOCLONAL, CRYP AG CSF,     OTHR DR:
         VDRL (CSF)
```

| Test | Result | Flag | Reference |
|---|---|---|---|

**** HEMATOLOGY ****

** BODY FLUID ANALYSIS **

OLIGOCLONAL(@a)
  OLIGO BANDS, CSF
     *CSF is negative for oligoclonal bands.*

CRYPTO AG, CSF    Negative(@a)        Negative
*Performed At: MB*
*LabCorp Birmingham*
*1801 First Avenue South*
*Birmingham, AL 352330000*
*Performed At: BN*
*LabCorp Burlington*
*1447 York Court*
*Burlington, NC 272152230*

VDRL, CSF    Non Reactive(@a)        Non Rea:<1:1

**** LabCorp ****

OLIGOCLONAL(@a)
  OLIGO BANDS, CSF
     *CSF is negative for oligoclonal bands.*

```
SPEC #: 0301:H00040S        COLL: 03/01/05-0930    STATUS: CAN
                            RECD: 03/01/05-0930    SUBM DR: Hamo, Wael       REQ #: 00632297

ENTERED: 03/01/05-0923
ORDERED: CC/DIFF CSF                                OTHR DR:
```

| Test | Result | Flag | Reference |
|---|---|---|---|

** CANCELLED **

*NOT ON PHYSICIAN'S ORDERS*

(@a) LABCORP

| | | | |
|---|---|---|---|
| Patient: DAUGHERTY, CAROL J. | Age/Sex: 54/F | Acct#V011529203 | Unit#M0011802 |

AR 214

RUN DATE: Mar 4, 2005
RUN TIME: 8:20 am
RUN USER: LABBKGJOB

Russell Med Center Laboratory   **LIVE**
3316 Highway 280
Alexander City, AL  35010
NEW RESULTS REPORT

PAGE 2

Patient: DAUGHERTY, CAROL J.          #V011529203        (Continued)

Specimen: 0301:R00009R       Collected: 03/01/05-0930              (Continued)

| Test | Result | Flag | Reference |
|---|---|---|---|
| | **** LabCorp **** | | |
| ALB/GLOB RATIO | 1.4 | | 0.7-2.0 |
| NOTE | | | |

Protein electrophoresis scan will follow via mail or courier.

INTERPRETATION

The SPE pattern appears essentially unremarkable. Evidence of monoclonal protein is not apparent.
Performed At: MB
LabCorp Birmingham
1801 First Avenue South
Birmingham, AL 352330000

| | | | |
|---|---|---|---|
| M SPIKE | Not Observed | | Not Observed |

Patient: DAUGHERTY, CAROL J.       Age/Sex: 54/F     Acct#V011529203    Unit#M0011802

AR 215

RUN DATE: Mar 4, 2005
RUN TIME: 8:20 am
RUN USER: LABBKGJOB

Russell Med Center Laboratory  *LIVE**
3316 Highway 280
Alexander City, AL  35010
NEW RESULTS REPORT

PAGE 1

| PATIENT: DAUGHERTY, CAROL J. | ACCT #: V011529203 | LOC:  BRCLINIC | U #: M0011802 |
|---|---|---|---|
| | AGE/SX: 54/F | ROOM: | REG: 03/01/05 |
| REG DR: Hamo, Wael | STATUS: DEP ER | BED: | DIS: |

SPEC #: 0301:C00086R    COLL: 03/01/05-0930    STATUS:  COMP    REQ #: 00632293
                        RECD: 03/01/05-0930    SUBM DR: Hamo,Wael

ENTERED:  03/01/05-0918
ORDERED:  LIPID PROF                           OTHR DR:

| Test | Result | Flag | Reference |
|---|---|---|---|

<No reportable results>

---

SPEC #: 0301:R00009R    COLL: 03/01/05-0930    STATUS:  COMP    REQ #: 00632293
                        RECD: 03/01/05-0930    SUBM DR: Hamo,Wael

ENTERED:  03/01/05-0918
ORDERED:  PROT ELEC SERUM                      OTHR DR:

| Test | Result | Flag | Reference |
|---|---|---|---|

**** CHEMISTRY ****

| | | | |
|---|---|---|---|
| GLOBULIN, TOTAL | 2.7(@a) | | 2.0-4.5 g/dL |
| PROT ELEC SERUM(@a) | | | |
| TOTAL PROTEIN | 6.5 | | 6.0-8.5 g/dL |
| ALBUMIN | 3.8 | | 3.2-5.6 g/dL |
| ALPHA-1-GLOB | 0.2 | | 0.1-0.4 g/dL |
| ALPHA-2-GLOB | 0.6 | | 0.4-1.2 g/dL |
| BETA GLOBULIN | 1.0 | | 0.6-1.3 g/dL |
| GAMMA GLOB | 0.8 | | 0.5-1.6 g/dL |
| ALB/GLOB RATIO | 1.4 | | 0.7-2.0 |
| INTERPRETATION | | | |

*The SPE pattern appears essentially unremarkable. Evidence
of monoclonal protein is not apparent.*
Performed At: MB
LabCorp Birmingham
1801 First Avenue South
Birmingham, AL 352330000

M SPIKE              Not Observed                    Not Observed

**** LabCorp ****

| | | | |
|---|---|---|---|
| PROT ELEC SERUM(@a) | | | |
| TOTAL PROTEIN | 6.5 | | |
| ALBUMIN | 3.8 | | 6.0-8.5 g/dL |
| ALPHA-1-GLOB | 0.2 | | 3.2-5.6 g/dL |
| ALPHA-2-GLOB | 0.6 | | 0.1-0.4 g/dL |
| BETA GLOBULIN | 1.0 | | 0.4-1.2 g/dL |
| GAMMA GLOB | 0.8 | | 0.6-1.3 g/dL |
| | | | 0.5-1.6 g/dL |

(@a) LABCORP

| Patient: DAUGHERTY, CAROL J. | Age/Sex: 54/F | Acct#V011529203 | Unit#M0011802 |
|---|---|---|---|

AR 216

**HAMO NEUROLOGY**
Wael Hamo, M.D.  Neurology Board Certified
209 West Spring Street - Suite 304
Sylacauga, AL 35150
(256) 249-0091

## ELECTROMYOGRAPHY STUDY REPORT

| | |
|---|---|
| **PATIENT:** | CAROL DAUGHERTY |
| **DATE OF BIRTH:** | 02/09/51 |
| **DATE OF TEST:** | 10/19/04 |
| **REF. PHYSICIAN:** | Edward Hill, M.D. |
| **CLINICAL QUESTION:** | EMG - right upper extremity.  Entrapment neuropathy of upper extremity.<br>EMG - right lower extremity.  Low back pain - lumbosacral radiculopathy. |

**NCV FINDINGS:**
1. Motor NCS of right median nerve including F-wave study was WNL except for delayed distal latency of CMAP of right median nerve.
2. Motor NCS of right ulnar nerve including F-wave study was WNL.
3. Transcarpal sensory NCS of right ulnar nerve was WNL.
4. Delayed latency and decreased amplitude of SNAP of both right and left median nerve on transcarpal sensory NCS, more prominent on the right side as compared to the left side.
5. Sensory NCS of right sural nerve was WNL.
6. Motor NCS of right peroneal nerve including F-wave study was WNL.
7. Motor NCS of right posterior tibial nerve including F-wave study was WNL.

**EMG FINDINGS:**
1. Moderate chronic changes of deinnervation with moderately decreased recruitment with mild fibrillation and positive wave activity seen in the right APB muscle.
2. Needle exam of other examined muscles of right upper extremity was WNL.
3. Mild chronic changes of deinnervation with mildly decreased recruitment with mild fibrillation and positive wave activity seen in the right med. gas., and right biceps femoris muscles.
4. Needle exam of other examined muscles of right lower extremity was WNL.

**INTERPRETATION:**
This EMG is abnormal due to the presence of:
1. Moderate chronic, mildly active right median nerve entrapment neuropathy at the wrist consistent with moderate right CTS.
2. Mild left median nerve entrapment neuropathy at the wrist consistent with mild left CTS.
3. There is no evidence of right ulnar neuropathy depending on this study.
4. There is no evidence of right cervical radiculopathy depending on this study.
5. Mild chronic, mildly active right S1 sacral radiculopathy.

AR 217

October 19, 2004
Page 2
EMG - Carol Daugherty


6. No evidence of right peroneal or right sciatic neuropathy depending on this study.
7. No evidence of motor or sensory peripheral neuropathy depending on this study.


WAEL HAMO, M.D.
WH/gsb

## HAMO NEUROLOGY CLINIC
### Wael Hamo, M.D. - Neurology Board Certified

209 West Spring Street - Suite 304
Sylacauga, AL 35150
Tel: (205) 249-0091
Fax: (205) 249-0024

125 Alison Drive - Suite 2
Alexander City, AL 35010
Tel: (205) 215-4049
Fax: (205) 234-4154

Patient: _Carol Daugherty_ Date: _10-19-04_ DOB: _2.9.51_

Referring Physician _Hill_ Clinical Question: _____

## NERVE CONDUCTION STUDIES
## UPPER EXTREMITIES

| Nerve Motor | St. Site | Ampl (m.v) | Lat. (msec.) | Dist. (c.m) | Cond. Vel. (m/sec) | Fwave Lat. m.s | Dist. c.m | Comments |
|---|---|---|---|---|---|---|---|---|
| Median R | W | 7.2 | 4.8 | 6 | 48 | 29 | | |
| | E | 6.2 | 3.0 | 20 | | | | |
| Median L | | | | | | | | |
| | | | | | | | | |
| Ulnar R | W | 8.8 | 2.8 | 8 | 83 | 26 | | |
| | E | 8.8 | 6.4 | 30 | | | | |
| Ulnar L | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| Sensory | | (u.v) | (m. sec) | (c.m) | (m/sec) | | | |
| Median R | | 22 | 3.0 | 8 | | | | |
| | | | | | | | | |
| Median L | | 37 | 2.3 | 8 | | | | |
| | | | | | | | | |
| Ulnar R | | 36 | 1.8 | 8 | | | | |
| | | | | | | | | |
| Ulnar L | | | | | | | | |
| | | | | | | | | |
| Radial R | | | | | | | | |
| | | | | | | | | |
| Radial L | | | | | | | | |

AR 219

## HAMO NEUROLOGY CLINIC
### Wael Hamo, M.D. - Neurology Board Certified

209 West Spring Street - Suite 304
Sylacauga, AL 35150
Tel: (205) 249-0091
Fax: (205) 249-0024

125 Alison Drive - Suite 2
Alexander City, AL 35010
Tel: (205) 215-4049
Fax: (205) 234-4154

Patient: _Carol Daugherty_  Date: _10-19-04_  DOB: _2-9-51_

Referring Physician: _Hill_  Clinical Question: _____

## NERVE CONDUCTION STUDIES
## LOWER EXTREMITIES

| Nerve Motor | Site | Ampl. (m.v) | Lat. (m.sec) | Dist. (c.m) | Cond. Vel. (m/sec) | F-wave Lat (m.s) | Dist. (c.m) | Comments |
|---|---|---|---|---|---|---|---|---|
| Peroneal R | A | 7.1 | 4.1 | 8 | 56 | 46 | | |
| | K | 6.9 | 10.7 | 37 | | | | |
| Peroneal L | | | | | | | | |
| | | | | | | | | |
| Post. Tib. R | A | 8.5 | 4.8 | 10 | 49 | 50 | | |
| | K | 6.4 | 13.0 | 40 | | | | |
| Post. Tib. L | | | | | | | | |
| | | | | | | | | |
| Sensory | | (u.v) | (m.sec) | (c.m) | (m.sec) | | | |
| Sural R | | 41 | 3.0 | 14 | | | | |
| Sural L | | | | | | | | |

AR 220

# HAMO NEUROLOGY CLINIC
## Wael Hamo, M.D. - Neurology Board Certified

209 West Spring Street - Suite 304
Sylacauga, AL 35150
Tel: (205) 249-0091
Fax: (205) 249-0024

125 Alison Drive - Suite 2
Alexander City, AL 35010
Tel: (205) 215-4049
Fax: (205) 234-4154

=========================================================

Patient: _Carol Daugherty_ Date: _10-19-04_ DOB: _2-9-51_

Referring Physician _Hill_    Clinical Question: _____

## NEEDLE ELECTRODE EXAMINATION

| Muscle | Insertional Activity | Fibrillation | Fasiculation | MUAP | | | Comments |
|---|---|---|---|---|---|---|---|
| | | | | Recruit | Dura | Amplit | |
| (R) FDI | √ | ∅ | ∅ | N | N | N | |
| (R) P(O)T·25 | √ | ∅ | ∅ | N | N | N | |
| (R) EDC | √ | ∅ | ∅ | N | N | N | |
| (R) APB | ↑↑ | +/− | ∅ | ↓↓ | ·↑ | +·↑ | |
| (R) Tib Ant | N | ∅ | ∅ | N | N | N | |
| (R) P. G. Emin 3 L. Oversus | N | ∅ | ∅ | N | N | N | |
| (R) Med Cvs | ↑↑ | ↑/− | ∅ | ↓ | N | ↑/− | |
| (R) TFL | N | ∅ | ∅ | N | N | N | |
| (R) Lat. Gastroc | N | ∅ | ∅ | N | N | N | |
| (R) Biceps F. Min·3 | ↑↑ | ↑/− | ∅ | ↓ | N | ↑/− | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Impression: _____

_____

_____

_____

_____

AR 221

RUSSELL MEDICAL CENTER
ALEXANDER CITY, ALABAMA

PATIENT NAME: DAUGHERTY,CAROL J.
ACCOUNT #: V011273075
PHYSICIAN: Hamo,Wael
MED REC #: M0011802
STATUS: REG CLI

## ELECTROENCEPHALOGRAM FINAL REPORT

DATE OF PROCEDURE: 11/23/04 at 10:53 a.m.

EEG NO.: M0011802

DOB: 02/09/1951

AGE: 53 years old.

PATIENT STATE: Alert and cooperative.

SEDATION: None.

LAST MEAL: Breakfast.

HANDEDNESS: Right.

MEDICATIONS: Indocin, Advil, Zoloft.

DIAGNOSIS: Altered mental status - memory problem.

HISTORY: Over the last few the patient has been having short term memory problems. The patient has a family history of Alzheimer's.

REQUESTING PHYSICIAN: Dr. Hamo.

INTERPRETING PHYSICIAN: Dr. Hamo.

This is a 16-channel referential and bipolar EEG recorded on a patient who was reported to be awake and drowsy during the study. While awake, the dominant background rhythm consisted of well-regulated 20 to 40 microvolts, 9 Hz alpha rhythm activity, with good reaction to eye opening and closure. Small amount of beta activity was seen symmetrically over the frontal head region. Photic stimulation and hyperventilation were performed during the study and did not reveal any further abnormalities. The patient became drowsy in the late stage of this record and early stage II sleep was seen. The EKG channel was recorded during this study and revealed sinus rhythm. No frank epileptiform discharges, electrographic seizure activity or focal slowing was seen during the study.

EEG INTERPRETATION:
1. This EEG is within normal limits in the awake and drowsy state. No frank epileptiform discharges, electrographic seizure activity or focal slowing was seen during this study.

WH/mf

WAEL HAMO, M.D.

PHYSICIAN COPY

AR 222

Page 1 of 2

Name: DAU(...)TY, CAROL J.
Phys: Hamo, Wael
DOB: 02/09/1951 Age: 53    Sex: F
Acct: V011285574 Loc: RAD
Exam Date: 11/22/2004 Status: REG CLI
Radiology No: 00021524
Unit No: M0011802

**RUSSELL**
**Medical Center**
P.O. Box 939
Alexander City, Alabama 35010

**Transcription Report**

Wael Hamo
Medical Arts Building
Suite 2
Alexander City, Al 35010

(256)215-4049

| XAM# | TYPE/EXAM | RESULT |
|------|-----------|--------|

00512990 RAD/LUMBAR SPINE OBLIQUE

DAUGHERTY, CAROL J.

*LUMBOSACRAL SPINE 11/22/04*

CLINICAL INDICATION: Injury.

FINDINGS: 5 lumbar type vertebral bodies are seen without fracture or dislocation. Minimal discogenic degenerative change at L1-2 is noted with marginal osteophyte formation. The intervertebral disk spaces are maintained and vertebral body alignment is within normal limits. No pars defects or significant facet joint degenerative change can be seen.

*IMPRESSION:*
*Minimal discogenic degenerative change at L1-2. No other significant abnormality seen.*

** REPORT SIGNATURE ON FILE 11/22/2004 **
Reported And Signed By: KENNETH (JAKE) BURTON, MD

CC: Wael Hamo

Technologist: HEATHER VICKERS RT (R)
Transcribed Date/Time: 11/22/2004 (1501)
Transcriptionist: RAD.RD
Printed Date/Time: 11/22/2004 (1741)

PAGE 1                    Wael Hamo

AR 223

**RUSSELL**
**Medical Center**
P.O. Box 939
Alexander City, Alabama 35010

**Transcription Report**

Name: DAU⎯E. I,CAROL J.
Phys: Hamo,Wael
DOB: 02/09/1951 Age: 53    Sex: F
Acct: V011285574 Loc: RAD
Exam Date: 11/22/2004 Status: REG CLI
Radiology No: 00021524
Unit No: M0011802

Wael Hamo
Medical Arts Building
Suite 2
Alexander City, Al 35010

(256)215-4049

| EXAM# | TYPE/EXAM | RESULT |
|---|---|---|

000512996 RAD/LEFT KNEE 4 VIEWS

DAUGHERTY, CAROL J.

*LEFT KNEE 4 VIEWS 11/22/04*

CLINICAL INDICATION: Injury.

FINDINGS: There is no evidence of fracture or dislocation. The joint compartments are within normal limits and no synovial complex can be seen to suggest effusion and/or synovial proliferation. No soft tissue abnormalities are identified.

*IMPRESSION:*
*No fracture or dislocation.*

** REPORT SIGNATURE ON FILE 11/22/2004 **
Reported And Signed By: KENNETH (JAKE) BURTON, MD

CC: Wael Hamo

Technologist: HEATHER VICKERS RT (R)
Transcribed Date/Time: 11/22/2004 (1504)
Transcriptionist: RAD.RD
Printed Date/Time: 11/22/2004 (1741)

PAGE 1                    Wael Hamo

**RUSSELL**
**Medical Center**
P.O. Box 939
Alexander City, Alabama 35010

**Transcription Report**

Name: DAUGHERTY,CAROL J.
Phys: Hamo, Wael
DOB: 02/09/1951 Age: 53      Sex: F
Acct: V011285574 Loc: RAD
Exam Date: 11/22/2004 Status: REG CLI
Radiology No: 00021524
Unit No: M0011802

Wael Hamo
Medical Arts Building
Suite 2
Alexander City, Al 35010

(256)215-4049

EXAM#      TYPE/EXAM                                  RESULT
000512995 RAD/LEFT HIP-MINIMUM 2 VIEWS

DAUGHERTY, CAROL J.

**LEFT HIP 11/22/04**

CLINICAL INDICATION: Injury.

FINDINGS: There is no evidence of fracture or dislocation. The
bilateral hip and sacroiliac joints are within normal limits. The
pubic symphysis is grossly unremarkable. No soft tissue abnormalities
are visualized. A herniation pit is incidentally noted in the left
femoral neck and is of no clinical significance.

*IMPRESSION:*
*No significant abnormality seen.*

                    ** REPORT SIGNATURE ON FILE 11/22/2004 **
                    Reported And Signed By: KENNETH (JAKE) BURTON, MD

CC: Wael Hamo

Technologist: HEATHER VICKERS RT (R)
Transcribed Date/Time: 11/22/2004 (1502)
Transcriptionist: RAD.RD
Printed Date/Time: 11/22/2004 (1741)

PAGE 1                    Wael Hamo

**RUSSELL**
**Medical Center**
P.O. Box 939
Alexander City, Alabama 35010

**Transcription Report**

Name: DAU___TY,CAROL J.
Phys: Hamo,Wael
DOB: 02/09/1951 Age: 53        Sex: F
Acct: V011201803 Loc: RAD
Exam Date: 10/22/2004 Status: REG CLI
Radiology No: 00021524
Unit No: M0011802

Wael Hamo
Medical Arts Building
Suite 2
Alexander City, Al 35010

(256)215-4049

| EXAM# | TYPE/EXAM | RESULT |
|---|---|---|
| 000507805 | MRI/MRI CERVICAL SPINE W/OUT CO | |

DAUGHERTY, CAROL J.
HISTORY: neck pain, myalgia.  Additional history obtained by the
technologist is of cervicalgia and right arm pain, fibromyalgia and
arthritis.  The patient had an MVA in May, 1993.

*MRI SCAN OF THE CERVICAL SPINE: 10/22/04.*
Correlation is made with the plain film examination of the same date
which shows loss of normal cervical lordosis and mild uncinate process
osteophyte formation at C5 and C6 on the left.  Routine RMC pulse
sequences and planes submitted.

Marrow signal is normal.  There is no significant disc bulge or
herniation suggested.  Loss of normal cervical lordosis is noted.  Fat
and fluid around the neural foramina is maintained at all levels.  The
cord is normal, and there is no evidence of Chiari malformation.
*IMPRESSION:*
*Normal study.*

                    ** REPORT SIGNATURE ON FILE 10/24/2004 **
                    Reported By: LOUISE R. GEARY, MD
                    Signed By:   GEARY,LOUISE MD

CC: Wael Hamo

Technologist: JOSHUA W. TUCKER, RT (R) (MR)
Transcribed Date/Time: 10/24/2004 (1956)
Transcriptionist: RAD.RUS
Printed Date/Time: 10/24/2004 (2115)

PAGE 1
                    Wael Hamo

AR 226

**RUSSELL**
**Medical Center**
P.O. Box 939
Alexander City, Alabama 35010

**Transcription Report**

```
Name: DAU    TY,CAROL J.
Phys: Hamo,Wael
DOB: 02/09/1951 Age: 53      Sex: F
Acct: V011201803 Loc: RAD
Exam Date: 10/22/2004 Status: REG CLI
Radiology No: 00021524
Unit No: M0011802
```

Wael Hamo
Medical Arts Building
Suite 2
Alexander City, Al 35010

(256)215-4049

| EXAM# | TYPE/EXAM | RESULT |
|-------|-----------|--------|
| 000507806 | MRI/MRI LUMBAR SPINE WITHOUT CO | |

DAUGHERTY, CAROL J.
HISTORY: neck pain, myalgia.  Additional information obtained by the MRI technologist indicates low back pain, myositis, bilateral hip pain.  The patient states sciatica on both sides.  No prior spine surgery.  No cancer.  She reports an MVA in 93.
*MRI OF THE LUMBAR SPINE:*
As part of the MRI study, AP and lateral plain images are presented and demonstrate normal appearing lumbar spine in these two projections.  Hypoplastic 12th ribs define the lowest thoracic vertebral body.  Therefore, there are only four lumbar bodies and the lumbosacral junction subsequently is counted as L4-S1.  Standard RMC image planes and pulse sequences are presented and compared with the plain films described with four lumbar bodies counted.  There are scattered, age appropriate discogenic degenerative change with varying degrees of overall mild disc desiccation and varying degrees of mild primarily symmetric disc bulging.  There is no HNP.  There is no spinal stenosis.  There is no sign of malignant tumor.  Marrow spaces are unremarkable.  The distal cord/conus area is unremarkable.
*IMPRESSION:*
*Normal for age with mild degenerative changes present.*

```
** REPORT SIGNATURE ON FILE 10/24/2004 **
Reported By: DONALD G. HAWKINS, MD
Signed By:   GEARY,LOUISE MD
```

CC: Wael Hamo

Technologist: JOSHUA W. TUCKER, RT (R) (MR)
Transcribed Date/Time: 10/24/2004 (1327)
Transcriptionist: RAD.RJS
Printed Date/Time: 10/24/2004 (2123)

PAGE 1                    Wael Hamo

AR 227

# MEDICAL/VOCATIONAL REVIEW

To be completed by the Examiner:

Claimant Name: carol j. daugherty
Claim #:  2005-236-113
Policy #:  99500
Diagnosis:  low back pain

DOL: 4/30/05
DOB: 2/9/51
Occ: buyer
Exertion Level: light

Date: 9/23/05
Examiner: d. buggs

Date of most current medical records: 7/6/05
Comments/Questions: what is precluding the claimant from performing her occupation. according to the medical on the file, the treating physician is confused of why the claimant is walking with a walker. does the medicla on the file support the claimant impairment. what is the restrictions and limitations. what is the anticpated duration of themedical on the file. Wha tis the anticipated duration of the claimant returning back to work.

To be completed by the Medical Department:

Date:  September 29, 2005

Not Enough Information to set Duration: ☐
Anticipated R&L's:                                   See Below
Anticipated Duration:
Need Records to Support Beyond:

Other Comments: There are no records on file from 4/7/05 till 7/6/05 as claimant missed 4 appointments. Office note of 4/7/05 does not support work impairment. Please determine all physicians claimant has seen since 4/1/05 and obtain records and return when all information received. Based on currently available information I am unable to assess any work impairment.

The medical opinion provided is based on the data available as of this date. The signature below asserts that I have the training and experience in the area of nursing practice encompassed in this review.

RN: Marianne P. Lubrecht, BSN, RN

To be completed by the Vocational Rehabilitation Department:

Date:  _____

_____

_____

_____

_____ Refer for a vocational evaluation after claimant obtains SSDI
_____ Refer to the Vocational Rehabilitation Department for an initial evaluation

EF-1322

9-8-05 Faxed PRE PAY (AM)

# RELIANCE STANDARD
Life Insurance Company

2001 Market Street, Suite 1500
Philadelphia, PA 19103
(800) 351-7500

September 2, 2005

Dr. Graham Howorth
1120 Airport Drive
Alexander City, AL 35010

RE:  Claimant  : Carol J. Daugherty
     S.S. No.  : 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
     D.O.B.    : 2-9-51
     Claim No. : 2005-236-113

Dear Dr. Howorth:

We are reviewing a Long Term Disability (LTD) claim submitted by
your patient, Carol J. Daugherty. As part of our evaluation of
their eligibility for LTD benefits, we must ask that you provide us
with the following information:

   **X**  Please provide us with copies of all medical treatment
      records you have on file for this patient; including
      copies of chart notes, hospital treatment records, X-rays
      and other radiographic tests, and laboratory test results
      for the period from 3-15-05 to present.

   ____  Please complete the enclosed medical questionnaire based
      on your most recent evaluation of the patient's condition.

Accompanying this request is an authorization for the release of
this information signed by the patient.  If there is a fee for
providing the information to us, please include appropriate billing
and your tax identification number with your reply.  If there is an
advance fee for copying the records, or if you have any other
questions or concerns regarding this request, please contact me
directly at (267) 256-3652.  You may also FAX your response to my
attention at (267) 256-3535.

Sincerely,

Danielle N. Buggs   Examiner
Group LTD Claims Department

## AR 229

a *DELPHI* company

**ALEXANDER CITY ORTHOPAEDICS**                    **JULY 6, 2005**

**DAUGHTERY, CAROL**
**#1788**

Seen as work-in. Carol is seen for evaluation and complaints of multiple problems. She
is 54 years old. She missed an appointment on 06/07/05, on 05/23/05, on 05/09/05, on
04/28/05, with her last visit on 04/07/05, and since that time, she has missed at least 4
appointments.

Received notes from RMC requesting weightbearing status. Lisa from PT wanted to
know weightbearing status, which was normal weightbearing status. She requested a
walker. This was not discussed with her at the time of her visit. She was seen in April
for a left Baker's cyst, patellar chondromalacia, left sciatica, trochanteric bursitis,
fibromyalgia, bilateral posterior tibial dysfunction. Previous MRI of her LS spine was
unremarkable. X-ray of her left knee was unremarkable for aging on 03/15/05. There
was no evidence of tear on the MRI scan of her knee.

HT: 5'4". WT: 190.

**FAMILY HISTORY:**
Diabetes, stroke, cancer.

**ALLERGIES:**
**CLEOCIN.**

She was previously treated with low dose Prednisone, PT, consideration for injection to
her left hip.

**ON EXAMINATION TODAY:**
I discussed with her she has missed 4 appointments. She states that PT put her on
crutches and that they wanted records so they could see what to do. This is incredibly
confusing as PT called us. We told them she had normal weightbearing status and that
she did not need a walker. She has been off work apparently since April the 29th of 2004
or 2005. I am unclear exactly which year.

She has symptoms of carpal tunnel, plantar fasciitis, right shoulder bursitis. She has been
followed by Dr. Powers with a history of fibromyalgia and rheumatological workup as
needed. She has mild symptoms of trochanteric bursitis, complaints of bilateral foot pain,
and has a myriad of complaints. She has asked that we backdate off work activities until
the last time that we had seen her, as she has missed 4 appointments. This is the standard
that we do not do this, and if she has been seeing other physicians, then I feel that this
would be more appropriate for them to complete this information for her.

DAUGHTERY, CAROL
ACO #1788
07/06/05
PAGE 2

**PLAN:**
1. Ultram 30 / 1 R.
2. NCV studies hands bilaterally.
3. Evaluate by Dr. Powers re joint pain, history of fibromyalgia, rheumatologic workup.

**ADDENDUM:**
She did see Dr. Stewart. Dr. Stewart's note of 06/02/05 was reviewed. His diagnosis was plantar fasciitis, and this was treated with _frtan(c__ medial arch accommodations. She states Dr. Stewart had been keeping her off work. Again, it would be more appropriate for him to fill in her disability forms at this time.

Best regards,

**GRAHAM L. HOWORTH, JR., M.D.**
/jhw

cc: Dr. Powers ✓

# ALEXANDER CITY ORTHOPAEDICS

**APRIL 7, 2005**

**DAUGHERTY, CAROL JEAN**
**#1788**

Carole is a delightful 54-year-old seen in follow-up of visit on 03/15/05 with left trochanteric bursitis, left sciatica, left Baker's cyst, left patella chondromalacia, fibromyalgia, bilateral feet PTT dysfunction.

**X-RAYS:**
MRI scan of the lumbosacral spine was previously performed and remarkable for no disc herniation, spinal stenosis, degenerative changes. This was done on 10/22/04, and this was reviewed for her. X-ray of her left knee is unremarkable for age of 03/15/05. MRI scan was remarkable for mild myxoid degeneration without tear. Quadriceps and patella tendons were intact. The impression was mild joint effusion with tear of the posterior cruciate ligament.

WT: 190. HT: 5'4".

**SURGICAL HISTORY:**
Tubal ligation, partial hysterectomy.

**FAMILY HISTORY:**
Diabetes, stroke, cancer.

**ALLERGIES:**
CLEOCIN.

She has been on Prednisone and reports about 90% relief of pain on Prednisone. She has continued to have intermittent left knee pain, back pain, left hip pain. She has mild tenderness on palpation about the left trochanteric bursa. She has posterior tibial dysfunction of her feet bilaterally.

**DIAGNOSES:**
1. Left knee MRI remarkable for PCL tear.
2. Fibromyalgia.
3. Left trochanteric bursitis.
4. PTT dysfunction bilaterally, all improved on previous treatment with Prednisone.

**PLAN:**
1. Low dose Prednisone 10 mg 1 p.o. b.i.d. x 5, 1 q.d. x 5.
2. PT at RMC.
3. RTC in 3 wks.
4. Consider left hip trochanteric bursa injection on RTC.

**GRAHAM L. HOWORTH, JR., M.D.**
/jhw

**ALEXANDER CITY ORTHOPAEDICS**          **MARCH 15, 2005**

## DAUGHERTY, CAROL
#1788

Carol is a delightful 54-year-old seen for evaluation of painful left hip, buttocks, knee, and feet bilaterally.

Carol is 54 years old. She works at Russell Medical Center.

**PMH:**
Reviewed and well documented in her chart, remarkable for history of paralysis, headache, fibromyalgia, backache, hemorrhoids, rectal bleeding.

I have operated on her mother, Mandy Nix, with bilateral hips.

**ALLERGIES:**
CLEOCIN.

**FAMILY HISTORY:**
Remarkable for cancer, diabetes, stroke.

**SURGICAL HISTORY:**
Tubal ligation, partial hysterectomy.

WT: 190+. HT: 5'4".

**MEDICATIONS:**
Include Reminyl, aspirin, Naprosyn, Advil.

**X-RAYS:**
MRI of her lumbosacral spine was reviewed from that done on 10/24/04 and is remarkable for normal-for-age degenerative changes, read by Dr. Hawkins and signed by Dr. Louise Geary, 4 lumbar-type vertebrae.

She is referred by Dr. Hamo for evaluation.

**PHYSICAL EXAMINATION:**
Remarkable for left trochanteric bursitis, focal tenderness over the trochanteric bursa. She reports fullness, and she has a questionable Baker's cyst of her left knee. She has chondromalacia of the left knee. Knee ROM is full. She has intermittent atypical left sciatica. She has a history of fibromyalgia. Examination of her feet is remarkable for mild flexible posterior tibial tendon dysfunction grade I.

She has a questionable history of multiple sclerosis and is being evaluated by Dr. Hamo.

**PLAN:**
1. MRI scan of left knee.
2. Obtain old MRI report of LS spine done (see above).
3. Rx trial of Prednisone.
4. RTC post MRI scan of left knee.

## GRAHAM L. HOWORTH, JR., M.D.
/jhw

**RSL** Reliance Standard Life
Insurance Company®

**DISABILITY CLAIM**
**(LONG TERM; WAIVER OF PREMIUM)**
**PHYSICIAN'S STATEMENT**

This form should be completed by the physician who was treating the claimant when he or she last worked.

## TO BE COMPLETED BY THE ATTENDING PHYSICIAN

### A. GENERAL INFORMATION

This claim is for (Patient's Name) Carol Daugherty

Policy Number LTD 099500

| Date of Birth (Month, Day, Year) 02-09-51 | Height (Ft. Inches) | Weight (lbs) | Blood Pressure | Patient's Social Security Number. 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 |

Primary Diagnosis including ICD 9 or DSM code

### B: PREGNANCY: PHYSICIAN COMPLETES THIS SECTION FOR NORMAL PREGNANCY

| 1. DATE OF LAST MENSTRUAL PERIOD | 2. EXPECTED DATE OF DELIVERY | 3. TYPE OF DELIVERY EXPECTED | 4. DATE OF DELIVERY |
| 5. INITIAL VISIT FOR THIS PREGNANCY | 6. LAST DATE OF TREATMENT | 7. EXPECTED LENGTH OF POSTPARTUM RECOVERY | |

### C: PHYSICIAN COMPLETES THIS SECTION FOR ALL CONDITIONS EXCEPT NORMAL PREGNANCY

1. PRIMARY DIAGNOSIS (INCLUDING ICD-9 OR DSM III R CODE): 723.1 Neck Pain   781.2 Ataxia   734.4 c/s Radiculopathy
780.99 - AMS   354.0 -   716.90 -arthritis   780.79 fatigue/Malaise   729.5 limb pain
724.5 back pain   729.1 Fibromyalgia   307.81 Tens HA   780.52 insomnia

2. SYMPTOMS (subjective): neck + lower back pain, Dizziness, Memory Problems, numbness, tingling, Presyncope, headache

3. OBJECTIVE FINDINGS: (PLEASE PROVIDE COPIES OF TEST RESULTS AND OFFICE NOTES)   See notes

4. ARE THERE ANY SECONDARY CONDITIONS CONTRIBUTING TO DISABILITY? IF YES, WHAT ARE THEY? (INCLUDING ICD-9 OR DSM III R CODE): no

| 5. WHEN DID SYMPTOMS FIRST APPEAR 1st visit 10, 19, 04 MTH DAY YR | 6. DATE OF PATIENT'S FIRST VISIT 10, 19, 04 MTH DAY YR | 7. DATE OF PATIENT'S LAST VISIT 03, 09, 05 MTH DAY YR | 8. FREQUENCY OF VISITS every 4 Months |

9. WAS THE PATIENT REFERRED BY ANOTHER MEDICAL PRACTITIONER?     10. IF SO, FURNISH THE NAME AND ADDRESS.

11. IS THE PATIENT'S CONDITION WORK RELATED?   YES ☐  NO ☒   IF YES, EXPLAIN:

12. HAS THE PATIENT UNDERGONE A SURGICAL PROCEDURE?   YES ☐  NO ☒  IF NO, SKIP TO 13

| 12a. PROCEDURE: | 12b. DATE: | 12c. FACILITY: (NAME/ADDRESS) |

13. DO YOU EXPECT SURGERY IN THE NEAR FUTURE?   YES ☐  NO ☒  IF NO, SKIP TO 14

| 13a. PROCEDURE: | 13b. DATE: | 13c. FACILITY: (NAME/ADDRESS) |

14. WHAT PRESCRIBED MEDICATION IS THE PATIENT CURRENTLY TAKING AND WHAT DOSAGE? Relonz 8mg tbd, Zanaflexline xtbl, zoloft, Keppra 500mg 428am 1tbs, Lidoderm Patches, Provigil, Aricept, Cymbalta, Mobic

15. HAVE YOU REFERRED THE PATIENT FOR OTHER TYPES OF CONSULTATIONS?   YES ☒  NO ☐  IF YES, EXPLAIN:   Dr Howorth - 256-234-3114

16. HAVE YOU REFERRED THE PATIENT TO A MEDICAL REHABILITATION OR THERAPY PROGRAM?   IF YES, PLEASE IDENTIFY:

### D: PHYSICIAN COMPLETES FOR ANY HOSPITAL CONFINEMENTS

| 1. NAME AND ADDRESS OF HOSPITAL | 2. DATE(S) CONFINED FROM/TO IN THE PRIOR 2 YEARS |

AR 234

## E: DESCRIPTION OF PATIENT'S RESTRICTIONS AND LIMITATIONS

1) In an 8 hour work day patient can stand: [] None  [] 1-3 Hours  [] 3-5 Hours  [] 5-8 Hours
2) In an 8 hour work day patient can sit: [] None  [] 1-3 Hours  [] 3-5 Hours  [] 5-8 Hours
3) In an 8 hour work day patient can walk: [] None  [] 1-3 Hours  [] 3-5 Hours  [] 5-8 Hours
4) In an 8 hour work day patient can drive: [] None  [] 1-3 Hours  [] 3-5 Hours  [] 5-8 Hours

5) Patient can use upper extremities for repetitive:

A. Simple Grasping
Right [] Yes [] No
Left [] Yes [] No

B. Pushing/Pulling
Right [] Yes [] No
Left [] Yes [] No

C. Fine Manipulation
Right [] Yes [] No
Left [] Yes [] No

6) Patient is able to:

| | CONTINUOUS 67-100% | FREQUENT 34-66% | OCCASIONAL 0-33% |
|---|---|---|---|
| A. Bend (at waist) | [] | [] | [] |
| B. Squat (at knees) | [] | [] | [] NO |
| C. Climb | [] | [] | [] NO |
| D. Reach above Shoulder | [] | [] | [] |
| E. Kneel | [] | [] | [] NO |
| F. Crawl | [] | [] | [] NO |
| G. Use Feet (foot controls) | [] | [] | [] NO |

7) In an 8 hour day patient can lift/carry:

[] 10 lbs maximum and occasionally carry small objects: SEDENTARY WORK
[] 20 lbs maximum and frequently lift/carry up to 10 lbs: LIGHT WORK
[] 50 lbs maximum and frequently lift/carry up to 25 lbs: MEDIUM WORK
[] 100 lbs maximum and frequently lift/carry up to 50 lbs: HEAVY WORK
[] In excess of 100 lbs and frequently lift/carry 50 lbs: VERY HEAVY WORK

## F: PHYSICIAN COMPLETES IF LIMITATIONS ARE MENTAL/NERVOUS IN NATURE

TO WHAT DEGREE, IF ANY, ARE THE FOLLOWING CAPACITIES AFFECTED?

| CAPACITY | NOT LIMITED | MODERATELY LIMITED | EXTREMELY LIMITED |
|---|---|---|---|
| Ability to relate to other people beyond giving and receiving instructions | [] | [] | [] |
| Ability to complete and follow instructions | [] | [] | [] |
| Ability to perform simple and repetitive tasks | [] | [] | [] |
| Ability to perform complex and varied tasks | [] | [] | [] |
| Ability to accept and carry out responsibility for direction, control and planning | [] | [] | [] |

In your opinion, does the claimant possess the mental capacity to understand his/her financial affairs and to direct the use of his/her funds? [] Yes  [] No

## G: PHYSICIAN COMPLETES ONLY IF THE CONDITION IS CARDIAC IN NATURE

Functional Capacity (American Heart Ass'n)  N/A
[] Class 1 (no limitation)  [] Class 2 (slight limitation)
[] Class 3 (marked limitation)  [] Class 4 (complete limitation)

## H: PHYSICIAN COMPLETES FOR ALL CONDITIONS: PROGNOSIS FOR RECOVERY

1. HAS THE PATIENT ACHIEVED MAXIMUM MEDICAL IMPROVEMENT? [] YES [] NO

2. IF YES, AS OF WHAT DATE CAN PATIENT RETURN TO WORK?  N/A
MTH    DAY    YR

3. IF NO, WHEN DO YOU EXPECT PATIENT WILL ACHIEVE MAXIMUM MEDICAL IMPROVEMENT?
[] < 2 weeks    [] < 4 weeks    [] < 2 months    [] 3-4 months
[] 5-6 months    [] 6-8 months    [] < 12 months    [] < 16 months

4. WHEN THE ABOVE CHANGE OCCURS, WHAT FUNCTIONAL CAPACITY WILL THE PATIENT RECEIVE?
[] FULL RECOVERY    [] IMPROVED OVER CURRENT BUT NOT FULL    [] REMAIN AT PRESENT

"A PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE AN INSURANCE COMPANY FILES A STATEMENT OF CLAIM CONTAINING FALSE, INCOMPLETE OR MISLEADING INFORMATION COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME."
*"I CERTIFY THAT THE FACTS AS INDICATED ABOVE ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE."*

Your Name: Ward Harris
Degree: MD
Specialty:
Telephone: (336) 249-0091
Fax: 332 249-0094
Address:

Physician's Signature (no stamp):

AR 235

Date: 8/13/05